```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____       │
│ DATE FILED: __12/9/15_____      │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH CREIGHTON,

                  Plaintiff,

      - against -

THE CITY OF NEW YORK, DETECTIVE
DEAN ROBERTS (Shield No. 05861),
DETECTIVE GLENN GODINO (Shield No.
2756), P.O. JOHN DOE #1, P.O JOHN DOE
#2, P.O. JOHN DOE #3, DETECTIVE JOHN
DOE #I, DETECTIVE JOHN DOE #2,
DETECTIVE #3 (all John Does defendants
being fictitious names to denote Unidentified
officers and detectives involved herein),
DISTRICT ATTORNEY ROBERT T.
JOHNSON, ASSISTANT DISTRICT
ATTORNEY BRUCE BIRNS and
ASSISTANT DISTRICT ATTORNEY
MICHAEL COOPER,

                  Defendants.

**MEMORANDUM
OPINION & ORDER**

12 Civ. 7454 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       Plaintiff Kenneth Creighton brings this action under 42 U.S.C. § 1983 asserting,

inter alia, claims for false arrest and malicious prosecution in connection with a fatal shooting in

the Bronx.  Plaintiff now seeks to learn the identity of a confidential informant whose statements

and grand jury testimony led to Plaintiff's arrest and prosecution.  On April 15, 2014, Magistrate

Judge Debra C. Freeman issued an order directing that Defendants disclose the confidential

informant's identity to Plaintiff.  (Dkt. No. 39)  Defendants appeal that ruling pursuant to Federal

Rule of Civil Procedure 72(a).  (Dkt. No. 47)  For the reasons stated below, Judge Freeman's

April 15, 2014 order will be affirmed.

# BACKGROUND

## I.   FACTS

On January 10, 2007, Plaintiff was arrested in connection with a fatal shooting that occurred on December 26, 2006 in the vicinity of a bodega at 800 East 168th Street in the Bronx.  (Nov. 25, 2013 Pltf. Ltr., Ex. A (Recommendation for Dismissal of Indictment) (Dkt. No. 20-1) at 1) [1]  On February 9, 2007, Plaintiff was indicted for criminal possession of a weapon in the second degree and criminal facilitation in the second degree.  (Id.)

Plaintiff was arrested and charged on the basis of statements made by a single eyewitness (the "Informant") (id. at 2), who reported to police that he saw Plaintiff "pass[] the gun to [Plaintiff's brother] Dior [Creighton] inside the store," and then saw Dior fire the weapon. (Nov. 25, 2013 Pltf. Ltr., Ex. B (Detective Notes) (Dkt. No. 20-2) at 2)  The Informant also testified before the grand jury that he was in the vicinity of a bodega on East 168th Street on December 26, 2006, and that he "[saw] [Plaintiff] passing a gun to Dior [Creighton]" before the shooting.  (Nov. 25, 2013 Pltf. Ltr., Ex. C (Redacted Grand Jury Transcript) (Dkt. No. 20-3) at 6, 12, 15)

The Informant's testimony was the only eyewitness testimony that the prosecutor presented to the grand jury.  (See id.)  It appears, however, that another eyewitness had given police a very different account of the December 26, 2006 bodega shooting.  On December 31, 2006, that eyewitness provided a signed statement to the police stating the following:

> On 12-26-06 after 5:00PM the witness saw Dior and "Kafia" walking into the store, "Kafia" pulled out a silver and black gun and handed the gun to Dior.  Dior took the gun . . . .  Then Dior turned and went toward the front door of the store, put on his hoody and walked out of the store with "Kafia."  Approx[imately] 5-10

---

[1]  The page numbers referenced in this Order correspond to the page numbers designated by the Electronic Case Filing system.

> seconds went by when he heard gun shots, approx[imately] 6-7 shots.  He looked
> out the door and saw Dior and "Kafia["] run towards Home Street. . . .

(Dec. 6, 2013 Pltf. Ltr., Ex. C (name of signer redacted) (Dkt. No. 24-3))  This statement was not

presented to the grand jury in any form.

Plaintiff's brother, Dior Creighton, was arrested and charged with murder in the

second degree and attempted murder in the second degree in connection with the December 26,

2006 shooting.  (Nov. 25, 2013 Pltf. Ltr., Ex. A (Recommendation for Dismissal of Indictment)

(Dkt. No. 20-1) at 1)  On January 3, 2012 – more than five years after his arrest – Dior Creighton

pleaded guilty to attempted murder in the second degree.  (Id.)  On January 19, 2012, he was

sentenced to fourteen years' imprisonment with five years of post-release supervision.  (Id. at 1-

2)

On January 18, 2012 – after Plaintiff had spent five years in pre-trial detention –

the Bronx County District Attorney's Office filed a Recommendation for Dismissal with the

Bronx Criminal Court, recommending that the charges against Plaintiff be dismissed.  (Id.)  The

District Attorney's Office provided the following explanation for its recommendation:

> Kenneth Creighton was arrested and charged based upon the statements of a
> single eyewitness.  This eyewitness knows Kenneth Creighton and saw him hand
> Dior Creighton a handgun inside the bodega.  This witness has now become
> unavailable to the Bronx District Attorney's Office.  The witness could not be
> located by the case Detective at any of the telephone numbers or addresses
> provided.  Further efforts to locate this witness by the Detective Investigator have
> been unsuccessful. . . .  Therefore, the People would be unable to proceed to trial.

(Id. at 2)

On February 21, 2013, Fawaz Tareb signed an affidavit confirming that he is the

author of the December 31, 2006 signed statement identifying "Kafia" as the individual who

passed the gun to Dior Creighton inside the bodega.  (Feb. 21, 2014 Pltf. Ltr., Ex. F (Tareb

Affidavit) (Dkt. No. 31-5))  Tareb states that he was the owner of the bodega at 820 East 168th

Street in the Bronx on December 26, 2006, and that "[t]he person who [he] identified as Kafia . .

. on December 31, 2006 was not Ken Creighton." (Id.)  Tareb also states the following:

> On December 31, 2006 at 3:00 p.m., I was shown a photo array dated 12/31/06 by
> the 42nd Detective Squad and I identified #1 as being the same person who
> passed the gun to Dior in my store. . . .  At the time of this statement, February 7,
> 2013, I was shown a copy of an NYPD mug shot pedigree . . . which shows the
> person I saw pass the gun to Dior.  This person is not Ken Creighton.

(Id.)

On December 4, 2013, Kijafa Spruell signed a notarized statement in which he

admitted that he, and not Plaintiff, passed a gun to Dior Creighton in the bodega on December

26, 2006:

> On December 26, 2006 I was inside the Prospect mini mart at 820 E.168th in the
> Bronx.  I was with Dior Creighton.  An altercation happened on E.168th.  I went
> to my house to get my gun, a 10 mm handgun. . . .  Me [and] Dior returned to the
> bodega where I passed him the gun.  I took it out of my waistband [and] passed it
> to him.  We went outside.  Shots came from up the hill.  Dior fired back [and] we
> ran away.  I never spoke to the police or [District Attorney] about this matter.  I
> read a copy of the Detective's notes [regarding the Informant] [and] none of what
> is written there is true.  I gave Dior the gun. . . .

(Feb. 21, 2014 Pltf. Ltr., Ex. D (Spruell Statement) (Dkt. No. 31-4))

## II.     PROCEDURAL BACKGROUND

### A.     Proceedings Before Magistrate Judge Freeman

Plaintiff commenced this action in Bronx County Supreme Court on August 22,

2012.  (Notice of Removal (Dkt. No. 1) at 1)  He asserts claims, pursuant to Section 1983, for,

inter alia, false arrest, malicious prosecution, and conspiracy in connection with his arrest,

prosecution, and imprisonment following the December 26, 2006 shooting.  (Id.; see also

Amended Complaint (Dkt. No. 10)).  Defendants removed the action to this Court on October 4,

2012.  (Dkt. No. 1)

On September 5, 2013, this Court referred the case to Magistrate Judge Debra C. Freeman for general pretrial purposes. (Dkt. No. 11)  Since that time, Judge Freeman has issued several orders addressing whether the Informant's identity should be disclosed to Plaintiff.  On November 13, 2013, Judge Freeman ordered that the minutes of the Informant's grand jury testimony be unsealed and produced in redacted form to Plaintiff. (Dkt. No. 16)  Judge Freeman's order provided that the "Bronx County District Attorney's Office and/or the City defendants may make redactions necessary to protect the identity of the confidential informant prior to disclosure." (Id.)  The parties later briefed the question of whether the Informant's identity should be disclosed (see Dkt. Nos. 20-21, 23-24), and on January 8, 2014, Judge Freeman issued an order directing the Defendants to produce the unredacted grand jury minutes and the Informant's police file "to Plaintiff's counsel, on an 'attorneys' eyes only' basis." (Dkt. No. 28 at 2 (emphasis in original))  Defendants did not appeal Judge Freeman's determination.

In a February 21, 2014 letter to Judge Freeman, Plaintiff argued that the Informant's identity should be disclosed to Plaintiff, so that he could assist his attorneys in locating, interviewing, and deposing the Informant. (Dkt. No. 31)  Plaintiff submitted an affidavit stating "that [he] [has] no intention of retaliating against the confidential informant," and that his "sole reason for requesting that the identity of the confidential informant be divulged to [him] is so that [he] can assist [his] attorneys in the prosecution of [his] case." (Feb. 21, 2014 Pltf. Ltr., Ex. G (Pltf. Affidavit) (Dkt. No. 31-6) at 3-4)

In response to Plaintiff's February 21, 2014 letter, Defendants requested an additional 30 days to locate the Informant and stated that, if they could not locate the Informant within that time, they would not oppose Plaintiff's motion. (Dkt. No. 33)  In response, Judge Freeman issued an order providing that, unless she received a submission from the Informant or

on his behalf by April 4, 2014, explaining why disclosure should not be made, Plaintiff's counsel

would be permitted to reveal the Informant's identity to Plaintiff.  (Dkt. No. 35)

On April 4, 2014, Defendants submitted a letter stating the following:

> The informant has contacted the Bronx County District Attorney's office
> regarding this matter.  The informant strenuously objects to the production of his
> identity to the plaintiff.  The informant fears that he would be in physical danger
> of retaliation if the plaintiff knew his identity.  The informant maintains a
> relationship with the plaintiff and with the plaintiff's family and believes that the
> plaintiff has no idea that the informant testified in the Grand Jury or aided the
> police in their investigation.
>
> The informant is not in the State of New York, but is willing to appear by phone
> to make his concerns known to the Court, if necessary.  At the request of the
> confidential informant, defendants ask that the confidential informant's identity
> not be revealed to the plaintiff.

(Apr. 4, 2014 Def. Ltr. (Dkt. No. 36) at 1)  Plaintiff's counsel objected to Defendants' request,

stating that they "believe [they] must be able to advise [their] client [that the Informant has

ongoing contact with him] so as to effectively represent him[,] and further [they] believe [they]

have a legal and ethical obligation to do so."  (Apr. 5, 2014 Pltf. Ltr. (Dkt. No. 37) at 1)

Plaintiff's counsel also argued that Plaintiff "must be permitted to participate in the prosecution

of his civil case."  (Id. at 2)

On April 15, 2014, Judge Freeman issued an order directing that the Informant's

identity be disclosed to Plaintiff.  (Dkt. No. 39)  In making this determination, Judge Freeman

relied on Roviaro v. United States, 353 U.S. 53, 59-62 (1957), for the proposition that – when

confronting the government's qualified privilege to withhold the identity of a confidential

informant – the public interest in effective law enforcement must be balanced against the public

interest in determining cases on their merits.  (Apr. 15, 2014 Order (Dkt. No. 39) at 1-2)  Judge

Freeman also relied on (1) United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988), which

reiterated Roviaro's teaching that a confidential informant's identity must be revealed to a

defendant in a criminal case where the informant's testimony is material to the defense; and

(2) Carbajal v. Village of Hempstead, No. CV-02-4270(ADS)(ETB), 2003 WL 23138447, at *2

(E.D.N.Y. Dec. 22, 2003), which held, in a Section 1983 action alleging false arrest, that a

confidential informant's identity must be disclosed, given that the informant was the only person

who could identify the plaintiff as the person involved in the crime, and his testimony was

therefore of crucial importance to the plaintiff's argument that the police lacked probable cause.

(Apr. 15, 2014 Order (Dkt. No. 39) at 3)

       In applying these authorities, Judge Freeman found that Defendants' "assertions

regarding the risks that disclosure would pose are speculative, conclusory, and ultimately

unpersuasive, especially when balanced against the compelling reasons for disclosure." (Id. at 1)

Judge Freeman highlighted the importance of the Informant's testimony to Plaintiff's case,

noting that the Informant was the "'single eyewitness' upon whose statements Plaintiff was

arrested and charged . . . ." (Id. at 2-3 (quoting Nov. 26, 2013 Pltf. Ltr., Ex. A (Recommendation

for Dismissal of Indictment) (Dkt. No. 20-1) at 1))

       Judge Freeman also observed that Defendants' interest in non-disclosure of the

Informant's identity was minimal.  Judge Freeman noted that Defendants had not demonstrated:

(1) "that any continued work by the CI, for the government, would be jeopardized if his identity

were revealed," particularly in light of Defendants' assertion "that it is 'clearly not the case' that

the CI continues to work for either the police or the District Attorney's office"; (2) that the

Informant's unavailability in Plaintiff's criminal case stemmed from any fear of reprisal; (3) that

"Plaintiff has ever, in the past, engaged in threatening or violent conduct toward the CI, or has

engaged in other conduct that could lead to the reasonable belief that the disclosure of the CI's

identity would legitimately place the CI at risk of harm"; and (4) that "the CI would even be

easily reachable by Plaintiff or his family," particularly in light of the fact that "the CI lives out

of state." (Id. at 3)  Accordingly, Judge Freeman ordered that "Plaintiff's counsel may disclose

to Plaintiff the identifying information regarding the CI that was previously disclosed to

Plaintiff's counsel on an 'attorney's eyes only' basis." (Id. at 4)  Judge Freeman further ordered

that the identifying information be treated as confidential, and that its use be confined to this

litigation. (Id.)  Judge Freeman stayed her order for 72 hours in order to allow Defendants an

opportunity to appeal her decision to this Court. (Id.)

On April 17, 2014, this Court granted Defendants' request to stay Judge

Freeman's April 15, 2014 order for 14 days to allow Defendants to appeal. (Dkt. No. 43)  On

April 29, 2014, Defendants submitted a declaration from the Informant. (Dkt. No. 52)  In the

declaration, the Informant states that he fears retaliation from Plaintiff and members of Plaintiff's

family if they discover his role in implicating Plaintiff. (Dkt. No. 52)  On April 30, 2014,

Defendants filed objections to Judge Freeman's April 15, 2014 order pursuant to Rule 72(a) of

the Federal Rules of Civil Procedure, arguing that Judge Freeman erred in ruling that Plaintiff's

counsel should be permitted to share the Informant's identity with Plaintiff. (Dkt. No. 47)

Plaintiff responded on May 12, 2014 (Dkt. No. 53), and Defendants replied on May 21, 2014.

(Dkt. No. 54)

On May 22, 2014, this Court held a conference to discuss Defendants' appeal of

Judge Freeman's order. (May 22, 2014 Conf. Tr. (Dkt. No. 56))  This Court noted that

preventing Plaintiff's counsel from revealing the Confidential Informant's identity would

effectively "block[] [] plaintiff from attending a deposition of the critical witness in his trial and

block[] him from attending at trial that critical witness'[s] testimony." (Id. at 28)  This Court

directed the parties "to submit any additional authority on the question of what standard of proof

is necessary before a court can take the[se] extraordinary measures" – i.e., "barring a plaintiff in an action such as this from confronting a critical witness in the case, whether at deposition or at trial." (Id. at 34)  The parties have made additional submissions addressing this issue.  (Dkt. Nos. 55, 58, 60)

**B.      The Informant's April 29, 2014 Declaration**

The Informant's April 29, 2014 declaration was not before Judge Freeman when she ruled – on April 15, 2014 – that the Informant's identity must be revealed to Plaintiff. "While the Court is generally not precluded from considering additional evidence not submitted by a party to a magistrate judge when reviewing a report and recommendation issued by such judge on a dispositive motion [pursuant to Rule 72(b) of the Federal Rules of Civil Procedure], there is nothing in Rule 72(a) of the Federal Rules of Civil Procedure which states that it may do so on a non-dispositive issue, such as that decided here." State Farm Mut. Auto. Ins. Co. v. CPT Medical Servs., P.C., 375 F. Supp. 2d 141, 158 (E.D.N.Y. 2005) (comparing Fed. R. Civ. P. 72(a) with Fed. R. Civ. P. 72(b)).  As a result, courts have held that "Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge." Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (citations omitted), appeal withdrawn (Nov. 7, 2013); see also Yusuke Banno v. City of New York, et al., No. 06 Civ. 2270 (RJS) (JCF) (S.D.N.Y.), Dkt. No. 67 at 7 n.3 ("The overwhelming weight of authority favors the view that, upon review of objections to a magistrate judge's non-dispositive ruling, a district court may not consider evidence not presented to the magistrate judge in the first instance.") (citations omitted).  Although a district court has the "inherent authority" to "consider further evidence in reviewing rulings on nondispositive matters," "such discretion should rarely be exercised" in this context, because

"the district court functionally operates as an appellate tribunal under Rule 72(a) . . . ." Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Cas. Co., Civil No. 3:12cv1641 (JBA), 2015 WL 164069, at *7 (D. Conn. Jan. 13, 2015) (citing United States v. Caro, 461 F. Supp. 2d 478, 480 (W.D. Va. 2006), aff'd, 597 F.3d 608 (4th Cir. 2010); Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 282 F.R.D. 76, 78 (S.D.N.Y. 2012)).

Defendants "have not cited any case, and the Court has not found one, in which Rule 72(a) objections are sustained based on evidence not presented to the magistrate judge." State Farm, 375 F. Supp. 2d at 158. Accordingly, because the Informant's declaration was not submitted to Judge Freeman before she issued her April 15, 2014 order, the declaration will not be considered by this Court.

Even if this Court were to consider the declaration, however, it does not significantly alter the quantum of proof concerning Defendants' argument that the Informant's safety will be at risk if his identity is revealed to Plaintiff. In the declaration, the Informant states that he is "afraid that Kenneth Creighton or his family will retaliate against [him] if they find out about [his] cooperation with the police or about [his] testimony"; that the "Creighton family knows where [his] family members live and how to find them"; and that he is afraid that his "family could also be harmed." (CI Decl. (Dkt. No. 52) ¶ 2) The Informant also states that nine years ago – when he provided information to the police regarding Plaintiff – he also provided information about other cases, and that he is "worried about others in the neighborhood figuring out that [he] cooperated with the police in those cases." (Id. ¶ 3) These statements are similar to those made in Defendants' April 4, 2014 letter to Judge Freeman, in which Defendants assert that the Informant "fears that he would be in physical danger of retaliation if the plaintiff knew his identity," and that "[t]he informant maintains a relationship with the plaintiff and with the

plaintiff's family and believes that the plaintiff has no idea that the informant testified in the Grand Jury or aided the police in their investigation." (Apr. 4, 2014 Def. Ltr. (Dkt. No. 36) at 1) Because of the conclusory and speculative nature of both the declaration and the April 4, 2014 letter, these submissions are entitled to little weight in this Court's determination of whether the Informant's identity should be disclosed to Plaintiff.

### C.   Defendants' Objections to Judge Freeman's April 15 2014 Order

Defendants object to Judge Freeman's April 15, 2014 Order "to the extent that it allow[s] the identity of the confidential informant in this matter to be disclosed to the plaintiff." (Def. Br. (Dkt. No. 47) at 4)

**DISCUSSION**

## I.   LEGAL STANDARDS

### A.   Standard of Review

"A magistrate judge's ruling on a non[-]dispositive matter, including a discovery dispute, may be set aside only if the district court determines the ruling to be 'clearly erroneous or contrary to law.'" Thai Lao Lignite (Thailand) Co., Ltd., 924 F. Supp. 2d at 511 (quoting 28 U.S.C. § 636(b)(1)(A)) (footnote omitted).  A magistrate judge's ruling is contrary to law if it "'fail[s] to apply or misapplies relevant statutes, case law, or rules of procedure,'" Moore v. Publicis Groupe SA, No. 11 Civ. 1279(ALC)(AJP), 2012 WL 1446534, at *1 (S.D.N.Y. Apr. 26, 2012) (quoting In re Comverse Tech., Inc. Sec. Litig., No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *2 (E.D.N.Y. Mar. 2, 2007)), and it is clearly erroneous where the district court is "'left with the definite and firm conviction that a mistake has been committed.'" Easley v. Cromartie, 532 U.S. 234, 242 (2001) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).  "This is a highly deferential standard, and '[t]he party seeking to

overturn a magistrate judge's decision thus carries a heavy burden.'" <u>Samad Bros., Inc. v.</u>
<u>Bokara Rug Co., Inc.</u>, No. 09 Civ. 5843(JFK), 2010 WL 5095356, at *1 (S.D.N.Y. Dec. 13,
2010) (quoting <u>U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.</u>, No. 04 Civ. 6189, 2007
WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007)).

**B.**     **The Government Informant Privilege**

"The government informant privilege, which arises most frequently in the
criminal context, but is also applicable to civil cases, allows the government to protect the
identity of persons who furnish information to it regarding violations of law." <u>Herman v.</u>
<u>Crescent Publ'g Grp., Inc.</u>, No. 00 Civ. 1665 SAS, 2000 WL 1371311, at *2 (S.D.N.Y. Sept. 21,
2000) (citing <u>Roviaro</u>, 353 U.S. at 59-61; <u>Brock v. On Shore Quality Control Specialists, Inc.</u>,
811 F.2d 282, 283 (5th Cir. 1987)). "'By withholding the identity of the informer, the
government profits in that the continued value of informants placed in strategic positions is
protected, and other persons are encouraged to cooperate in the administration of justice.'" <u>In re</u>
<u>United States</u>, 565 F.2d 19, 22 (2d Cir. 1977) (quoting <u>United States v. Tucker</u>, 380 F.2d 206,
213 (2d Cir. 1967)).

While "the strength of the privilege is greater in civil litigation than in criminal[,]
. . . [it] is not absolute in either." <u>Id.</u> at 22. "Where the identification of an informer or the
production of his communications is essential to a fair determination of the issues in the case, the
privilege cannot be invoked." <u>Id.</u> at 22-23 (citing <u>Roviaro</u>, 353 U.S. at 60-61; <u>United States v.</u>
<u>Alexander</u>, 495 F.2d 552, 553 (2d Cir. 1974)). "Whether the showing of need rises to the
requisite level is a discretionary determination which necessarily must be made on a case-by-
case basis." <u>Herman</u>, 2000 WL 1371311, at *2 (citing <u>Roviaro</u>, 353 U.S. at 61; <u>DiBlasio v. City</u>
<u>of New York</u>, 102 F.3d 654, 657 (2d Cir. 1996)); <u>see also</u> <u>Carbajal</u>, 2003 WL 23138447, at *2

("There is no fixed rule with respect to disclosure of an informant's identity.") (citing <u>Roviaro</u>, 353 U.S. at 62). "In applying the privilege, the courts must balance the public interest in protecting the flow of information against the public interest in a fair determination of the merits." <u>Carbajal</u>, 2003 WL 23138447, at *2 (citing <u>Roviaro</u>, 353 U.S. at 62).

"The burden of establishing the need for disclosure is upon the person who seeks it." <u>In re United States</u>, 565 F.2d at 23 (citation omitted). "The party seeking disclosure must establish that 'the information sought is both relevant and essential to the presentation of his case on the merits, . . . and that the need for disclosure outweighs the need for secrecy.'" <u>Carbajal</u>, 2003 WL 23138447, at *2 (quoting <u>Cullen v. Margiotta</u>, 811 F.2d 698, 715-16 (2d Cir. 1987), <u>overruled on other grounds by</u> <u>United States v. Lovelock</u>, 170 F.3d 339 (2d Cir. 1999)). "It is not enough that the identification might be of 'some assistance,' and disclosure should not be allowed 'simply to permit a fishing expedition' or to 'gratify the moving party's curiosity or vengeance,' but 'only after the trial court has made a determination that plaintiff's need for the information outweighs the defendant's claim of privilege.'" <u>Ayala v. City of New York</u>, No. 04 Civ. 1102(DC), 2004 WL 2914085, at *1 (Dec. 16, 2004) (quoting <u>In re United States</u>, 565 F.2d at 23).

### C.   Disclosure of an Informant's Identity Where The Probable Cause Determination Rests Solely on the Informant's Information

In the context of a false arrest claim, "probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).

For purposes of a malicious prosecution claim, the presumption of probable cause created by a grand jury indictment "may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003) (emphasis in original) (quoting Colon v. City of New York, 60 N.Y.2d 78, 83 (N.Y. 1983)). "Where there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have 'lied in order to secure an indictment,' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable cause created by the indictment may be overcome." Manganiello v. City of New York, 612 F.3d 149, 162 (2d Cir. 2010) (quoting Boyd v. City of New York, 336 F.3d 72, 77 (2d Cir. 2003)); see Boyd, 336 F.3d at 76 ("The presumption is rebuttable, and may be overcome by evidence establishing that the police witnesses 'have not made a complete and full statement of facts[,] . . . that they have misrepresented or falsified evidence[,] . . . or otherwise acted in bad faith.") (quoting Colon, 60 N.Y.2d at 82-83).

Where "the communications of an informer are claimed to establish probable cause [for a defendant's arrest and prosecution,] . . . the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication." Roviaro, 353 U.S. at 61; see also United States v. Manning, 448 F.2d 992, 995 n.1 (2d Cir. 1971) ("[D]isclosure of the informant's identity in doubtful cases of probable cause resting essentially on the informant's statements is necessary because it can be the only means by which the defense can test the fact that such information was actually received as the agent claims, the means of the informant's knowledge, and the reasons why the agent considered it to be reliable.") (citing United States v. Robinson, 325 F.2d 391, 393 (2d Cir.

1963)); <u>Carbajal</u>, 2003 WL 23138447, at *2 ("The need for disclosure has been held to be the strongest when the informant was 'a key witness or participant' in the alleged crime.") (quoting <u>Saa</u>, 859 F.2d at 1073; <u>People v. Goggins</u>, 34 N.Y.2d 163, 169-70 (N.Y. 1974)); <u>Goodloe v. City of New York</u>, No. 12 CV 3018(KAM)(VMS), 2015 WL 5719663, at *8 (E.D.N.Y. Sept. 28, 2015) ("'Disclosure is most appropriate when the informant is a key witness or when the informant is integral to the case.'") (quoting <u>Ayala</u>, 2004 WL 2914085, at *1).

## II.   ANALYSIS

### A.   <u>The Significance of the Informant's Identity to Plaintiff's Case</u>

Defendants contend that disclosure of the Informant's identity to Plaintiff is not essential to a fair determination of the issues in the case, because "Plaintiff is able to challenge the probable cause upon which his arrest and prosecution were based through depositions of the parties and the statements made by the informant." (Def. Br. (Dkt. No. 47) at 9-10) Judge Freeman concluded, however, that disclosure of the Informant's identity to Plaintiff is appropriate because "the CI was not just a 'key witness' to the crime allegedly perpetrated by Plaintiff, but rather the 'single eyewitness' upon whose statements Plaintiff was arrested and charged . . . ." (Dkt. No. 39 at 2-3)

It is undisputed that the only basis for Plaintiff's arrest was information supplied by the Informant. (<u>See</u> Nov. 25, 2013 Pltf. Ltr., Ex. A (Recommendation for Dismissal of Indictment) (Dkt. No. 20-1) at 2 ("[Plaintiff] was arrested and charged based upon the statements of a single eyewitness.")) Accordingly, Judge Freeman did not clearly err in finding that the Informant's role as the only source of information on which Plaintiff's arrest and prosecution were predicated "weighs in favor of disclosure." (<u>See</u> Dkt. No. 39 at 3)

**B.      Balancing Plaintiff's Need for Information
         Against Defendants' Claim of Privilege**

1.      **Plaintiff's Interest in Disclosure**

Defendants argue that Plaintiff has no need to know the Informant's identity,

because that information is already known to his attorneys.  (Def. Br. (Dkt. No. 47) at 5-8)

Defendants assert that "[t]his compromise strikes an appropriate balance between a complete

denial of the information to the plaintiff and allowing his attorneys access to the information to

pursue the case on his behalf."  (Def. Reply Br. (Dkt. No. 54) at 5-6) (citing Saa, 859 F.2d at

1074-75; Zhao v. City of New York, No. 07 Civ. 3636(LAK)(MHD), 2007 WL 4358470, at *4

(S.D.N.Y. Dec. 5, 2007)).  The "appropriate balance" between a plaintiff's need for information

and the government's interest in protecting informants depends on the facts of each case,

however.

Here, there is substantial evidence that – at the time officers arrested Plaintiff –

they had a statement from another eyewitness identifying someone other than Plaintiff as the

individual who supplied the gun to Dior Creighton.  (Feb. 21, 2014 Pltf. Ltr., Ex. F (Tareb

Affidavit) (Dkt. No. 31-5))  Accordingly, this is a "doubtful case[] of probable cause resting . . .

on the [I]nformant's statements . . . ."  Manning, 448 F.2d at 995 n.1.  As the Manning court

stated, "disclosure of the informant's identity in [such cases] . . . is necessary because it can be

the only means by which the defense can test the fact that such information was actually received

as the [officers] claim[], the means of the informant's knowledge, and the reasons why the

[officers] considered it to be reliable."  Id.

The Second Circuit's reasoning applies with particular force here, given that the

Informant has long "maintain[ed] a relationship with the plaintiff and with plaintiff's family."

(Apr. 4, 2014 Def. Ltr. (Dkt. No. 36) at 1)  In light of the ongoing personal relationship, it is

16

likely that Plaintiff has information regarding the Informant's reliability, credibility, and

reputation for veracity, including any motive the Informant may have to falsely implicate

Plaintiff.  Such insight may shed light on whether Defendants' reliance on the Informant was

reasonable, particularly given the contrary information received from another eyewitness.

Moreover, given that Plaintiff's arrest and prosecution were based entirely on statements that the

Informant made to law enforcement officials, this is not a mere "fishing expedition" justified

only by "speculation that the identification might possibly be of some assistance[,]" nor has

Plaintiff requested this information to "gratify [his] curiosity or vengeance[.]"  In re United

States, 565 F.2d at 23.

   The cases cited by Defendants – including Saa, Zhao, and White v. City of New

York, No. 09 Civ. 9901 (BSJ)(THK), 2010 WL 2899665 (S.D.N.Y. July 23, 2010) – are not to

the contrary.

   In Saa, for example, defendants argued that the district court had erred in refusing

to order the disclosure of a confidential informant's identity.  The Government had agreed to

make the informant available at trial, but objected to disclosing his identity prior to trial.  Saa,

859 F.2d at 1072.  The informant refused to be interviewed by the defendants prior to trial, and

defendants did not call him as a witness.  Id.  On appeal, the Second Circuit found that the

informant could have offered material testimony as to whether a defendant was present during

certain events, and that the refusal to disclose the informant's identity was error.  Id. at 1073-75.

The court noted that it was not sufficient that the Government had offered to make the informant

available to testify, because, without the ability to interview the informant, the defendant was

still "unable to . . . determine whether to call him as a witness at all."  Id. at 1074.  The court

further noted that – if the district court had found that the informant's safety would be

jeopardized if his identity were disclosed – "a middle course might have been considered, such as having the Government produce [the informant] for an in camera meeting with defense counsel and the court." Id. at 1074-75.

The "middle course" the court discussed, however, was only appropriate because the informant's identity itself was not a source of material information for the defendant. The only material information that the informant in Saa could provide was whether the defendant had been present at certain events, and defendant's attorney was capable of questioning the informant about that issue with or without the aid of the defendant.

The facts here, of course, are much different. Because of the long-term relationship between Plaintiff and the Informant, the Informant's identity is of crucial importance to Plaintiff's case in a way that was not true in Saa.

The facts in Zhao are likewise not comparable. In that case, although the court found an "'attorney's eyes only'" designation appropriate, no party had argued that the confidential informants' identities themselves (as opposed to the information that they had provided) were material to the case. 2007 WL 4358470 at *4.

Finally, in White, plaintiffs brought a Section 1983 claim alleging that police officers had submitted false and misleading statements in obtaining a search warrant. White, 2010 WL 2899665, at *1. The search warrant had been issued on the basis of a police officer's affidavit which set forth statements made by an informant, who was still working with the New York City Police Department ("NYPD"). Plaintiffs sought the informant's identity. Id. at *1-2. There was no evidence of any personal relationship between the informant and defendants, however. Indeed, although the informant had identified the plaintiffs' house as a place where drug transactions had occurred, he had identified a 20 to 30 year old male, and not any of the

plaintiffs, as the seller. Id. at *3. The court refused to order disclosure of the informant's identity, stating that the informant's identity was not "critical" to the plaintiffs' prosecution of their claim. Id. at *2-3.

Here, of course, there is evidence of a long-term relationship between the Informant and Plaintiff, and the identity of the Informant is "critical" to Plaintiffs' claims. Plaintiff is likely to possess information concerning the Informant's reliability and reputation for veracity, and may have insight as to whether it was reasonable for officers to reject the second eyewitness's account in favor of the Informant's statements.

The Court concludes that – in light of the circumstances discussed above – Plaintiff has demonstrated a compelling interest in learning the identity of the Informant.

**2.      Defendants' Interest in Non-Disclosure**

"The possibility that reprisals of some sort may occur [against a confidential informant whose identity is revealed] constitutes . . . a strong deterrent to the wholehearted cooperation of the citizenry which is a requisite of effective law enforcement." In re United States, 565 F.2d at 22. Even if the informant is no longer working with the police, the disclosure of his identity and the attendant risks of disclosure may discourage others from cooperating with law enforcement in the future. See id. ("'By withholding the identity of the informer, the government profits in that the continued value of informants placed in strategic positions is protected, and other persons are encouraged to cooperate in the administration of justice.'") (quoting Tucker, 380 F.2d at 213). However, "[w]hile maintaining the confidentiality of an [informant's] identity is an important law enforcement and public interest," the privilege may not be maintained merely by "painting a picture of possible harms with a broad brush . . . ." Adams,

993 F. Supp. 2d at 313.  The government must "offer[] concrete details" demonstrating a risk of harm.  Id.

Defendants state that the Informant has "strong objections to [his] identity being shared with the plaintiff" because he "fears . . . retaliation from the plaintiff and members of his family if they discover that the informant cooperated with the police and gave testimony leading to plaintiff's indictment."  (Def. Br. (Dkt. No. 47) at 5)  Defendants have not offered the necessary "concrete details" to raise the Informant's concerns above the level of speculation, however.  In cases in which an informant's identity has been protected, there has generally been objective evidence supporting the alleged risk of harm.  See, e.g., Goodloe, 2015 WL 5719663, at *5, 9 (prosecutor submitted affidavit stating that disclosure of the confidential informant's identity would put the informant's safety at risk because, inter alia, others might face prosecution in the future based on the informant's statements); cf. Woods v. Kuhlmann, 977 F.2d 74, 74-75, 78 (upholding denial of habeas petition where trial court granted partial closure of the courtroom; witness reported that one of petitioner's relatives had "visited her at her house," and other relatives told the witness that "she had better not testify, [and that] she had better not go to court").

Here, there is no evidence that Plaintiff or his family have issued any threats to anyone concerning the charges against Plaintiff or his brother.  Moreover, there is no evidence that Plaintiff has been linked to serious acts of violence.  Although Plaintiff has three ten-year-old convictions for attempted robbery, petit larceny, and harassment, his sentences for these offenses were, respectively, five years' probation, time served, and a conditional discharge. (Nov. 25, 2013 Pltf. Ltr., Ex. A (Recommendation for Dismissal of Indictment) (Dkt. No. 20-1) at 2)  Given the sentences imposed, it does not appear that these offenses involved significant

violence.  Furthermore, Plaintiff has submitted an affidavit stating that he has no intention of

retaliating against the Informant, and that his sole reason for requesting disclosure of the

Informant's identity is to assist his attorneys in the litigation of his case.  (See Feb. 21, 2014 Pltf.

Ltr., Ex. G (Pltf. Affidavit) (Dkt. No. 31-6) at 3-4)  Plaintiff also states that he "will not disclose

to anyone that the confidential informant is a confidential informant. . . ."  (Id. at 4)

       Disclosure of the Informant's identity to Plaintiff would not harm any ongoing

NYPD investigations.  The Informant is not involved in any ongoing investigations and his status

as an informant with the NYPD is "inactive."  (Feb. 21, 2014 Pltf. Ltr. (Dkt. No. 31) at 2 (stating

that the "records produced by defendants reveal that [the Informant] is 'inactive'")).  Indeed, the

Informant is so divorced from his earlier activities with the NYPD that Defendants were not able

to locate him during the prosecution of Plaintiff's criminal case, and moved to dismiss the

charges against Plaintiff as a result.  (See Nov. 25, 2013 Pltf. Ltr., Ex. A (Recommendation for

Dismissal of Indictment) (Dkt. No. 20-1) at 2)  Defendants were likewise not able to locate the

Informant in the early stages of the instant litigation.  (See Mar. 11, 2014 Def. Ltr. (Dkt. No. 33)

at 1)  Although "[t]he fact that an investigation is closed does not automatically mean that the

party seeking disclosure is entitled to access otherwise privileged items from a criminal

investigation," the "status of an investigation is an important factor when determining whether

disclosure of facts pertinent to that investigation could impede it."  Miller v. Mehltretter, 478 F.

Supp. 2d 415, 426 (W.D.N.Y. 2007) (citation omitted).

       There are also no special circumstances in this case that would require this Court

to ascribe additional weight to Defendants' interest in nondisclosure.  Revealing the Informant's

identity to Plaintiff would not require Defendants to reveal information about the nature of

governmental operations or the manner in which those operations are conducted.  See In re City

of New York, 607 F.3d 923, 944 (2d Cir. 2010) (holding that the law enforcement privilege prevented disclosure of NYPD Field Reports containing "detailed information about the undercover operations of the NYPD" which, if revealed, would "hinder the NYPD's ability to conduct future undercover investigations").

The analysis set forth in Goodloe v. City of New York is instructive here.  In Goodloe, plaintiff brought claims for false imprisonment and malicious prosecution based on the government's reliance on allegedly false statements made by a confidential informant.  In determining that the informant's identity should not be disclosed, the court cited the following factors:  (1) the confidential informant had assisted in a law enforcement operation that lasted for approximately eighteen months and resulted in an indictment charging thirty-seven individuals with drug conspiracy; (2) the confidential informant's testimony had been used to prosecute and convict "many" other defendants who might be inclined to retaliate if his or her identity became public; (3) the confidential informant had suffered a cognitive impairment that "ma[d]e[] it less likely that the CI could take actions to protect him- or herself, for example, by moving, by changing his or her telephone number, or taking other protective actions"; and (4) Defendants had submitted an affidavit from a law enforcement officer demonstrating that the revelation of the confidential informant's identity would have a chilling effect on the willingness of others to serve as a confidential informant.  Goodloe, 2015 WL 5719663, at *14-16.

None of the factors cited in Goodloe is present here.  The Informant's statements regarding Plaintiff do not involve any large-scale conspiracy; they concern only Plaintiff and his brother, who is serving a fifteen-year sentence.   Moreover, the Informant lives outside of New York State and appears fully capable of taking any action necessary to ensure his security. Defendants have not submitted any affidavits – other than the one from the Informant – attesting

to the effect of disclosing the Informant's identity.  Finally, the Informant's information was the

sole basis for Plaintiff's arrest, and directly contradicted another eyewitness's account.  And

because of the lengthy relationship between the Informant and Plaintiff, it is likely that Plaintiff

possesses information concerning the Informant that may be vitally important to the proper

conduct of his case.

       Balancing (1) the public interest in merits adjudication and transparency and

Plaintiff's strong interest in participating in his own lawsuit against (2) Defendant's interest in

non-disclosure, this Court concludes that – under the unique circumstances of this case – "the

need for disclosure outweighs the need for secrecy."[2]  Cullen, 811 F.2d at 715.

       \*          \*          \*          \*

       "A magistrate judge's ruling on a nondispositive matter . . . may be set aside only

if the district court determines the ruling to be 'clearly erroneous to contrary law,'" Thai Lao

Lignite, 924 F. Supp. 2d at 511 (quoting 28 U.S.C. § 636(b)(1)(A)).  This Court finds that Judge

---

[2]  It is worth noting that a contrary ruling would require this Court to preclude Plaintiff from attending the Informant's deposition or being present at trial when the Informant testifies.  In the absence of evidence demonstrating a risk of harm, and in a case where (1) an informant's statements provide the sole basis for an assertion of probable cause; and (2) disclosure of the informant's identity is necessary to proper advocacy by plaintiff's counsel, such a result would be improper.  Such an approach would also violate the "core First Amendment principle of open trials and transparency of the judiciary" and the accompanying "rich tradition of openness and transparency in the conduct of all judicial proceedings." Adams v. City of New York, 993 F. Supp. 2d 306, 317 (E.D.N.Y. 2014) (emphasis in original).  Finally, the public interest in transparency weighs in favor of disclosing an informant's identity where, as here, "'a lawsuit involves a matter of public concern such as civil rights . . . .'" Goodloe, 2015 WL 5719663, at \*14 (quoting Floyd v. City of New York, 739 F. Supp. 2d 376, 381 (S.D.N.Y. 2010)).  "'The public has a profoundly important interest in giving force to the federal civil rights law, and in reasonable transparency from law-enforcement agencies.' . . . Thus, there is no question that Plaintiff's interest in the privileged CI information is also of great weight in this case [because] the privileged CI information is important to Plaintiff's allegation that Defendants lacked probable cause for the [criminal possession and criminal facilitation] charge[s] . . . ." Id. (quoting Floyd, 739 F. Supp. 2d at 382).

Freeman did not "fail[] to apply or misapply[y] relevant statutes, case law, or rules of procedure" in ordering Defendants to disclose the Informant's identity to Plaintiff.  See Moore, 2012 WL 1446534, at *1 (quotation marks and citation omitted).

**CONCLUSION**

For the reasons stated above, Defendants' objection is denied and Judge Freeman's April 15, 2014 order is affirmed.  Plaintiff's counsel may disclose to Plaintiff the identifying information regarding the Informant that was previously disclosed to Plaintiff's counsel on an "attorney's eyes only" basis.  The identifying information shall be kept confidential, shall not be disclosed to others, and shall be used only for purposes of this litigation.

Dated:  New York, New York
        December 9, 2015

                                            SO ORDERED.


                                            _____
                                            Paul G. Gardephe
                                            United States District Judge