```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/23/16
```

**RUBERT & GROSS P.C.**
ATTORNEYS AT LAW
150 Broadway, Suite 712
New York, NY 10038
(212) 608-3103

RICHARD A. GROSS
SOLEDAD RUBERT
ERNESTINE MINGS

May 23, 2016

Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

Re: Creighton v. City of New York, et al.
12 CV 07454 (PGG)

**MEMO ENDORSED**

The application to brief spoliation prior to summary judgment briefing is denied. Any expert designation will be made by June 6, 2016.

SO ORDERED:

_____
Paul G. Gardephe, U.S.D.J.

May 23, 2016

Honorable Judge Gardephe:

    We represent plaintiff, Kenneth Creighton, in the instant matter. This letter is submitted, as directed by the Court during the May 19, 2016 conference, on the issue of plaintiff's position that he is entitled to relief for defendants' spoliation of evidence prior to the filing of any dispositive motions.

    During the conference held on May 19, 2016, the Court requested that plaintiff supply authority for the proposition that the issue of spoliation should be addressed prior to the submission of dispositive motions.

    In *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93 (2nd Cir., 2001) the Court of Appeals for the Second Circuit, approving a negative inference charge with respect to lost or destroyed documents, held that where a plaintiff had produced circumstantial evidence to support the inference that the destroyed evidence may have contained documents supporting (or potentially proving) his claim, the possibility that a jury would choose to draw such an inference, combined with plaintiff's circumstantial evidence, was sufficient to entitle plaintiff to a jury trial. The Court in *Byrnie* concluded that a party seeking an adverse inference may rely on circumstantial evidence to suggest the contents of destroyed evidence. It then becomes a matter for the jury to decide, based on the strength of the evidence presented, whether the documents likely had such salutary content.

    In *Kronish v. U.S.*, 150 F.3d 112 (2nd Cir. 1998), the Court, reversing the denial of a negative inference sanction for spoliation of evidence cautioned that holding the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence would subvert the prophylactic and punitive purposes of the adverse inference and would allow parties who have destroyed evidence to profit from that destruction. The Court concluded that the level of proof that will suffice to support an inference in favor of the innocent party on a particular issue must be less than the amount that would suffice to survive summary judgment on that issue. Otherwise, innocent parties meant to benefit from the adverse inference against offending parties would receive no benefit at all, having been deprived of evidence that may have been crucial to making

their case and yet being held to precisely the same standard of proof before they may present their case to a jury. *Id.*

Because in this case, as will be discussed below, it is undisputed that "lots of DD5s" were lost or destroyed during the criminal prosecution; that the original surveillance videotape was also lost or destroyed and that it is beyond dispute that the lost documents may have contained information concerning the police investigation that would have supported plaintiff's claims, the possibility that a jury would choose such an inference entitles plaintiff to a jury trial and precludes the granting of summary judgment. For that reason, plaintiff submits that the issue of the spoliation of documents should be decided at this point, prior to the submission of any dispositive motions. Essentially, the sanction of a negative inference would create question of fact with respect to many of plaintiff's claims and resolve summary judgment motions by defendants in plaintiff's favor.

**<u>Factual basis for plaintiff's motion for relief for spoliation of evidence</u>**

Plaintiff, Kenneth Creighton was arrested on January 10, 2007 for allegedly having passed a gun to his brother, Dior Creighton, which gun was used in a homicide. Plaintiff remained incarcerated until all charges against him were dismissed on January 19, 2012. On February 3, 2012, within two weeks of the charges being dismissed against him, Kenneth Creighton served a Notice of Claim naming the City of New York and the individual defendants as potential defendants and putting them on notice that he intended to bring the instant lawsuit. *See Notice of Claim.*[1]

Fawaz Terab (hereinafter "Terab"), the owner of the bodega where a gun was allegedly passed to Dior Creighton, witnessed the events prior to the shooting. On December 31, 2006, merely five days following the shooting, Terab identified one, Kijafa Spruell (hereinafter "Spruell"), as the person he observed passing the gun to Dior on December 26, 2006. Terab also identified Spruell, from a photo array, as the person who passed the gun. He also gave defendant, Godino, a signed statement identifying Spruell as the individual who had passed the gun to Dior.

Despite Terab's identification and eyewitness statement that exculpated plaintiff, no attempts were ever made by the police to investigate or follow up on Spruell as the person responsible for the crime of which plaintiff was accused.

The Police Department's own records, produced during discovery, reveal the real reason and the motivating factor for arresting Kenneth despite Terab's unequivocal identification of Spruell as the perpetrator. As a DD5 prepared by the police on January 10, 2007 reveals, plaintiff was arrested in order to pressure him into informing the police of his brother's whereabouts. *See DD5 dated January 10, 2007.* After plaintiff's brother pled guilty to the shooting, all charges against plaintiff were dismissed.

During discovery, it came to light that defendants claim that a confidential informant, who they concede was the sole witness who allegedly established probable cause to arrest and prosecute plaintiff and who had never been mentioned, let alone exchanged during the criminal prosecution, told the police that Kenneth Creighton was the person who passed the gun to Dior. Significantly,

---

[1] The exhibits referred to in this letter will be hand delivered to the Court as they contain confidential information.

no DD5 has ever been produced with respect to the interview of this witness that allegedly implicated plaintiff as the person passing the gun. Defendants also now claim that at some unknown point, Terab recanted his identification of Spruell as the person who passed the gun. Records of any such recantation, however, were allegedly never made by the police and none has been produced. *Godino deposition, p. 182-187, 192, 199.* Terab has been deposed and denies ever recanting his identification of Spruell as the person who passed the gun. Spruell has also been deposed and has admitted that he was the person who passed the gun to Dior Creighton.

Defendant, Godino, the lead detective in the criminal investigation, testified at his deposition that Complaint Information Reports, commonly referred to as DD5s, outlining the various investigative steps taken during the investigation of the crimes were maintained in folders identified by the victims' names. These DD5s contain details of interviews with witnesses, computer checks, identification procedures, requests for subpoenas and other documentation of steps taken by the investigators. Any significant steps taken during the investigation were to be recorded and placed in the corresponding folders. The DD5s are supposed to be consecutively numbered in the order in which they are created to ensure all DD5s are kept in their respective files and it can be readily ascertained if there are any missing. *Godino deposition transcript at pp. 38-40.* In this case, there were two folders; one for each victim. The two folders were then put into one larger folder. The DD5's in this case were not numbered. *Godino's deposition, pp. 35-40, 99-100.*

According to Godino's testimony, the complete original NYPD file was initially copied and the copies were provided to the District Attorney. Later, the original police file was requisitioned by defendant, ADA Birns, and transferred to the District Attorney's Office. *Godino deposition, pp. 43-44.* The file remained with the District Attorney's Office until Godino retrieved it after the instant lawsuit was commenced. *Godino deposition, pp. 44-46.*

Godino testified that when he was called into the DA's office to prepare the criminal case for trial, he reviewed the file and noted at that time that "a lot of DD5s" and an identification photo that had been in the file were missing from the file. *Godino deposition, p. 96.* Godino does not know if, when he transferred the original file to the DA's office, the missing DD5s and identification photo were in the folder at that time. He was unequivocal, however, that there were more DD5s prepared than the ones that are in the folders. The file was eventually transferred to the Law Department and copies were turned over to plaintiff in discovery. Godino testified that the file that is currently in existence and has been produced in this lawsuit, does not contain all the documentation that was originally in the file with regard to the police investigation into this matter. *Godino deposition, pp. 43-44, 95-96.* Significantly, although the DD5s were prepared in triplicate, the missing DD5s have never been produced. *Godino deposition, p. 97-102.* Case folders are kept by the NYPD even after a case is closed. *Godino deposition, p.p. 105-106.*

Additionally, Godino, testified that a Detective O'Shea retrieved a surveillance videotape from the bodega where the gun was passed and he and O'Shea viewed the videotape together. *Godino deposition, pp. 120-121.* Godino reviewed the videotape on four or five occasions. *Godino deposition, p. 104.* During his deposition, however, Godino testified that the videotape that was taken from the bodega has been lost or destroyed and that the DVD copy of the video produced during discovery is an edited version of the original. *Godino deposition, p. 337-339.*

During Godino's deposition, defense counsel admitted on the record that the video produced during discovery was an edited version of the original. Defendants' attorney further stated, on the record, that because plaintiff's counsel demanded the original tape, he has made inquiries in order to obtain the original tape but has been unsuccessful. *See Godino deposition, p. 340-341.* [2]

The courts in this Circuit have held that even where no explicit discovery order has been issued, the court has the inherent power to preserve the integrity of judicial proceedings by, among other things, imposing sanctions for spoliation. *See id.; Kronisch v. United States*, 150 F.3d 122, 126–27 (2d Cir.1998); *Sterbenz v. Attina*, 205 F.Supp.2d 65, 73–74 (E.D.N.Y.2002); *Barsoum v. N.Y.C. Hous. Auth.*, 202 F.R.D. 396, 399 (S.D.N.Y.2001). Any such sanction "should be 'molded to serve the prophylactic, punitive and remedial rationales underlying the spoliation doctrine, which is predicated upon the rationale that by destroying evidence, one party has deprived the other of the ability to prosecute or defend an action." *Sterbenz, supra* (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 779.

Godino's testimony established that crucial evidence in the form of DD5s containing details of the criminal investigation and the original videotape from which the witness allegedly identified Ken Creighton as the person who passed the gun have been lost. The loss of this crucial evidence is essential to the presentation of plaintiff's case as well as his ability to oppose summary judgment and as such, plaintiff respectfully submits that defendants should be sanctioned for spoliation of evidence. At the very least, the Court should rule as a matter of law that the loss of this crucial evidence entitles plaintiff to a negative inference against defendants that the destroyed evidence might or would have been favorable to plaintiff's position. This inference is predicated upon the common sense observation that when a party destroys evidence that is relevant to a claim or defense in a case, the party did so out of the well-founded fear that the contents would harm him. *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir.1995)

Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation". *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999). The spoliation of evidence germane "to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998).

The Second Circuit has defined spoliation as "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell, Bd.*

---

[2] Despite defense counsel's statement on the record that the video produced is not the original, during the May 19, 2016 conference before the Court counsel indicated that he believes the video he has in his file is the original video notwithstanding Godino's testimony that it is not. The testing plaintiff has done on the copy of the video that has been provided during discovery reveals it to be approximately a third-generation copy. In the event the defendants insist that the video that has been exchanged is the original, despite Godino's testimony to the contrary, plaintiff requests an immediate opportunity to have the video examined by an expert.

*of Educ.*, 243 F.3d 93, 107 (2d Cir.2001). A party has an obligation to preserve evidence when the party is on notice "that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Kronisch v. United States*, 150 F.3d at 126 (2nd Cir., 1988).

Here, Godino's testimony established that crucial DD5s were lost or destroyed while plaintiff's prosecution was ongoing. The DD5s concededly contained the information concerning what transpired during the investigation, which could potentially have established plaintiff's innocence such as, for example, a DD5 indicating that Terab never recanted his testimony, as defendants now claim without any documentary proof. Significantly, the documents were no longer in the case file when Godino was conferring with the ADA in preparation for the criminal trial. Thus, the documents were lost or destroyed while litigation in which they were critical was ongoing. Additionally, the original surveillance videotape was also lost or destroyed during the prosecution despite the fact that it could potentially and conclusively show that plaintiff was not the person who passed the gun.

A party seeking sanctions for spoliation of evidence must establish that: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Yu Chen v. LW Restaurant, Inc.*, Slip Copy, 2011 WL 3420433 (E.D.N.Y., 2011). The "culpable state of mind" requirement is satisfied by a showing of ordinary negligence. *See, Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002); In re NTL, Inc. Securities Litigation, 244 F.R.D. 17968 Fed.R.Serv.3d 1145 (S.D.N.Y. 2007). This element does not require "a showing that the spoliator acted in bad faith." *Pastorello v. City of New York*, 2003 WL 1740606, 10 (S.D.N.Y. 2003).

To warrant sanctions for spoliation, such as a negative inference, the anticipated litigation need not be the same litigation in which the spoliation sanctions are sought. The Police Department and its officers, as well as the District Attorney, have an obligation to preserve evidence obtained during the course of their criminal investigations in anticipation of a criminal trial and their failure to do so will justify the imposition of spoliation sanctions in a subsequent civil lawsuit which alleges police misconduct. *See Manganiello v. City of New York*, 612 F.3d 149, 166 (2d Cir. 2010).

Here, the police and the District Attorney had a duty to maintain the complete police investigation file for the ongoing criminal prosecution. They failed to do so. Not only did defendants know of the importance of maintaining the records and the original videotape in connection with the ongoing prosecution but within two weeks of dismissal of the criminal case against plaintiff, he filed a Notice of Claim that put defendants on notice of future litigation and the need to maintain the integrity of the records and the physical evidence.

Godino's testimony concerning what could reasonably be found in the missing DD5s as well as his unequivocal testimony that the surveillance DVD in its present form does not comport with the original images in the videotape retrieved from the bodega provide more than sufficient basis to conclude that the destroyed evidence may have contained documents supporting (or potentially proving) plaintiff's claim.

Finally, during the conference of May 19, 2016, the issue of exchange of experts was not covered. Upon completion of all depositions, plaintiffs request time to identify any experts he may wish to call during trial.

For the foregoing reasons, plaintiff respectfully prays that the Court allow him to formally move for sanctions against defendants for spoliation of evidence and that deadlines for dispositive motions be postponed until a ruling on the spoliation motion has been issued.

Respectfully submitted,

Richard Gross

cc: Khavin Thadani (via ECF)