

THE CITY OF NEW YORK

# LAW DEPARTMENT

100 CHURCH STREET
NEW YORK, NY 10007

**ZACHARY W. CARTER**
*Corporation Counsel*

**KAVIN THADANI**
*Senior Counsel*
Phone: (212) 356-2351
Fax: (212) 356-3509
kthadani@law.nyc.gov

June 2, 2016

<u>**VIA ECF**</u>
Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square
New York, NY  10007

Re:  <u>*Kenneth Creighton v. City of New York, et al.*</u>, 1:12-cv-07454-PGG-DCF

Your Honor:

      I am a Senior Counsel in the Office of Zachary W. Carter, Corporation Counsel of the City of New York, and the attorney representing defendants in the above-referenced matter.  I am writing in response to plaintiff's letter dated May 25, 2016 (and filed on May 26, 2016) and to describe the legal and factual basis for defendants' proposed summary judgment motion.

      As an initial matter, based upon his May 25, 2016 letter, as well as the parties' joint letter dated December 23, 2015, plaintiff has voluntarily withdrawn the following claims:  (1) federal false arrest, (2) unreasonable continued prosecution, (3) unduly suggestive identification procedures, (4) *Brady* violations,[1] (5) municipal liability / *Monell*, (6) negligence, (7) intentional infliction of emotional distress, and (8) failure to investigate.  Plaintiff has also voluntarily withdrawn all claims against defendant Robert Johnson.

---

[1]    To the extent that plaintiff still argues that "it is indisputable that the exculpatory evidence was <u>never</u> disclosed," defendants disagree and note that plaintiff has failed, in both his complaint and in his letter, to specify the allegedly exculpatory evidence that was purportedly never disclosed.

Therefore, plaintiff's remaining claims are as follows:  (1) state law false arrest, (2) malicious prosecution, (3) malicious abuse of process, (4) conspiracy, (5) denial of procedural and substantive due process, (6) unreasonably prolonged detention, and (7) failure to intervene.

Plaintiff's claims arise out of his arrest on January 10, 2007 and subsequent prosecution in connection with a shooting that occurred outside of a bodega in the Bronx on December 26, 2006 in which one male was shot in the head and a female was shot in the leg.  The female was treated at the hospital and released but the male died one week later.

During the course of the police investigation, defendant Detective Glenn Godino spoke to an eyewitness, who was also an active confidential informant at the time, who stated that, just prior to the shooting, he saw plaintiff, with whom he had a personal and familial relationship, hand a firearm to plaintiff's brother, Dior Creighton, inside the bodega.[2]  Dior Creighton then proceeded to use that very same firearm to commit the shooting (Dior Creighton has pled guilty to homicide and is currently serving a fourteen year sentence).  Defendant Assistant District Attorney Bruce Birns, who was primarily responsible for prosecuting the criminal cases against both plaintiff and Dior Creighton, met with the eyewitness, in order to assess his credibility, prior to authorizing the arrest of plaintiff and his brother.

Plaintiff was thereafter arrested and charged with Criminal Facilitation in the Second Degree and Criminal Possession of a Weapon in the Second Degree.  On January 16, 2007, at plaintiff's grand jury proceeding, the eyewitness testified consistently with what he had told defendants Godino and Birns – specifically, that he saw plaintiff pass a firearm to Dior Creighton inside of a bodega on December 26, 2006.  On January 23, 2007, plaintiff was indicted by the grand jury.  Plaintiff remained incarcerated from the time of his arrest until January 19, 2012.  Plaintiff was initially unable to post the $10,000 bail that was set and then a probation hold took effect, which prevented plaintiff from subsequently posting bail.[3,4]   On January 18, 2012, due to an inability to locate a necessary witness, the aforementioned eyewitness, the Bronx District Attorney's Office dismissed the charges against plaintiff and plaintiff was subsequently released.

Defendants respectfully submit that both plaintiff's arrest and subsequent prosecution was supported by probable cause and that defendants are entitled to summary judgment because all of plaintiff's remaining claims fail as a matter of law.

---

[2]   Detective Godino documented his conversation with the eyewitness in his spiral notebook, which has been produced during discovery.

[3]   On November 21, 2005, plaintiff was sentenced to five years probation as a result of a conviction for Attempted Robbery in the Second Degree.

[4]   Therefore, plaintiff's contention that he was incarcerated because he could not make bail is false.

### 1.  False Arrest

It is well settled that information provided by an identified citizen accusing another individual of a specific crime is legally sufficient to provide the police with probable cause to arrest.  *See, e.g., Kramer v. New York*, 173 A.D.2d 155, 156 (1st Dept. 1991); *see also, e.g., Lederman v. Benepe*, No. 12 Civ. 6028, 2014 U.S. Dist. LEXIS 44057, at *34-35 (S.D.N.Y. Mar. 28, 2014).

"[It does not] matter that an investigation might have cast doubt upon the basis for the arrest . . . ." *Omar v. City of New York*, No. 13 Civ. 8264 (NRB), 2015 U.S. Dist. LEXIS 4470, at *8 (S.D.N.Y. Jan. 5, 2015) (internal citations omitted).  "Once a police officer has a reasonable basis to believe there is probable cause to arrest, the officer is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)).  "Nor does it matter that an investigation might have cast doubt upon the basis for the arrest." *Id.* at 396.  Quite simply, "[t]he police are not obligated to pursue every lead that may yield evidence beneficial to the accused, even though they had knowledge of the lead and the capacity to investigate it." *Gisondi v. Harrison*, 72 N.Y.2d 280, 285 (N.Y. 1988).

Even if ultimately mistaken, the police defendants are entitled to qualified immunity because it was reasonable for them to arrest plaintiff based on the allegations of the eyewitness. *See, e.g., Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("A police officer is entitled to qualified immunity shielding him or her from a claim for damages for false arrest where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest.").

In addition, to the extent that plaintiff's false arrest claims are alleged against the District Attorney defendants, those defendants would be entitled to absolute immunity.  *See, e.g., Lundt v. City of New York*, 2013 U.S. Dist. LEXIS 134958, at *15 (S.D.N.Y. Sept. 20, 2013).  That the District Attorney defendants may have authorized plaintiff's arrest does not have any bearing on their entitlement to absolute immunity here because "[f]or authorizing an arrest indisputably based on probable cause, prosecutors are entitled to absolute immunity." *Swinton v. City of New York*, 785 F. Supp. 2d 3, 9 (E.D.N.Y. 2011).  This is not a case in which police officers sought legal advice from the District Attorney's Office regarding whether there was probable cause to arrest plaintiff.  Rather, probable cause was first established on the basis of information from an eyewitness and then, in accordance with a borough-wide practice, the District Attorney's Office was called upon to formally authorize plaintiff's arrest.[5]

To the extent that plaintiff contends that he is entitled to judgment as a matter of law with respect to his false arrest claim, such argument is wholly without merit and demonstrates a

---

[5]   In any event, at a bare minimum, the District Attorney defendants are entitled to qualified immunity.

fundamental misunderstanding of the law.  Aside from the fact that, throughout his letter, plaintiff grossly misrepresents the substance of the deposition testimony of the various witnesses (and therefore plaintiff relies heavily on disputed facts, many of which are immaterial in any event), plaintiff's arguments appear to rest upon whether two of the named defendants in this case, Ed Talty and Bruce Birns, personally believe plaintiff's arrest should have been authorized and/or personally believe there was probable cause to arrest as if they, and not Your Honor, were the final arbiter in this respect.[6]

Plaintiff's contentions regarding defendant Detective Dean Roberts are not only factually incorrect, but irrelevant.  It is undisputed that defendant Roberts had minimal involvement in the criminal investigation and his arrest of plaintiff was merely a formality, as defendant Godino was the lead detective in the case.

Even if there was probable cause to arrest another suspect, that would not vitiate probable cause to arrest plaintiff.  Indeed, "when an arresting officer is faced with competing accounts from different eyewitnesses, an officer is entitled to make an arrest based on believing the testimony of one side or the other."  *Pawlicki v. City of Ithaca*, 993 F. Supp. 140, 145 (N.D.N.Y. 1998).  Thus, "[t]he Second Circuit has held consistently that conflicting accounts of a crime do not vitiate the probable cause established by an eyewitness identification . . . of a crime."  *Crews v. County of Nassau*, 996 F. Supp. 2d 186, 205 (E.D.N.Y. 2014) (collecting cases).

Although the alleged conflicting evidence that plaintiff so heavily relies upon may be relevant to the issue of whether guilt beyond a reasonable doubt could have been proved at a criminal trial, it has no bearing on whether there was sufficient evidence to show probable cause to believe that plaintiff committed the charged crimes.  *See, e.g., Gisondi*, 72 N.Y.2d at 285.

Accordingly, defendants are entitled to summary judgment with respect to plaintiff's false arrest claim because there was probable cause to arrest plaintiff on the basis of the eyewitness's identification of plaintiff as the one who passed a gun to Dior Creighton in the bodega.

## 2. Malicious Prosecution

"Because lack of probable cause is an element of a malicious prosecution claim, the existence of probable cause is a complete defense to a claim of malicious prosecution." *Stansbury v. Wertman*, 721 F.3d 84, 94-95 (2d Cir. 2013).  "[O]nce probable cause has been established, it is impossible for plaintiff to prevail on a malicious prosecution claim as a matter of law."  *Id*. at 95.

---

[6]   Notably, both defendant Talty and Birns testified that there was probable cause to arrest plaintiff.  In addition, all testimony suggesting that either defendant would not have authorized plaintiff's arrest is based upon incomplete hypotheticals, not the complete facts in this case.

Because there was probable cause to arrest and prosecute plaintiff on the basis of the information obtained from the eyewitness, plaintiff's malicious prosecution claim fails as a matter of law.

In addition, there is no dispute that plaintiff was arraigned and thereafter indicted on January 23, 2007. Therefore, the "indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (emphasis in original) (citation omitted). Here, plaintiff cannot rebut this presumption.

"The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the Grand Jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acts judicially." *Rothstein*, 373 F.3d at 284 (citation omitted). The pleadings contain no allegation of misconduct in the grand jury proceedings. Thus, plaintiff fails to state a claim for relief under *Ashcroft v. Iqbal*. 556 U.S. 662, 678 (2009).

Plaintiff has alleged in his letter and during the course of this litigation that the eyewitness testified falsely in the grand jury in that he utilized an alias. Notwithstanding, the malicious prosecution claim still fails. A witness's mere use of an alias would not warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acted judicially—and in fact, there is no evidence to suggest that it had any bearing on the Grand Jury's actions. Regardless, and even if plaintiff alleged additional perjurious statements beyond the eyewitness's use of an alias, false testimony before the Grand Jury cannot support a § 1983 claim. *See, e.g., Rehberg v. Paulk*, 132 S. Ct. 1497, 1506-07 (2012).[7]

Moreover, the eyewitness is not a defendant in this case, and his use of an alias cannot be attributed to the police officer defendants. Plaintiff therefore cannot establish proximate cause as to any of the defendants on his malicious prosecution claim. *See, e.g., Jouthe v. City of New York*, 05 Civ. 1374 (NGG), 2009 U.S. Dist. LEXIS 18163, at *35 (E.D.N.Y. Mar. 10, 2009) (citation omitted) ("Once a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution.'"); *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999), *cert. denied*, 528 U.S. 964 (1999) (chain of causation is broken by the intervening exercise of independent judgment, including by a prosecutor). As the grand jury minutes make clear, no police officer defendant testified and no police paperwork was introduced, yet the grand jury returned a true bill. Similarly, no malicious prosecution claim can stand against District Attorney defendants

---

[7]   Notably, at his deposition, the eyewitness confirmed the accuracy of his grand jury testimony and reiterated that he observed plaintiff pass a firearm to Dior Creighton on December 26, 2006.

when premised upon alleged presentation of false evidence to the grand jury.  *See, e.g., Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995).[8]

Just like his contentions with respect to his false arrest claim, plaintiff's arguments concerning his malicious prosecution are grounded in disputed facts[9] and a misunderstanding of the law.  Plaintiff appears to contend that rebutting the presumption of probable cause created by an indictment establishes his malicious prosecution claim as a matter of law.  Rather, plaintiff has that burden just to avoid dismissal of his claim as a matter of law.  However, plaintiff cannot meet that burden.

In addition, plaintiff's arguments with respect to alleged evidence that was not presented to the grand jury is without merit because it is well-settled that a prosecutor has no constitutional obligation to present exculpatory material to a grand jury.  *See, e.g., United States v. Williams*, 504 U.S. 36, 52 (1992); *see also, e.g., People v. Mitchell*, 82 N.Y.2d 509, 515 (N.Y. 1993).

Accordingly, plaintiff's malicious prosecution claims fail as a matter of law.

### 3.  Malicious Abuse of Process

In addition to the fact that plaintiff's malicious abuse of process claims are not properly pled, his claims fail as a matter of law because, as explained above, there was probable cause to arrest plaintiff.  *See, e.g., Sforza v. City of New York*, No. 07-CV-6122, 2009 U.S. Dist. LEXIS 27358, at *17 (S.D.N.Y. Mar. 31, 2009) ("While a lack of probable cause is not explicitly an element of an abuse of process claim, the presence of probable cause negates a claim for abuse of process," because it provides an excuse or justification for the prosecution).

### 4.  Conspiracy

Plaintiff's conspiracy claim fails because it is supported only by conclusory allegations. To the extent that plaintiff seeks to amend this or any other claim at this late stage, defendants respectfully submit that plaintiff is guilty of undue delay.  Plaintiff has been on notice of his

---

[8]   To the extent plaintiff argues that the any of the defendants knew the eyewitness testified under a false name, defendants note that the deposition testimony directly contradicts such a contention.

[9]   For example, the deposition testimony does not establish that the police defendants did not make a complete and full statement of facts to the District Attorney defendants.  Indeed, the testimony establishes the exact opposite.   In addition, contrary to plaintiff's contention, defendant Godino did follow up on Mr. Terab's identification of another suspect and discovered that Mr. Terab's identification was based upon an assumption and that his view was obscured.  In contrast, there is no evidence to suggest that the eyewitness was not in a position to see plaintiff pass the firearm to his brother.  Nor is there any evidence whatsoever that the eyewitness's testimony was fabricated at the behest of the police or District Attorney's Office.

pleading deficiencies since at least December 2015 when Your Honor detailed the issues with plaintiff's complaint.  Nevertheless, plaintiff has made no attempt whatsoever to amend his complaint to resolve the pleading issues.

In any event, amendment of this claim would be futile because,"[i]f a plaintiff fails to show an underlying constitutional violation on which to base a Section 1983 conspiracy claim, the conspiracy claim fails as a matter of law."  *Edwards v. Horn*, 2012 U.S. Dist. LEXIS 30968, at *67 (S.D.N.Y. Mar. 7, 2012).  As explained herein, plaintiff is unable to show any such constitutional violation.  Therefore, plaintiff's conspiracy claim should be dismissed.

### 5.  Denial of Procedural and Substantive Due Process

Plaintiff's claim based on an alleged violation or procedural due process is duplicative of his false arrest and malicious prosecution claims and therefore should be dismissed.  *See, e.g., Ambrose v. City of New York*, 02 Civ. 10200, 2009 U.S. Dist. LEXIS 27498, at *50 n.9 (S.D.N.Y. Mar. 31, 2009) (noting that plaintiff could not "state a claim for the violation of his procedural due process rights," because such a claim was subsumed in his claims for false arrest and malicious prosecution).

Similarly, plaintiff's substantive due process claim should also be dismissed because, "no separate cause of action exists under the rubric of substantive due process with respect to the deprivation of [plaintiff's] liberty interest."  *Biswas v. City of New York*, 973 F. Supp. 2d 504, 524 (S.D.N.Y. 2013).  Rather, "plaintiff's claim of deprivation of liberty must be analyzed under the Fourth Amendment as a false arrest claim rather than as a substantive due process claim."  *Id.*

Plaintiff is mistaken in his belief that a recent Second Circuit case, *Bermudez v. City of New York*, somehow alters this well-settled law with respect to his due process claims.  Indeed, numerous decisions published after *Bermudez*, including those specifically citing *Bermudez*, have consistently held that, in circumstances like the one present here, procedural and substantive due process claims are duplicative in nature and thus subject to dismissal.  *See, e.g., Delamota v. City of New York*, 2016 U.S. Dist. LEXIS 68130, at *17 (E.D.N.Y. May 23, 2016).

### 6.  Unreasonably Prolonged Detention

Plaintiff's claim for excessive pre-trial detention cannot stand unless plaintiff can demonstrate the existence of exculpatory evidence which ***conclusively established*** plaintiff's innocence.  *See, e.g., King v. City of New York*, 2014 U.S. Dist. LEXIS 141441, at *42 (E.D.N.Y. July 31, 2014).  Here, the arguably exculpatory evidence, another witness's identification of another culprit, may tend to create doubt as to whether plaintiff committed the crimes charged, but it certainly does not conclusively establish plaintiff's innocence in light of the identification by another eyewitness.

In any event, plaintiff cannot establish causation against the police officer defendants with respect to this claim.  "Once the grand jury indicted [the plaintiff], control of the prosecution passed to the prosecutor" and his incarceration cannot be attributed to the police officer defendants.  *Fappiano v. City of New York*, No. 07 Civ. 2476 (SLT), 2014 U.S. Dist.

LEXIS 179584, at *41 (E.D.N.Y. Dec. 31, 2014) (citing *Wilson v. City of New York*, 480 Fed. App'x 592, 595 (2d Cir. 2012).  The claims are equally untenable as alleged against the District Attorney defendants because prosecutors are entitled to absolute immunity to § 1983 claims when performing activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).

**7. Failure to Intervene**

In addition to the fact that this claim is not properly pled, because there can be no failure to intervene where there was no constitutional violation, this claim fails as well.  *See, e.g., Feinberg v. City of New York*, No. 99 Civ. 12127, 2004 U.S. Dist. LEXIS 16098, at *4 (S.D.N.Y. Aug. 13, 2004) ("If the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis ends.").

Accordingly, for the foregoing reasons, defendants respectfully submit that they are entitled to summary judgment on all of plaintiff's remaining claims.

Thank you for your consideration in this matter.

Respectfully,

/s/ Kavin Thadani

Kavin Thadani
Senior Counsel
Special Federal Litigation

cc:   **VIA ECF**
       Richard Gross, Esq.
       Michael Jaffe, Esq.
       *Attorneys for Plaintiff*