UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

KENNETH CREIGHTON,

                                        Plaintiff,

       -against-

THE CITY OF NEW YORK, DETECTIVE DEAN
ROBERTS (Shield No. 05861), DETECTIVE GLENN
GODINO (Shield No. 2756), POLICE OFFICERS JOHN
DOES 1-10 (names being fictitious and presently unknown
and intended to be employees of the NYPD who were
involved in Plaintiff's arrest, detention, imprisonment,
and/or prosecution), DISTRICT ATTORNEY ROBERT T.
JOHNSON, ASSISTANT DISTRICT ATTORNEY
BRUCE BIRNS A/K/A BURNS, ASSISTANT DISTRICT
ATTORNEY ED TALTY a/k/a ED TULTY and
ASSISTANT DISTRICT ATTORNEY MICHAEL
COOPER,

                                        Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS'
STATEMENT PURSUANT
TO LOCAL RULE 56.1**

1:12-cv-07454-PGG-DCF

       Defendants City of New York, Dean Roberts, Glenn Godino, Robert T. Johnson, Bruce Birns and Ed Talty submit this statement pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York to set forth the material facts as to which defendants contend there are no genuine issues to be tried.

**A.    The December 26, 2006 Shooting**

       1.  On December 26, 2006, at approximately 5:50 p.m., in the vicinity of 810 East 168th Street and Union Avenue, Bronx, New York, a shooting took place outside of a bodega. (Complaint Report No. 2006-042-10774, annexed to the Declaration of Kavin Thadani dated June 27, 2016 ("Thadani Decl.") as Ex. A; Unusual Occurrence Report, Thadani Decl. Ex. B; Criminal Complaint, Thadani Decl. Ex. C.)

2. John Caldwell sustained a gunshot wound to his head and died as a result. (*Id.*)

3. Lisette Ayala sustained a gunshot wound to her left leg calf area. (Complaint Report No. 2006-042-10775, Thadani Decl. Ex. D.)

**B.     The Police Investigation**

4. Shortly after the shooting and prior to any arrests being made, Detective Glenn Godino met with an eyewitness (the "Grand Jury Witness") about what he witnessed on December 26, 2006. (Godino Dep. at 482:24-25, Thadani Decl. Ex. E.)

5. Det. Godino had previously received reliable and credible information from the Grand Jury Witness in connection with another shooting case which resulted in an arrest and a guilty plea. (*Id.* at 116:23-118:2.)

6. The Grand Jury Witness told Det. Godino that, just prior to the shooting, he saw plaintiff Kenneth Creighton hand a firearm to plaintiff's brother, Dior Creighton, inside of a bodega. (Godino Dep. at 182:22-183:2, Thadani Decl. Ex. E; Godino Spiral Notebook, Thadani Decl. Ex. F.)

7. The Grand Jury Witness further told Det. Godino that, shortly thereafter, he saw Dior Creighton use that firearm in a shooting outside of the bodega. (*Id.*)

8. Det. Godino memorialized what the Grand Jury Witness told him in his spiral notebook. (Godino Spiral Notebook, Thadani Decl. Ex. F; Godino Dep. at 178:20-179:7, Thadani Decl. Ex. E.)

9. Det. Godino wrote in his notebook, *inter alia*, that "Dior . . . comes back with a black hoody. Kenny had a white and burgundy shirt. Dior and Ken went into the store. The CI was by the plastic door that goes behind the counter getting his scratch off tickets. Kenny

passed the gun to Dior inside the store. . . . Dior was shooting from behind a car just inside the street." (Godino Spiral Notebook, Thadani Decl. Ex. F.)

10. During the police investigation, Det. Godino came into possession of a surveillance videotape from the bodega. (Godino Dep. at 52:18-22, Thadani Decl. Ex. E.)

11. Det. Godino was not able to identify the person who passed the gun to Dior Creighton by viewing the surveillance videotape. (*Id.* at 137:15-19, 197:16-20, 407:9-18.)

12. Det. Godino reviewed the surveillance videotape with the Grand Jury Witness and the Grand Jury Witness told Det. Godino where he was standing when he witnessed plaintiff hand the firearm to plaintiff's brother, Dior Creighton. (*Id.* at 255:3-18, 264:18-265:9.)

13. Based on his review of the surveillance videotape and the information provided by the Grand Jury Witness, Det. Godino believed that the Grand Jury Witness had an opportunity to see plaintiff handing the firearm to plaintiff's brother, Dior Creighton. (*Id.* at 269:5-24.)

14. Det. Godino informed Assistant District Attorney Bruce Birns ("A.D.A. Birns") about what the Grand Jury Witness had told him regarding what he witnessed on December 26, 2006. (*Id.* at 168:4-7.)

15. Det. Godino also provided the New York City Police Department files regarding the criminal investigation to A.D.A. Birns. (*Id.* at 46:12-21.)

**C.**     **Plaintiff's Arrest**

16. Shortly thereafter, and before any arrests were made, A.D.A. Birns met with the Grand Jury Witness about what he witnessed on December 26, 2006. (Birns Dep. at 224:25-227:6, 229:6-9, Thadani Decl. Ex. G; Godino Dep. at 179:8-10, 262:13-22, 264:6-17, Thadani Decl. Ex. E.)

17. There was a general practice within the Bronx District Attorney's Office which required that a district attorney authorize any arrests associated with a homicide investigation. (Birns Dep. at 25:14-25, Thadani Decl. Ex. G.)

18. A.D.A. Birns made an assessment of the Grand Jury Witness's credibility and determined that he was credible. (*Id.* at 119:13-121:8, 227:7-228:13.)

19. Based upon the information provided by the Grand Jury Witness, A.D.A. Birns believed there was probable cause to arrest plaintiff. (*Id.* at 228:14-17.)

20. A.D.A. Birns and Assistant District Attorney Ed Talty authorized plaintiff's arrest. (Unusual Occurrence Report, Thadani Decl. Ex. B; Arrest Report No. B07602959, Thadani Decl. Ex. H.)

21. On January 10, 2007, at approximately 4:50 p.m., plaintiff was arrested and charged with Criminal Facilitation in the Second Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon in the Third Degree. (Arrest Report No. B07602959, Thadani Decl. Ex. H.)

22. The "Details" Section of the Arrest Report reads, in part, that "[a]t t/p/o Deft, [sic] did hand a loaded firearm to an unapprehended subject who then used the firearm which resulted in the fatal shooting of C/V #1 as well as the non-fatal shooting of C/V #2. (*Id.*)

23. Detective Dean Roberts was the arresting officer. (*Id.*)

24. On January 10, 2007, at approximately 9:00 p.m., the criminal complaint, in which plaintiff was charged with Criminal Possession of a Weapon in the Second Degree, Criminal Facilitation in the Second Degree, and Criminal Possession of a Weapon in the Third Degree, was signed. (Criminal Complaint, Thadani Decl. Ex. C.)

25. The Criminal Complaint states, in part, that:

>[B]ased upon official investigation, and witnesses known to the Police Department, that, at the above time and place, inside a bodega, defendant and a separately unapprehended individual engaged in a brief conversation, after which defendant passed a shiny metallic object to the separately unapprehended individual. Deponent further states that immediately afterwards, the separately unapprehended individual and defendant went outside the above location. Deponent further states he is informed by Lisette Ayala that informant was standing outside the above location at the above time, and informant observed the above-described separately unapprehended individual pointing a metallic object in both her direction and in the direction of John Caldwell, and then heard several noises and observed several flashes coming from the above-mentioned object, and then immediately felt a sharp pain on her left calf. Deponent is further informed that informant then observed her left leg to be bleeding severely. Deponent further states that, based upon official police investigation and witnesses known to the police department, also at the above time and place, John Caldwell was struck on the side of his head by one of the above-mentioned shots, causing his death. (*Id.*)

26. Prior to plaintiff's arraignment on January 11, 2007, the Criminal Justice Agency did not recommend plaintiff for "ROR," or release on his own recognizance, and classified plaintiff as a "HIGH RISK FOR FTA," or failure to appear. (Criminal Justice Agency Interview Report, Thadani Decl. Ex. I.)

27. The Criminal Justice Agency is an agency which makes recommendations to the court regarding bail. (Talty Dep. at 200:8-16, Thadani Decl. Ex. J.)

28. Bail was set at $10,000. (Birns Dep. at 90:2-8, Thadani Decl. Ex. G.)

**D.     The Grand Jury Proceeding**

29. On January 16, 2007, the Grand Jury Witness testified before the Grand Jury. (Grand Jury Minutes, Thadani Decl. Ex. K.)

30. The Grand Jury Witness testified, *inter alia*, that he "walked into the store to buy my scratch off. And as I was going into the store Kenny was passing something. He was passing a gun to Dior." (*Id.* at DJ9.)

31. The Grand Jury Witness also testified that "Dior went outside the store" and he "just pulled out and started shooting." (*Id.* at DJ 11-12.)

32. The Grand Jury Witness also testified that he knew plaintiff personally. (*Id.* at DJ6.)

33. On January 23, 2007, plaintiff was indicted by the Grand Jury for two counts of Criminal Possession of a Weapon in the Second Degree and one count of Criminal Facilitation in the Second Degree. (Indictment, Thadani Decl. Ex. L.)

### E. The Probation Hold

34. On or about February 1, 2007, plaintiff was charged with violating the terms of his probation and a probation hold took effect against plaintiff. (50-H Transcript at 45:24 – 46:2, 46:16-17, 47:20-48:14, Thadani Decl. Ex. M; Specification of Alleged Violation of Probation, Thadani Decl. Ex. N.)

35. On November 21, 2005, plaintiff was sentenced to five years probation to expire on November 20, 2010 as a result of a conviction for Attempted Robbery in the Second Degree. (Conditions of Probation, Thadani Decl. Ex. O; Specification of Alleged Violation of Probation, Thadani Decl. Ex. N.)

36. On December 28, 2006, two days after the shooting and nearly two weeks before his arrest on January 10, 2007, plaintiff was advised by his probation officer that a Violation of Probation ("VOP") would be filed against him as a result of three arrests while on probation. (Probation File at 10, Thadani Decl. Ex. P.)

37. The VOP tracked the criminal case. (May 1, 2007 Criminal Court Transcript at 2:3-17, Thadani Decl. Ex. Q.)

38. Bail was never set with respect to the VOP.  Instead, plaintiff was remanded on the VOP.  (*Id.*at 2:22-24; 50-H Transcript at 47:20-48:14, Thadani Decl. Ex. M; Raskin Dep. at 73:25-74:18, Thadani Decl. Ex. R.)

39. Even if plaintiff had posted bail, he would have remained incarcerated as a result of the VOP and resulting probation hold.  (Raskin Dep. at 73:25-74:18, Thadani Decl. Ex. R.)

F.     **The Criminal Court Proceedings**

40. On May 10, 2007, plaintiff made a motion to, *inter alia*, inspect the Grand Jury minutes and to dismiss the indictment.  (Omnibus Motion, Thadani Decl. Ex. S.)

41. On October 23, 2007, criminal court judge Troy Webber granted plaintiff's motion for an order granting inspection of the Grand Jury minutes.  (Decision and Order, Thadani Decl. Ex. T.)

42. Judge Webber ruled that "[u]pon inspection of the Grand Jury minutes, [plaintiff's] motion to dismiss and reduce the charges in the indictment is denied."  (*Id.*)

43. Judge Webber found that "[t]he evidence presented to the Grand Jury established a *prima facie* case of the [plaintiff's] commission of the charges contained in the indictment.  Additionally, the instructions on the law were adequate and complete.  It is not necessary to release the minutes or any portion thereof to the [plaintiff's] attorney to assist the court in making the determination."  (*Id.*)

44. On May 12, 2008, Birns served plaintiff a Motion to Consolidate Indictment Nos. 626/2007 (Dior Creighton) and 639/2007 (plaintiff).  (Affirmation in Support of Motion to Consolidate Indictments, Thadani Decl. Ex. U.)

45. On August 7, 2008, criminal court judge Troy Webber held the motion to consolidate in abeyance pending resolution of all pre-trial hearings. (Order, Thadani Decl. Ex. V.)

46. During the pendency of the criminal case, plaintiff was in possession of documents produced by the District Attorney's Office during discovery, including a signed statement by another witness, in which he states that he observed an individual other than plaintiff hand a firearm to Dior Creighton, and a signed photo array, in which this witness identifies that other individual. (Habeas Corpus Petition, Thadani Decl. Ex. W; 50-H Transcript at 61:12-23, Thadani Decl. Ex. M; Creighton Dep. at 48:5-49:20, Thadani Decl. Ex. X; Raskin Dep. at 42:23-43:5, Thadani Decl. Ex. R.)

47. Plaintiff's criminal defense attorney made no motions or applications following the receipt of these documents. (Raskin Dep. at 54:16-22, Thadani Decl. Ex. R.)

48. Plaintiff was also in possession of the surveillance videotape taken from the bodega. (Habeas Corpus Petition, Thadani Decl. Ex. W; Raskin Dep. at 45:18-20, Thadani Decl. Ex. R.)

49. On January 3, 2012, plaintiff's brother, Dior Creighton pled guilty to Attempted Murder in the Second Degree. He was sentenced to fourteen years in prison. (Recommendation for Dismissal, Thadani Decl. Ex. Y.)

50. On January 18, 2012, Assistant District Attorney Theresa Gottlieb filed a Recommendation for Dismissal with the criminal court. (*Id.*)

51. The basis for Ms. Gottlieb's dismissal recommendation was that she was unable to locate the Grand Jury Witness and, as a result, would not be able to proceed to trial. (*Id.*)

52. In the Recommendation for Dismissal, Ms. Gottlieb states, *inter alia*, that "Kenneth Creighton was arrested and charged based upon the statements of a single eyewitness. This eyewitness knows Kenneth Creighton and saw him hand Dior Creighton a handgun inside the bodega.  This witness has now become unavailable to the Bronx District Attorney's Office. The witness could not be located by the case Detective at any of the telephone numbers or addresses provided.  Further efforts to locate this witness by the Detective Investigator have been unsuccessful."  (*Id.*)

53. On January 19, 2012 criminal court judge Efrain Alvarado dismissed the indictment against plaintiff on the grounds that "the People do not have the cooperation of a necessary eyewitness to this matter.  They would not be able to go forward."  (Jan. 19, 2012 Criminal Court Transcript at 2:22-24, Thadani Decl. Ex. Z.)

54. On January 19, 2012, plaintiff also pled guilty to violating the terms of his probation.  (*Id.* at 4:6-9.)

55. Plaintiff admitted that he violated the terms of his probation because he was arrested on June 28, 2006 and pled guilty to Harassment in the Second Degree on July 17, 2006. (*Id.* at 4:14-18.)

56. Judge Alvarado accepted plaintiff's guilty plea and terminated plaintiff's violation of probation unfavorably.  (*Id.* at 6:21-7:3.)

57. Plaintiff was sentenced to time served.  (*Id.*; Raskin Dep. at 76:18-77:11, Thadani Decl. Ex. R.)

Dated: New York, New York
       June 27, 2016

                        ZACHARY W. CARTER
                        Corporation Counsel of the City of New York
                        *Attorney for Defendants*
                        100 Church Street
                        New York, New York 10007
                        (212) 356-2351

By: _____
                        Kavin Thadani
                        Senior Counsel
                        Special Federal Litigation Division

TO:   **VIA HAND DELIVERY AND EMAIL**
       Richard Gross, Esq.
       Michael Jaffe, Esq. (via email only)
       *Attorneys for Plaintiff*