UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH CREIGHTON,

Plaintiff,

-against-

THE CITY OF NEW YORK, DETECTIVE DEAN
ROBERTS (Shield No. 05861), DETECTIVE GLENN
GODINO (Shield No. 2756), POLICE OFFICERS JOHN
DOES 1-10 (names being fictitious and presently
unknown and intended to be employees of the NYPD who
were involved in Plaintiff's arrest, detention,
imprisonment, and/or prosecution), DISTRICT
ATTORNEY ROBERT T. JOHNSON, ASSISTANT
DISTRICT ATTORNEY BRUCE BIRNS A/K/A
BURNS, ASSISTANT DISTRICT ATTORNEY ED
TALTY a/k/a ED TULTY and ASSISTANT DISTRICT
ATTORNEY MICHAEL COOPER,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Kavin Thadani*
*Tel: (212) 356-2351*
*Matter No. 2012-006428*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

PROCEDURAL HISTORY ....................................................................................................2

PRELIMINARY STATEMENT .............................................................................................3

STATEMENT OF FACTS .....................................................................................................4

STANDARD OF LAW ..........................................................................................................6

ARGUMENT

    POINT I

        PLAINTIFF'S FALSE ARREST CLAIM
        SHOULD BE DISMISSED ..................................................................7

        A.   There was Probable Cause To Arrest Plaintiff ..............................7

        B.   The Police Defendants Are At Least Entitled
            To Qualified Immunity ................................................................13

    POINT II

        PLAINTIFF'S MALICIOUS PROSECUTION CLAIM
        SHOULD BE DISMISSED ................................................................15

        A.   There Was Probable Cause To Prosecute Plaintiff......................16

        B.   Plaintiff Is Unable To Rebut The Presumption Of
            Probable Cause Created By The Indictment ................................17

        C.   Plaintiff Is Collaterally Estopped From Challenging
            The Sufficiency Of The Grand Jury Proceeding...........................19

        D.   Plaintiff Cannot Prove Initiation..................................................20

        E.   There Was No Improper Post-Arraignment
            Deprivation Of Plaintiff's Liberty ...............................................21

    POINT III

        PLAINTIFF'S PROCEDURAL AND SUBSTANTIVE
        DUE PROCESS CLAIMS SHOULD BE DISMISSED.....................21

POINT IV

        PLAINTIFF'S UNREASONABLY PROLONGED
        DETENTION CLAIM SHOULD BE DISMISSED .............................23

POINT V

        PLAINTIFF'S MALICIOUS ABUSE OF PROCESS
        CLAIM SHOULD BE DISMISSED.......................................................24

POINT VI

        PLAINTIFF'S CONSPIRACY CLAIM
        SHOULD BE DISMISSED..................................................................25

POINT VII

        PLAINTIFF'S FAILURE TO INTERVENE
        CLAIM SHOULD BE DISMISSED.....................................................27

POINT VIII

        THE PROSECUTOR DEFENDANTS ARE
        ENTITLED TO ABSOLUTE IMMUNITY..........................................27

CONCLUSION.......................................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Pages**

*Albright v. Oliver*,
    510 U.S. 266 (1994)......................................................................................................22

*Alcantara v. City of New York*,
    646 F. Supp. 2d 449 (S.D.N.Y. 2009)........................................................................20

*Ambrose v. City of New York*,
    623 F. Supp. 2d 454 (S.D.N.Y. 2009)........................................................................21

*Anderson v. Creighton*,
    483 U.S. 635 (1987)....................................................................................................14

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................................................6

*Benn v. Kissane*,
    510 F. App'x 34 (2d Cir. 2013) ..................................................................................15

*Bermudez v. City of New York*,
    790 F.2d 368 (2d Cir. 2015)........................................................................................17

*Bernard v. United States*,
    25 F.3d 98 (2d Cir. 1994) ........................................................................................7, 9

*Biswas v. City of New York*,
    973 F. Supp. 2d 504 (S.D.N.Y. 2013)........................................................................22

*Blouin ex rel. Estate of Pouliot v. Spitzer*,
    356 F.3d 348 (2d Cir. 2004)........................................................................................13

*Brown v. New York*,
    459 N.Y.S.2d 589 (N.Y. App. Div. 1983) ................................................................16

*Buckley v. Fitzsimmons*,
    509 U.S. 259 (1993)....................................................................................................28

*Calvert v. Katy Taxi, Inc.*,
    413 F.2d 841 (2d Cir. 1969)..........................................................................................6

*Candelario v. City of New York*,
    No. 12 Civ. 1206 (LAP), 2013 U.S. Dist. LEXIS 48412
    (S.D.N.Y. Mar. 29, 2013) ............................................................................................9

*Cerrone v. Brown*,
    246 F.3d 194 (2d Cir. 2001)........................................................................................14

iii

**Cases**                                                                        **Pages**

*Chodkowski v. City of New York*,
    No. 06 CV 7120 (LBS), 2007 U.S. Dist. LEXIS 67822
    (S.D.N.Y. Sept. 12, 2007)...................................................................................26

*Colon v. City of New York*,
    455 N.E.2d 1248 (N.Y. 1983)...........................................................................9

*Crews v. County of Nassau*,
    996 F. Supp. 2d 186 (E.D.N.Y. 2014) ..............................................................12

*Curley v. Vill. of Suffern*,
    268 F.3d 65 (2d Cir. 2001)..........................................................................10, 12

*Day v. Morgenthau*,
    909 F.2d 75 (2d Cir. 1990)...............................................................................30

*De Michele v. City of New York*,
    No. 09 Civ. 9334 (PGG), 2012 U.S. Dist. LEXIS 136460
    (S.D.N.Y. Sept. 24, 2012) (Gardephe, J.) ...............................................8, 9, 16, 17

*Delarosa v. Serita*,
    No. 14-CV-737 (MKB), 2014 U.S. Dist. LEXIS 58733
    (E.D.N.Y. Apr. 28, 2014).................................................................................26

*Devenpeck v. Alford*,
    543 U.S. 146 (2004)........................................................................................12

*Dory v. Ryan*,
    25 F.3d 81 (2d Cir. 1994) ................................................................................29

*Edwards v. Horn*,
    No. 10 Civ. 6194 (RJS)(JLC), 2012 U.S. Dist. LEXIS 30968
    (S.D.N.Y. Mar. 8, 2012) .................................................................................26

*Feinberg v. City of New York*,
    No. 99 Civ. 12127 (RCC), 2004 U.S. Dist. LEXIS 16098
    (S.D.N.Y. Aug. 13, 2004)...............................................................................27

*Figueroa v. Mazza*,
    No. 14-4116-cv, 2016 U.S. App. LEXIS 10152
    (2d Cir. June 3, 2016) .....................................................................................15

*Gilman v. Marsh & McLennan Cos., Inc.*,
    868 F. Supp. 2d 118 (S.D.N.Y. 2012)..............................................................20

**Cases**                                                                                          **Pages**

*Gisondi v. Harrison*,
   528 N.E.2d 157 (N.Y. 1988)........................................................................10, 13

*Grice v. Town of Greenburgh*,
   No. 13-cv-1776 (NSR), 2015 U.S. Dist. LEXIS 164407
   (S.D.N.Y. Dec. 7, 2015)................................................................................7

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982).....................................................................................13

*Haussman v. Fergus*,
   894 F. Supp. 142 (S.D.N.Y. 1995)..............................................................8

*Heyliger v. City of Binghamton Police Dep't*,
   No. 3:11-CV-1293 (NAM/DEP),
   2016 U.S. Dist. LEXIS 31313 (N.D.N.Y. Mar. 11, 2016)......................24

*Hickey v. City of New York*,
   No. 01 Civ. 6506 (GEL), 2004 U.S. Dist. LEXIS 23941
   (S.D.N.Y. Nov. 29, 2004)..........................................................................22

*Hill v. City of New York*,
   45 F.3d 653 (2d Cir. 1995).........................................................................28

*Hunter v. Bryant*,
   502 U.S. 224 (1991)....................................................................................13

*In re Hyman*,
   502 F.3d 61 (2d Cir. 2007).........................................................................19

*Imbler v. Pachtman*,
   424 U.S. 409 (1976)....................................................................................28

*Jackson v. City of New York*,
   939 F. Supp. 2d 219 (E.D.N.Y. 2013) ......................................................27

*Jaegly v. Couch*,
   439 F.3d 149 (2d Cir. 2006).......................................................................12

*Jean v. Montina*,
   412 F. App'x 352 (2d Cir. 2011) .........................................................10, 17

*Jones v. Parmley*,
   465 F.3d 46 (2d Cir. 2006).........................................................................13

**Cases**             **Pages**

*Jouthe v. City of New York*,
    No. 05-CV-1374 (NGG) (VVP), 2009 U.S. Dist. LEXIS 18163
    (E.D.N.Y. Mar. 10, 2009) ................................................................................................20

*Kent v. Cardone*,
    404 F. App'x 540 (2d Cir. 2011) .....................................................................................28

*King v. City of New York*,
    Nos. 12-CV-02344 (NGG) (RER), 13-CV-00037 (NGG) (RER),
    2014 U.S. Dist. LEXIS 141441 (E.D.N.Y. July 31, 2014) ..................................23

*King v. City of New York*,
    Nos. 12-CV-2344 (NGG) (RER), 13-CV-0037 (NGG) (RER),
    2014 U.S. Dist. LEXIS 140790 (E.D.N.Y. Sept. 30, 2014)................................19

*Kramer v. New York*,
    569 N.Y.S.2d 67 (N.Y. App. Div. 1991) ..........................................................................8

*Lee v. Cornell*,
    No. 1:13-cv-8359, 2016 U.S. Dist. LEXIS 44660 (S.D.N.Y. Mar. 31, 2016)........................24

*Maciariello v. Sumner*,
    973 F.2d 295 (4th Cir. 1992) ........................................................................................14

*Maglione v. Briggs*,
    748 F.2d 116 (2d Cir. 1984)...........................................................................................28

*Malley v. Briggs*,
    475 U.S. 335 (1986)........................................................................................................14

*Martinez v. Simonetti*,
    202 F.3d 625 (2d Cir. 2000).............................................................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).........................................................................................................6

*McClellan v. Smith*,
    439 F.3d 137 (2d Cir. 2006)..........................................................................................14

*Mesa v. City of New York*,
    No. 09 Civ. 10464 (JPO),
    2013 U.S. Dist. LEXIS 1097 (S.D.N.Y. Jan. 3, 2013) ...........................................13

*Michigan v. DeFillippo*,
    443 U.S. 31 (1979)...........................................................................................................8

**Cases**                                                                                 **Pages**

*Mistretta v. Prokesch*,
    5 F. Supp. 2d 128 (E.D.N.Y. 1998) ...................................................10

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)...................................................................13

*Miyares v. City of New York*,
    No. 11 Civ. 4297 (RJS), 2013 U.S. Dist. LEXIS 110406
    (S.D.N.Y. July 31, 2013) .........................................................16

*Murphy v. Lynn*,
    118 F.3d 938 (2d Cir. 1997)......................................................15

*Nebraska v. Wyoming*,
    507 U.S. 584 (1993).................................................................6

*Nzegwu v. Friedman*,
    No. 10-CV-02994 (CBA) (RML), 2014 U.S. Dist. LEXIS 44019
    (E.D.N.Y. Mar. 31, 2014) ........................................................23

*O'Brien v. City of Yonkers*,
    No. 07-CV-3974 (KMK) (LMS), 2013 U.S. Dist. LEXIS 43551
    (S.D.N.Y. Mar. 22, 2013) ........................................................19

*Omar v. City of New York*,
    No. 13 Civ. 8264 (NRB),
    2015 U.S. Dist. LEXIS 4470 (S.D.N.Y. Jan. 5, 2015) ...........................9

*Osuna v. City of New York*,
    No. 08 Civ. 4759 (JSR),
    2009 U.S. Dist. LEXIS 66282 (S.D.N.Y. July 28, 2009) ......................22

*Panetta v. Crowley*,
    460 F.2d 388 (2d Cir. 2006)..................................................9, 10

*Parisi v. Suffolk County*,
    No. 04-CV-2187 (ENV) (ETB), 2009 U.S. Dist. LEXIS 112388
    (E.D.N.Y. Nov. 30, 2009) ........................................................18

*Pawlicki v. City of Ithaca*,
    993 F. Supp. 140 (N.D.N.Y. 1998)..............................................12

*Pinaud v. County of Suffolk*,
    52 F.3d 1139 (2d Cir. 1994).....................................................28

| **Cases** | **Pages** |
|---|---|

*Poe v. Leonard,*
282 F.3d 123 (2d Cir. 2002)........................................................................14

*Present v. Avon Prods, Inc.,*
687 N.Y.S.2d 330 (App. Div. 1999)..........................................................20

*Ricciuti v. New York City Transit Auth.,*
124 F.3d 123 (2d Cir. 1997).......................................................................14

*Richards v. City of New York,*
No. 97 Civ. 7990 (MBM), 2003 U.S. Dist. LEXIS 8037
(S.D.N.Y. May 7, 2003)..............................................................................18

*Rodriguez v. Weprin,*
116 F.3d 62 (2d Cir. 1997).........................................................................28

*Rohman v. New York City Transit Auth.,*
215 F.3d 208 (2d Cir. 2000)...............................................................15, 20

*Romer v. Morgenthau,*
119 F. Supp. 2d 346 (S.D.N.Y. 2000)........................................................26

*Rothstein v. Carriere,*
373 F.3d 275 (2d Cir. 2004).......................................................................16

*Russo v. City of Bridgeport,*
479 F.3d 196 (2d Cir. 2007).......................................................................23

*Savino v. City of New York,*
331 F.3d 63 (2d Cir. 2003)....................................................................8, 18

*Scotto v. Almenas,*
143 F.3d 105 (2d Cir. 1998).........................................................................6

*Sforza v. City of New York,*
No. 07 Civ. 6122 (DLC), 2009 U.S. Dist. LEXIS 27358
(S.D.N.Y. Mar. 31, 2009) ...........................................................................25

*Shmueli v. City of New York,*
424 F.3d 231 (2d Cir. 2005).......................................................................29

*Singer v. Fulton County Sheriff,*
63 F.3d 110 (2d Cir. 1995)...........................................................................7

*Smith v. City of New York,*
388 F. Supp. 2d 179 (S.D.N.Y. 2005).......................................................10

**Cases**                                                                                                          **Pages**

*Stansbury v. Wertman*,
    721 F.3d 84 (2d Cir. 2013)................................................................................16

*Sudler v. City of New York*,
    No. 08 Civ. 11389 (GBD) (AJP), 2010 U.S. Dist. LEXIS 1566
    (S.D.N.Y. Jan. 8, 2010)...........................................................................26

*Swinton v. City of New York*,
    785 F. Supp. 2d 3 (E.D.N.Y. 2011) .........................................................29

*Townes v. City of New York*,
    176 F.3d 138 (2d Cir. 1999)....................................................................20

*United States v. Williams*,
    504 U.S. 36 (1992)..................................................................................18

*Villa v. City of New York*,
    No. 11 Civ. 1669 (RJS), 2013 U.S. Dist. LEXIS 49830
    (S.D.N.Y. Mar. 14, 2013) ........................................................................25

*Wahhab v. City of New York*,
    386 F. Supp. 2d 277 (S.D.N.Y. 2005)........................................................9

*Weyant v. Okst*,
    101 F.3d 845 (2d Cir. 1996)...................................................................7, 8

*Williams v. City of New York*,
    No. 02 Civ. 3693 (CBM),
    2003 U.S. Dist. LEXIS 19078 (S.DN.Y. Oct. 23, 2003) .............................28

*Ying Jing Gan v. City of New York*,
    996 F.2d 522 (2d Cir. 1993)..................................................................6, 29

*Young v. County of Fulton*,
    160 F.3d 899 (2d Cir. 1998)....................................................................26

*Zellner v. Summerlin*,
    494 F.3d 344 (2d Cir. 2007)....................................................................12

**Statutes**

42 U.S.C. § 1983......................................................2, 3, 7, 15, 16, 22, 24, 25, 26, 28, 29

Fed. R. Civ. P. 56 .......................................................................................1, 3

**Statutes**                                                                 **Pages**

Fed. R. Civ. P. 56 (a) .......................................................................................6

Local Civil Rule 56.1 ....................................................................................4, 6

N.Y. State Penal Law § 115.05 ......................................................................11

N.Y. State Penal Law § 265.01(1) .................................................................11

N.Y. State Penal Law § 265.02(1) .................................................................11

N.Y. State Penal Law § 265.03(3) .................................................................11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

KENNETH CREIGHTON,

                                          Plaintiff,

               -against-

THE CITY OF NEW YORK, DETECTIVE DEAN
ROBERTS (Shield No. 05861), DETECTIVE GLENN
GODINO (Shield No. 2756), POLICE OFFICERS JOHN
DOES 1-10 (names being fictitious and presently unknown
and intended to be employees of the NYPD who were
involved in Plaintiff's arrest, detention, imprisonment,
and/or prosecution), DISTRICT ATTORNEY ROBERT T.
JOHNSON, ASSISTANT DISTRICT ATTORNEY
BRUCE BIRNS A/K/A BURNS, ASSISTANT DISTRICT
ATTORNEY ED TALTY a/k/a ED TULTY and
ASSISTANT DISTRICT ATTORNEY MICHAEL
COOPER,

                                    Defendants.

-------------------------------------------------------------------- x

**DEFENDANTS'
MEMORANDUM OF LAW
IN SUPPORT OF THEIR
MOTION FOR SUMMARY
JUDGMENT**

1:12-cv-07454-PGG-DCF

        Defendants City of New York ("City"), Detective Dean Roberts ("Roberts"), Detective

Glenn Godino ("Godino"), District Attorney Robert T. Johnson ("Johnson"), Assistant District

Attorney Bruce Birns ("Birns"), and Assistant District Attorney Ed Talty ("Talty"),[1] by their

attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submit

this Memorandum of Law in support of their motion for summary judgment pursuant to Rule 56

of the Federal Rules of Civil Procedure.

---

[1]    Assistant District Attorney Michael Cooper was never served and, therefore, is not a proper
party to this action.

## PROCEDURAL HISTORY

Plaintiff Kenneth Creighton brings this action, pursuant to 42 U.S.C. § 1983 ("Section 1983") and New York state law, alleging violation of his civil rights. The Amended Complaint, which was filed on August 21, 2013, sets forth numerous claims, however, as explained below, not all of those claims remain.

On May 28, 2015, defendants filed a letter requesting that a pre-motion conference be scheduled in anticipation of defendants' contemplated motion to dismiss on the pleadings. *See* Docket No. 64. On December 10, 2015, a conference was held in which the Court expressed doubt as to the viability of many of plaintiff's claims, including his *Monell* claim, his claims against the prosecutor defendants, his Section 1983 false arrest and false imprisonment claim, his malicious prosecution claims under New York state law and Section 1983, his conspiracy claim, his claims based on denial of procedural and substantive due process, his unreasonable continued prosecution claim, his unduly suggestive identification claim, his claim alleging *Brady* violations, his negligence claim, his intentional infliction of emotional distress claim, his abuse of process claim under state law and Section 1983, and his failure to intervene claim, and directed the parties to confer and discuss whether they could reach agreement as to which of plaintiff's claims should be dismissed, thereby obviating the need for a motion to dismiss. *See* Dec. 10, 2015 Transcript, Docket No. 83 at 2:12-8:20.

On December 23, 2015, defendants filed a joint letter on behalf of the parties explaining that plaintiff agreed to withdraw his *Monell* claim, his claim for negligence, his claim for unreasonable continued prosecution, and his claim for intentional infliction of emotional distress. *See* Docket No. 82. Plaintiff also agreed to withdraw his claim made pursuant to Section 1983 for false arrest and false imprisonment against all defendants, as well as his claims against defendant Johnson. *See id.* Defendants explained that, although they believed that plaintiff's

remaining claims were subject to dismissal, they would not be moving to dismiss but instead intended to move for summary judgment after the close of discovery. *See id.*

By Order of the Court dated May 20, 2016, plaintiff was directed to file a letter describing the legal and factual basis of the claims on which he intends to proceed by May 26, 2016. *See* Docket No. 138. This Order was made following a court conference on May 19, 2016 in which the Court again expressed concerns as to the viability of many of plaintiff's claims. *See* May 19, 2016 Transcript at 15:19-17:25 (Ex. AA). On May 26, 2016, plaintiff filed a letter explaining that he wished to proceed with the following claims: (1) false arrest under New York state law, (2) malicious prosecution under New York state law and Section 1983, (3) denial of procedural and substantive due process under Section 1983, (4) unreasonably prolonged detention under Section 1983, (5) abuse of process under Section 1983, (6) conspiracy under Section 1983, and (7) failure to intervene under Section 1983. *See* Docket No. 141.

Accordingly, plaintiff has voluntarily withdrawn his Section 1983 false arrest claim,[2] his unreasonable continued prosecution claim, his unduly suggestive identification claim, his failure to investigate claim, his claim alleging *Brady* violations,[3] his *Monell* claims, his negligence claim, his intentional infliction of emotional distress claim, and all other claims.[4] *See, e.g., id.*

## PRELIMINARY STATEMENT

Defendants City, Roberts, Godino, Birns and Talty now move for summary judgment on all of plaintiff's remaining claims pursuant to Fed. R. Civ. P. 56. On the undisputed facts, there

---

[2]  Plaintiff has conceded that to the extent that his false arrest claims "are made pursuant to 42 U.S.C. § 1983 . . . those claims must fail as time barred." *Id.* at 2.

[3]  Plaintiff has conceded that "plaintiff's separately pled *Brady* claim cannot survive per se." *Id.* at 8.

[4]  Plaintiff again also agreed to withdraw all claims against defendant Johnson. *See id.* at 1.

was probable cause and, at a minimum, "arguable probable cause," to arrest and prosecute plaintiff for criminal facilitation and criminal possession of a weapon based on information provided by an eyewitness. Because almost all of plaintiff's remaining claims flow from a false arrest claim which is not viable, all of plaintiff's remaining claims should be dismissed.

## **STATEMENT OF FACTS**

On December 26, 2006, at approximately 5:50 p.m., in the vicinity of 810 East 168th Street and Union Avenue, Bronx, New York, a shooting took place outside of a bodega. *See* Defendants' Statement Pursuant to Local Rule 56.1 ("56.1 Stmt.") at ¶ 1. As a result of the shooting, John Caldwell sustained a gunshot wound to his head and died, and Lisette Ayala sustained a gunshot wound to her left leg calf area. *See id.* at ¶¶ 2-3.

Shortly after the shooting and prior to any arrests being made, Detective Glenn Godino met with an eyewitness (the "Grand Jury Witness") about what he witnessed on December 26, 2006. *See id.* at ¶ 4. Det. Godino had previously received reliable and credible information from the Grand Jury Witness in connection with another shooting case which resulted in an arrest and a guilty plea. *See id.* at ¶ 5. The Grand Jury Witness told Det. Godino that, just prior to the shooting, he saw plaintiff Kenneth Creighton hand a firearm to plaintiff's brother, Dior Creighton, inside of a bodega. *See id.* at ¶ 6. The Grand Jury Witness further told Det. Godino that, shortly thereafter, he saw Dior Creighton use that firearm in a shooting outside of the bodega. *See id.* at ¶ 7. Det. Godino memorialized what the Grand Jury Witness told him in his spiral notebook. *See id.* at ¶ 8.

During the police investigation, Det. Godino came into possession of a surveillance videotape from the bodega. *See id.* at ¶ 10. Det. Godino was not able to identify the person who passed the gun to Dior Creighton by viewing the surveillance videotape. *See id.* at ¶ 11. Det. Godino reviewed the surveillance videotape with the Grand Jury Witness and the Grand Jury

Witness told Det. Godino where he was standing when he witnessed plaintiff hand the firearm to plaintiff's brother, Dior Creighton. *See id.* at ¶ 12. Based on his review of the surveillance videotape and the information provided by the Grand Jury Witness, Det. Godino believed that the Grand Jury Witness had an opportunity to see plaintiff handing the firearm to plaintiff's brother, Dior Creighton. *See id.* at ¶ 13.

On January 10, 2007, at approximately 4:50 p.m., plaintiff was arrested and charged with Criminal Facilitation in the Second Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon in the Third Degree. *See id.* at ¶ 21. Just a few hours later, at 9:00 p.m., the criminal complaint was signed. *See id.* at ¶ 24. On January 16, 2007, the Grand Jury Witness testified before the Grand Jury. *See id.* at ¶ 29. The Grand Jury Witness testified, *inter alia*, that he "walked into the store to buy my scratch off. And as I was going into the store Kenny was passing something. He was passing a gun to Dior." *Id.* at ¶ 30. The Grand Jury Witness also testified that "Dior went outside the store" and he "just pulled out and started shooting." *Id.* at ¶ 31. The Grand Jury Witness also testified that he knew plaintiff personally. *See id.* at ¶ 32. On January 23, 2007, plaintiff was indicted by the Grand Jury for two counts of Criminal Possession of a Weapon in the Second Degree and one count of Criminal Facilitation in the Second Degree. *See id.* at ¶ 33.

On January 3, 2012, plaintiff's brother, Dior Creighton pled guilty to Attempted Murder in the Second Degree. *See id.* at ¶ 49. He was sentenced to fourteen years in prison. *See id.* On January 18, 2012, Assistant District Attorney Theresa Gottlieb filed a Recommendation for Dismissal with the criminal court. *See id.* at ¶ 50. The basis for Ms. Gottlieb's dismissal recommendation was that she was unable to locate the Grand Jury Witness and, as a result, would not be able to proceed to trial. *See id.* at ¶ 51. On January 19, 2012, criminal court judge

Efrain Alvarado dismissed the indictment against plaintiff on the grounds that "the People do not have the cooperation of a necessary eyewitness to this matter. They would not be able to go forward." *Id.* at ¶ 53.

For a more detailed statement of undisputed material facts, defendants refer the Court to their Statement Pursuant to Local Civil Rule 56.1.

## STANDARD OF LAW

Summary judgment is warranted when the Court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (a). At this stage, the Court must determine "whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In opposing summary judgment, the "non-moving party may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). The party bearing the burden of proof has no right to take the case to trial if a favorable verdict could only be the product of surmise, speculation, and conjecture. *See, e.g., Calvert v. Katy Taxi, Inc.,* 413 F.2d 841, 844 (2d Cir. 1969). Therefore, the non-moving party must produce evidence to support his case and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

A plaintiff has the burden to present admissible evidence which would tend to show that there is a genuine issue of fact with respect to their claims for trial. *See e.g., Nebraska v.*

*Wyoming*, 507 U.S. 584, 590 (1993) (finding that when the nonmoving party bears burden of proof at trial, moving party is entitled to summary judgment if non-movant fails to make showing on essential element of its claim).

In the instant matter, summary judgment should be granted in favor of defendants because there are no genuine issues of material fact which warrant a trial.

**ARGUMENT**

**POINT I**
**PLAINTIFF'S FALSE ARREST CLAIM**
**SHOULD BE DISMISSED**

**A.    There Was Probable Cause To Arrest Plaintiff**

In order to state a claim for false arrest under New York law, a plaintiff must prove that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks and citation omitted).

"The existence of probable cause to arrest constitutes justification and is a 'complete defense to an action for false arrest' . . . whether that action is brought under state law or under § 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).  Indeed, because a false arrest claim under New York law is substantially the same as a Section 1983 false arrest claim, the analysis of both claims are identical.  *See e.g., Grice v. Town of Greenburgh*, No. 13-cv-1776 (NSR), 2015 U.S. Dist. LEXIS 164407, at *12 (S.D.N.Y. Dec. 7, 2015).

Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer*, 63 F.3d at 118 (2d Cir. 1995)

(internal quotation marks and citations omitted). Further, under the collective knowledge doctrine or fellow officer rule, an arresting officer has probable cause to arrest even if relying on knowledge obtained by other officers during an investigation. *See, e.g., Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) ("[F]or the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all.'") (citation omitted).

Probable cause requires only a probability, and not 'hard certainties' or even a *prima facie* showing of criminal activity." *De Michele v. City of New York*, No. 09 Civ. 9334 (PGG), 2012 U.S. Dist. LEXIS 136460, at *37 (S.D.N.Y. Sept. 24, 2012) (Gardephe, J.) (citation omitted). Moreover, "the validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *See, e.g.*, *Haussman v. Fergus*, 894 F. Supp. 142, 147 (S.D.N.Y. 1995). Thus, whether the charges for which plaintiff was arrested are later dismissed is irrelevant to a determination of probable cause at the time of arrest. *See, e.g., Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979); *see also, e.g., De Michele*, 2012 U.S. Dist. LEXIS 136460, at *22 (Gardephe, J.) ("The eventual disposition of a criminal charge is irrelevant to the probable cause determination for false arrest."). "'The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers.'" *De Michele*, 2012 U.S. Dist. LEXIS 136460, at *20 (Gardephe, J.) (quoting *Weyant*, 101 F.3d at 852).

It is well settled that information provided by an identified citizen accusing another individual of a specific crime is legally sufficient to provide the police with probable cause to arrest. *See, e.g., Kramer v. New York*, 569 N.Y.S.2d 67, 68 (N.Y. App. Div. 1991); *see also, e.g., De Michele*, 2012 U.S. Dist. LEXIS 136460, at *20-21 (Gardephe, J.) ("'It is well-

established that a law enforcement official has probable cause to arrest of he received his information from some person, normally the putative victim or eyewitness.'") (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)); *Wahhab v. City of New York*, 386 F. Supp. 2d 277, 287 (S.D.N.Y. 2005) ("Probable cause will generally be found to exist when an officer is advised of a crime by a victim or an eyewitness.").  Indeed, "an identified citizen informant is presumed to be reliable."  *Panetta v. Crowley*, 460 F.2d 388, 395 (2d Cir. 2006) (internal quotation marks and citation omitted).

Because an unequivocal identification of a suspect received by police from a victim or eyewitness can provide probable cause then, "[a]ssuming the information . . . relied upon was wrong, probable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information."  *Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994) (citing *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983)); *see also, e.g., Candelario v. City of New York*, No. 12 Civ. 1206 (LAP), 2013 U.S. Dist. LEXIS 48412, at *15 (S.D.N.Y. Mar. 29, 2013) ("An 'eyewitness's unequivocal identification of an individual as the perpetrator of the crime generally establishes probable cause, as long as it is reasonable to believe the eyewitness under the circumstances.'") (citation omitted); *De Michele*, 2012 U.S. Dist. LEXIS 136460, at *22-23 (Gardephe, J.) ("A witness identification that later proves mistaken may nonetheless provide a basis to find probable cause.").

"It does not matter that an investigation might have cast doubt upon the basis for the arrest.  *Omar v. City of New York*, No. 13 Civ. 8264 (NRB), 2015 U.S. Dist. LEXIS 4470, at *8 (S.D.N.Y. Jan. 5, 2015) (internal quotation marks and citation omitted).  "Once a police officer has a reasonable basis to believe there is probable cause to arrest, he is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest."  *Panetta*,

460 F.3d at 396 (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)). "Nor does it matter that an investigation might have cast doubt upon the basis for the arrest." *Id.* Quite simply, "[t]he police are not obligated to pursue every lead that may yield evidence beneficial to the accused, even though they had knowledge of the lead and the capacity to investigate it." *Gisondi v. Harrison*, 528 N.E.2d 157, 160 (N.Y. 1988). Furthermore, police officers "have no duty to investigate an exculpatory statement of the accused, and their refusal to do so does not defeat probable cause." *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 135 (E.D.N.Y. 1998); *see also, e.g., Jean v. Montina*, 412 F. App'x 352, 353-54 (2d Cir. 2011) (affirming finding of probable cause despite officers' failure to interview the arrestee or other witnesses). Police officers are "neither required nor allowed to sit as prosecutor, judge or jury." *Smith v. City of New York*, 388 F. Supp. 2d 179, 185 (S.D.N.Y. 2005) (internal quotation marks and citation omitted).

Here, there was probable cause to arrest plaintiff based on information obtained from the Grand Jury Witness. It is undisputed that the Grand Jury Witness informed Det. Godino that he saw plaintiff, a person with whom he had a personal and familial relationship, hand a firearm to plaintiff's brother, Dior Creighton. *See* 56.1 Stmt. at ¶¶ 6, 32. The Grand Jury Witness further informed Det. Godino that, shortly thereafter, he saw Dior Creighton use that firearm in a shooting outside of the bodega. *See id.* at ¶ 7. Det. Godino memorialized this information in his spiral notebook. *See id.* at ¶¶ 8-9.

Det. Godino had no reason to doubt the truthfulness or reliability of this information. Indeed, Det. Godino had previously received reliable and credible information from the Grand Jury Witness in connection with a prior shooting case, which resulted in an arrest and guilty plea. *See id.* at ¶ 5. In addition, Det. Godino reviewed a surveillance videotape with the Grand Jury

Witness and, based upon that review, was able to reasonably determine that he was indeed in a position to see plaintiff hand the firearm to Dior Creighton. *See id.* at ¶¶ 10-13.

Plaintiff was arrested and charged with three crimes: Criminal Facilitation in the Second Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon in the Third Degree. *See id.* at ¶ 21. Pursuant to New York State Penal Law § 115.05 at the time of plaintiff's arrest, "[a] person is guilty of criminal facilitation in the second degree when, believing it probable that he is rendering aid to a person who intends to commit a class A felony, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit such class A felony." Pursuant to New York State Penal Law §265.03(3) at the time of plaintiff's arrest, "[a] person is guilty of criminal possession of a weapon in the second degree when … such person possesses any loaded firearm" and such possession does not take "place in such person's home or place of business." There was probable cause to arrest plaintiff on both of these charges because the Grand Jury Witness informed the police that he saw plaintiff pass a firearm to Dior Creighton in a bodega and that he then saw Dior Creighton use that firearm in connection with a shooting which resulted in the death of one person and serious injury to another.

Pursuant to New York State Penal Law §265.02(1) at the time of plaintiff's arrest, "[a] person is guilty of criminal possession of a weapon in the third degree when [s]uch person commits the crime of criminal possession of a weapon in fourth degree … and has been previously convicted of any crime." Pursuant to New York State Penal Law §265.01(1) at the time of plaintiff's arrest, "[a] person is guilty of criminal possession of a weapon in the fourth degree when . . . [h]e possesses any firearm." There was probable cause to arrest plaintiff on this

charge because, in addition to the information provided by the Grand Jury Witness, plaintiff had been previously convicted of Attempted Robbery in the Second Degree. *See* 56.1 Stmt. at ¶ 35.

In any event, courts have repeatedly held that "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004)); *see also Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]n arrest is not unlawful so long as the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed any crime.").

Probable cause is ***not*** vitiated by the existence of conflicting or competing evidence. Rather, "when an arresting officer is faced with competing accounts from different eyewitnesses, an officer is entitled to make an arrest based on believing the testimony of one side or the other." *Pawlicki v. City of Ithaca*, 993 F. Supp. 140, 145 (N.D.N.Y. 1998). Thus, "[t]he Second Circuit has held consistently that conflicting accounts of a crime do not vitiate the probable cause established by an eyewitness identification . . . of a crime." *Crews v. County of Nassau*, 996 F. Supp. 2d 186, 205 (E.D.N.Y. 2014) (citing cases); *see also, e.g., Curley*, 268 F.3d at 70 (conflicting accounts of arrestee and two eyewitnesses did not undermine probable cause established by eyewitness's statements inculpating arrestee).

Although conflicting evidence may be relevant to the issue of whether guilt beyond a reasonable doubt could have been proved at a criminal trial, it has no bearing on whether there was sufficient evidence to show probable cause to believe that plaintiff committed the charged

crimes. *See, e.g., Gisondi*, 528 N.E.2d at 160. Accordingly, plaintiff's false arrest claim should be dismissed.

**B.      The Police Defendants Are At Least Entitled To Qualified Immunity**

Qualified immunity is "an immunity from suit rather than a mere defense to liability … [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). This doctrine is "an entitlement not to stand trial or face the other burdens of litigation." *Id.* Therefore, qualified immunity questions should be resolved "at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Here, qualified immunity is dispositive; a decision in the favor of defendants Godino and Roberts (collectively, the "police defendants") would resolve the entire case as against them. Thus, the Court should decide this issue at this juncture.

New York law affords "a defense of qualified immunity for government officials to state law claims such as those for false arrest and imprisonment wherever the official's action is not taken in bad faith or without a reasonable basis." *Mesa v. City of New York*, No. 09 Civ. 10464 (JPO), 2013 U.S. Dist. LEXIS 1097, at *37-38 (S.D.N.Y. Jan. 3, 2013) (citing *Blouin ex rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 364 (2d Cir. 2004)). "This reasonableness standard is the same standard as that applied in federal qualified immunity analysis; thus, where an officer's actions are deemed objectively reasonable, that officer will be immune under both federal and state law." *Mesa*, 2013 U.S. Dist. LEXIS 1097, at *38 (citing *Jones v. Parmley*, 465 F.3d 46, 64 (2d Cir. 2006)).

The purpose of qualified immunity is to protect government employees from civil liability where performance of their discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The main "concern of the immunity inquiry is to

acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Poe v. Leonard*, 282 F.3d 123, 133 (2d Cir. 2002). Law enforcement officers "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The application of qualified immunity is important because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials − like other officials who act in ways they reasonably believe to be lawful − should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The qualified immunity standard is often referred to as "arguable probable cause" and is defined by the Second Circuit as existing when "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question ***could*** have reasonably believed that probable cause existed in the light of well established law." *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) (internal quotation marks and citation omitted) (emphasis in original). Further, "an arresting officer is entitled to qualified immunity "as a matter of law if the undisputed facts and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met." *McClellan v. Smith*, 439 F.3d 137, 147-48 (2d Cir. 2006) (internal quotation marks, emphasis and citation omitted); *see also, e.g., Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("A police officer is entitled to qualified immunity shielding him or her from damages for false arrest where (1) it was objectively reasonable for the officer to believe

there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest."). "Put another way, an arresting officer will find protection under the defense of qualified immunity unless 'no reasonably competent officer' could have concluded, based on the facts known at the time of the arrest, that probable cause existed." *Figueroa v. Mazza*, No. 14-4116-cv, 2016 U.S. App. LEXIS 10152, at *21 (2d Cir. June 3, 2016).

In the present case, it was certainly objectively reasonable for the police defendants to believe there was probable cause to arrest plaintiff on the basis of the information obtained from the Grand Jury Witness that he saw plaintiff hand a firearm to Dior Creighton. This is true even in the face of a conflicting eyewitness account. *See, e.g., Benn v. Kissane*, 510 F. App'x 34, 38 (2d Cir. 2013) (finding defendant officers entitled to qualified immunity for arrest and prosecution of plaintiff for arson despite differing eyewitness accounts). Therefore, because there was at least "arguable probable cause" for plaintiff's arrest, the police defendants are entitled to qualified immunity.

## POINT II
## PLAINTIFF'S MALICIOUS PROSECUTION
## CLAIMS SHOULD BE DISMISSED

Under New York law, to establish a claim of malicious prosecution, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (internal quotation marks and citation omitted). In addition to these state law elements, a malicious prosecution claim brought under Section 1983 requires showing "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

"[T]he law places a **heavy burden** on malicious prosecution plaintiffs." *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004) (internal quotation marks and citation omitted) (emphasis added). Courts apply the same analysis to malicious prosecution claims brought pursuant to Section 1983 and New York state law. *See, e.g., Miyares v. City of New York*, No. 11 Civ. 4297 (RJS), 2013 U.S. Dist. LEXIS 110406**,** at *19 (S.D.N.Y. July 31, 2013).

## A. There Was Probable Cause To Prosecute Plaintiff

"Courts considering a malicious prosecution claim must determine whether, at the time a prosecution as commended, 'there was probable cause to believe the criminal proceeding could succeed and, hence, should be commended.'" *De Michele*, 2012 U.S. Dist. LEXIS 136460, at * 57 (Gardephe, J.) (citation omitted). "As with a false arrest claim, the presence of probable cause is a **complete defense** to an action for malicious prosecution." *Id.* (internal quotation marks and citation omitted) (emphasis added). "[P]robable cause does not require a 'certitude' that a crime has been committed by a suspect. Rather, a malicious prosecution connotes a decision to proceed maliciously with the prosecution of an individual where probable cause is **clearly** lacking." *Brown v. New York*, 459 N.Y.S.2d 589, 591 (N.Y. App. Div. 1983) (emphasis added) (internal citation omitted). "[O]nce probable cause has been established, it is impossible for plaintiff to prevail on a malicious prosecution claim as a matter of law." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013).

As explained above, there are no genuine issues as to the facts which provided probable cause to arrest plaintiff. Quite simply, there was probable cause to arrest plaintiff on the basis of the information provided by the Grand Jury Witness.

In order to still have a viable malicious prosecution claim once a Court determines that a plaintiff's arrest was supported by probable cause, the plaintiff "must demonstrate that evidence uncovered after this arrest, but before the Criminal Complaint was filed, vitiated probable cause"

*De Michele*, 2012 U.S. Dist. LEXIS 136460, at *58 (Gardephe, J.). Here, plaintiff was arrested on January 10, 2007 at 4:50 p.m.. *See* 56.1 Stmt. at ¶ 21. The criminal complaint was filed just over four hours later, at 9:00 p.m. *See id.* at ¶ 24. Plaintiff neither alleges nor is there any evidence supporting an allegation that some new evidence was uncovered within those four hours to vitiate probable cause.

In addition, where, as here, the prosecutor meets with an eyewitness prior to the Grand Jury proceeding, probable cause to indict a plaintiff exists. *See id.* at ¶¶ 16, 18-19. Thus, in *Bermudez v. City of New York*, 790 F.2d 368, 376-77 (2d Cir. 2015), the court held that where the prosecutor met with the two witnesses who testified at the Grand Jury – one of whom told the prosecutor and then testified at the Grand Jury that he saw the plaintiff reach behind his back for a gun and the other of whom told the prosecutor and then testified at the Grand Jury that he saw plaintiff shoot the victim – such interviews provided the prosecutor with probable cause to prosecute plaintiff." Accordingly, plaintiff's malicious prosecution claim should be dismissed.

Moreover, a determination that there was "arguable probable cause" to arrest plaintiff precludes malicious prosecution claim as against the police defendants, as they would be entitled to qualified immunity. *See, e.g., Jean v. Montina*, 412 F. App'x 352, 354-55 (2d Cir. 2011) ("[E]ven assuming *arguendo* that there was a question of fact sufficient to defeat summary judgment on the merits as to whether there was probable cause . . . to charge [plaintiff], we conclude that [defendant] would nonetheless be entitled to qualified immunity for having "arguable probable cause" to . . . charge.").

**B.     Plaintiff Is Unable To Rebut The Presumption Of Probable Cause Created By The Indictment**

It is undisputed that plaintiff was indicted on January 23, 2007. *See* 56.1 Stmt. at ¶ 33. This "indictment by a grand jury creates a presumption of probable cause that may *only* be

rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino*, 331 F.3d at 72 (emphasis in original) (citation omitted). The plaintiff bears the burden of proof in rebutting the presumption of probable cause that arises from an indictment. *See, e.g., id.* at 73. "In order to survive a motion for summary judgment on the malicious prosecution claim, [plaintiff] must . . . submit[] evidence sufficient for a reasonable jury to find that his indictment was procured as a result of police conduct undertaken in bad faith." *Id.*

As an initial matter, as previously noted by the Court, plaintiff has failed to plead sufficient facts to overcome this presumption. *See* Dec. 10, 2015 Transcript, Docket No. 83 at 4:11-20; *see also* May 19, 2016 Transcript at 16:11-16 (Ex. AA). In addition, plaintiff is unable to point to sufficient evidence for a reasonable jury to find that this indictment was procured as a result of police conduct undertaken in bad faith.

"The simple act of not disclosing to the grand jury all evidence that could potentially benefit the accused at a grand jury hearing does not necessarily rise to the level of bad faith." *Parisi v. Suffolk County*, No. 04-CV-2187 (ENV) (ETB), 2009 U.S. Dist. LEXIS 112388, at *10 (E.D.N.Y. Nov. 30, 2009). Indeed, prosecutors are not required to present exculpatory evidence to a Grand Jury. *See, e.g., United States v. Williams*, 504 U.S. 36, 52 (1992) ("Imposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with th[e] [grand jury] system."); *Savino*, 331 F.3d at 75 (holding that the prosecutor, who had the discretion and authority to decide what evidence to present to the grand jury[,] was under no duty to present every item of arguably exculpatory evidence in seeking an indictment"); *Richards v. City of New York*, No. 97 Civ. 7990 (MBM), 2003 U.S. Dist. LEXIS 8037, at *44 (S.D.N.Y. May 7, 2003) ("[T]he government has no constitutional obligation to

present exculpatory material to a grand jury.").  "[C]ourts routinely find that the grand jury presumption is not overcome by a failure to disclose conflicting eyewitness accounts." *O'Brien v. City of Yonkers*, No. 07-CV-3974 (KMK) (LMS), 2013 U.S. Dist. LEXIS 43551, at *52 (S.D.N.Y. Mar. 22, 2013).  Rather, "courts have held that police officers act in bad faith only when they fail to disclose evidence that would 'conclusively' establish the plaintiff's innocence . . . or negate the possibility that plaintiff had committed the crime." *King v. City of New York*, Nos. 12-CV-2344 (NGG) (RER), 13-CV-0037 (NGG) (RER), 2014 U.S. Dist. LEXIS 140790, at *14 (E.D.N.Y. Sept. 30, 2014) (internal quotation marks and citations omitted).

Because plaintiff is unable to make any such showing, plaintiff's is unable to rebut the presumption created by the indictment and, accordingly, plaintiff's malicious prosecution claim should be dismissed.

## C.    Plaintiff Is Collaterally Estopped From Challenging The Sufficiency Of The Grand Jury Proceeding

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a lull and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007).  Here, following plaintiff's motion to inspect the Grand Jury minutes and to dismiss the indictment, the criminal court found that "[t]he evidence presented to the Grand Jury established a *prima facie* case of the [plaintiff's] commission of the charges contained in the indictment." *See* 56.1 Stmt. at ¶ 43.  Therefore, plaintiff is collaterally estopped from challenging the sufficiency of the Grand Jury proceeding in this case.  Accordingly, plaintiff is unable to rebut the presumption of probable cause created by the indictment and his malicious prosecution claim should be dismissed.

### D.      Plaintiff Cannot Prove Initiation

The Second Circuit has held that "[i]nitiation in [the context of malicious prosecution] is a term of art," involving more than merely reporting a crime and giving testimony; "it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman*, 215 F.3d at 217 (internal quotation marks and citation omitted). "One who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding." *Present v. Avon Prods, Inc.*, 687 N.Y.S.2d 330, 335 (App. Div. 1999). "[A] malicious-prosecution claim cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by [the] police." *Alcantara v. City of New York*, 646 F. Supp. 2d 449, 457 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).

"New York law imposes a presumption that a prosecutor exercises his own independent judgment in deciding to prosecute a criminal defendant." *Gilman v. Marsh & McLennan Cos., Inc.*, 868 F. Supp. 2d 118, 128 (S.D.N.Y. 2012) (citation omitted). Thus, "'once a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution.'" *Jouthe v. City of New York*, No. 05-CV-1374 (NGG) (VVP), 2009 U.S. Dist. LEXIS 18163, at *35 (E.D.N.Y. Mar. 10, 2009) (citation omitted); *see also Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) ("It is well settled that the chain of causation between a police offer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment.").

Here, plaintiff is not able to rebut the presumption. Indeed, A.D.A. Birns not only exercised his own independent judgment in deciding to prosecute plaintiff, he made his own independent judgment to authorize plaintiff's arrest, and he did so after personally meeting with

the Grand Jury Witness and assessing his credibility. *See* 56.1 Stmt. at ¶¶ 16-20. Once plaintiff was formally charged, the police defendants' responsibility for the prosecution ended. Accordingly, plaintiff's malicious prosecution claim against the police defendants should be dismissed and, as discussed under Point VIII below, defendants Birns and Talty (collectively, the "prosecutor defendants") are entitled to absolute immunity for all of their prosecutorial actions.

**E.    There Was No Improper Post-Arraignment Deprivation Of Plaintiff's Liberty**

Plaintiff was arrested on January 10, 2007 and arraigned on January 11, 2007. *See id.* at ¶¶ 24, 26. Bail was set at $10,000. *See id.* at ¶ 28. However, on or about February 1, 2007, plaintiff was charged with violating the terms of his probation as a result of unrelated arrests and a probation hold took effect. *See id.* at ¶ 34. Bail was never set on the violation of probation charge. *See id.* at ¶ 38. Instead, plaintiff was remanded on the charge. *See id.* On January 19, 2012, plaintiff pled guilty to the violation of probation charge and the criminal court judge terminated the charge unfavorably, sentencing plaintiff to time served. *See id.* at ¶¶ 54-57. Therefore, the vast majority of plaintiff's time in custody was not improper because plaintiff was held pursuant to a probation hold and, even if he had posted the $10,000 bail, he would have remained incarcerated. *See id.* at ¶ 39. Accordingly, defendants are not liable for that time spent in custody.

**POINT III**
**PLAINTIFF'S PROCEDURAL AND**
**SUBSTANTIVE DUE PROCESS CLAIMS**
**SHOULD BE DISMISSED**

Plaintiff's claim based on an alleged violation of procedural due process is duplicative of his false arrest and malicious prosecution claims and therefore should be dismissed. *See, e.g., Ambrose v. City of New York*, 623 F. Supp. 2d 454, 474 n.9 (S.D.N.Y. 2009) (noting that plaintiff could not "state a claim for the violation of his procedural due process rights," because such a

claim was subsumed in his claims for false arrest and malicious prosecution); *Osuna v. City of New York*, No. 08 Civ. 4759 (JSR), 2009 U.S. Dist. LEXIS 66282, at *16-17 (S.D.N.Y. July 28, 2009) ("This claim is based on the same conduct that gave rise to plaintiff's now-dismissed false arrest and malicious prosecution claims, however, thus requiring plaintiff's procedural due process claim to be dismissed as both duplicative and meritless."); *Hickey v. City of New York*, No. 01 Civ. 6506 (GEL), 2004 U.S. Dist. LEXIS 23941, at *65-67 (S.D.N.Y. Nov. 29, 2004) (dismissing plaintiffs' procedural due process claims as duplicative of their false arrest claims).

Similarly, plaintiff's substantive due process claim should also be dismissed because, "no separate cause of action exists under the rubric of substantive due process with respect to the deprivation of [plaintiff's] liberty interest." *Biswas v. City of New York*, 973 F. Supp. 2d 504, 524 (S.D.N.Y. 2013); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular amendment 'provides an explicit textual source of constitutional protection . . . that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.") (citation omitted). Rather, "plaintiff's claim of deprivation of liberty must be analyzed under the Fourth Amendment as a false arrest claim rather than as a substantive due process claim." *Biswas*, 973 F. Supp. 2d at 524.

Tellingly, in the Amended Complaint, plaintiff alleges that his substantive and procedural due process rights were caused by defendants' "conduct and actions in ***falsely arresting and imprisoning*** plaintiff and ***maliciously prosecuting*** him." Amended Complaint, Docket No. 10, at ¶ 102. Moreover, plaintiff's more specific allegations (i.e., that defendants "fabricat[ed] an account and/or evidence concerning the arrest of plaintiff," "with[eld] exculpatory evidence," and "fail[ed] to properly investigate) are not only conclusory but identical to the allegations he makes with respect to his Section 1983 false arrest, malicious prosecution and abuse of process

claims. *Compare id.* at ¶ 104 with *id.* at ¶ 84. Because plaintiff's procedural and substantive due process claims are duplicative of his false arrest and malicious prosecution claims, they should be dismissed.

**POINT IV**
**PLAINTIFF'S UNREASONABLY**
**PROLONGED DETENTION CLAIM**
**SHOULD BE DISMISSED**

To prevail on a claim of prolonged or excessive detention, a plaintiff must demonstrate "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 205 (2d Cir. 2007) (citation omitted). Even if a plaintiff proves these elements, he cannot prevail if the officers establish that they are entitled to qualified immunity. *See id.*

"In order to satisfy the *Russo* standard for excessive pre-trial detention, [the] exculpatory evidence must have . . . ***conclusively or affirmatively*** established [plaintiff's] innocence." *King v. City of New York*, Nos. 12-CV-02344 (NGG) (RER), 13-CV-00037 (NGG) (RER), 2014 U.S. Dist. LEXIS 141441, at *42 (E.D.N.Y. July 31, 2014) (emphasis added). "[W]here the evidence [allegedly] ignored is only arguably exculpatory, the conduct does not shock the conscience." *Nzegwu v. Friedman*, No. 10-CV-02994 (CBA) (RML), 2014 U.S. Dist. LEXIS 44019, at *45 (E.D.N.Y. Mar. 31, 2014).

Plaintiff's claim for unreasonably prolonged detention should be dismissed because plaintiff cannot demonstrate the existence of exculpatory evidence which ***conclusively established*** plaintiff's innocence. Here, the arguably exculpatory evidence, another witness's identification of another culprit, may tend to create doubt as to whether plaintiff committed the

crimes charged, but it certainly does not conclusively establish plaintiff's innocence in light of the identification by another eyewitness. It is nothing more than conflicting evidence.

In addition, there is no evidence to suggest that the police defendants actively hid any potentially exculpatory evidence. Indeed, such evidence was in plaintiff's possession during the course of the criminal case, *see* 56.1 Smt. at ¶ 46, and plaintiff's criminal defense attorney made no motion, nor did he take any other affirmative action, upon receiving this purportedly exculpatory evidence. *See id.* at ¶ 47.

Plaintiff's claim should also be dismissed because his prolonged detention was a result of the probation hold which took effect shortly after his incarceration. *See, e.g., Heyliger v. City of Binghamton Police Dep't*, No. 3:11-CV-1293 (NAM/DEP), 2016 U.S. Dist. LEXIS 31313, at *40 (N.D.N.Y. Mar. 11, 2016) (dismissing plaintiff's unreasonably prolonged detention claim in part because "the record demonstrates that plaintiff's continued custody . . . stemmed not from any officer misconduct but rather from his inability to post . . . bail").

## POINT V
## PLAINTIFF'S MALICIOUS ABUSE OF
## PROCESS CLAIMS SHOULD BE DISMISSED

"Whereas malicious prosecution concerns the improper issuance of process, malicious abuse of process concerns 'the improper use of process after it is regularly issued.'" *Lee v. Cornell*, No. 1:13-cv-8359, 2016 U.S. Dist. LEXIS 44660, at *12 (S.D.N.Y. Mar. 31, 2016) (citation omitted). "To establish a claim for malicious abuse of process under section 1983 in New York, [plaintiff] must demonstrate that [defendants] (1) employed regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Id.* at *12-13. "Because a section 1983 claim for abuse of

process borrows its elements from New York state law, both the federal and state claim follow the same analysis." *Id.* at \*16.

As previously noted by the Court, plaintiff has failed to plead sufficient facts with respect to his malicious abuse of process claims. *See* Dec. 10, 2015 Transcript, Docket No. 83 at 6:21-7:11; *see also* May 19, 2016 Transcript at 17:20-22 (Ex. AA). Specifically, the Court noted that "as currently pled there aren't enough facts to make out [an abuse] of process claim under state law or under Section 1983." Dec. 10, 2015 Transcript, Docket No. 83 at 7:9-11.

Here, plaintiff has pled no facts to establish the third element of an abuse of process claim. Indeed, plaintiff's allegations in this respect are nonsensical in that they refer to a robbery investigation. *See* Amended Complaint, Docket No. 10, at ¶ 80. Regardless, plaintiff does not plead any facts supporting an allegation that defendants aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.

In any event, plaintiff's malicious abuse of process claims fail as a matter of law because, as explained above, there was probable cause to arrest plaintiff. *See, e.g., Sforza v. City of New York*, No. 07 Civ. 6122 (DLC), 2009 U.S. Dist. LEXIS 27358, at \*17 (S.D.N.Y. Mar. 31, 2009) ("While a lack of probable cause is not explicitly an element of an abuse of process claim, the presence of probable cause negates a claim for abuse of process," because it provides an excuse or justification for the prosecution); *see also, e.g., Villa v. City of New York*, No. 11 Civ. 1669 (RJS), 2013 U.S. Dist. LEXIS 49830, at \*15 (S.D.N.Y. Mar. 14, 2013) ("[P]robable cause is a complete defense to Plaintiff's claims for . . . abuse of process.").

## POINT VI
## PLAINTIFF'S CONSPIRACY CLAIM
## SHOULD BE DISMISSED

As an initial matter, as previously noted by the Court, plaintiff has failed to plead sufficient facts with respect to his conspiracy claim. *See* Dec. 10, 2015 Transcript, Docket No.

83 at 4:21-24; *see also* May 19, 2016 Transcript at 16:17-19 (Ex AA). In support of his claim, plaintiff merely makes conclusory allegations which are plainly insufficient to avoid dismissal. *See, e.g., Sudler v. City of New York*, No. 08 Civ. 11389 (GBD) (AJP), 2010 U.S. Dist. LEXIS 1566, at *45-47 (S.D.N.Y. Jan. 8, 2010).

In any event, plaintiff's conspiracy claims fails as a matter of law because he is unable to show any "deprivation of a federal constitutional right, and therefore there can be no civil rights conspiracy to deprive that right." *Young v. County of Fulton*, 160 F.3d 899, 904 (2d Cir. 1998); *see also, e.g., Edwards v. Horn*, No. 10 Civ. 6194 (RJS)(JLC), 2012 U.S. Dist. LEXIS 30968, at *67 (S.D.N.Y. Mar. 8, 2012) ("If a plaintiff fails to show an underlying constitutional violation on which to base a Section 1983 conspiracy claim, the conspiracy claim fails as a matter of law."); *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) ("A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right.").

Furthermore, because the prosecutor defendants are entitled to absolute immunity, for the reasons discussed below under Point VIII, plaintiff cannot state a claim for conspiracy under Section 1983. *See, e.g., Delarosa v. Serita*, No. 14-CV-737 (MKB), 2014 U.S. Dist. LEXIS 58733, at *11 (E.D.N.Y. Apr. 28, 2014) ("A claim of conspiracy to deprive Plaintiff of his constitutional rights cannot stand where the state actors in question have absolute immunity."). "Without any state actors with whom [the police defendants] could have conspired to deprive Plaintiff of his Constitutional rights," plaintiff is unable to state a claim for conspiracy pursuant to Section 1983. *Id.* at *11-12. In addition, "insofar as defendants are shield by qualified immunity . . . this further shields them on the conspiracy charge." *Chodkowski v. City of New York*, No. 06 CV 7120 (LBS), 2007 U.S. Dist. LEXIS 67822, at *23 (S.D.N.Y. Sept. 12, 2007). Accordingly, plaintiff's conspiracy claim should be dismissed.

## POINT VII
## PLAINTIFF'S FAILURE TO INTERVENE
## CLAIM SHOULD BE DISMISSED

As an initial matter, as previously noted by the Court, plaintiff has failed to plead sufficient facts with respect to his failure to intervene claim. *See* Dec. 10, 2015 Transcript. Docket No. 83 at 7:12-18:10; *see also* May 19, 2016 Transcript at 17:23-25 (Ex. AA).

Plaintiff also fails to identify which defendants allegedly failed to intervene to prevent the alleged illegal acts. To the extent plaintiffs assert that the defendants directly participated in the alleged wrongful acts, they may not also be held liable for failure to intervene. *See, e.g., Jackson v. City of New York*, 939 F. Supp. 2d 219, 232 (E.D.N.Y. 2013) ("The Court has already concluded [that the two officers] both may be held liable under a theory of direct participation, therefore neither would be held liable for failure to intervene."). As plaintiff alleges that all of the individually named defendants directly participated in the underlying arrests and/or prosecution, the failure to intervene claim must be dismissed against all individual defendants.

Furthermore, because there was probable cause to arrest and prosecute plaintiff, as explained above, there were no underlying constitutional violations upon which to intervene. Accordingly, plaintiff's failure to intervene claim must be dismissed. *See, e.g., Feinberg v. City of New York*, No. 99 Civ. 12127 (RCC), 2004 U.S. Dist. LEXIS 16098, at *4 (S.D.N.Y. Aug. 13, 2004) ("If the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis ends.").

## POINT VIII
## THE PROSECUTOR DEFENDANTS ARE
## ENTITLED TO ABSOLUTE IMMUNITY

As an initial matter, to the extent the prosecutor defendants are sued in their official capacity, plaintiff's claims are barred by the Eleventh Amendment. A suit for money damages against a district attorney or his or her assistant district attorneys, in their official capacities, is

actually a suit against New York State, and is barred by the Eleventh Amendment. *See, e.g.,* *Ying Jing* Gan, 996 F.2d at 536; *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (holding that the Eleventh Amendment bars claims for money damages asserted against assistant district attorneys in their official capacities). In addition, "a state official sued in his official capacity is [not] a 'person' within the meaning" of Section 1983 and, therefore, cannot be held liable pursuant to that section. *Ying Jing* Gan, 996 F.2d at 536.

The prosecutor defendants are also entitled to absolute immunity for any claims brought against them in their individual capacity. It is well-settled that prosecutors are entitled to absolute immunity for activities that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430, (1976). Such activities include their decision to initiate a prosecution and "the choices they make regarding evidence presented to the Grand Jury." *Williams v. City of New York*, No. 02 Civ. 3693 (CBM), 2003 U.S. Dist. LEXIS 19078, at *18 (S.DN.Y. Oct. 23, 2003) (citing *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir. 1984)); *see also Kent v. Cardone*, 404 F. App'x 540, 542-43 (2d Cir. 2011) (holding prosecutor entitled to absolute immunity for "initiating a prosecution . . . as well as for his performance of tasks as an advocate in the conduct of the prosecution") (internal quotation marks and citation omitted). Absolute immunity also covers prosecutorial actions in connection with bail applications. *See, e.g., Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1994).

Absolute immunity applies notwithstanding a plaintiff's allegations that there was no probable cause to initiate prosecution against him and/or that the prosecutor defendants presented false evidence and withheld exculpatory evidence from the Grand Jury. *See, e.g., Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) (absolute immunity shields "a prosecutor's decision to bring an indictment, whether he has probable cause or not"); *Hill v. City of New York*, 45 F.3d

653, 661 (2d Cir. 1995) (prosecutor's alleged acts of "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" were "clearly protected by the doctrine of absolute immunity as all are part of his function as an advocate"). Absolute immunity "protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

The doctrine of absolute immunity protects prosecutors against "claims brought under state law," as well as those brought under Section 1983. *See, e.g., Shmueli v. City of New York*, 424 F.3d 231, 238 (2d Cir. 2005).

Therefore, to the extent that plaintiff's claims against the prosecutor defendants is based upon their initiation of the prosecution against him, their conduct before the Grand Jury, or their prosecutorial actions during the pendency of the criminal case, the prosecutor defendants are absolutely immune from liability.

The prosecutor defendants are entitled to absolute immunity even though they authorized plaintiff's arrest because courts have denied prosecutors absolute immunity only for initiating arrests 'without probable cause.'" *Swinton v. City of New York*, 785 F. Supp. 2d 3, 9 (E.D.N.Y. 2011) (citation omitted). "For authorizing an arrest indisputably based on probable cause, prosecutors are entitled to absolute immunity." *Id.* Prosecutors are also entitled to absolute immunity for "decision[s] as to what offenses are and are not to be charged." *Ying Jing* Gan, 996 F.2d at 530.

This is not a case where the police defendants were seeking the advice of the prosecutor defendants and asking whether there was probable cause to arrest plaintiff. Rather, there was probable cause to arrest plaintiff on the basis of the information obtained from the Grand Jury Witness. It was only after Detective Godino met and spoke with the Grand Jury Witness and

obtained sufficient information to warrant probable cause to arrest that Det. Godino requested authorization to arrest plaintiff, which was a general practice of the Bronx District Attorney's Office in homicide cases. *See* 56.1 Stmt. at ¶¶ 14, 17. The arrest authorization was merely a formality and not a process undertaken as part of an investigative process. Therefore, the prosecutor defendants are entitled to absolute immunity with respect to the false arrest claim.

In the alternative, the prosecutor defendants would, at the very least, still be entitled to qualified immunity with respect to plaintiff's false arrest claim for the same reasons that the police defendants are entitled to qualified immunity – namely that there was at least "arguable probable cause" to arrest plaintiff on the basis of the information obtained from the Grand Jury Witness. *See, e.g., Day v. Morgenthau,* 909 F.2d 75, 78 (2d Cir. 1990) (assistant district attorney who "directed" court officer to arrest plaintiff without probable cause would have qualified immunity on claim of false arrest if "it was objectively reasonable for [him] to believe that probable cause existed for the arrest").

## CONCLUSION

For the foregoing reasons, defendants City, Roberts, Godino, Johnson, Birns and Talty respectfully request that the Court grant their motion for summary judgment in its entirety, with prejudice, together with costs and fees the Court deems just and proper.

Dated: New York, New York
      June 27, 2016

                ZACHARY W. CARTER
                Corporation Counsel of the City of New York
                *Attorney for Defendants*
                100 Church Street
                New York, New York 10007

        By: _____
                Kavin Thadani, Esq.

TO:    Richard Gross, Esq. (via hand delivery and e-mail), *Attorney for Plaintiff*
        Michael Jaffe, Esq. (via e-mail only), *Attorney for Plaintiff*