1:12-cv-07454-PGG-DCF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH CREIGHTON,

                                  Plaintiff,

      -against-

THE CITY OF NEW YORK, DETECTIVE DEAN ROBERTS (Shield No. 05861), DETECTIVE GLENN GODINO (Shield No. 2756), POLICE OFFICERS JOHN DOES 1-10 (names being fictitious and presently unknown and intended to be employees of the NYPD who were involved in Plaintiff's arrest, detention, imprisonment, and/or prosecution), DISTRICT ATTORNEY ROBERT T. JOHNSON, ASSISTANT DISTRICT ATTORNEY BRUCE BIRNS A/K/A BURNS, ASSISTANT DISTRICT ATTORNEY ED TALTY a/k/a ED TULTY and ASSISTANT DISTRICT ATTORNEY MICHAEL COOPER,

                                  Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Kavin Thadani*
*Tel:  (212) 356-2351*
*Matter No. 2012-006428*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

I. PLAINTIFF'S FALSE ARREST CLAIM SHOULD BE DISMISSED ............................... 1

II. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ..................................... 6

III. DEFENDANTS BIRNS & TALTY ARE ENTITLED TO ABSOLUTE IMMUNITY ........ 6

IV. PLAINTIFF'S MALICIOUS PROSECUTION CLAIM SHOULD BE DISMISSED .......... 7

    1. There Was Probable Cause To Prosecute Plaintiff ............................................... 7

    2. Plaintiff Is Unable To Rebut The Presumption Of Probable Cause ..................... 7

    3. Plaintiff Is Unable To Prove Initiation .................................................................. 8

    4. There Was No Improper Post-Arraignment Deprivation Of Liberty .................... 8

V. PLAINTIFF'S DUE PROCESS CLAIMS SHOULD BE DISMISSED ............................... 9

VI. PLAINTIFF'S PROLONGED DETENTION CLAIM SHOULD BE DISMISSED ........... 10

VII. PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED ................................ 10

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                             **Pages**

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986) ................................................................................................................. 2

*Azurite Co. v. Amster & Co.*,
    844 F. Supp. 929 (S.D.N.Y. 1994) ........................................................................................... 5

*Bezuidenhout v. Abbott Labs. & Co.*,
    918 F. Supp. 2d 144 (E.D.N.Y. 2012) ..................................................................................... 1

*Figueroa v. Mazza*,
    No. 14-4116-cv, 2016 U.S. App. LEXIS 10152 (2d Cir. June 3, 2016) .................................. 6

*Jackson v. City of New York*,
    939 F. Supp. 2d 219 (E.D.N.Y. 2013) ................................................................................... 10

*Jones v. City of New York*,
    No. 13-CV-929 (ALC), 2016 U.S. Dist. LEXIS 44609 (S.D.N.Y. Mar. 31, 2016) ................. 8

*Lee v. Sandberg*,
    136 F.3d 94 (2d Cir. 1997) ....................................................................................................... 5

*Nelson v. Hernandez*,
    524 F. Supp. 2d 212 (E.D.N.Y. 2007) ..................................................................................... 3

*Roth v. United States*,
    No. 09 Civ. 8712 (GBD)(LMS), 2014 U.S. Dist. LEXIS 30086 (S.D.N.Y. Mar. 3, 2014) ...... 4

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003) ............................................................. 7, 8

*Swinton v. City of New York*,
    785 F. Supp. 2d 3 (E.D.N.Y. 2011) ......................................................................................... 7

*Townes v. City of New York*,
    176 F.3d 138 (2d Cir. 1999) ..................................................................................................... 8

*United States v. Wagner*,
    989 F. 2d 69 (2d Cir. 1993) ...................................................................................................... 3

*Walker v. Sankhi*,
    494 F. App'x 140 (2d Cir. 2012) .............................................................................................. 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
KENNETH CREIGHTON,

                                                             Plaintiff,

           -against-

THE CITY OF NEW YORK, et al.,

                                                             Defendants.
------------------------------------------------------------------------ x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

1:12-cv-07454-PGG-DCF

Defendants submit this Reply Memorandum of Law in further support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I. PLAINTIFF'S FALSE ARREST CLAIM SHOULD BE DISMISSED

On the undisputed facts, there was probable cause and, at a minimum, "arguable probable cause," to arrest and prosecute plaintiff for criminal facilitation and criminal possession of a weapon based on information provided by a credible eyewitness (the "Grand Jury Witness") that, on December 26, 2006, he saw plaintiff hand a firearm to plaintiff's brother, Dior Creighton, which was then used in connection with a shooting that resulted in the death of one individual and serious injury to another.[1]  In addition, it was entirely reasonable to rely upon the Grand Jury Witness's information, particularly where he had a proven track record of providing reliable information, he personally knew plaintiff, and his information was corroborated.

---

[1] Plaintiff does not properly dispute these material facts.  Indeed, plaintiff merely makes conclusory and unsupported allegations.  *See, e.g.,* Plaintiff Response to Defendants' Rule 56.1 Stmt. ("Pl. Resp.") at ¶¶ 6, 7, 12, 13, 30, 31.  However, "[m]ere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment." *Bezuidenhout v. Abbott Labs. & Co.*, 918 F. Supp. 2d 144, 151 (E.D.N.Y. 2012).  Rather, "[t]he non-moving party must produce 'significant probative evidence' demonstrating that a factual dispute does in fact exist; otherwise summary judgment is appropriate." *Id.*

The fact that another witness, Fawaz Terab, initially identified someone other than plaintiff (specifically, Kijafa Spruell) as the person who handed the firearm to Dior Creighton does not vitiate probable cause and is nothing more than conflicting evidence which perhaps supported probable cause to arrest Mr. Spruell as well.[2]

Unlike Mr. Terab, who on the undisputed facts initially informed the police that he didn't see anything, the Grand Jury Witness has never expressed any doubt or hesitation as to what he saw on December 26, 2006.  *See, e.g.,* Def. Resp. at ¶¶ 76, 242.  Therefore, plaintiff has resorted to disingenuously attacking his credibility and reliability.  Plaintiff first insists on referring to the Grand Jury Witness as a "confidential informant" or "CI" despite the fact that he was not acting in the capacity of a confidential informant as it relates to what he witnessed, although he happened to be an active confidential informant at the time.[3]  Contrary to plaintiff's assertions, A.D.A. Birns was aware that the Grand Jury Witness had a prior or current relationship with the N.Y.P.D. as an informant and A.D.A. Talty was aware that one of the eyewitnesses had a history as a confidential informant.  *See, e.g.,* Def. Resp. at ¶¶ 175, 178.

---

[2]  It is disputed as to whether, both before and after plaintiff's arrest, Mr. Terab actually recanted his initial identification of Mr. Spruell and instead identified plaintiff as the one who handed the firearm to Dior Creighton.  *See, e.g.,* Defendants Response to Plaintiff's Assertion of Facts in Response to Defendants' Stmt. Pursuant to Local Rule 56.1 ("Def. Resp.") at ¶ 90.  Accordingly, defendants dispute plaintiff's descriptions of Mr. Terab as "credible," "upstanding," and "reliable."  Nevertheless, this dispute of fact is not material because, even accepting that Mr. Terab did not recant his initial identification of Mr. Spruell, there was still probable cause, or at least "arguable probable cause," to arrest and prosecute plaintiff on the basis of the information obtained from the Grand Jury Witness.  *See, e.g., Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[3]  Throughout this litigation, defendants have sought to protect the identity of the Grand Jury Witness because he has an extensive history as a confidential informant and because he expressed fears with respect to retaliation from not only plaintiff and plaintiff's family, but from other individuals should his identity be revealed.  Plaintiff falsely contends that he was precluded from questioning Mr. Terab about whether the Grand Jury Witness was in the store as his deposition was explicitly kept open for that purpose.  *See, e.g.,* Plaintiff Ex. O at 122:15-123:2.

However, even accepting, *arguendo*, that the Grand Jury Witness is properly considered a confidential informant in this case, plaintiff is not able to withstand dismissal merely by arguing that confidential informants are generally not reliable. Indeed, "[i]t is reasonable to believe that an informant who has provided reliable information in the past will be reliable in the present." *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 222 (E.D.N.Y. 2007) (holding that "it was entirely appropriate for defendants to rely on the CI's identification of [plaintiff] in concluding they had probable cause to arrest him"); *see also, e.g., United States v. Wagner*, 989 F. 2d 69, 72-73 (2d Cir. 1993) ("Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of providing reliable information."). "Even where doubt as to an informant's motives exist, therefore, 'his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.'" *Nelson*, 524 F. Supp. 2d at 222 (citation omitted). "If an informant's information has been 'corroborated in material respects, the entire account may be credited, including parts without corroboration.'" *Id.* (citation omitted).

Here, the Grand Jury Witness had previously provided reliable information to the New York City Police Department ("NYPD"), and to Det. Godino specifically, and his detailed, first-hand account was corroborated by surveillance footage. *See, e.g.,* Def. 56.1 Stmt. at ¶ 5; Def. Resp. at ¶ 180. Moreover, both the police and the prosecutor determined that the Grand Jury Witness's information was reliable and corroborated in this case. For example, Det. Godino concluded that the Grand Jury Witness was in a position to see plaintiff hand off the firearm to Dior Creighton, learned that he ███████████████████████████████████████, thus obviating the possibility of a misidentification, and determined that there was nothing to indicate that he had any animosity or ill feelings towards plaintiff or Dior Creighton. *See, e.g.,* 56.1 Stmt.

3

at ¶¶ 13, 32; Def. Resp. at ¶¶ 114, 115, 140.  Similarly, A.D.A. Birns was also able to confirm that the Grand Jury Witness was inside the bodega when he saw plaintiff hand the firearm to Dior Creighton, concluded that the surveillance footage corroborated his information, and found him to be reliable.  *See, e.g.,* 56.1 Stmt. at ¶ 18; Def. Resp. at ¶¶ 140, 180.[4]  Therefore, the Grand Jury Witness provided reasonably trustworthy information and the circumstances did not raise doubt as to his veracity.  There were no grounds for questioning his credibility or reliability.[5]

Plaintiff's last gasp attempt to allege that Det. Godino fabricated evidence by "feeding" the Grand Jury Witness a story underscores plaintiff's desperation and realization that his claims are on the verge of dismissal.  Indeed, the only evidence that plaintiff cites to support this ludicrous assertion is that Det. Godino showed the witness the surveillance footage.  *See* Pl. Resp. at ¶¶ 6, 250.[6,7]  Plaintiff then proceeds to take the completely illogical leap to argue that

---

[4]   Plaintiff's assertions that the Grand Jury Witness was inhibited by recreational drugs or motivated by money is contrary to evidence in the record that he was not using drugs on a regular basis around the relevant time period and did not take any drugs on the date of the incident, let alone at the time of incident, and that no one promised him any money, that he was not expecting to receive any money, and that he was not trying to get any money; rather he unexpectedly received only a paltry $100 ***after*** he testified at the grand jury proceeding.  *See, e.g.,* Def. Resp. at ¶¶ 247-249, 257; *see also, e.g., Roth v. United States*, No. 09 Civ. 8712 (GBD)(LMS), 2014 U.S. Dist. LEXIS 30086, at *9 (S.D.N.Y. Mar. 3, 2014) ("Because the CI had no knowledge of the payment when testifying . . . it could not have motivated him to lie.").

[5]   Plaintiff misrepresents the Grand Jury Witness's deposition testimony and, specifically, his identification of Mr. Spruell.  Rather, at his deposition, he identified plaintiff on the surveillance footage as the person who passed the gun to Dior Creighton and explained that he mistakenly identified Mr. Spruell at first, and explained why he did so.  *See, e.g.,* Def. Resp. at ¶ 242.  In any event, his identifications at his deposition are irrelevant because his identification to police was not based upon any surveillance footage and his identification was made nearly ten years ago.

[6]   In his opposition briefing, plaintiff refers to other alleged evidence of fabrication but the fact that Mr. Terab has stated that plaintiff was not in the bodega at the time the firearm was passed and that the Grand Jury Witness does not appear in the surveillance footage does not in any way establish that evidence was fabricated.  As explained in defendants' 56.1 response statement, plaintiff's contentions that Grand Jury Witness identified Mr. Spruell in the surveillance footage during his deposition and that he was in the back of the store buying drugs are inaccurate and immaterial, and certainly do not establish the fabrication of evidence in any event.  *See, e.g.,* Def. Resp. at ¶¶ 242, 257.

4

Det. Godino showed the witness the footage beforehand in order to "feed" him a story. However, plaintiff's conclusory argument not only is unsupported by any facts in the record but is directly refuted. *See* Def. Resp. at ¶ 250. Nevertheless, plaintiff asks the Court to draw a "reasonable inference" based on pure conjecture. However, the court should not "credit unsupported factual allegations and innuendos," nor make unreasonable inferences from circumstantial evidence. *Azurite Co. v. Amster & Co.*, 844 F. Supp. 929, 937 (S.D.N.Y. 1994).[8]

Although it has no bearing on whether there was probable cause to arrest plaintiff, plaintiff also falsely represents that A.D.A. Birns and A.D.A. Talty were not made aware of Mr. Terab's initial identification of Mr. Spruell. Rather, the evidence supports only that Birns and Talty have no present recollection of being so informed, not that they were not in fact made aware. *See, e.g.,* Def. Resp. at ¶¶ 165, 183. Indeed, Det. Godino testified that he thinks he did inform A.D.A. Birns about Mr. Terab's initial identification and that he doesn't think there is any possibility that he didn't. *See, e.g., id.* at ¶ 183. Furthermore, Mr. Terab's initial statement and signed photo array were produced to plaintiff by the District Attorney's Office during the criminal case so the argument that the ADAs were not aware of these documents and Mr. Terab's identification of Mr. Spruell borders on nonsensical. *See, e.g.,* Def. 56.1 Stmt. at ¶ 46.

Plaintiff's arguments with respect to Det. Roberts are also without merit. Det. Roberts not only was able to personally identify plaintiff from the surveillance footage based upon his prior familiarity with him, but correctly believed, based upon information he received from Det. Godino, that a "confidential informant" was an eyewitness in the case. *See, e.g.,* Def. Resp. at ¶¶

---

[7] Plaintiff's argument that the Grand Jury Witness's existence as a "CI" is not documented is unsupported and completely contradicted by the record. *See* Def. Resp. at ¶ 118.

[8] Plaintiff's repeated references to defendants' supposed motives to arrest are irrelevant to the question of probable cause, which is assessed by an objective standard. *See, e.g., Lee v. Sandberg*, 136 F.3d 94, 103 n.5 (2d Cir. 1997).

83, 193.[9]  Det. Godino's lack of recollection regarding what he communicated to Det. Roberts, nearly ten years later, does not create a dispute with respect to these facts, especially where Det. Roberts specifically recalls receiving information from Det. Godino regarding the investigation. Det. Roberts had specific information to form the basis for probable cause to arrest plaintiff.[10]

## II.     DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

In any event, defendants are entitled to qualified immunity because there was at least "arguable probable cause" in that it was at least objectively reasonable to believe that there was probable cause to arrest and prosecute defendants on the basis of the information obtained from the Grand Jury Witness, even in the face of a conflicting eyewitness account.  With respect to the qualified immunity analysis, defendants simply invite the Court to apply the well-established law, not some *ad hoc* standard as plaintiff seems to suggest.  *See, e.g., Figueroa v. Mazza*, No. No. 14-4116-cv, 2016 U.S. App. LEXIS 10152, at *2 (2d Cir. June 3, 2016) (an officer "is entitled to qualified immunity so long as 'arguable probable cause' was present when the arrest was made").

## III.    DEFENDANTS BIRNS & TALTY ARE ENTITLED TO ABSOLUTE IMMUNITY

Defendants note that plaintiff concedes that defendants Birns and Talty are entitled to absolute immunity with respect to their involvement in plaintiff's prosecution.  With respect to their involvement in plaintiff's arrest, there is no evidence in the record to indicate that either A.D.A. Birns or A.D.A. Talty "advised" Det. Godino, or anyone else in the NYPD, as to whether

---

[9] Plaintiff's contention that Det. Roberts' "erroneously" believed that Mr. Terab identified plaintiff as the person who handed the firearm to Dior Creighton is a disputed fact in this case however, as explained, there is ample evidence in the record to support that fact.

[10] To the extent plaintiff seeks to hold the City vicariously liable with respect to his false arrest claim under the doctrine of *respondeat superior*, defendants note that plaintiff has not pleaded a claim for relief under such doctrine in his Amended Complaint and, therefore, any such claim for relief has been waived and is unavailable.

6

there was probable cause to arrest or as to whether his investigatory method was permissible. Rather, Det. Godino **first** determined that there was probable cause to arrest plaintiff (on the basis of the information obtained from the "Grand Jury Witness") and, upon completing his investigation, **then** informed the Bronx District Attorney's Office, which then proceeded to authorize the arrest pursuant to standard procedures. *See* Def. 56.1 Stmt. at ¶¶ 6-20. In any event, it is well-settled that courts have denied prosecutors absolute immunity only for initiating arrests without probable cause. *See, e.g., Swinton v. City of New York*, 785 F. Supp. 2d 3, 9 (E.D.N.Y. 2011). Therefore, A.D.A. Birns and A.D.A. Talty are entitled to absolute immunity.[11]

## IV. PLAINTIFF'S MALICIOUS PROSECUTION CLAIM SHOULD BE DISMISSED

### 1. There Was Probable Cause To Prosecute Plaintiff

As previously discussed, because there was probable cause to arrest plaintiff and because plaintiff has not alleged or pointed to any evidence to suggest that some new evidence was uncovered in the four hours between the time plaintiff was arrested and the time the criminal complaint was filed, there was probable cause to prosecute plaintiff.

### 2. Plaintiff Is Unable To Rebut The Presumption Of Probable Cause

Plaintiff is unable to rebut the presumption created by the indictment. As explained above, plaintiff's contention that Det. Godino did not inform the District Attorney's Office about Mr. Terab's initial identification of Mr. Spruell is not supported by the record. Accordingly, plaintiff's malicious prosecution claim must be dismissed because "[i]n order to survive a motion for summary judgment . . . [plaintiff] must . . . submit[] evidence sufficient for a reasonable jury

---

[11] In addition, it appears as though plaintiff does not dispute that the prosecutor defendants are at least entitled to qualified immunity with respect to plaintiff's false arrest claim as he did not address that point in his opposition briefing. It also appears that plaintiff does not dispute that, to the extent that plaintiff has sued the prosecutor defendants in their official capacity, such claims are barred by the Eleventh Amendment.

to find that this indictment was procured as a result of police conduct undertaken in bad faith," and he is unable to do so. *Savino v. City of New York*, 331 F.3d 63, 73 (2d Cir. 2003).[12]

### 3. Plaintiff Is Unable To Prove Initiation

Although police officers ***can*** initiate a prosecution by filing charges or other accusatory instruments, "an officer who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding." *Jones v. City of New York*, No. 13-CV-929 (ALC), 2016 U.S. Dist. LEXIS 44609, at *17-18 (S.D.N.Y. Mar. 31, 2016) (internal quotation marks and citation omitted). Here, as explained, it is undisputed that Det. Godino informed A.D.A. Birns of all material information within his knowledge with respect to the investigation. In addition, plaintiff's argument is wholly without merit as it is undisputed that A.D.A. Birns met with the Grand Jury Witness prior to plaintiff's arrest and made his own independent determination as to whether there was probable cause to arrest and prosecute. *See* Def. 56.1 Stmt. at ¶¶ 16, 18, 19. Because "[i]t is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment," plaintiff cannot prove initiation. *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999).

### 4. There Was No Improper Post-Arraignment Deprivation Of Liberty

Plaintiff is unable to prove an improper post-arraignment deprivation of liberty because he was in fact held pursuant to a probation hold from on or about February 1, 2007 through January 19, 2012.[13] This is what actually happened. It is fact, not speculation. What is speculative, however, is plaintiff's unsupported contention that the maximum plaintiff could

---

[12] Plaintiff also does not appear to contest that he has failed to plead sufficient facts sufficient to overcome the presumption created by his indictment.

[13] This is not an affirmative defense but rather an essential element of plaintiff's malicious prosecution claim.

8

have been jailed for violating his probation was late November 2010. This argument is nonsensical particularly where, as here, plaintiff was in fact held pursuant to his probation hold until the time that he pled guilty to violating his probation on January 19, 2012. Indeed, plaintiff's criminal defense attorney was aware that, had plaintiff not pled guilty to violating his probation, his incarceration would have continued notwithstanding the dismissal of the criminal facilitation and weapon possession charges. *See, e.g.,* Plaintiff Ex. Q (Raskin Dep.) at 76:22-77:11 ("Once the District Attorney's office dismissed all the charges against Mr. Creighton, Judge Alvarado said we have this probation violation and he can admit to violating probation right now and I'll give him effectively ***time served*** . . . ***or I continue the remand***[,] adjourn this case for a period of time and you can have your hearing.") (emphasis added).

Accordingly, plaintiff's claim must be dismissed because a plaintiff who is in custody on unrelated charges for the duration of the prosecution in question cannot establish a sufficient deprivation of liberty. *See, e.g., Walker v. Sankhi*, 494 F. App'x 140, 143 (2d Cir. 2012).

## V.  PLAINTIFF'S DUE PROCESS CLAIMS SHOULD BE DISMISSED

In his opposition brief, plaintiff, for the very first time in this litigation which has now spanned nearly four years, alleges a fair trial claim.[14] As explained in defendants' initial briefing, plaintiff's pleaded due process claims are duplicative of his false arrest and malicious prosecution claims. In any event, plaintiff's fabrication claim is conclusory and not based on any facts, not to mention that plaintiff has never pled any facts with respect to what evidence was allegedly fabricated.[15] Thus, plaintiff's due process claim, or fair trial claim, or whatever plaintiff will next try to call this claim, should be dismissed.

---

[14]  Plaintiff did not allege such a claim in his Amended Complaint at ¶¶ 111-116 (or ¶¶101-106).

[15]  Plaintiff has also already voluntarily withdrawn his claims based on a failure to investigate or based upon the withholding of evidence. *See, e.g.,* Docket No. 141.

9

## VI. PLAINTIFF'S PROLONGED DETENTION CLAIM SHOULD BE DISMISSED

Plaintiff's prolonged detention claim fails because he cannot establish, as he must, that exculpatory evidence was withheld and that it conclusively established plaintiff's innocence. The undisputed facts demonstrate that Det. Godino did not withhold any exculpatory evidence but rather that he did inform A.D.A. Birns about Mr. Terab's initial identification. In addition, a conflicting piece of evidence, such as Mr. Terab's identification of Mr. Spruell does not ***conclusively*** establish anything.[16] Furthermore, as discussed, plaintiff's prolonged detention was due to a probation hold which prevented plaintiff from posting bail and being released. Therefore, plaintiff's unreasonably prolonged detention claim must be dismissed.

## VII. PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED

To the extent that plaintiff seeks to amend his complaint at this late stage, plaintiff is guilty of grossly undue delay. Plaintiff has been on notice of his pleading deficiencies since at least December 2015 when the Court detailed the issues with plaintiff's complaint yet has made no attempt to amend his complaint. In any event, amendment would be futile because, plaintiff's remaining claims for malicious abuse of process, conspiracy[17] and failure to intervene[18] fail because there was probable cause to arrest and prosecute plaintiff.

---

[16] Plaintiff's reference to the spoliation of evidence is improper for several reasons. As an initial matter, as explained in defendant's letter to the Court dated June 30, 2016, plaintiff's spoliation arguments are not to be considered in connection with summary judgment. *See* Docket No. 153. In any event, as will be explained in defendants' response to plaintiff's motion *in limine* for sanctions, plaintiff's spoliation arguments are wholly without merit.

[17] In addition, because the prosecutor defendants are entitled to absolute immunity, as conceded by plaintiff, there are no state actors with whom Det. Godino could have conspired with and, therefore, plaintiff's conspiracy claim must be dismissed. Plaintiff's citation to *Dennis v. Sparks*, 449 U.S. 24 (1980) is not applicable here as that case merely holds that private parties conspiring with a judge are acting under the color of state law. Defendants also note that plaintiff has now withdrawn his conspiracy claim against all defendants, with the exception of Det. Godino.

[18] Plaintiff also does not address the fact that, to the extent he has asserted that the defendants directly participated in the alleged wrongful acts, they may not also be held liable for failure to intervene. *See, e.g., Jackson v. City of New* York, 939 F. Supp. 2d 219, 232 (E.D.N.Y. 2013).

**CONCLUSION**

For the foregoing reasons, and for the reasons outlined in defendants' memorandum of law in support of their motion for summary judgment, defendants respectfully request that the Court grant their motion for summary judgment in its entirety, with prejudice, together with costs and fees the Court deems just and proper.

Dated: New York, New York
July 26, 2016

        ZACHARY W. CARTER
        Corporation Counsel of the City of New York
        *Attorney for Defendants*
        100 Church Street
        New York, New York  10007
        (212) 356-2351

By:   /s/ Kavin Thadani
        Kavin Thadani
        Senior Counsel
        Special Federal Litigation Division

TO:   **VIA ECF**
      Richard Gross, Esq.
      Michael Jaffe, Esq.
      *Attorneys for Plaintiff*