UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

KENNETH CREIGHTON,

                              Plaintiff,

            -against-

THE CITY OF NEW YORK, DETECTIVE DEAN
ROBERTS (Shield No. 05861), DETECTIVE
GLENN GODINO (Shield No. 2756), POLICE OFFICERS
JOHN DOES 1-10 (names being fictitious and presently
unknown and intended to be employees of the NYPD who
were involved in Plaintiff's arrest, detention, imprisonment,
and/or prosecution), DISTRICT ATTORNEY ROBERT T.
JOHNSON, ASSISTANT DISTRICT ATTORNEY BRUCE
BIRNS A/K/A BURNS, ASSISTANT DISTRICT ATTORNEY
ED TALTY a/k/a ED TULTY and ASSISTANT DISTRICT
ATTORNEY MICHAEL COOPER,

                              Defendants.

--------------------------------------------------------------------------X

PLAINTIFF'S STATEMENT
PURSUANT TO LOCAL RULE
56.1

12 Civ. 7454 (PGG) (DCF)

        Plaintiff Kenneth Creighton sets out the following as his Rule 56.1 Statement in Support

of his Summary Judgment Motion.   Pursuant to Fed.R.Civ.P. 56(e), exhibits relied upon by

Plaintiff are annexed hereto.

1.  On August 22, 2012, he commenced an action in Supreme Court, Bronx for *inter alia¸*

    false arrest. Exh. A.

2.  This action was removed to federal court by defendants and plaintiff filed an Amended

    Complaint on August 21, 2013. Exh. B.

3.  On February 3, 2012, Creighton served a Notice of Claim naming the City of New York

    and the individuals involved in his arrest and prosecution as potential defendants in future

    litigation as required by General Municipal Law 50-e. Exh C.

4. Plaintiff's Amended Complaint asserts New York State law claims for false arrest against all defendants (First Cause of Action).  Exh. B, ¶¶ 52-65.

5. Plaintiff's Amended Complaint asserts New York State law Malicious Prosecution claims against all defendants (Third Cause of Action). Exh. B, ¶¶ 66-88.

6. Plaintiff's Amended Complaint asserts claims against all defendants pursuant to 42 U.S.C. §1983 for false arrest, malicious prosecution and malicious abuse of process (Fourth Cause of Action). Exh. B, ¶¶ 95-104.

7. Plaintiff's Amended Complaint asserts claims for denial of procedural and substantive due process pursuant to 42 U.S.C. §1983 (Sixth Cause of Action). Exh. B, ¶¶ 111-116.

8. On December 26, 2006, police officers from the 42nd precinct Crime Scene Unit responded to a shooting that took place at 6:15 PM in front of 810 E. 168th St., which resulted in the death of one Louis Caldwell and injuries to Lisette Ayala. Exh. W: Crime Scene Unit Report Bates #P00066-68.

9. Ballistics evidence indicated that there were two shooters and that the victims were unintended targets. Exh. X: Unusual Occurrence Report Bates stamped P00157; Exh. K: Godino deposition, pp. 240, LL.15-25; p.73 L.9-13; Exh. W.

10. Investigation and interview with the surviving victim disclosed that there were no witnesses who got a good look at the shooter. Exh. I: Complaint- Follow-Up Informational P00046 p.1; Exh. Y: Omniform System Complaints P00056-58, p. 1.

11. Detectives from the 42nd detective squad, including Detective Glenn Godino ("Godino"), the lead detective, responded to the scene within an hour of the shooting. Exh. K, p.357 LL. 3-5.

12. Fawaz Terab ("Terab"), was the owner of a bodega known "Prospect Mini Mart" located

820 East 168th Street, Bronx, near the area where the shooting took place. Exh. II: Fawaz Terab sworn statement dated February 21, 2013.

13. Terab was in the bodega at the time the gun was passed to Dior.  Exh. O: Terab Deposition, p. 9 L. 3-10.

14. Prior to December 26, 2006, Terab knew Dior. Exh. O, p.7 L.23; p.8 L.7.

15. Prior to December 26, 2006, Terab knew plaintiff, Creighton. Exh. O, p.8 L.8-L16.

16. Prior to December 26, 2006, Terab knew a man by the name of Kijafa Spruell. Exh. O. p.8 L.8-L.16.

17. Terab often saw Spruell and Dior together in the bodega. Exh. O, p.152 LL.17-25; p.153 LL.6-17.

18. There was a surveillance DVR camera in the bodega at the time a gun was passed to. Exh. O, p.13 L.20-24.

19. After the shooting Terab reviewed surveillance video taken at the time of the passing of the gun in the bodega. Exh. O, p.19 LL.16-18.

20. On December 31, 2006, merely five days following the shooting, Terab identified Kijafa Spruell ("Spruell"), as the person he observed passing the gun to Dior in the bodega on December 26, 2006. Exh. K, p.140 LL.10-22; Exhibit G, Terab Signed Statement bearing Bates stamp NYC 004657.

21. On or about December 27, 2006, the surveillance video was extracted from the DVR located in the bodega and given one of the investigating detectives conducting the investigation. Exh. K, p. 52 LL.18-24; p.103 LL. 12-17; p.141 LL.4-9; Exh. O, p.31 LL.15-16.

22. Godino reviewed the surveillance video before December 31, 2006. Exh. K, p.103 LL.12-

23.

23. Godino did not find any inaccuracies when comparing Terab's stated observations to the surveillance video. Exh. K, p.151 LL.6-12.

24. Godino did not request to have the video or photographs enhanced to make a positive identification of who was passing the gun. Exh. K, p.406 L.4-10.

25. The original video surveillance disappeared after it was turned over to the District Attorney's Office. Exh. K, p.338 LL.6-15; p.337-338, p.343 L.3 - L.6; p.344- p.345.

26. The original surveillance tape was never returned to the police by the district Attorney's office. Exh. K, p.345 LL.13-20.

27. Godino reviewed the original surveillance video with defendant, ADA Bruce Birns ("Birns") but he does not remember when they did so. Exh. K, Godino p.373 LL.2- 15; p.373 LL.2-24.

28. Still photographs were made from the videotape. Exh. K, p.403 L.25 - p.404 L.18.

29. On December 31, 2006, Godino interviewed Terab at the 42nd precinct. Exh. O, p. 141 LL.10 -13.

30. On December 31, 2006, Terab provided a sworn statement to Godino identifying Spruell as the person who passed a gun to Dior at the bodega on December 26, 2006. Exh. G, Exh. K, p.140 LL.9-13.

31. Terab also identified Spruell from a photo array as the person who passed the gun to Dior in the bodega on December 26, 2006. Exh. Z, Photographic Array NYC004747.

32. Terab identified Dior in a photo array as the one who received the gun in the bodega on December 26, 2006.  Exh. AA, Photographic Array NYC004590.

33. Terab supplied information to Godino about the color of the gun. Exh. K, p.149 LL.9-16.

34. On December 31, 2006, Godino concluded that Terab had no doubt about who passed the gun and had given specific information about what he had directly observed. Exh. K, p.392 L.24 - p.393 L.12.

35. As of December 31, 2006, Dior was a suspect in the shooting. Exh. K, p.399 LL.8 - 22.

36. As of December 31, 2006, no one had implicated Creighton in any criminal activity in connection with the shooting. Exh. K, p.399 LL.8-22.

37. On December 31, 2006, based on Terab's signed statement and identification of Spruell as the person who passed the gun to Dior, there was probable cause to arrest Spruell. Exh. K, p.153 LL.18-25.

38. On January 2, 2007, a computer search was run on Spruell. Exh. BB, Booking Arraignment Disposition Inquiry System Bates Stamped NYC004761 - NYC004763 (Spruell Records).

39. On January 2, 2007, when the computer search was run, Spruell was the only person who had been identified as having passed the gun to Dior. Exh. K, p.395 L.8 - p.396 L.15.

40. An investigation card known as an I-card issued by the police to pick up a suspect for questioning was never issue for Spruell. Exh. K, p.397 LL.8-20.

41. No attempt was ever made to locate or question Spruell despite Terab's sworn statement that Spruell had passed the gun used in a homicide. Exh. K, p.398 LL.6-20.

42. Godino recognized Dior as the person who received the gun in the bodega from the surveillance video. Exh. K, p.137 LL.3-10; p.251 LL.3-13.

43. Godino could not recognize the person who passed the gun in the bodega from the surveillance video. Exh. K, p.137 LL.3-19.

44. The person who passed the gun was wearing a white and dark colored horizontally striped shirt. Exh. K, Godino pp.251-252; Exh. CC, Surveillance DVD.

45. Terab gave Godino Spruell and Dior's names so he could pull their mugshots for a photo array. Exh. K, p.434-435.

46. Terab identified Spruell and Dior from photo arrays as the ones who passed and received the gun in the bodega respectively. Exh. K, Godino p.434-435.

47. On December 31, 2006, based on the information Godino obtained from Terab, Godino had probable cause to charge Spruell with having passed the gun. Exh. K, p.153 LL.18-25.

48. Godino first met with the confidential informant (CI) after he interviewed Terab. Exh. K, p.146 LL.1-11.

49. None of the official police records prepared in connection with the investigation of the shooting state that anyone other than Spruell was identified as having passed the gun to Dior in the bodega.  Exh. K, p.431 L.7-15.

50. The only reference to a CI having been involved in the identification of Creighton as the person who passed the gun appears in an undated entry in a spiral notebook belonging to Godino. Exhibit K, p.431 LL.7-15; Exh J.

51. Other than the CI, no witness was ever located who could testify to Dior doing the actual shooting. Exh. K, p.398 LL.16-20.

52. Until Godino interviewed the CI, he had no evidence that anyone other than Spruell passed the gun in the bodega. Exh. K, p.398-399.

53. Until Godino interviewed the CI, the only information Godino had linking Dior Creighton to the shooting in any respect was Terab's statement that the gun had been passed to him. Exh. K, p.398 L.21 - p.399 L.7.

54. Godino never learned the CI's real name. Exh. K, p.202 LL.2-6.

55. In homicide cases, detectives assigned to the 42nd Precinct Detective Squad in the Bronx conferred regularly with Assistant District Attorneys with regard to when authorizations to arrest would be forthcoming. Exh. K, p.348-349.

56. Godino conferred only with Birns with regard to this case. Exh. K, p.351 LL.11-19.

57. After Terab identified Spruell on December 31, 2007 as the person one who passed the gun, Godino claims that a confidential informant (CI) stated to him that Ken Creighton passed the gun Exh. K, p.155; p.370 LL.4-9.

58. The CI is not visible in the surveillance video. Exh. K, p.254-255; Exh. CC.

59. Terab testified during his deposition in this case that Spruell, not Creighton, passed the gun to Dior. Exh. O, p.43 LL.11-16.

60. Viewing the surveillance video during his deposition in this case, Terab identified Spruell as the one who passed the gun. Exh. O, p.43 LL.11-16.

61. Godino believed that Terab's identification of Dior Creighton as the one who received the gun in the bodega put Terab at risk. Exh. K, p.391 LL.9-17.

62. The surveillance video Godino reviewed during the investigation has been edited and altered and the original is irretrievably lost. Exh. K: p.334-335; Exh. K, p.340 L.24 – p.341 L.4

63. The original surveillance video was never vouchered with the property clerk which was the customary practice for chain of custody purposes. Exh. K, p.336 LL.9-20; p.336-337.

64. Detective Godino's spiral notebook entry concerning the existence of a CI is undated. Exh. K, p.229-230.

65. Godino does not know the date he made the entry concerning the CI in his spiral notebook. Exh. K, p.229-230.

66. Other than the CI, there was no known witness who could testify that Dior fired the gun that was passed in the store. Exh. M: Birns Deposition Transcript pp. 5-23; p.131 LL.2-21.

67. Godino never knew the CIs actual name during the criminal prosecution.  Exh. K, p.414-415.

68. There is no documentation anywhere in the NYPD file that warranted arresting and charging Kenneth Creighton with criminal facilitation. Exh. K, p.448 LL.16-22

69. The arrest of Dior Creighton was authorized by ADA Birns and ADA Cooper. Exh. N: Talty Deposition Transcript, p.132 LL.17-20.

70. On December 31, 2006, Dior Creighton's mug shot was retrieved by the 42nd precinct Detectives. Exh. K, p.434-435.

71. On January 2, 2007, and thereafter canvases were conducted to apprehend Dior Creighton. Exh. CC:  DD5 Bates Stamped P00185, p.1.

72. On January 4, 32007, defendant, Godino, and PO Brown canvassed the area of 818 Home St and East 168 St for Dior but were met with negative results. Exh. DD: DD5 Bates Stamped P00186, p.1.

73. Starting on January 5, 2007 and on subsequent days a search for Dior Creighton by detectives pursuant to an I-card met with negative results. Exh. EE: LaDuca Deposition Transcript, p.22 L.21- p.23 L.16; p.32 L.20- L.24.

74. Other than the CI, there were no other witnesses found to indicate that Dior was the shooter. Exh. K, p.154 LL.11-24.

75. On January 8, 2007 a criminal history computer check was run on Kenneth Creighton and a handwritten note was added with the name and phone number of Kenneth's probation officer. Exh. FF:  CRIMS APPEARANCE HISTORY- CREIGHTON, KENNETH Bates Stamped NYC005509.

76. On January 8, 2007, Birns and Talty authorized Godino's arrest of Kenneth Creighton. Exh. GG: DD5 or Complaint-Follow-Up Informational Bates Stamped P00024.

77. On January 8, 2007, Godino called Kenneth Creighton's probation officer and instructed him to arrest Creighton during his probation appointment on January 10. Exh. GG.

78. On January 10, 2007, a DD5 was drafted stating, "detectives will arrest Kenneth on I card # 12007000405 for criminal facilitation. In turn Kenneth may inform this department where defendant Dior Creighton is hiding out." Exh. T: DD5 P00025.

79. Ken Creighton was arrested on January 10, 2007. Exh. FF.

80. Godino learned of the existence of the CI through a phone call from the CI's handler, Detective Elliott. Exh. K, p.482 LL.16 - L.25.

81. Godino do not know how long after he received the phone call from the CI's handler he met with CI in the precinct. Exh. K: Godino p.482 LL.6 -25.

82. Godino met with the CI the first time at some unknown date at the precinct. Exh. K, p.262-263.

83. Godino met with the CI and Birns after Godino's first meeting with the CI at the precinct. Exh. K, p.262-263.

84. Godino met with the CI at the precinct in the presence of his handler. Exh. K, p. 479-482.

85. The meeting attended by Godino, Birns and the CI took place before the authorization to make the arrest. Exh. K, p.262-263.

86. The meeting with Godino, Birns and the CI took place before Ken Creighton was arrested on January 10. Exh. K, p.264 LL.6-17.

87. Godino never investigated the CIs criminal history of arrests or convictions. Exh. K, p.483-486.

88. Godino never investigated or inquired about the CIs previous reliability. Exh. K, p.483-486.

89. Godino never investigated whether the CI was being paid on this case. Exh. K, p.483-486.

90. Godino never investigated what the connection was between the CI and Ken Creighton. Exh. K, p.483-486.

91. Godino never attempted to learn his name. Exh. K, p.483-486.

92. Godino never attempted to determine if there was any animosity or ill feelings between CI either of Creighton brothers. Exh. K. p.488 L.4-L.21.

93. The only information Godino had about the CI came from the handler who informed him that the CI was an informant in narcotics cases. Exh. K, p.488-489.

94. Dean Roberts (Roberts) believed the store owner (Terab) had identified plaintiff as the one who passed the gun. Exh. V, p.51 LL.4-12.

95. Roberts learned for the first time at his deposition that Terab had identified someone other than plaintiff as the one who passed the gun. Exh. V. p.51 LL.13-18.

96. Roberts never knew that there was a person other than Ken Creighton who had been identified as the one who passed the gun to Dior Creighton. Exh. V. p.53 LL.5-17.

97. Godino does not know if he ever conferred with Roberts about the investigation. Exh. K, p.408 L.6 - L.12.

98. Godino does not know how often or what he discussed with Roberts about the case. Exh. K, p.410 L.10 - L.17.

99. The CI a couple of weeks after the shooting that heard that Kijafa said he was the one who passed the gun in the store. Exh. U, p.205 L.24 - p.206 L.6.

100. If the Terab had been disclosed as an eyewitness who had identified someone other than Creighton as having passed the gun at the bail hearing it would've improved the chances to get lower bail or a release on recognizance (ROR). Exh. Q, p.35 L.19-p.36 L.10.

101. If Terab had been disclosed as an eyewitness who had identified someone other than Creighton as having passed the gun at the bail hearing it would've improved the chances to get lower bail or a release on recognizance (ROR). Exh. Q, p.35 L.19-p.36 L.10.

102. Michael Raskin, plaintiff's criminal attorney, was never told who the eye witness was who testified before the grand jury. Exh. Q, p.12 LL.12-18.

103. Raskin was aware that there was a surveillance video of the passing of the gun incident. Exh. Q, p.12 LL.18-25.

104.     Raskin never knew during the pendency of the criminal case that the eye witness

was a confidential informant. Exh. Q, p.18 L.24 -p.19 L.2.

105.     The grand jury minutes of the CI's testimony had to be disclosed to the defense

before any hearing or trial that the CI would be called to testify at. Exh. Q, p. 122.

106.     Raskin was never made aware that the investigation disclosed there were two

shooters involved. Exh. Q, p.118 L.11- p.119 L.2.

107.     Godino did not testify at the grand jury presentation regarding Ken Creighton.

Exh. K, p.351 LL.11 – 19.

108.     Terab did not testify before the grand jury. Exh. JJ.

109.     DD5 were customarily chronologically numbered. Exh. K, p.38 LL.3-17.

110.     The DD5s in this case were not numbered and should have been. Exh. K, p.99

L.19 – p.100 L.4; p.38 LL.6-7.

111.     An index sheet that was customarily created that recorded the records created in

the case file was not prepared in this case. Exh. K, p.38 LL.3-5.

112.     The original case file was delivered to defendant Birns by Godino and was never

returned to the NYPD during the pendency of the prosecution. Exh. M, p. 110 LL.15-24;

Exh. K, p.44 L.24-p.45 L.4.

113.     Turning over the original case folder to the DA and not having it returned was

unusual and a cause for concern. Exh. N, p.28 LL.14-29.

114.     While at the District Attorney's Offices Godino noticed that a lot of the DD 5s

were missing from the case folder.  Exh. K, p.96 LL.2-13.

115.    An unknown amount, up to 30 documents, was missing from the case file when

Godino reviewed it at the District Attorney's Office. Exh. K, p.96 LL.18-25.

116.    Edward Talty is the Chief of Homicide in the Bronx District Attorney's Office

and supervised the ADA's handling all homicide cases. Exh. N, p.18 LL.3-9.

117.    In homicide cases in the Bronx, before a sworn complaint commencing the

prosecution can be written up by the police it requires district attorney approval. Exh. N,

p.127 LL.14 – 22.

118.    In the Bronx all homicide arrests were to be authorized by the Chief of Homicide

if he was available. Exh. M, p.25 L.14 - p.26 L.11.

119.    On January 10, 2007, Ken Creighton's arrest was authorized by Edward Talty,

Chief of Homicide. Exh. N, p.132 L.17 – p.133 L.20.

120.    Talty's practice was to determine if there was probable cause at the time he

authorized an arrest. Exh. N, p.134 L.23 -135 L.7.

121.    Before authorizing a homicide arrest involving a CI, Talty would require talking

directly to the CI rather than relying on what the detective tells him. Exh. N, p.136 LL.4 –

19.

122.    Talty never spoke to the CI. Exh. N, p.42 L.2- L17.

123.    New York City Police Department had contradictory evidence about whether it

was Ken Creighton or Spruell who passed the gun. Exh. N, p.140 L.13- p.141 L.5.

124.    Without resolving the conflict about who passed the gun, there was no probable

cause to prosecute Kenneth Creighton. Exh. N, p.141 LL.6-21.

125.    Based on the information provided by Terab, Talty would likely have authorized the arrest of Spruell. Exh. N, p.141 L.22- p.142 L.3.

126.    Talty considered it important information to have been informed about Terab's identification of Spruell when he was asked to authorize the arrest. Exh. N, p.142 LL.11-19.

127.    Failure to inform the district attorney that someone other than the person to be arrested has been identified for the same crime constitutes a "real problem". Exh. N, p.142 L.20 – p.143 L.7.

128.    Failing to inform the grand jury that Spruell had been identified as someone who passed the gun is a *Brady* violation. Exh. N, p.143 L.8 – p.144 L.5.

129.    The Terab exculpatory evidence should have been turned over to the DA before he was asked to authorize the arrest. Exh. N, p.147 LL.7 – 25.

130.    Exculpatory evidence that should be turned over to the District Attorney as soon as it becomes clear that it is disclosable. Exh. N, p.147 LL.7- 25.

131.    The exculpatory information provided by Terab should have been disclosed to the defense for the purpose of making a bail application. Exh. N, p.150 LL. 3 – 14.

132.    Birns would have should have turned over exculpatory information prior to the bail hearing. Exh. M, p.124 L.10-p.125 L.5.

133.    There is no indication that the court was advised that there was a different suspect identified at Ken Creighton's bail hearing. Exh. N, 4-25-16 p.202 LL.16 -19.

134.    Evidence that someone other than plaintiff had passed the gun was material that was be required to be turned over to defense counsel. Exh. M, p.33 LL.2-6.

135.    Information that would impeach the credibility of material a witness was required to be turned over to the defense. Exh. M, p.33 LL.13-21.

136.    Birns may not have been aware that the CI was a registered informant.  Exh. M, p.39 LL.9-16.

137.    Birns does not know if Spruell was ever a suspect in the passing of the gun to Dior Creighton. Exh. M, p.74 LL.6-9.

138.    Birns reviewed the video surveillance before going over the CI's testimony in preparation for the grand jury presentation. Exh. M, p.120 LL.11-15.

139.    Talty's authorization for Creighton's arrest was based on the information Godino provided which came from the CI. Exh. M, p.51 LL.16-25.

140.    Based on the conflicting identifications, more investigation was required to determine who should be arrested for the facilitation (passing the gun). Exh. M, p.63 LL.12-16.

141.    Had Birns been aware of the exculpatory information provided by Terab, he would have declined to authorize Ken Creighton's arrest until the information could be further investigated. Exh. M, p.60 L.18-p.61 L.8.

142.    Had Birns been made aware of the photo array identifications and the Terab statement he would have required more investigation to be conducted. Exh. M, p.54 L.8-p.55 L.18.

143.    Birns would be informed about investigation by the detectives before he would be asked to authorize the arrests. Exh. M, p.48 LL.5-21.

144.    Birns would not have authorized the arrest without approval from Talty. Exh. M, p.49 LL.9-15.

145.     Had Birns known about Terab's identification, he would have required further

investigation and would have wanted to talk to Terab. Exh. M, p.54 LL.8-16.

146.     No arrest of Ken Creighton should have been made without investigating the

circumstances of Terab's signed statement implicating Spruell. Exh. M, p.54 L.17- p.55

L.3.

147.     Godino has no recollection of when the interview of CI referred to in the notes in

his spiral notebook was conducted. Exh. K, p.229 L.23 - p. 230 L. 7.

148.     Godino did not create a DD 5 memorializing the interview with the CI without

identifying him by name. Exh. K, p.231 L.2 - L.17; p.244 L.4 - L.13.

149.     Godino never knew the CIs name during the pendency of the criminal case. Exh.

K, p.231 L.2 - L.17.

150.     Godino saw a photo that has been lost where the CI made an identification of

somebody. Exh. K, p.232 L.23 - p.233 L.18; p.232 L.6 - L.22.

151.     The records in the case folder were inconsistent with the CIs information about

who passed the gun. Exh. K, p.235 L.24 - p.236 L.6.

152.     The CI identified someone named Quan as a witness. Exh. K, p.239 L.9 - L.16;

Exh. J.

153.     Godino does not remember if anything was done to find Quan beyond finding out

his real name. Exh. K, p.239 L.9 - L.16.

154.     It would have been good practice to find an interview Quan but it was not done.

Exh. K, p.240 L.2 - L.14.

155.     Prior to taking the CI's statement Godino had reviewed the surveillance video. Exh. K, p.248 L.20-L.25.

156.     It is good police practice to determine whether an accused had an alibi. Exh. K, p.288 L.12 - p.289 L.3; p.289 L.10 - L.22.

157.     Godino did not know whether an attempt was made to find out if Kenneth Creighton had an alibi. Exh. K, p.289 L.10-L.22.

158.     Where, as here, there was a conflict with regard to identification as who passed the gun, it was good police practice to determine whether an accused had an alibi. Exh. K, p.290 L.23 - p.291 L.14.

159.     Godino never inquired about whether Kenneth Creighton had an alibi. Exh. K, p.290 L.23 - p.291 L.14.

160.     Godino knew that where a witness was a paid confidential informant it had to be disclosed to the defense. Exh. K, p.293 L.18 - L.23.

161.     The CI informed his handler that he would not come into court to testify. Exh. U, p.149 LL.8-12; p.150 LL.15; p. 204 L.8-12.

162.     The CI claims he went to the precinct the day after the shooting. Exh. U, p.198 l.16 - p.199 L.5.

163.     Godino generally dates entries into his spiral notebook but did not date the entry concerning the CI. Exh. K, p. 51 L.24-p.51 L.23; 241 LL.12-15.

164.     There were no identified witnesses that saw Dior fire the weapon other than the CI. Exh. K, p.275 LL.5 – 12.

165. Based Godino's spiral notebook notes, there were other potential witnesses identified but they were not interviewed. Exh. K, p.275 L.5 - L.19; p.276 L.18 - p.277 L.7.

166. Based on the surveillance video there were other people shown who could have given information about the passing of the gun. Exh. K, p.284 L.18 - p.285 L.3.

167. No attempts were made to identify people shown in the video who could have identified who was passing the gun. Exh. K, p.285 L.16 - L.25.

168. Good police practice required resolving the clear conflict in identification so the right person would be charged in passing the gun. Exh. K, p.286 L.21 - p.287 LL.10.

169. The CI's grand jury testimony was contradictory to the documentary evidence from Terab about who passed the gun to Dior Creighton. Exh. JJ; Exh. G.

170. Birns was not aware that the witness testified before the grand jury was a registered CI. Exh. M, p.38 L.15-L.19.

171. Birns was not aware of the Terab exculpatory evidence when he presented the case to the grand jury. Exh. M, p.60 L.8-L.17.

172. If the district attorney knew and a witness was actually present and was an actual witness to an event and identified somebody other than the defendant, it would be their obligation to present that evidence to the grand jury. Exh. N, p.143 L.14 – p.144 L.5.

173. Birns was not aware that the CI was going to be paid by the police for his testimony before the grand jury. Exh. M, p.134 L.14- p.135 L.6.

174. The same set of grand jurors indicted Kenneth Creighton and Dior Creighton on different dates. Exh. N, p.152 L.16 – p.153 L.8.

175.    On January 23, 2007, Kenneth Creighton was indicted by a grand jury. Exh. KK: Kenneth Creighton Indictment Bates Stamped P00098.

176.    Dior Creighton was arrested for murder and other felonies on January 26, 2007. Exh. LL: DD5 Bates Stamped P00161.

177.    Dior Creighton was indicted on February 1, 2007. Exh. NN: Dior Creighton Indictment.

178.    On February 1, 2007 Godino testified before the grand jury when the presentment was made regarding Dior Creighton. Exh. OO: Dior Creighton Grand Jury Presentation.

179.    In June 2012 Godino learned that a lot of the DD fives were missing when he met with District Attorney Dan McCarthy to go over the file. Exh. K, p.96 LL.6-9.

180.    Theresa Gottlieb an ADA in the Bronx County District Attorney's Office was aware in 2011 that there were files missing, including the memo book, original identification forms and other materials. Exh. R, p.41 L.4-15.

181.    Gottlieb does not know what are missing from the original missing from the NYPD file. Exh. R, p.132 L.22-p.33 L.6.

182.    On August 9, 2011, Terab reviewed the altered surveillance video at Gottlieb's office in the presence of Detective Godino. Exh. K, p.373 L.25 – 374 L.9

183.    No record was made of what went on in Gottlieb's office on August 9, 2011. Exh. K, Godino p.380 L.2 - L.25.

184.    On June 3, 2015, Terab testified that it was not Ken Creighton passing the gun to Dior Creighton and verified it while viewing the surveillance tape. Exh. O, p.45 L.2-4.

185.    On June 3, 2015, Terab testified that Ken Creighton was not in the store at the time the gun was passed to Dior Creighton. Exh. O, p.45 L.2-4.

186.     Gottlieb was aware that when a witness is a paid confidential informant it must be

disclosed to defense counsel as part of discovery as soon as reasonably practicable. Exh.

R, p.170 LL.8 – p.172 L.9.

187.     Dior Creighton pled guilty to attempted murder in 2012. Exh. R, p.102 LL.5-14.

188.     On January 18, 2012, Gottlieb wrote a letter to the court where she made a

Recommendation for Dismissal that indicated that "Kenneth Creighton was arrested and

charged upon the statements of a single eyewitness" who has become unavailable. Exh.

L: Defendants' Responses to First Set of Interrogatories, p. 57.

189.     On  January 19, 2012 all charges were dismissed and plaintiff was released.

Certificate of Disposition. Exh. F:  Certificate of Disposition.

190.     On April 19, 2016 Kavin Thadani, defense counsel, stated "I have since made

inquiries to obtain the tape and as far as I'm aware, the only tape that we have, the only

VHS that I'm aware of, is the same tape that I showed them last summer or fall when

they came into my office." Exh. K, p.340 L.24- p.341 L.4.

191.     On April 19, 2016, Thadani, acknowledged that the original tape has never been

produced and it is not in the possession of any of the parties or Corporation Counsel and

its whereabouts is unknown. Exh. K, p.341 L.5 – p.342 L.10.

192.     Talty became aware of for the first time that there was a confidential informant

involved in the Creighton prosecution in 2016. Exh. N, p.42 LL.2- 20.

193.     Pursuant to NY General Municipal Law 50-h, plaintiff was orally examined on

February 22, 2012. Exh. S.

194.     Defendants' Response to Plaintiff's First Set of Interrogatories, Interrogatory #9,

which sought the identity of all persons in the bodega at the time the gun was passed,

stated that "plaintiff Kenneth Creighton, Dior Creighton, and Fawaz Terab were present in the bodega at or about the time that K. Creighton is alleged to have passed a firearm to D. Creighton." Exh. L.

195.     Had Talty been advised of Terab's identification of Spruell as the perpetrator, which directly contradicted the CI's alleged identification of Creighton, he would not have approved Creighton's arrest.

196.     When the CI was shown the surveillance video from the bodega during his deposition on May 25, 2016, he identified Kijafa Spruell as the person who passed the gun without prompting and without hesitation.  Exh. U, p. 141, L. 17-24.

197.     Even though Godino spoke to the CI after he had obtained the written statement from Terab implicating Spruell and not Creighton and after Terab had identified Spruell from a photo array, Godino's spiral notebook, the only record that contains any information whatsoever about the CI, does not mention Spruell. Exh. J.

198.     At the Grand Jury, the CI testified under a false name. Exh. JJ.

199.     Dean Roberts signed the Criminal Complaint against Creighton.  Exh. OO.

200.     Had Talty been advised of the conflicting identifications, he would not have authorized Creighton's arrest without further investigation. Exh. N, p.164 L.25 - 165 L.16.

201.     The CI in this case had an extensive criminal history Statement Exh. T p.135, L.16 – L.36.

202.     The CI was a heavily-addicted drug addict. Exh. U p.154 L.23 – 155 L.13, 156 L.6 – L.17.

203.     The CI and was paid for his grand jury testimony.  Rule 56.1 Statement Exh. U

p.50 L.18-51, L.12.

204.     The CI was actually doing drugs at the time he claims he saw the gun being

passed. Exh. U. p.38 L.14 – p.39 L.23.

RICHARD GROSS