UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

KENNETH CREIGHTON,

                              Plaintiff,

              -against-                                              12 CIV 7454 (PGG)

THE CITY OF NEW YORK, DETECTIVE DEAN
ROBERTS (Shield No. 05861), DETECTIVE
GLENN GODINO (Shield No. 2756), POLICE OFFICERS
JOHN DOES 1-10 (names being fictitious and presently
unknown and intended to be employees of the NYPD who
were involved in Plaintiff's arrest, detention, imprisonment,
and/or prosecution), DISTRICT ATTORNEY ROBERT T.
JOHNSON, ASSISTANT DISTRICT ATTORNEY BRUCE
BIRNS A/K/A BURNS, ASSISTANT DISTRICT ATTORNEY
ED TALTY a/k/a ED TULTY and ASSISTANT DISTRICT
ATTORNEY MICHAEL COOPER,

                              Defendants.

------------------------------------------------------------------------X


# PLAINTIFF'S MEMORANDUM OF LAW
## SUPPORTING PARTIAL SUMMARY JUDGMENT


**PAZER, EPSTEIN & JAFFE, P.C.**
20 Vesey Street, Suite 700
New York, New York 10007
(212) 227-1212

**RUBERT & GROSS, P.C.**
150 Broadway, Suite 712
New York, New York 10003
(212) 608-3103

June 27, 2016

TABLE OF CONTENTS

Preliminary Statement                                                                    1

Statement of Facts                                                                       1

Standard of Review                                                                       2

ARGUMENT                                                                                 3

    SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S
    CLAIMS FOR UNLAWFUL ARREST MALICIOUS PROSECUTION,
    AND DUE PROCESS VIOLATIONS.                                          3

        1.  Plaintiff's state-law claim for false arrest was timely commenced
            and he has met all conditions precedent required by New York
            General Municipal Law.                                        3

        2.  Defendants cannot demonstrate an objectively reasonable basis
            for Creighton's arrest.                                       4

        3.  Plaintiff is entitled to summary judgement on his New York State
            common law and federal claims for malicious prosecution against
            defendants, City, Godino and Roberts.                         17

        4.  Plaintiff is entitled to summary judgment against Godino on his
            Due Process Claims – Sixth Cause of Action.                   21

Conclusion                                                                               23

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242,256 (1986) …………………………………………………… 2

*Avgush v. Town of Yorktown*,
303 A.D.2d 340, 755 NYS2d 647 ……………………………………… 17

*Bermudez v. City of New York*,
790 F.3d 368 (2d. Cir., June 15, 2015) …………………………………… 21

*Broughton v. State of New York*,
37 NY2d 451 (1975) …………………………………………………… 5, 17

*Bullard v. City of New York*,
2003 WL 168444 (S.D.N.Y. 2003) ……………………………………… 6, 7

*Brown v. City of New York*,
798 F.3d 94 (2d Cir. 2015) …………………………………………… 16

*Burgio v. Ince*,
79 A.D.3d 1733 (4th Dept., 2010) …………………………………….. 5

*Cameron v. City of New York*,
598 F.3d 50, 63 (2nd Cir. 2010) ……………………………………… 18

*Cantalino v. Danner*,
96 NY2d 391, 394, 729 NYS2d 405 (2001) ……………………………… 17

*Carlton v. Nassau County Police Dept.*,
306 A.D.2d 365 (2nd Dept., 2003) ……………………………………… 7, 18

*Chetrick v Cohen*,
52 AD3d 449 (2nd Dept., 2008) ……………………………………… 18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) …………………………………………………... 2

*Collins v. McMillan*,
102 A.D.2d 860 (2d. Dep't., 1984) ……………………………………… 3

*Colon v. City of New York*,
60 N.Y.2d 78 (1983) …………………………………………………… 6, 18

*Delgado v The City of New York,*
86 A.D.3d 502 (1st Dept., 2011) ……………………………………………… 12

*DeMichelle v. City of New York,*
2012 WL 4354763 (S.D.N.Y. 2012) …………………………………………… 6

*Diederich v Nyack Hosp.,*
49 AD3d 491 (2nd Dept., 2008) ……………………………………………… 17

*Fortunato v. City of New York,*
63 A.D.3d 880 (2nd Dept., 2009) …………………………………………… 7

*Haynes v City of New York,*
29 AD3d 521 (2nd Dept. 2006) ……………………………………………… 18

*Hernandez v. State,*
644 NYS2d 380 (3rd Dept., 1996) …………………………………………… 19

*Hill v. City of New York,*
45 F.3d 653 (2nd Cir. 1995) ………………………………………………… 17

*Holland v. City of Poughkeepsie,*
90 A.D.3d 841 (2nd Dept., 2011) …………………………………………… 4

*Jackson v. Police Dep't. of City of New York,*
119 A.D.2d 551 (2d. Dep't., 1986) ………………………………………… 3

*Jovanovic v. City of New York,*
2006 WL 2411541 (S.D.N.Y. 2006) ………………………………………… 7

*Jenkins v. City of New York,*
478 F.3d 76 (2d Cir. 2007) …………………………………………………… 6

*Kerman v. City of New York,*
374 F/3d 93, 99 (2d Cir. 2004………………………………………………… 18

*Lee v. City of Mount Vernon,*
429 N.Y.S.2d 557, 429 N.Y.S.2d 557 (1980) …………………………… 19, 20

*Medina v. City of New York,*
102 A.D. 3d 101 (1st Dept., 2012)………………………………………… 7

*Nnodimele v. Derirenzo,*
2016 W.L. 337751 (E.D.N.Y., 2016)……………………………………… 17

*iii*

*Nunez v. City of New York,*
307 A.D.2d 218, (1st Dep't., 2003) …………………………………………… 3

*Panetta v. Crowley,*
460 F.3d 388 (2d Cir. 2006) …………………………………………………… 18

*Parkin v. Cornell University,*
78 N.Y.2d 523 (1991) …………………………………………………………… 6

*People v. Calise,*
256 A.D.2d 64 (1st Dept., 1998), lv. denied 93 N.Y.2d 851 (1999) ……………… 12

*Ramos v. City of New York,*
285 AD2d 284 (1st Dept., 2001) …………………………………………… 6, 17

*Ricciuti v. NYCTA,*
123 F.3d 123 (2d Cir. 1997) …………………………………………………… 17

*Rounseville v. Zahl,*
13 F.3d 625 (2d Cir. 1994) …………………………………………………… 18

*Russo v. City of Bridgeport,*
479 F.3d 196 (2d Cir. 2007) ………………………………………………… 22

*Scotto v. Almenas,*
143 F.3d 105, 114 (2nd Cir. 1998)……………………………………………… 2

*Sital v. City of New York,*
60 A.D.3d 465, (1st Dept.2009), lv. dismissed 13 N.Y.3d 903 (2009)…………… 7

*Smith v. Nassau County,*
34 NY2d 18 (1974)…………………………………………………………… 6

*Smith-Hunter v. Harvey,*
95 NY2d 191, 712 NYS2d 438 (2000)………………………………………… 18

*Sweet v. Smith,*
42 A.D. 502 (1899)…………………………………………………………… 6

*Torres v. Jones,*
26 N.Y.3d 742 (2016)………………………………………………… 6, 17, 20

*United States v. Gagnon,*
373 F.3d 230, 236 (2d Cir. 2004)…………………………………………… 19

*iv*

*Western World Ins. Co. v. Stack Oil, Inc.*,
922 F.2d 118, 121 (2nd Cir. 1990)……………………………………………… 3

*Weyant v. Okst,*
101 F. 3d 245 (2nd Cir. 1996)……………………………………………… 2

*Wu v. City of New York,*
934 F.Supp. 581 (S.D.N.Y. 1996)……………………………………………… 5

*Zellner v. Summerlin,*
494 F.3d 344, 369 (2d Cir. 2007)……………………………………………… 16

## **Statutes**

Fed. R. Civ. P. 56(c) ……………………………………………………… 2

Fed.R. Civ.P. 56(e)………………………………………………………... 2

General Municipal Law 50-e ……………………………………………… 3

General Municipal Law 50-i (1)………………………………………………... 3

General Municipal Law 50-h ……………………………………………… 3

42 U.S.C. § 1983………………………………………………………… 1, 21, 23

**PRELIMINARY STATEMENT**

There are no disputes of fact preventing entry of judgment on plaintiff Kenneth
Creighton's ("Creighton"): 1) state-law false arrest claims against defendant City of New York
("City"), Glenn Godino ("Godino"), Dean Roberts ("Roberts"), Bruce Birns ("Birns") and Ed
Talty (First Cause of Action); 2) state-law malicious prosecution claims against the City,
Godino and Roberts (Second Cause of action; 3) federal claims for malicious prosecution
pursuant to 42 U.S.C. §1983 against Godino and Roberts (Fourth Cause of Action; and 4)
plaintiff's Due Process claims pursuant to 42 U.S.C. §1983 against defendant Godino (Sixth
Cause of Action). This Memorandum of Law and the accompanying Rule 56.1 Statement and
Exhibits support Mr. Creighton's motion.

Kenneth Creighton was arrested on January 10, 2007 without lawful basis, prosecuted
without probable cause and jailed for more than five years until the false charges against him
were dismissed at the District Attorney's request. The City and its police officers, including
Godino and Roberts, unreasonably relied on the purported identification of plaintiff as the
perpetrator of a crime by an unreliable confidential informant, and purposely ignored the
overwhelming evidence exculpating Creighton and withheld that information from the District
Attorney, from Criminal and Supreme Court judges, and from a Grand Jury. Had defendants
not violated Creighton's rights and instead properly investigated the matter and not withheld and
suppressed the evidence, Creighton's arrest and subsequent prosecution would have been
prevented.

**STATEMENT OF FACTS**

For brevity's sake, no statement of facts appears here. This Court is respectfully referred
to the accompanying Rule 56.1 Statement and the exhibits offered in support.

1

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper where no genuine issue of material fact can be found in the pleadings, depositions, admissions or affidavits such that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,256 (1986). "When the movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2nd Cir. 1990) (quoting Fed.R.Civ.P. 56(e)). The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through "mere speculation or conjecture." *See id*.; *Scotto v. Almenas*, 143 F.3d 105, 114 (2nd Cir. 1998).

Because no genuine issue of material fact can be found in the pleadings, depositions, interrogatories or Affidavits with respect to plaintiff's claims for false arrest (First Claim), malicious prosecution (Second and Fourth Claims) and violation of due process (Sixth Claim), plaintiff respectfully requests that the Court grant his motion for Partial Summary Judgment with respect to those claims.

## ARGUMENT

## SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S CLAIMS FOR UNLAWFUL ARREST MALICIOUS PROSECUTION, AND DUE PROCESS VIOLATIONS.

### 1. Plaintiff's state-law claim for false arrest was timely commenced and he has met all conditions precedent required by New York General Municipal Law

Plaintiff's state law claims against defendants City of New York, Roberts, Godino, Birns, and Talty were timely commenced and plaintiff has met all conditions precedent pursuant to General Municipal Law 50-e.

Pursuant to General Municipal Law 50-i,  any  action against a city for personal injury alleged to have been sustained by reason of the negligence or wrongful act of such city or of any officer, agent or employee thereof, shall be commenced within one year and ninety days after the happening of the event on which it is based. *General Municipal Law 50-i (1)*.  Under New York State law, a claim for false arrest and unlawful imprisonment arise when plaintiff is released from custody. *Nunez v. City of New York*, 307 A.D.2d 218, (1st Dep't., 2003); *Jackson v. Police Dep't. of City of New York*, 119 A.D.2d 551 (2d. Dep't., 1986); *Collins v. McMillan*, 102 A.D.2d 860 (2d. Dep't., 1984).

Here, plaintiff was released from custody on January 19, 2012. *See Rule 56.1 Statement ¶ 188*.  On February 3, 2012, within two weeks of the charges being dismissed against him, Creighton served a Notice of Claim naming the City of New York and the individuals involved in his arrest and prosecution as potential defendants in future litigation as required by General Municipal Law 50-e. *See Rule 56.1 Statement ¶ 3* .  On May 22, 2012, plaintiff was orally examined pursuant to General Municipal Law 50-h. *Rule 56.1 Statement, ¶ 193*. Thus, plaintiff complied with the conditions precedent required by General Municipal Law §50e for

3

commencement of his common-law state Claims based on the arrest and prosecution.  On August

22, 2012, he commenced an action in Supreme Court, Bronx for, *inter alia,* false arrest *Rule 56.1*

*Statement ¶ 1*.  Thus, plaintiff's state law claims for false arrest and malicious prosecution were

timely interposed.

It is axiomatic that under New York State law, a municipality may be held vicariously

liable for torts committed by police officers while acting within the scope of their employment.

*Holland v. City of Poughkeepsie*, 90 A.D.3d 841 (2nd Dept., 2011). There being no dispute that

defendants, Godino and Roberts were employees of the City and were acting within the scope of

their employment when they arrested plaintiff, the City is liable for their tortious conduct.

### 2.  Defendants cannot demonstrate an objectively reasonable basis for Creighton's arrest

On January 10, 2007, despite the fact that the police had both oral and written statements

from Fawaz Terab ("Terab"), the owner of the bodega where the incident took place, identifying

Kijafa Spruell (Spruell), not Creighton, as the man who passed a gun to Dior in the bodega and

that Terab had identified Spruell from a photo array, Creighton was arrested and charged with

Criminal Possession of a Weapon in the second degree, Criminal Facilitation in the second

degree and Criminal Possession of a Weapon in the third degree.  *Rule 56.1 Statement ¶ ¶ 13, 20,*

*79.*

The existence of a confidential informant (CI) that was allegedly in the bodega at the

time the gun was passed was never revealed to anyone until the instant civil lawsuit was

underway.[1] *Rule 56.1 Statement ¶¶ 45, 170, 171, 192.*

---

[1] Defendants' Response to Plaintiff's Interrogatory 9, which sought the identity of all persons in the bodega at the time the gun was passed, stated that "plaintiff Kenneth Creighton, Dior Creighton, and Fawaz Terab were present in the bodega at or about the time that K. Creighton is alleged to have passed a firearm to D. Creighton".  Defendants did not identify a confidential

Under New York State law, in order to maintain an action for false arrest, plaintiff must establish that 1) the defendant intended to confine him/her; 2) plaintiff was conscious of the confinement, 3) plaintiff did not consent to the confinement and 4) the confinement was not otherwise privileged. *Broughton v. State of New York*, 37 NY2d 451, 456 (1975). It cannot be disputed that Godino and Roberts intended to confine plaintiff and that plaintiff was undeniably conscious of the confinement and he did not consent to it. Thus, plaintiff has established the first three elements of his claim for false arrest.

With respect to the fourth element, in the seminal case of *Broughton v. State*, 37 N.Y.2d 451, 335 N.E.2d 310 (1975), the New York State Court of Appeals held that where an arrest or imprisonment is extrajudicial, that is, without legal process such as a warrant, it is not necessary for plaintiff to allege or prove want of probable cause. Once an arrest is made without a warrant, as here, it is presumptively invalid and the burden is on the municipality and its police officers to establish that the arrest was privileged. *See, also, Wu v. City of New York*, 934 F.Supp. 581 (S.D.N.Y. 1996); *Smith v. Nassau County*, 34 NY2d 18 (1974); *Burgio v. Ince*, 79 A.D.3d 1733 (4th Dept., 2010).

Defendants City, Godino and Roberts cannot carry their burden of proving justification for plaintiff's arrest because, as a matter of law, there was no probable cause to arrest him.

---

informant as having been in the bodega at the time of the alleged passing of the gun. *Rule 56.1 Statement ¶ 194.* While in their response to plaintiff's First Set of Interrogatories, defendants stated that Fawaz Terab and a confidential informant informed members of the Police Department that K. Creighton was the person who passed the firearm to D. Creighton, it is not alleged that the so-called confidential informant was present in the store or was an eyewitness. Defendants not only failed to identify the CI as an eyewitness in their responses but they also failed to provide any documentation to support their claim that Terab had identified Creighton as the person who passed the gun.

Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty. *Colon v. City of New York*, 60 N.Y.2d 78 (1983). The failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause. *Colon, supra, citing Sweet v. Smith*, 42 A.D. 502 (4th Dept. 1899); *Ramos v. City of New York*, 285 AD2d 284 (1st Dept., 2001).

Only when officers have knowledge or <u>reasonably trustworthy information</u> of facts and circumstances that are sufficient to warrant a person of reasonable caution to believe that the person to be arrested has committed or is committing a crime, is there probable cause to arrest. *Weyant v. Okst,* 101 F.3d 245 (2d Cir. 1996). The question of whether or not probable cause existed may be determinable as a matter of law where there is no dispute as to the pertinent events and the knowledge of the officers. *Id.* at 852; *Parkin v. Cornell University,* 78 N.Y.2d 523, 529 (1991).

In order to determine whether an arrest was supported by probable cause, courts must consider the "totality of the circumstances" in light of the facts known to the arresting officer at the time of the arrest. *See Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir.2007); *Torres v. Jones*, 26 N.Y.3d 742 (2016). The totality of the circumstances known to detective Godino before plaintiff's arrest conclusively demonstrates that the defendants, as a matter of law, did not have probable cause to arrest Kenneth Creighton.

When making a probable cause determination, police officers are entitled to rely on a victim or an eyewitness's allegations that a particular person has committed a crime, <u>unless the circumstances raise doubt as to the person's veracity</u>. *DeMichelle v. City of New York*, 2012 WL 4354763 (S.D.N.Y., 2012) (Gardephe, D.J.); *Bullard v. City of New York*, No. 01 Civ. 11613, 2003 WL 168444 (S.D.N.Y. Jan. 20, 2003) [refusing to dismiss the complaint where there were

sufficient indications that the complainants were not reliable sources of probable cause]; *Medina v. City of New York*, 102 A.D.3d 101 (1st Dept., 2012).

Where, however, materially impeaching circumstances or grounds for questioning the credibility or reliability of a witness's credibility exist, as is plain in this case, the officer's failure to make further inquiry is unreasonable and evidences lack of probable cause. *See Sital v. City of New York*, 60 A.D.3d 465, (1st Dept.2009), *lv. dismissed* 13 N.Y.3d 903 (2009); *Fortunato v. City of New York*, 63 A.D.3d 880 (2nd Dept., 2009); *Carlton v. Nassau County Police Dept.*, 306 A.D.2d 365 (2nd Dept., 2003); *Bullard v. City of New York*, No. 01 Civ. 11613, 2003 WL 168444 at 4 (S.D.N.Y. Jan. 20, 2003); *Jovanovic v. City of New York*, 2006 WL 2411541 (S.D.N.Y., 2006) [the sole, unsupported allegation of a witness did not, on its face, confer probable cause where other circumstances raised issues as to the veracity of the witness's claim].

Because the overwhelming evidence establishes that the CI's identification of Creighton as the perpetrator, if it occurred at all, was not credible and that red flags pointed to its clear unreliability, there was no probable cause to arrest plaintiff.[2]

Defendant Godino was the lead detective in charge of the investigation that led to plaintiff's arrest and prosecution. *See Rule 56.1 ¶ 11.* During the investigation, Godino interviewed people, took written statements from witnesses, canvassed the area, conducted photo array identification procedures, reviewed surveillance footage of the store at the time of the passing of the gun and was otherwise responsible for the investigation and plaintiff's ultimate arrest and prosecution. *See Rule 56.1 Statement, ¶ 22, 29, 30, 31, 32, 71, 72.*

---

[2] Significantly, when the CI was shown the surveillance video from the bodega during his deposition on May 25, 2016, he identified Kijafa Spruell as the person who passed the gun without prompting and without hesitation. *Rule 56.1 ¶ 196.*

Police procedure required that the steps taken during an investigation were to be recorded chronologically in Complaint-Follow-Up Informational Reports, commonly known as DD5s, which were to be consecutively numbered. *See Rule 56.1 Statement ¶ 109.* While Godino routinely made notes on a spiral notebook and then transferred them to DD5s, the existence of a CI and his purported statement implicating Creighton is not recorded in any DD5 and appears only in Godino's spiral notebook, which is undated. *Rule 56.1 Statement ¶ 50, 64, 65.*[3] Not one of the extensive official police records prepared in connection with the investigation of these crimes reveal that the CI ever provided either an oral or written statement to the police concerning his alleged identification of Creighton as the perpetrator. In fact, the existence of a CI is conspicuously absent from any police records except for the undated entry in Godino's personal spiral notebook. No DD5 was ever prepared containing any information about the CI; not even his existence. *See Rule 56.1 Statement ¶ 50, 148.*

Moreover, even though Godino spoke to the CI <u>after</u> he had obtained the written statement from Terab implicating Spruell and not Creighton, and after Terab had identified Spruell from a photo array, Godino's spiral notebook, the only record that contains any information whatsoever about the CI, does not mention Spruell. *Rule 56.1 Statement ¶ 148.* Nowhere in Godino's spiral notebook or anywhere else in the police records is there any indication that Godino asked the CI whether he knew Spruell or whether Spruell was in the bodega at the time the gun was passed. Nor does it appear that Godino made the CI aware that Spruell had been identified by Terab as having passed the gun.

---

[3] The DD5s in this case are not numbered therefore the parties and the Court cannot know how many are missing, although Godino testified that a lot of DD5s" are no longer in the case file. *Rule 56.1 Statement ¶ 114.*

Prior to Creighton's arrest, believing that Terab's identification of Spruell was credible and reliable given the specific information Terab had relayed as having directly observed in the bodega and his having picked Spruell out of a photo array, Godino concluded that there was probable cause to arrest Spruell for passing the gun. Godino did not conduct any further investigation. *Rule 56.1 Statement ¶ 37.*

Godino did not even issue an I-card to have Spruell picked up for questioning. *See Rule 56.1 Statement ¶ 40.* In fact, Godino never even attempted to locate or question Spruell despite Terab's written statement that Spruell had passed the gun used in a homicide and his photo array identification to that effect. *See Rule 56.1 Statement ¶ 41.*

Godino chose to completely ignore Terab's identification of Spruell as the perpetrator. Instead, without conducting any further investigation, Godino blindly accepted as true the highly questionable, suspect, unrecorded and uncorroborated oral statement of an unreliable paid criminal informant ("CI"), who had a well-known history of drug (crack) abuse[4] and criminal activity; a person who became a confidential informant in order to avoid jail time. *See Rule 56.1 Statement ¶ 201, 202, 203 204.*

Godino obtained approval to arrest plaintiff from Assistant District Attorneys Bruce Birns ("Birns") and Ed Talty ("Talty"), as was the policy and procedure followed in Bronx County. *See Rule 56.1 Statement ¶ 117.* The sole basis conveyed by Godino to the Assistant District Attorneys to justify plaintiff's arrest was the CI's alleged identification of Creighton as the person who passed the gun inside the bodega. *See Rule 56.1 Statement ¶ ¶ 49, 188.*

Significantly, before obtaining approval from Birns and Talty to arrest Creighton, Godino did not inform either one that merely five days after the shooting, on December 31, 2006, Terab

---

[4] At the time the CI allegedly witnessed the passing of the gun he was in the back of the bodega purchasing crack. *See Rule 56.1 Statement ¶ 204.*

had not only orally stated to Godino that it was Spruell who had passed the gun to Dior but that Terab had also provided a written statement to that effect and had picked Spruell out of a photo array and identified him as the person who passed the gun. *See Rule 56.1 Statement ¶ 20, 31.* Moreover, Talty, the Chief of the DA's homicide bureau, was never advised, before approving plaintiff's arrest, that the person who had identified Creighton as the perpetrator was a paid confidential informant who was a known crack addict. *See Rule 56.1 Statement ¶ 192.*

Had Talty and/or Birns been advised of Terab's identification of Spruell as the perpetrator, which directly contradicted the CI's alleged identification of Creighton, neither one would have approved Creighton's arrest without further investigation. *See Rule 56.1 Statement ¶ ¶ 141,145, 200.*

The sole basis for establishing probable cause for plaintiff's arrest was the CI's identification of Creighton as the person who passed a gun to Dior Creighton (Dior). *See Rule 56.1 Statement ¶¶ 49, 188.* The record, however, unquestionably establishes that materially impeaching circumstances concerning the CI's statement required Godino to not just seriously question the CI's credibility and reliability but also to further investigate. Had he done so, he would have learned information about the CI that would have led him to the conclusion that the CI was totally unreliable and that the information he provided concerning plaintiff was unworthy of belief.

As plaintiff's expert, Walter Signorelli, noted in his report, throughout the history of police practice, confidential informants have been notoriously unreliable. In consideration of this known fact, it is standard and proper police practice to corroborate a confidential informant's information. *Exh. D*, ¶ 26.

10

The CI in this case had an extensive criminal history *Rule 56.1 Statement ¶ 201*; was a heavily-addicted drug addict *Rule 56.1 Statement ¶ 202, 204;* testified before the grand jury under a false name with the presenting DA's knowledge of the falsity, *Rule 56.1 Statement ¶ 198* and was paid for his testimony. *Rule 56.1 Statement ¶ 203.* All of these factors were important in assessing the reliability of the CI for establishing probable cause but were ignored. More importantly, here, where the CI's information was directly contradicted by statements from an independent, credible witness - Mr. Tareb, a business owner who was present when the gun was passed - the confidential informant's statement should not have been the sole basis to establish probable cause without corroboration.

As discussed above, not one of the extensive police records prepared in connection with the investigation of these crimes reflects that the CI provided either a written or oral statement to the police or that his existence was even documented other than Godino's cryptic spiral notebook entry. Nor is there any evidence that confirms the CI's alleged presence in the bodega at the time the gun was passed. Significantly, the CI does not appear in the surveillance video taken inside the bodega even though supposedly, he was close enough to the passing of the gun to have witnessed it. *See Rule 56.1 Statement ¶ 58.*

In determining Godino's unreasonableness in relying on the CI's unrecorded, unwritten, unsworn statement, which was at odds with Terab's signed statement and photo array identification, it is instructive to look at what an officer seeking an arrest warrant must demonstrate to an issuing magistrate when using information provided by a confidential informant. Such an application must demonstrate, (1) the veracity or reliability of the informant, and (2) the basis of the informant's knowledge.

With respect to the veracity or reliability of a CI, the inquiry requires a showing that either the informant is credible or, in the absence of such a showing, that the specific information given is credible. *Delgado v The City of New York,* 86 A.D.3d 502 (1st Dept., 2011).  Factors in evaluating reliability include whether the informant has supplied accurate information to the police in the past, whether the informant's statements were made under oath, whether the informant has made an admission against penal interest, or whether the details of the informant's story have been corroborated by the police. *See, People v. Calise,* 256 A.D.2d 64 (1st Dept., 1998), *lv. denied* 93 N.Y.2d 851 (1999).

Here, the information provided by the CI was directly contradicted by the statements from an independent, credible witness, Mr. Tareb. The CI's statements were not written or recorded, let alone made under oath. The statements were not against the CI's penal interest, to the contrary, he had every reason to lie since he was getting paid for the information and, finally, the informant's story was admittedly not corroborated by the police.

At the time Godino decided to blindly accept the CI's alleged identification of Creighton as the perpetrator and ignore Terab's identification of Spruell, Godino did not have any prior knowledge of or experience with the CI *See Rule 56.1 Statement ¶ 48*; he actually never learned the CI's name, therefore, he could not investigate his criminal past or his prior reliability as a CI. *See Rule 56.1 Statement ¶ 54.*

Godino learned of the CI's existence through a phone call from the CI's handler <u>after</u> Terab had provided his written statement and identification from a photo array. *See Rule 56.1 Statement ¶ 8.*  There is no record that Godino ever attempted to confirm with Terab whether he knew the CI and whether the CI was in the bodega when the gun was passed.

12

Godino claims to have met with the CI for the first time on some unknown date at the Precinct Stationhouse. *See Rule 56.1 Statement ¶ 82.* Godino never investigated the CI's criminal history of arrests or convictions. *See Rule 56.1 Statement ¶ 87.* Godino never investigated or inquired about the CIs previous reliability. *See Rule 56.1 Statement ¶ 88.* Godino never investigated whether the CI was being paid on this case or how much he had been paid on prior cases. *See Rule 56.1 Statement ¶89.* Godino never investigated what connection, if any, there may have existed between the CI and Creighton. *See Rule 56.1 Statement ¶ 90.* The only information Godino had, which came from the CI's handler, was that the CI was an informant on narcotics cases. *See Rule 56.1 Statement ¶ 93.*

Plaintiff's police practices and procedures expert, Walter Signorelli, states in his Declaration, that in his opinion, within a reasonable degree of professional certainty, defendants violated proper, accepted, and standard police practices and procedures for conducting a criminal investigation, and the defendants' failure resulted in the wrongful arrest and incarceration of Creighton. *Exhibit D, ¶ 34.* The basis for Signorelli's opinion is that the detectives failed to conduct a full and complete investigation; failed to conduct proper witness interviews; failed to follow up on relevant leads and information provided to them; failed to document pertinent information; failed to safeguard the original security video pertinent to the investigation; failed to notify the district attorney of possible exculpatory evidence; and failed to reasonably assess the totality of the circumstances to determine whether probable cause to arrest existed or not. *Exhibit D, ¶ 22.*

Moreover, the failure of Detective Godino to inform the Assistant District Attorney prior to Creighton's arrest of Terab's statement and identification of Spruell violated proper police

practices and procedures, as that failure caused the Assistant District attorney to authorize the arrest and proceed with bringing charges against Creighton. *Exhibit D, paragraph 24.*

In Mr. Signorelli's opinion, Godino's reliance on the confidential informant's statements as grounds to arrest and prosecute Creighton, while ignoring and not following up on Mr. Tareb's contradictory identification, violated proper police practices and procedures. *Exhibit D, ¶ 25.* Police officers are trained that in order to make a lawful arrest they must have probable cause to do so. *Exh. D, ¶ 26.*

Probable cause consists of facts and circumstances that would lead a reasonable police officer to conclude that the person to be arrested committed a crime. *Exhibit D, ¶ 25.* In this case, relying on the confidential informant as the sole basis for determining probable cause under the circumstances violated proper police practices and procedures. *Exhibit D, ¶26.*

Godino's total lack of information about the CI and the latter's lack of reliability and credibility; Terab's signed statement and photo array identification of Spruell as the perpetrator; Godino's failure to so much as question Spruell; Godino's failure to so much as attempt to corroborate the CI's inherently suspect identification of Creighton as the culprit, Godino's reliance on the CI's purported identification of Creighton as the perpetrator, while ignoring Terab's positive identification of Spruell, leads to the inescapable conclusion that there was no probable cause to arrest plaintiff as a matter of law.

The City is also liable for defendant, Roberts, a Detective assigned to the 42nd Precinct, who was the arresting officer who attested to the facts in the criminal complaint filed against Creighton. *See 56.1 Statement, ¶ 199.* For the same reasons that Godino cannot establish justification for plaintiff's arrest because he did not have probable cause to arrest Creighton, defendant Roberts, cannot carry his burden of proving justification either.

Additionally, because Roberts did not possess any information that could have reasonably led him to believe that the assertions he made in the criminal complaint he signed against plaintiff were true, he lacked probable cause to arrest him independently of Godino's actions and as such plaintiff is entitled to judgment as a matter of law against Roberts for false arrest and against the City for Roberts' actions under the theory of *respondent superior*. *Rule 56.1 Statement, ¶ ¶ 94, 95, 96*.

Roberts signed a sworn complaint charging plaintiff with Criminal Possession of a Weapon in the Second Degree; Criminal Facilitation in the Second Degree and Criminal Possession of a Weapon in the Third Degree. *See Rule 56.1 Statement ¶ 199*. The sworn complaint signed by Roberts states that the assertions made against Creighton were based upon "official investigation, and witnesses known to the Police Department, that at the above time and place, inside a bodega, defendant and a separately unapprehended individual engaged in a brief conversation, after which defendant passed a shiny metallic object to the separately unapprehended individual....". Roberts had no such knowledge. *Exhibit V*.

The basis for Roberts's assertion in the sworn complaint that Creighton had passed the gun to Dior was his incorrect belief that Terab, the bodega owner, had identified Creighton as the culprit. *Rule 56.1 Statement ¶ 94*. Roberts was never advised that Terab had identified Spruell as the person who passed the gun or that Terab had signed a statement to that effect. In fact, Roberts learned for the very first time during his deposition herein that Terab had identified Spruell and not Creighton as the person who passed the gun. *See Rule 56.1 Statement ¶ 95*. Nor did Roberts have any knowledge of the existence of a CI other than some vague mention of one at an undetermined time. *See Rule 56.1 Statement ¶ 95*. Roberts did not see a single document in

the police file that even hinted that a CI was involved in the identification of Creighton as the person who passed the gun.

As a matter of law, the facts and circumstances known to Roberts at the time he arrested plaintiff and swore a criminal complaint against him could not have reasonably led a prudent person in like circumstances to believe plaintiff guilty of having passed the gun.

Under the "collective or imputed knowledge doctrine" an arrest is permissible where the actual arresting officer lacks the specific information to form the basis for probable cause but sufficient information to justify the arrest was known by other law enforcement officials initiating the investigation and the other officers communicated the information they possessed individually, thereby pooling their collective knowledge to meet the probable cause threshold. *Brown v. City of New York*, 798 F.3d 94 (2d Cir. 2015); *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007).

Here, the basis for Roberts' arresting plaintiff was not communicated to him, he had no knowledge of the basis for probable cause and in fact believed it to be the bodega owner's identification of Creighton, which was not so. Therefore, Roberts did not have probable cause to arrest plaintiff. As such, plaintiff is entitled to judgment as a matter of law on his New York State false arrest claim against Roberts and the City derivatively under *respondeat superior*.

Summary judgment should also be entered against Assistant District Attorneys Birns and Talty on plaintiff's false arrest claims. They both approved and authorized an arrest made without probable cause. *Rule 56.1 Statement ¶77, 144*.

It is undisputed that the two ADA defendants intended to and did cause Kenneth Creighton's confinement. The Bronx District Attorney's policy is that proposed homicide arrests have to be reviewed and approved, with advice given regarding sufficiency of evidence

16

establishing probable cause.  *Rule 56.1 Statement ¶ 55, 77, 144*.  That is what happened here.

Defendants Birns directly reviewed the matter with defendant Godino, and, because he needed

supervisory approval, met with and obtained approval of the arrest from defendant Talty.

Nor does absolute immunity apply to the Assistant District Attorneys' actions, as the

defendants' acts and omissions in authorizing the arrest were in an investigative, not

prosecutorial or advocacy, function.  *See Hill v. City of New York,* 45 F.3d 653 (2nd Cir. 1995).

### 3.   Plaintiff is entitled to summary judgement on his New York State common law and federal claims for malicious prosecution against defendants, City, Godino and Roberts

The elements of a malicious prosecution cause of action under New York State law are:

1) the commencement or continuation of a criminal proceeding by the defendant against the

plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of

probable cause for the criminal proceeding and (4) actual malice. *Cantalino v. Danner*, 96 NY2d

391, 394, 729 NYS2d 405 (2001); *Smith-Hunter v. Harvey*, 95 NY2d 191 (2000); *Diederich v*

*Nyack Hosp*, 49 AD3d 491 (2nd Dept., 2008); *Broughton v. State*, 37 N.Y.2d 451, 335 N.E.2d

310 (1975); *Avgush v. Town of Yorktown*, 303 A.D.2d 340, 755 NYS2d 647.  To make out a

federal claim, one additional element - post-arraignment deprivation of liberty - must be proven.

*Nnodimele v. Derienzo*, 2016 WL 337751 (E.D.N.Y., 2016).

With respect to the first element, as a matter of law, the defendants' filing of

the Criminal Court Complaint "initiated" the prosecution against Creighton. *See, Torres, supra;*

*Cameron v. City of New York*, 598 F.3d 50, 63 (2nd Cir. 2010); *Ricciuti v. NYCTA,* 124 F.3d at

130 (2d Cir., 1997); *Ramos v. City of New York*, 285 A.D.2d 284, 298–299, 729 N.Y.S.2d 678

[1st Dept.2001].  The criminal proceedings terminated in plaintiff's favor on *Rule 56.1 Statement*

*¶ 89.*

As to probable cause, the evidence establishes, as a matter of law, that there were no facts known to the police to justify any of the police officers, including Godino and Roberts, to reasonably believe that they had lawful grounds for prosecuting plaintiff.  Probable cause to prosecute requires "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (internal quotation marks omitted). Probable cause is determined by reference to the totality of the circumstances, *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004), and "plainly exculpatory evidence" must not be ignored, *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006); *Kerman v. City of New York*, 374 F.3d 93, 99 (2d Cir. 2004).

Here, not only did Godino ignore plainly exculpatory evidence, *to wit*, Terab's identification of Spruell as the perpetrator but as discussed above, he purportedly relied on the alleged identification of Creighton by a CI who the officers did not have reason to believe was reliable or credible. Under these circumstances there was no probable cause to arrest or prosecute Creighton as ADA Talty readily conceded.

While an indictment by a Grand Jury creates a presumption of probable cause, that presumption may be overcome by presenting evidence of fraud, perjury or suppression of evidence by the police, *Colon v. City of New York*, 60 NY2d 78 (1983); evidence that police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, *Chetrick v Cohen*, 52 AD3d 449, 859 N.Y.S.2d 705 (2nd Dept., 2008); evidence that the police failed to make further inquiry when a reasonable person would have done so,  *See, Haynes v City of New York*, 29 AD3d 521, 815 N.Y.S.2d 143 (2nd Dept. 2006); *Carlton v. Nassau County Police Dept.*, 306 AD2d 365, 761 N.Y.S.2d 98 (2nd Dept. 2003) or

where it can be shown that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures and plaintiff's rights. *See, Lee v. City of Mount Vernon*, 429 N.Y.S.2d 557, 429 N.Y.S.2d 557 (1980); *Hernandez v. State*, 644 NYS2d 380, 382, 228 AD2d 902, (3rd Dept., 1996).

Under any of the above-described circumstances, the presumption of probable cause may be overcome in a claim for malicious prosecution.

Here, the evidence presented in support of the instant motion overcomes the presumption afforded a grand jury indictment, as a matter of law, for several salient reasons.

First, the evidence establishes that neither Godino nor anyone else from the Police Department advised the Assistant District Attorneys involved in the criminal prosecution that within five days of the shooting, they had obtained a written statement from the bodega owner identifying Spruell, and not Creighton, as the person who passed the gun.  Such suppression of evidence squarely rebuts the presumption of probable cause afforded a grand jury indictment where, as here, the exculpatory evidence is consequently not made known to the Grand Jury.

Second, Godino did not tell the District Attorney's office that in addition to providing a written statement implicating Spruell in the crime, Terab had viewed photo arrays in which he identified Spruell as the person who passed the gun and Dior as the person who received the gun. *Rule 56.1 Statement ¶¶ 31, 32*.  Thus, it is indisputable that that police witnesses in did case did not make a complete and full statement of facts to the District Attorney, which in turn did not permit the District Attorney to make a complete and accurate presentation to the jury.

Third, testimonies of both Godino and Roberts establish that both failed to make further inquiry. Fourth, as will be discussed *infra*, the fact that the real reason for Creighton's arrest was to put pressure on him into to turn his brother in rather than a belief that Godino had lawful

grounds for prosecuting plaintiff is proof positive that the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures and plaintiff's rights. *See, Lee, supra.*

Fifth, not only was the sole basis for plaintiff's prosecution the unrecorded, uncorroborated and highly suspect alleged identification of Creighton by the CI but the evidence also proves that the prosecution was initiated with malice aforethought. The police records indicate, that the police had reason to believe that plaintiff's brother, Dior had been involved in the shooting but they had been unable to locate him. *Rule 56.1 Statement ¶¶ 71-72.* The police records reveal the malicious basis for plaintiff's arrest, unsupported by probable cause. In a Complaint Follow Up Report (DD5) authored by one Detective DeLuca, he states that he had learned that Kenneth Creighton was to report to his probation officer on that date at which time officers from the 42nd precinct would arrest Kenneth and "[i]n turn Kenneth may inform this Department where defendant, Dior Creighton is hiding out." *Rule 56.1 Statement ¶ 78.*

As the Court of Appeals of the State of New York noted in *Torres, supra*, a plaintiff can simultaneously rebut the presumption of probable cause and satisfy the malice element in a malicious prosecution action by demonstrating that the evidence of guilt relied upon by the defendant was so scant that the prosecution was entirely baseless and maliciously instituted.

Creighton's arrest was not based on probable cause but rather on uncorroborated knowingly false evidence that was designed to pressure plaintiff into turning in his brother and ultimately pressure Dior into taking a plea to save his brother from serving more time for a crime the police knew full-well he had not committed. That arresting and convicting plaintiff's brother, Dior, was the impetus for plaintiff's arrest and not a reasonable belief that he had committed any crime, further supported by the fact that when Dior pled guilty to the charges of

which he was accused, all charges against Kenneth Creighton were dismissed. *Rule 56.1 Statement ¶ 189*.

As to deprivation of liberty, it cannot be disputed that Mr. Creighton was jailed for more than five long years after his arraignment without probable cause. *Rule 56.1 Statement*.

For the foregoing reasons, plaintiff is entitled to judgment as a matter of law on his New York State law malicious prosecution claim against the City of New York and Godino. Similarly, he is entitled to summary judgment on his federal civil rights claim against Godino pursuant to 42 U.S.C. §1983.

### 4. Plaintiff is entitled to summary judgment against Godino on his Due Process Claims – Sixth Cause of Action

In *Bermudez v. City of New York*, 790 F.3d 368 (2d. Cir. 2015), the Second Circuit held that a plaintiff can maintain a distinct cause of action for deprivation of his due process rights based on a detective's failure to inform an Assistant District Attorney about problems encountered in the initial questioning of the witnesses, as a reasonable jury could conclude that the detective's acts could have prevented the ADA from making an informed decision about the reliability of that evidence as it did here.

As discussed above, here, both ADA Birns and ADA Talty, who are the individuals in the District Attorney's office who approved plaintiff's arrest and were involved in his prosecution, testified at their depositions that Godino not only failed to inform them that five days after the shooting, an eyewitness had identified Spruell as the person who passed the gun in the bodega but also that Godino failed to apprise them that the sole basis for probable cause to arrest and prosecute plaintiff was the statement of a paid confidential informant whose reliability and credibility were not established and whose identification of Creighton as the perpetrator was totally contradicted by Terab's statement and photo array identification of Spruell. Both Birns

21

and Talty testified that if they had been made aware of Terab's identification of Spruell as the individual who passed the gun, they would not have authorized plaintiff's arrest without further investigation. *Id. at 375-76.* No further investigation was done because the ADAs were never advised of the exculpatory evidence.

Thus, it is undisputed that the failure to make the District Attorney aware of the extremely suspect identification by the CI and the existence of an alternative suspect, identified by a reliable witness who knew him, prevented the ADAs from making an informed decision about the reliability of that evidence.

In fact, ADA Tulty testified that had Terab's identification of Spruell been revealed at the bail hearing, it would have improved Creighton's chances of getting a lower bail or a release on his own recognizance (ROR) and he may not have spent over five years of his young life incarcerated for a crime the police knew he had not committed.

In *Russo v. City of Bridgeport,* 479 F.3d 196 (2d Cir. 2007), the Court of Appeals for the Second Circuit recognized that wrongful pretrial incarceration caused by suppression of exculpatory evidence violates the Fourth Amendment. Under *Russo,* a plaintiff is required to show: "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.' " *Id.* at 203.

Here there are no material issues of fact that defendant, Godino violated plaintiff's due process rights and as such, plaintiff is entitled to Judgment against Godino on his Sixth Cause of action.

22

## CONCLUSION

For the reasons set forth above, plaintiff respectfully requests that his motion for partial summary judgment on his: 1) state-law false arrest claims against defendant City of New York ("City"), Glenn Godino ("Godino"), Dean Roberts ("Roberts"), Bruce Birns ("Birns") and Ed Talty (First Cause of Action); 2) state-law malicious prosecution claims against the City, Godino and Roberts (Second Cause of action; 3) federal claims for malicious prosecution pursuant to 42 U.S.C. §1983 against Godino and Roberts (Fourth Cause of Action; and 4) plaintiff's Due Process claims pursuant to 42 U.S.C. §1983 against defendant Godino (Sixth Cause of Action) be granted in its entiry.

Respectfully submitted,

**PAZER, EPSTEIN & JAFFE, P.C.**
20 Vesey Street, Suite 700
New York, New York 10007
(212) 227-1212

**RUBERT & GROSS, P.C.**
Attorneys for Plaintiffs
150 Broadway, Suite 1314
New York, New York 10038
(212) 608-3103

_____
RICHARD GROSS