UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

KENNETH CREIGHTON,

                    Plaintiff,

           -against-                   12 CIV 7454 (PGG)

THE CITY OF NEW YORK, DETECTIVE DEAN
ROBERTS (Shield No. 05861), DETECTIVE
GLENN GODINO (Shield No. 2756), POLICE OFFICERS
JOHN DOES 1-10 (names being fictitious and presently
unknown and intended to be employees of the NYPD who
were involved in Plaintiff's arrest, detention, imprisonment,
and/or prosecution), DISTRICT ATTORNEY ROBERT T.
JOHNSON, ASSISTANT DISTRICT ATTORNEY BRUCE
BIRNS A/K/A BURNS, ASSISTANT DISTRICT ATTORNEY
ED TALTY a/k/a ED TULTY and ASSISTANT DISTRICT
ATTORNEY MICHAEL COOPER,

                    Defendants.

--------------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW SUPPORTING HIS MOTION FOR SANCTIONS PURSUANT TO RULE 37 OF THE FEDERAL RULES OF CIVIL PROCEDURE

**PAZER, EPSTEIN & JAFFE, P.C.**
20 Vesey Street, Suite 700
New York, New York 10007
(212) 227-1212

**RUBERT & GROSS, P.C.**
150 Broadway, Suite 712
New York, New York 10003
(212) 608-3103

June 27, 2016

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………..…………..…………………………….…………i

PRELIMINARY STATEMENT………….……………………………………….…………1

STATEMENT OF FACTS…………………………………………………….……………..2

      THE LOST OR DESTROYED VIDEOTAPE……………………….…….……….2

      THE MISSING DD5s…………………………………………….…………………3

      THE LOST OR DESTROYED VIDEOTAPE………………….…….…….………4

ARGUMENT……………………………………………………………….…………….....5

    I.    SANCTIONS AGAINST DEFENDANTS ARE
          WARRANTED FOR SPOLIATION OF
          EVIDENCE…………………………………………………………………….....5

    II.   PLAINTIFF IS ENTITLED THE STRIKING OF
          DEFENDANTS' ANSWER AND JUDGMENT ON THE ISSUE OF
          LIABLITY……………………………….…………………………….…………12

CONCLUSION……………………………………………………………..……………...13

## TABLE OF AUTHORITIES

Cases

*Barsoum v. N.Y.C. Hous. Auth.*, 202 F.R.D. 396 (S.D.N.Y.2001)……………….……………….6

*Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93 (2d Cir.2001)……………….………...6

*DeMeo v. Kean*, 754 F.Supp. 2d 435 (N.D.N.Y. November 30, 2010)……………….…………...9

*Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423 (2d Cir.2001)……………….……………6

*Gaffield v. Wal–Mart Stores East*, LP, 616 F.Supp.2d 329 (N.D.N.Y.2009)………………….…9

*Great Northern Ins. Co. v. Power Cooling, Inc.*, No. 06 CV 874, 2007 WL 2687666 (E.D.N.Y. Sept. 10, 2007)…………………………………………………………………………………………9

*Indemnity Ins. Co. of N. Am. v. Liebert Corp.*, No. 96 CV 6675, 1998 WL 363834 (S.D.N.Y. June 29, 1998)………………………………………………………………………………………..9

*In re NTL, Inc. Securities Litigation*, 244 F.R.D. 17968 Fed.R.Serv.3d 1145 (S.D.N.Y. 2007)….8

*John B. Hull. Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172 (2d Cir.1988)………..…5

*Kronisch v. United States*, 150 F.3d 122 (2d Cir.1998)………………………………………...5, 6

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010)…………………………………..7

*Mastercard Int'l, Inc. v. Moulton*, No. 03 Civ. 3613, 2004 WL 1393992 (S.D.N.Y. June 22, 2004) …………………………………………………………………………………………………..8

*Miller v. Time-Warner Communications, Inc.*, 1999 WL 440781 (S.D.N.Y. 1999)………...12, 13

*Pastorello v. City of New York*, 2003 WL 1740606 (S.D.N.Y. 2003)…………………………….8

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, L.L.C., 685 F.Supp.2d 456 (S.D.N.Y. 2010)……………………………………………………………..10, 12

*Phoenix Four. Inc. v. Strategic Resources Corp.*, No. 05 CV 4837, 2006 WL 1409413 (S.D.N.Y. May 23, 2006)……………………………………………………………………………………….9

*Residential Funding Corp. v. DeGeorge Funding Corp.*, 306 F.3d 99 (2d Cir.2002)……...8, 9, 10

*Sovuli v. United States*, No 98 CV 5550, 2005 WL 2290495 (E.D.N.Y. Sept. 20, 2005)……….10

*Sterbenz v. Attina*, 205 F.Supp.2d 65 (E.D.N.Y. 2002)……………………………………...5, 6

*Transatlantic Bulk Shipping Ltd. v. Saudi Chartering, S.A.*, 112 F.R.D. 185 (S.D.N.Y.1986)….5

*Treppel v. Biovail Corp.*, 249 F.R.D. 111 (S.D.N.Y. 2008)……………………………………..10

*West v. Goodyear Tire and Rubber Co.*, 167 F.3d 776 (2nd Cir. 1999)………………………...5, 6

*Yu Chen v. LW Restaurant, Inc.*, Slip Copy, 2011 WL 3420433 (E.D.N.Y., 2011)………………7

*Zubulake v. UBS Warburg L.L.C.*, 220 F.R.D. 212 (S.D.N.Y. 2003)……………………………..6, 8

<u>Statutes</u>

Fed.R.Civ.P. 37(b)(2)………………..……………….……………….…………………………..5

## PRELIMINARY STATEMENT

Defendants should be sanctioned, pursuant to Rule 37 of the Federal Rules of Civil Procedure, for both destruction and alteration of crucial evidence.

Defendants' failure to preserve the DVR recording of the surveillance video taken at the bodega where the crime of which plaintiff was accused occurred coupled with the repeated copying of the original VHS tape and the subsequent transfer to a DVD that was produced during discovery, has irreparably altered the original images thereby precluding plaintiff from conclusively establishing that he was not the person shown in the video to be passing an object to Dior Creighton ("Dior").

Additionally, Complaint Information Reports, commonly referred to as DD5s, prepared by the Police Department in connection with the investigation at issue have been lost or destroyed. *Godino EBT, pp. 38-89.* The spoliation of these documents has severely impaired plaintiff's ability to establish conclusively the true motives for the so-called CI's alleged identification of plaintiff as the person who passed the gun. Given that the sole witness, the CI, was never disclosed during the criminal prosecution and was disclosed for the very first time during this litigation, the information contained on the missing DD5s are crucial to plaintiff's ability to prove his case.

Given the importance of the altered and destroyed materials at the time of the loss and/or alternation during the criminal prosecution as well as in the instant civil lawsuit and the prejudice caused to plaintiff by their disappearance, only the harshest of sanctions, entry of judgment against defendants, would preserve the integrity of the judicial proceeding and ensure that justice is done.

Alternatively, short of entry of judgment against defendants, an appropriate remedy in the face of the crucial lost or destroyed videotape would be an order directing that the DVD provided by defendants during discovery conclusively establishes that the person shown in the video passing an object to Dior is not plaintiff, Kenneth Creighton.

Should the Court determine that neither one of the above sanctions is warranted, plaintiff requests that, at trial, the Court give binding instructions to the jury that it can infer that the original videotape and missing DD5s would be both relevant and favorable to plaintiff's case.

## STATEMENT OF FACTS

Plaintiff, Kenneth Creighton ("Creighton"), was arrested on January 10, 2007 for allegedly passing a gun to his brother, Dior Creighton ("Dior"), which gun was subsequently used in a homicide.  Creighton remained incarcerated awaiting trial for five years and nine days until all charges against him were dismissed on January 19, 2012.

On February 3, 2012, within two weeks of the criminal charges against plaintiff being dismissed, Creighton served a Notice of Claim naming the City of New York and the individual defendants herein as potential defendants and putting them on notice that he intended to bring a lawsuit against them. *Exhibit "B" attached to Gross Declaration.*

### The lost or destroyed videotape

The bodega where the gun was allegedly passed had surveillance video. The video was originally recorded on a DVR (digital video recorder), which had been purchased by the owner in the late 1990s or early 2000s. *Exhibit F., p. 18.*

The police did not secure the actual DVR or its hard drive but instead had the bodega owner provide them with a VHS tape transferred from the DVR.  The VHS recording from the DVR was done within days of the incident and was obtained by NYC Police Detective, Glenn Godino. After

2

the police had viewed the VHS tape a number of times, it was copied onto another VHS tape and eventually was digitized to produce a DVD that was supplied to plaintiff during discovery.

## The missing DD5s

Complaint Information Reports, commonly referred to as DD5s, outline the steps taken by New York City Police Department (NYPD) detectives investigating crimes. *Godino Deposition pp. 38-89*. These DD5s contain details of interviews with witnesses, computer checks, identification procedures, requests for subpoenas and other documentation of steps routinely taken by the investigators. Any significant steps taken during the investigation were to be recorded and placed in the corresponding folders. The DD5s are supposed to be consecutively numbered in the order in which they are created to ensure all DD5s are kept in their respective files and so that it can be readily ascertained if there are any missing. *Exhibit D, Godino deposition transcript at pp. 38-40*. In this case, there were two folders; one for each victim. The two folders were then put into one larger folder. Although the DD5s are to be sequentially numbered, in this case they were not numbered. *Exhibit D, Godino's deposition, pp. 35-40, 99-100.*

The complete original NYPD file was initially copied and the copies were provided to the District Attorney. Later, the original police file was requisitioned by defendant, ADA Bruce Birns (Birns), and transferred to the District Attorney's Office. *Godino deposition, pp. 43-44*. The file remained with the District Attorney's Office until Godino retrieved it after the instant lawsuit was commenced. *Exhibit D, Godino deposition, pp. 44-46.*

When Godino was called into the DA's office to prepare the criminal case for trial, he reviewed the file and noted at that time that "a lot of DD5s" and an identification photo that had been in the file were missing from the file. *Exhibit D, Godino deposition, p. 96*. Godino does not know if, when he transferred the original file to the DA's office, the missing DD5s and

3

identification photo were in the folder at that time. He was unequivocal, however, that there were more DD5s prepared than the ones that are in the folders. The file was eventually transferred to the Law Department and copies were turned over to plaintiff in discovery. The file that is currently in existence and has been produced in this lawsuit, does not contain all the documentation that was originally in the file concerning the police investigation. *Exhibit D, Godino deposition, pp. 43-44, 95-96.* Significantly, although the DD5s were prepared in triplicate, the missing DD5s have never been produced. *Exhibit D, Godino deposition, pp. 97-102.* Case folders are kept by the NYPD in a closet even after a case is closed. *Exhibit D, Godino deposition, pp. 105-106.*

**The lost or destroyed videotape**

While the investigation into the shooting was ongoing, one Detective O'Shea retrieved a surveillance videotape from the bodega where the gun was passed. Godino and O'Shea viewed the videotape together. *Godino deposition, pp. 120-121.* Godino reviewed the videotape on four or five occasions. *Godino deposition, p. 104.* During his deposition, however, Godino testified that the videotape that was taken from the bodega has been lost or destroyed and that the DVD copy of the video produced during discovery is an edited version of the original. *Godino deposition, p. 337-339.*

During Godino's deposition, defense counsel admitted, on the record, that the video produced during discovery was not the original. Defendants' attorney further stated, on the record, that because plaintiff's counsel demanded the original tape, he had made inquiries in order to obtain the original tape but was unsuccessful. *See Godino deposition, p. 340-341.*

## POINT I

## SANCTIONS AGAINST DEFENDANTS ARE WARRANTED
## FOR SPOLIATION OF EVIDENCE

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *West v. Goodyear Tire and Rubber Co.*, 167 F.3d 776 (2nd Cir. 1999).

Rule 37 of the Federal Rules of Civil Procedure authorizes a court to impose various sanctions when a party "fails to obey an order to provide or permit discovery." Fed.R.Civ.P. 37(b)(2); *see also Transatlantic Bulk Shipping Ltd. v. Saudi Chartering, S.A.*, 112 F.R.D. 185, 189 (S.D.N.Y.1986).

Sanctions may be imposed when a party spoliates evidence in violation of a court order. *See, e.g., West v. Goodyear Tire & Rubber Co.* 167 F.3d 776, 779 (2d Cir.1999) (*citing John B. Hull. Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir.1988)). The courts in this Circuit have further held that even where no explicit discovery order has been issued, the court has the inherent power to preserve the integrity of judicial proceedings by, among other things, imposing sanctions for spoliation. *See id.; Kronisch v. United States*, 150 F.3d 122, 126–27 (2d Cir.1998); *Sterbenz v. Attina*, 205 F.Supp.2d 65, 73–74 (E.D.N.Y.2002); *Barsoum v. N.Y.C. Hous. Auth.*, 202 F.R.D. 396, 399 (S.D.N.Y.2001).

The determination of an appropriate sanction for spoliation is left to the sound discretion of the court and is assessed on a case-by-case basis. *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir.2001). The sanction to be imposed, however, "should be 'molded to serve the prophylactic, punitive and remedial rationales underlying the spoliation doctrine, which is predicated upon the rationale that by destroying evidence, one party has deprived the other of the

ability to prosecute or defend an action." *Sterbenz v. Attina*, 205 F.Supp.2d at 74 (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 779).

The Second Circuit has defined spoliation as "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir.2001). A party has an obligation to preserve evidence when the party is on notice "that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d at 436 (*citing Kronisch v. United States*, 150 F.3d at 126). Anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary. *Zubulake v. UBS Warburg L.L.C.*, 220 F.R.D. 212, 217 (S.D.N.Y.2003). This obligation to preserve relevant evidence exists whether or not the documents have been specifically requested in a demand for discovery or whether there has been an explicit discovery order issued. *Kronisch v. United States*, 150 F.3d at 126–27; *Barsoum v. N.Y.C. Hous. Auth.*, 202 F.R.D. at 400.

To warrant sanctions for spoliation, the anticipated litigation need not be the same litigation in which the spoliation sanctions are sought. The Police Department and its officers, as well as the District Attorney, have an obligation to preserve evidence obtained during the course of their criminal investigations in anticipation of a criminal trial and their failure to do so will justify the imposition of spoliation sanctions in a subsequent civil lawsuit which alleges police misconduct. *See Manganiello v. City of New York*, 612 F.3d 149, 166 (2d Cir. 2010).

A party seeking sanctions for the spoliation of evidence must establish:

(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed;

(2) that the records were destroyed 'with a culpable state of mind'; and

(3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Yu Chen v. LW Restaurant, Inc.*, Slip Copy, 2011 WL 3420433 (E.D.N.Y., 2011).

In this case, with respect to the first prong, it is indisputable that the NYPD and/or the District Attorney's Office had an obligation to preserve all the DD5s prepared in connection with the investigation, all photographs and the surveillance video they obtained from the bodega owner. Defendants had a heightened duty to preserve the evidence during plaintiff's criminal prosecution as it was relevant and crucial to both the prosecution and the defense.

Similarly, as plaintiff's videography expert states in his Declaration, defendants fail to preserve the original, which would have permitted the jury in the criminal prosecution and now in the instant action to determine whether the accusation leveled against Creighton, that he was the person who passed a gun to Dior in the bodega, was true or was fabricated. *Exhibit C, Afrides Declaration.* Moreover, the original VHS tape has also been lost. The preservation of the DVR or at the very least, the original VHS tape was of the utmost importance at the time it was purposefully altered. Defendants' utter failure to make any attempt to safeguard this critical evidence, which was pivotal to plaintiff's defense in the criminal trial and crucial in the instant civil case, is inexcusable.

Defendants failed to preserve important, relevant evidence within their control despite their clear obligation to do so, which evidence a reasonable fact finder could conclude would have been favorable to the plaintiff, thus satisfying the first prong of the spoliation test. *Mastercard Int'l, Inc. v. Moulton*, No. 03 Civ. 3613, 2004 WL 1393992 (S.D.N.Y. June 22,

2004) [citing *Residential Funding Corp. v. DeGeorge Funding Corp.*, 306 F.3d 99, 107 (2d Cir.2002)].

The second prong of the spoliation analysis requires that plaintiffs show "that the records were destroyed 'with a culpable state of mind.'" *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d at 107. This element does not require "a showing that the spoliator acted in bad faith." *Pastorello v. City of New York*, 2003 WL 1740606, 10 (S.D.N.Y. 2003).

The "culpable state of mind" requirement is satisfied by a showing of ordinary negligence. *See, Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002); *In re NTL, Inc. Securities Litigation*, 244 F.R.D. 17968 Fed.R.Serv.3d 1145 (S.D.N.Y. 2007); *Zubulake v. UBS Warburg, LLC*, 229 F.R.D. at 431 [a 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence"]; *see also Great Northern Ins. Co. v. Power Cooling, Inc.*, No. 06 CV 874, 2007 WL 2687666, at 9 (E.D.N.Y. Sept. 10, 2007); *Indemnity Ins. Co. of N. Am. v. Liebert Corp.*, No. 96 CV 6675, 1998 WL 363834 at 3 (S.D.N.Y. June 29, 1998) [sanctions may be awarded for spoliation not just where the evidence was destroyed willfully or in bad faith, since a party's negligent loss of evidence can be just as fatal to the other party's ability to present his/her case]; *DeMeo v. Kean*, 754 F.Supp. 2d 435 (N.D.N.Y. November 30, 2010) [even simple negligence is a sufficiently culpable "state of mind"]; *Gaffield v. Wal–Mart Stores East*, LP, 616 F.Supp.2d 329, 339 (N.D.N.Y.2009).

Here, the DD5s and the surveillance videotape were in defendants' possession when they were destroyed, lost or altered. The utter failure to preserve the documents and the videotape at the time plaintiff was being prosecuted for criminal possession of a weapon and criminal facilitation constitutes gross negligence warranting the severest of sanctions. *See Phoenix Four.*

*Inc. v. Strategic Resources Corp.*, No. 05 CV 4837, 2006 WL 1409413, at 5–6 (S.D.N.Y. May 23, 2006).

It is abundantly clear that defendants here did not take any action, let alone all necessary steps to guarantee that the crucial documents and videotape were maintained even in the face of a felony prosecution.

Plaintiff submits that even if the admitted destruction of the surveillance tapes and the loss of the DVDs was not willful and intentional, it was, at a minimum, grossly negligent. Thus, plaintiff has shown that defendants have acted with the requisite degree of culpability to satisfy the second prong of the spoliation test. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d at 107.

Once it is established, as it has been in this case, that evidence has been destroyed and/or forever lost or altered due to a party's willful conduct, negligence or gross negligence, the Court thus must consider whether "the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d at 107-09.

In considering the burden of establishing relevance and prejudice when documents have been destroyed the court should consider, in addition to the conduct of the spoliating party, "whether the missing evidence was relevant and whether the innocent party has suffered prejudice as a result of the loss of evidence." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, L.L.C., 685 F.Supp.2d at 467.

Where, as in this case, the spoliating party has been grossly negligent, resulting in the loss of crucial evidence, many courts have presumed relevance, although the presumption is not required. *See also Treppel v. Biovail Corp.*, 249 F.R.D. at 121–22 (holding that "under certain

9

circumstances 'a showing of gross negligence in the destruction ... of evidence' will support a relevance inference"). *See also, Sovuli v. United States*, No 98 CV 5550, 2005 WL 2290495, at 5 (E.D.N.Y. Sept.20, 2005) (holding that the prejudiced party may be permitted an inference in his favor so long as he has produced some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files).

In this case, however, there is no doubt that the lost DD5s and surveillance video tape, which allegedly showed that plaintiff was the perpetrator of the crime of which he was accused, were relevant in the criminal prosecution and are relevant in the instant case.

As plaintiff's expert states in his Declaration, if the original videotape had not been altered and was available, plaintiff would have the opportunity to show conclusively that contrary to defendants' claims, he was not the person who passed the gun. *Afrides Declaration, Exhibit C.*

Similarly, because, as defendant, Godino testified, "a lot of DD5s" are missing from the file, plaintiff cannot possibly know what was contained in them. For all we know, there were DD5s prepared that further supported the bodega owner's unequivocal written statement and photo array identification that it was Kajifa Spruell who passed the gun to Dior.

Plaintiff should not be forced to proceed to trial without crucial evidence in this case, the DD5s and the original videotape, that could have conclusively shown that he was not the person who committed the crime of which he was accused and that defendants knew full well that he was not.

The prejudice to the plaintiff is not alleviated by defendants' production of poor-quality DVD copy of the original videotape since plaintiff is left open to the allegation that even if he is not clearly visible in the produced DVD, he was visible in the non-disclosed original videotape, said allegation being wholly unanswerable.

10

The failure to preserve the original video and the loss of the DD5s that were prepared contemporaneously with the investigation have deprived plaintiff of the ability to establish that the grand jury indictment was obtained by the use of incomplete, misrepresented and falsified evidence.

Moreover, not only have defendants deprived plaintiff of the ability to use the original videotape as evidence at trial, but they have deprived him, as plaintiff's experts explains in his Declaration, of the ability to have the original videotape analyzed by his expert and enhanced. *Exhibit C, Afrides Declaration.*

Plaintiff respectfully submits that he has satisfied his burden under the third prong of the test of demonstrating both the relevance of the DD5s and the original videotape and the prejudice resulting from the loss and alteration of both. *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L .C.*, 685 F.Supp.2d at 467.

In light of the foregoing, plaintiff respectfully urges that defendants' be sanctioned for spoliation of evidence.

## POINT II

## PLAINTIFF IS ENTITLED THE STRIKING OF DEFENDANTS' ANSWER AND JUDGMENT ON THE ISSUE OF LIABLITY

While the sanction of dismissal is a drastic remedy that should be applied only when the spoliation was willful and there is no other adequate remedy to restore the wronged party to the position he would be in if the evidence had not been altered or destroyed, in this case the application of such a sanction is warranted. *Miller v. Time-Warner Communications, Inc.*, 1999 WL 440781 (S.D.N.Y. 1999)

First, defendant, Godino, indisputably testified that there are "lots of DD5s" missing from the investigation file. The reason for the disappearance of "lots of DD5s" is unknown and will

11

never been known.  While it may be attributable to negligence or gross negligence, it can just as easily be attributable to a willful act designed to keep damaging evidence out of plaintiff's hand during the criminal trial and/or during the instant action.

More importantly, although, arguably, an alternative remedy other than striking of defendants' pleadings may be fashioned with respect to the alteration of the surveillance video, the same cannot be said for the loss or destruction of "lots of DD5s."

As the Court in *Miller, supra*, noted, in cases where the courts have determined that a sanction other than striking the pleadings was appropriate, the item destroyed was known.  As in *Miller,* however, in this case, while we know that DD5s prepared in connection with the investigation were prepared and have disappeared we do not know what those missing DD5s contained.  Therefore, it is difficult to conceive of a remedy other than striking defendants' pleading or directing that the information contained in the lost DD5s proved plaintiff's case. This would amount to a directed verdict for the plaintiff.  If plaintiff would be entitled to a directed verdict at trial there is no reason not to strike defendants' pleadings and direct judgment in plaintiff's favor at this point.

Alternatively, at the very least, plaintiff is entitled to an order directing that the DVD provided by defendants during discovery conclusively establishes that the person shown in the video passing an object to Dior is not plaintiff, Kenneth Creighton and that the lost or destroyed DD5s would support plaintiff's claim that there was no probable cause to arrest or prosecute him.

Short of such a finding, plaintiff is entitled to a binding instructions to the jury that it can infer that the original videotape and missing DD5s would be both relevant and favorable to plaintiff's case.

## CONCLUSION

In the face of the indisputable destruction and/or loss of evidence that was crucial during plaintiff's prosecution and is crucial in proving his the instant claims, sanctions against the defendants are warranted.

Plaintiff respectfully requests that the Court issue an Order entering judgment based on spoliation of evidence declaring all of the defendants liable or alternatively, declaring that the destroyed and/or lost video evidence establishes that plaintiff was not the person who passed the gun or precluding defendants from offering evidence at trial that plaintiff is the person depicted in the video as passing the gun or issuing a jury instruction at trial acknowledging that the video evidence was destroyed and that the jury may infer that the original videotape and missing DD5s would be both relevant and favorable to plaintiff's case.

Dated: New York, New York
       June 27, 2016

Respectfully submitted,

**RUBERT & GROSS, P.C.**
Attorneys for Plaintiffs
150 Broadway, Suite 712
New York, New York 10038
(212) 608-3103

RICHARD GROSS

13