UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

KENNETH CREIGHTON,

                              Plaintiff,                         12 CV 7454 (PGG)

                    -against-

THE CITY OF NEW YORK, DETECTIVE DEAN
ROBERTS (Shield No. 05861), DETECTIVE GLENN
GODINO (Shield No. 2756), POLICE OFFICERS JOHN
DOES 1-10 (names being fictitious and presently unknown
and intended to be employees of the NYPD who were
involved in Plaintiff's arrest, detention, imprisonment, and/or
prosecution), DISTRICT ATTORNEY ROBERT T.
JOHNSON, ASSISTANT DISTRICT ATTORNEY BRUCE
BIRNS, ASSISTANT DISTRICT ATTORNEY BRIAN
BURNS, ASSISTANT DISTRICT ATTORNEY ED TALTY
a/k/a ED TULTY and ASSISTANT DISTRICT ATTORNEY
MICHAEL COOPER

                              Defendants.

------------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW OPPOSING
## DEFENDANTS' SUMMARY JUDGMENT MOTION

PAZER, EPSTEIN & JAFFE, P.C.
20 Vesey Street, Suite 700
New York, New York 10007
Phone (212) 227-1212
Fax (212) 374-1778
Email mjaffe@pazerandepstein.com

RUBERT & GROSS, P.C.
150 Broadway, Suite 712
New York, New York 10007
Phone (212) 608-3103
Fax (212) 608-1316
Email richardgross.court@gmail.com

## TABLE OF AUTHORITIES

<u>Cases</u>

*Ambrose v. City of New York,*
623 F. Supp.2d 454 (S.D.N.Y. 2009) ……………………………………………….. 21

*Anderson v. Branen,*
17 F.3d 552 (2d Cir. 1994) …………………………………………………………….. 27

*Anderson v. Creighton,*
483 US 635, 641 (1987) …………………………………………………………….. 12

*Benn v. Kissane,*
510 F. App'x 34, 38 (2d Cir. 2013) ……………………………………………….. 15

*Bermudez v. City of New York,*
790 F.2d 368, 376-77 (2d Cir. 2015) ……………………………………………. 16, 20

*Blake v. Race,*
487 F.Supp.2d 187 (E.D.N.Y. 2007) ……………………………………………. 7, 14

*Brown v. City of New York,*
798 F.3d 94 (2d Cir. 2015) ……………………………………………………….... 10

*Buckley v. Fitzsimmons,*
509 U.S. 259 (1993) …………………………………………………................. 11

*Bullard v. City of New York,*
No. 01 Civ. 11613, 2003 WL 168444 (S.D.N.Y. Jan. 20, 2003) …………………  2

*Burns v. Reed,*
500 U.S. 478 (1991) …………………………………………………………….. 11

*Cameron v. City of New York,*
598 F.3d 50 (2d Cir. 2010) …………………………………………………….... 15

*Cardoza v. City of New York,*
139 A.D.3d 151 (1st Dept., 2016) ……………………………………………..  16, 18

*Carlton v. Nassau County Police Dept.,*
306 AD2d 365 (2nd Dept. 2003) …………………………………………………….. 17

*Chetrick v. Cohen,*
52 AD3d 449 (2nd Dept., 2008) ……………………….............................. 17

i

*Coggins v. Buonora,*
776 F.3d 108 (2d Cir. 2015) ……………………………………………………… 20

*Colon v. City of New York,*
60 N.Y.2d 78 (1983) …………………………………………………………7, 15, 17

*Crews v. County of Nassau,*
996 F. Supp.2d 186, 205 (E.D.N.Y. 2014) ……………………………………….. 8

*DeMichele v. City of New York,*
2012 U.S. Dist. LEXIS 136460 ……………………………………………………… 4

*Dennis v. Sparks,*
449 U.S. 24 (1980) ……………………………………………………………... 25

*Descovic v. City of Peekskil*
894 F.Supp.2d 443 (S.D.N.Y. 2012) ………………………………………… 14, 25

*Ettienne v. Hochman,*
83 A.D.3d 888 (2nd Dept., 2011) ……………………………………………….. 25

*Gisondi v. Harrison,*
72 N.Y.2d 280 (N.Y. 1988) …………………………………………………….. 6

*Global Network Communications, Inc. v. City of New York*
458 F.3d 150 (2d Cir. 2006) ……………………………………………………… 24

*Gomez v. Toledo,*
446 U.S. 635 (1980) …………………………………………………………… 13

*Haynes v City of New York,*
29 AD3d 521 (2nd Dept. 2006) ……………………………………………………… 17

*Hickey v. City of New York,*
01 CV 6506 (GEL), 2004 WL 2724079 (S.D.N.Y. November 29, 2004) ………... 21

*Hill v. City of New York,*
45 F.3d 653 (2nd Cir. 1995) …………………………………………………… 11

*Holland v. City of Poughkeepsie,*
90 A.D.3d 841 (2011) ……………………………………………………………...10

*Jenkins v. New York City Police Department,*
13 Civ. 3405(KPF), 2015 WL 4660899 (August 6, 2015 SDNY) …………………23

ii

*Jocks v. Tavernier,*
316 F.3d 128 (2d Cir. 2003) ................................................................. 3, 20

*Johnson v. Watkins,*
110 F.3d 792 (2d. Cir. 1996) ............................................................... 19

*Kramer v. New York,*
569 N.Y.S.2d 67 (1st Dept., 1991) ....................................................... 4

*Lee v. City of Mount Vernon,*
49 N.Y.2d 1041(1980) ........................................................................17

*Mathews v. City of New York,*
889 F.Supp.2d 418 (E.D.N.Y. 2012) ..................................................... 27

*McCray v. City of New York,*
No. 03 CIV 10080 (DAB), 2007 WL 4352748 (S.D.N.Y. Dec. 11, 2007) ........... 26

*Martin v City of Albany,* 42 NY2d 13, 17 (1977)
42 NY2d 13 (1977) ........................................................................... 18

*Medina v. City of New York,*
102 A.D.3d 101 (1st Dept., 2012) ........................................................ 2

*Michele v. City of New York,*
09 CV 9334, 2013 WL 4354763 ......................................................... 14
(S.D.N.Y. September 12, 2012)

*Mistretta v. Prokesch,*
5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998) ................................................. 2

*Myers v. County of Orange,*
157 F.3d 66 (2d Cir. 1998) ................................................................ 16

*Nardelli v Stamberg,*
44 NY2d 500 (1978) ........................................................................ 18

*Okin v. Village of Cornwall-On-Hudson Police Dep't,*
577 F3d 415, 433 (2d Cir. 2009) ......................................................... 12

*Osuma v. City of New York,*
08 CV 4759 (JSR), 2009 WL 2356426 (July 30, 2009) ............................... 21

*Panetta v. Crowley,*
460 F.2d 388 (2d Cir. 2006) ............................................................... 6

*Pangburn v. Culbertson,*
200 F.3d 65, 72 (2d Cir.1999) …………………………………………….. 26

*Pawlicki v. City of Ithaca,*
993 F. Supp. 140, 145 (N.D.N.Y. 1998) …………………………………….. 8

*Pearson v. Callahan,*
555 US 223 (2009) …………………………………………………………... 12

*People v. Medina,*
208 A.D.2d 771 (2nd Dept., 1994), *appeal denied,* 84 N.Y.2d 1035 (1995) ……… 19

*Poventud v. City of New York,*
750 F.3d 121 (2d Cir. 2014) …………………………………………………. 20

*Ramos v. City of New York,*
285 AD2d 284 (1st Dept., 2001) ………………………………………….. 7

*Ricciuti v. N.Y.C. Transit Auth.,*
124 F.3d 123, 125 (2d Cir. 1997) …………………………………………. 20

*Richards v. City of New York,*
433 FSupp2d 404 (S.D.N.Y. 2006) ……………………………………….. 12

*Robles v. City of New York,*
104 AD3d 829 (2d Dept., 2013) …………………………………………... 18

*Rounseville v Zahl,* 13 F3d 625, 629-630 (2d Cir 1994)
13 F.3d 625 (2d Cir 1994) ……………………………………………….. 16

*Russo v. City of Bridgeport,*
479 F.3d 196, (2nd Cir., 2007) …………………………………………. 27

*Russo v. DiMilia,*
894 FSupp2d 391 (S.D.N.Y. 2012)………………………………………... 14

*Sankar v. City of New York,*
867 F.Supp.2d 297 (E.D.N.Y. 2012) ……………………………………... 9

*Saucier v. Katz,*
533 US 194, 201, (2001) ………………………………………………….. 12

*Seri v. Bochicchio,*
374 FedAppx 114, 115-17 (2d Cir. 2010) …………………………………… 13

iv

*Singer v. Fulton County Sheriff,*
63 F.3d 110, 119 (2d Cir. 1995) …………………………………………………… 2

*Sital v. City of New York,*
60 A.D.3d 465 (1st Dept., 2009) lv. dismissed
13 N.Y.3d 903 (2009) ……………………………………………………………….. 2

*Soomru v. City of New York,*
13 CV 0187 (LTS), 2016 WL 1266069 (S.D.N.Y. March 30, 2016) …………….. 20

*Taravella v. Wolcott,*
599 F3d 129, 135 (2d Cir. 2010) ……………………………………………….. 13

*Taravella v. Wolcott,*
599 F3d 129 (2d Cir. 2010) …………………………………………………….. 13

*Toliver v. City of New York,*
10 CV 5803, 2012 WL 6013098 at 8 (S.D.N.Y. December 3,2012) ………………14

*Torres v. Jones,*
26 N.Y.3d 742 (2016) …………………………………………………………...15

*Travis v. Village of Dobbs Ferry,*
355 F.Supp.2d 740 (S.D.N.Y. 2005) ……………………………………………… 2

*Walczyk v. Rio,*
496 F3d 139 (2d Cir. 2007) …………………………………………………….. 13

*Williams v. Moore,*
197 A.D.2d 511 (2nd Dept. 1993) ……………………………………………… 19

*Wu v. City of New York,*
934 F.Supp. 581 (S.D.N.Y. 1996) ……………………………………….......... 2

*Walsh v. City of New York,*
2016 WL 3648370 (S.D.N.Y. 2016) ……………………………………………… 3

*Zahrey v. Coffey,*
221 F.3d 342 (2d Cir. 2000) …………………………………………………… 20

*Zellner v. Summerlin,*
494 F.3d 344, 369 (2d Cir. 2007) …………………………………………… 10, 13

**<u>Statutes</u>**

Fed. R. Civ. P. 56(a) ............................................................................. 1

Fed.R.Civ.P. 15(a)(2) ........................................................................... 24

Fed.R.Civ.P.8(c)(1) .............................................................................. 18

## TABLE OF CONTENTS

Table of Authorities…………………………………………..    I

Preliminary Statement …………………………………………    1

Counter Statement of Facts……………...……………….    I

Argument…………………………………...…………………    2

    A. Defendants did not have probable cause to arrest plaintiff
    …………………………………………………….........    2

    B. Defendant, Roberts, did not have probable cause
       to arrest plaintiff…………………………………….    9

    The City is liable for defendants Godino's and Robert's
    tortious conduct………………………………………….    10

    C. Defendants Birns and Talty are not entitled to
       summary judgment on plaintiff's false arrest claims…..    10

    D. Defendants, Godino and Roberts are not entitled to
       qualified immunity……………………………………    11

    E. Defendants, Godino and Roberts initiated the prosecution..    15

    F. The District Attorneys' decision to prosecute plaintiff
       Is not a superseding cause………………………………    15

    G. There was no probable cause to prosecute plaintiff…….    16

    H. The undisputed evidence establishes that plaintiff can and
       Has rebutted the presumption afforded a Grand Jury
       Indictment……………………………………………..    17

I.  Defendants initiated the prosecution against plaintiff
    with malice……………………………………………….   18

J.  Defendants did not assert collateral estoppel as an
    affirmative defense and are barred from raising it here.
    In any event, the dismissed criminal prosecution against
    Creighton does not estop plaintiff's malicious
    prosecution claims…………………………………………   18

K.  Plaintiff's Sixth amendment and Due Process claims are
    substantive claims for relief distinct from and not
    "duplicative" of his arrest and prosecution claim………..   20

L.  Defendants have not offered any evidence that, without
    the arrest and prosecution at issue here, plaintiff would
    have been jailed at all, much less that he would have been
    jailed until January 2012, fourteen months beyond the term
    of his probation…………………………………………..   22

M. Defendants are not entitled to dismissal of plaintiff's abuse
   of process claim…………………………………………...   24

N.  Defendant, Godino, is not entitled to dismissal of plaintiff's
    conspiracy claim………………………………………….   25

O.  Defendants are not entitled to summary judgment on
    Plaintiff's failure to intervene claim……………………..   26

P.  Defendants are not entitled to summary judgment on
    Plaintiff's unreasonably prolonged detention claim……..   27


CONCLUSION ………………………………………………….   29

## PRELIMINARY STATEMENT

Defendants City of New York ("City"), Glenn Godino ("Godino"), Dean Roberts ("Roberts"), Bruce Birns ("Birns") and Ed Talty (First Cause of Action) have failed to establish that there is no genuine dispute as to any material fact warranting entering summary judgment in their favor on any of plaintiff's remaining claims. Fed. R. Civ. P. 56(a).

## COUNTER STATEMENT OF FACTS

Throughout their Memorandum of Law, defendants characterize the person whose testimony was concededly the sole basis for plaintiff's arrest and prosecution as "an eyewitness" or "Grand Jury Witness"; avoiding at all costs calling him what he really was, a paid, unreliable confidential informant ("CI"). *Plaintiff's Response to Defendants' Rule 56.1 Statement (Plaintiff's Response) ¶¶ 100, 104, 105, 106, 245*. Despite defendants' more than two-year attempt to keep the identity of the CI a secret, suddenly, the CI has metamorphosed into a "Grand Jury Witness" or "eyewitness" rather than what he really is, a paid CI whose reliability and credibility was not and cannot be established.[1] Absent from defendants' Rule 56.1 Statement and their Memorandum of Law is any mention of the existence of the owner of the bodega, Fawaz Terab ("Terab"), who merely five days after the shooting and before the CI surfaced, had already identified Spruell, who he knew well, as the perpetrator; had picked him out of a photo array and had signed a statement to that effect. *Plaintiff's Response ¶ 76*.

In response to plaintiff's Interrogatories, defendants identified only "plaintiff Kenneth Creighton, Dior Creighton, and Fawaz Terab ("Terab") as having been present in the bodega at or

---

[1] Multiple conferences and motions were devoted to defendants' efforts to conceal all documents regarding the confidential informant's identity, the grand jury minutes; to seal his testimony and prevent plaintiff from asking other witnesses about him. Plaintiff, for example, was precluded from asking Terab if the CI was in fact in the bodega at the time the gun was passed. Now, at the summary judgment stage, the CI has now become a mere "witness" or "Grand Jury Witness".

about the time that K. Creighton is alleged to have passed a firearm to D. Creighton." *Plaintiff's Response, ¶ 101*.  Nor do any official police records or the surveillance video indicate that the CI was in the store at the time the crime was committed. *Plaintiff's Response, ¶ 117*.

The CI perjured himself before the Grand Jury by testifying under a false name.  *Plaintiff's Response, ¶ 245*. The Grand Jury was never advised that he was a paid CI because, as ADA Birns testified, he was not made aware of that fact. *Plaintiff's Response, ¶ 222*.

## ARGUMENT

### A.  <u>Defendants did not have probable cause to arrest plaintiff.</u>

Plaintiff's arrest, having been effectuated without a warrant is presumptively invalid and the burden is on the defendants to establish that the arrest was privileged. *Broughton v. State*, 37 N.Y.2d 451, 335 N.E.2d 310 (1975); *Wu v. City of New York*, 934 F.Supp. 581 (S.D.N.Y. 1996); The police must establish a quantum of evidence which amounted to 'more than a rumor, suspicion or even a strong reason to suspect.' *Travis v. Village of Dobbs Ferry*, 355 F.Supp.2d 740 (S.D.N.Y. 2005). Defendants' argument that the CI's purported identification of plaintiff alone established probable cause is without merit.

While an identified citizen's accusation of an individual who is known to him may be sufficient to establish probable cause, it does not necessarily establish it.  *Medina v. City of New York*, 102 A.D.3d 101 953 N.Y.S.2d 43 (1st Dept., 2012);  *Sital v. City of New York*, 60 A.D.3d 465 (1st Dept.2009), lv. dismissed 13 N.Y.3d 903, (2009). Police officers are not absolutely privileged to arrest upon a charge made by any private individual who claims to be a victim or a witness. *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998).  An arrest may be made in such a case only "absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *see also Bullard v. City of New York*, No. 01 Civ. 11613, 2003 WL 168444 (S.D.N.Y. Jan. 20, 2003) [there were sufficient indications that

the complainants were not reliable sources of probable cause and the defendants did nothing to investigate the allegations, corroborate them, or pursue plaintiff's claims that he was innocent].

Despite Terab's identification of Spruell; his picking Spruell out of a photo array and providing Godino with a signed statement that he saw Spruell pass the gun to Dior Creighton (Dior), other than running a computer check on Spruell, the police did not attempt to locate and question Spruell, who during his deposition, readily admitted that, indeed, he was the person who passed the gun to Dior. *Plaintiff's Response, ¶¶ 89, 90.*

The CI's alleged identification of Kenneth Creighton ("K. Creighton") as the perpetrator does not establish probable cause as a matter of law. *See, Walsh v. City of New York*, 2016 WL 3648370 (S.D.N.Y. 2016) [a police officer's awareness of the facts supporting a defense can eliminate probable cause," citing *Jocks v. Tavernier,* 316 F.3d 128 (2d Cir. 2003)]. While an officer does not have an obligation to seek out exculpatory defenses, he cannot "deliberately disregard facts known to him which establish justification." *Id.* Here, Godino deliberately disregarded Terab's identification of Spruell as the perpetrator as well as the lack of reliability and credibility of the paid CI.

Without citing any authority, defendants argue that the police, faced with two separate identifications of two different alleged perpetrators for the same crime, are free to wholly disregard the identification by a concededly reliable citizen-eyewitness, the bodega owner, and to accept without more, the unreliable information of a paid drug addicted CI in order to suit their purpose; to pressure K. Creighton into telling them of his brother's whereabouts. *Plaintiff's Response, ¶ 190, 191.*

After conducting an extensive search for Dior, Detective LaDuca of the Fugitive Apprehension Team reported his lack of success to the 42nd Precinct and Godino. *Plaintiff's Response, ¶ 146.* When it became clear that the police could not find Dior, Godino and his

colleagues devised a plan: ignore Terab's identification, arrest K. Creighton instead of Spruell for criminal facilitation so that "in turn, Kenneth may inform this department where defendant Dior Creighton is hiding out." *Plaintiff's Response, ¶ 190.*

Defendants' citation to *Kramer v. New York*, 569 N.Y.S.2d 67, 68 (1st Dept., 1991) and *DeMichelle v. City of New York*, 2012 WL 4354763 (S.D.N.Y., 2012) does not support their position that the CI's purported identification of K. Creighton as the perpetrator was legally sufficient to provide the police with probable cause to arrest plaintiff. In *Kramer,* the Court determined that the information provided by the victim was sufficient to establish probable cause because the police officer personally saw a person being thrown from a vehicle and when he approached her, she informed him that the people in the vehicle had stolen her purse. *Kramer* does not stand for the proposition that in order to pressure a citizen into telling the police where his brother was, the police can completely ignore an identification by a credible witness and instead choose the purported identification of a paid CI without attempting to reconcile the two.

Godino readily admits that in the face of Terab's credible identification of Spruell as the perpetrator, Godino had probable cause to arrest Spruell. *Plaintiff's Response, ¶ 84.* If, as defendants argue, a citizen's identification of a particular person as the perpetrator of a crime automatically provides probable cause to arrest under any and all circumstances and the police can turn a blind eye to conflicting evidence, when Terab identified Spruell as the person who passed the gun, Spruell, not plaintiff, should have been immediately arrested.

Before obtaining approval from ADA Bruce Birns (Birns) and ADA Ed Talty ("Talty") to arrest K. Creighton, Godino did not inform either that Terab had identified Spruell as having passed the gun to Dior. *Plaintiff's Response, ¶ 165, 168, 169, 173, 174.* Nor was Birns or Talty advised before approving plaintiff's arrest, that the person who had identified K. Creighton was a paid CI who was a known crack addict. *Plaintiff's Response, ¶ 175, 178.* Had Birns and Talty

been apprised of Terab's identification of Spruell as the perpetrator, they would not have approved K. Creighton's arrest without further investigation. *Plaintiff's Response, ¶ 173, 183.*

Defendants' reliance on this Court's decision in *DeMichelle, supra,* is similarly misplaced. In *DeMichelle,* the Court made it clear that police officers are entitled to rely on a victim or an eyewitness's allegations that a particular person has committed a crime, <u>unless the circumstances raise doubt as to the person's veracity.</u> *Id.* Here the circumstances surrounding the CI's alleged identification of plaintiff as the person who passed the gun raised serious doubts about his veracity and reliability.

Godino's testimony that he had previously received information from the CI, whose name he never learned, concerning a prior shooting does not establish, as defendants urge, the CI's reliability or credibility. Godino had never handled any CI, let alone this particular one. *Plaintiff's Response ¶ 254.* The CI did not witness the prior shooting but instead told Godino "who he thought the perp was." *Plaintiff's Response, ¶ 251.* A once upon a time hunch by a known crack-addicted paid informant hardly qualifies as establishing his reliability and credibility. Nowhere in the single record that mentions the CI, Godino's spiral notebook, is there any indication that Godino asked the CI whether he knew Spruell or whether Spruell was in the bodega at the time the gun was passed. Godino could not reasonably have reached the conclusion that the CI was credible and reliable because he knew nothing about him. Godino never reviewed the CI's file to ascertain his history as a CI; never ascertained the CI's criminal history; did not know that the CI had a drug problem and did not observe the CI on the surveillance video recovered from the bodega. *Plaintiff's Response, ¶ 140, 252, 253.* Had Godino attempted to ascertain the credibility and reliability of the CI, he would have learned that the CI has an extensive criminal history and was a drug addict who was actually doing drugs at the time he claims to have seen plaintiff pass the gun to Dior. *Plaintiff's Response, ¶ 111, 246, 249.* The <u>only</u> information Godino had about the CI at the time he decided

5

to blindly accept his identification of K. Creighton despite Terab's identification of Spruell, came from the handler who informed him that the CI was an informant in narcotics cases. *Plaintiff's Response, ¶ 116.*

Defendants' citation to *Panetta v. Crowley*, 460 F.2d 388 (2d Cir. 2006) does not support their cause. In *Panetta,* the Court found that there was probable cause to arrest the plaintiff because the police officer had relied on the complaints of a peace officer as well as an identified citizen informant, and the officer corroborated the information provided by the witness with his own personal observations. As plaintiff's expert, Walter Signorelli, points out in his Declaration, throughout the history of police practice, CIs have been notoriously unreliable and it is standard and proper police practice to corroborate their information. *Exhibit D.* Here, not only was the CI's information not corroborated, it was actually contradicted by an upstanding eyewitness who, with no motive to lie, identified Spruell as the true culprit.

In *Gisondi v. Harrison*, 528 N.E.2d 157, 160 (N.Y. 1988), cited by defendants, the Court held that "[t]here may be extraordinary cases in which particular discrepancies are so substantive that failure to disclose them would be comparable to fraud or perjury." This case, in which a reliable eyewitness who knew Spruell identified him as the perpetrator, presents such extraordinary circumstances as the *Gisondi* Court held would be comparable to fraud or perjury.

The evidence in this case supports a strong inference that the CI's identification of K. Creighton as the person who passed the gun was fabricated with the assistance and blessing of defendant, Godino. There is no independent evidence that the CI was in the bodega on the day of the shooting. While Godino's spiral notebook states that when the CI allegedly saw the passing of the gun he was by the plastic door that goes behind the counter getting his scratch off tickets, the CI testified at his deposition that he was in the back of the store buying and doing drugs when the gun was passed and that the passing of the gun occurred in the back of the store despite the fact

that the surveillance video shows it occurred in the front of the store. *Plaintiff's Response ¶ 9, 257; Exhibit CC.* That the CI is not visible in the surveillance video makes his alleged statement that he was in the front of the store, where the gun was unquestionably passed, highly suspicious if not wholly unworthy of belief.

No one other than the CI, not even defendants in their discovery responses, has claimed that the CI was in the store at the time of the incident. *Plaintiff's Response ¶ 101.* A reasonable inference can be drawn from the evidence that the CI's alleged identification of plaintiff was orchestrated by Godino who showed the CI the surveillance video so that he could become familiar with the scene and fed him information so he could testify at the Grand Jury, using a false name, without so much as having been in the store at the time. *Plaintiff's Response ¶¶ 9, 250. See, Blake v. Race,* 487 F.Supp.2d 187 (E.D.N.Y. 2007). Pointedly, the CI was shown the surveillance video during his deposition and, without prompting or hesitation, identified the person passing the gun to Dior as <u>Spruell not Kenneth Creighton</u>! *Plaintiff's Response ¶¶ 12, 243; Exhibit CC.* A jury can conclude that the CI's alleged identification of plaintiff as the perpetrator was fabricated with the assistance of Godino and was motivated by the CI's desire to please those who were paying for his testimony by identifying the person the police wanted identified.

The failure to make a further inquiry when a reasonable person would have done so is evidence of lack of probable cause. *Colon v. City of New York*, 60 N.Y.2d 78 (1983); *Ramos v. City of New York*, 285 AD2d 284 (1st Dept., 2001). Here, faced with the identification by a credible eyewitness of Spruell as the perpetrator on the one hand and the paid CI's identification of plaintiff, on the other, a reasonable person would have made further inquiry.

Defendants' citation to *Pawlicki v. City of Ithaca*, 993 F. Supp. 140, 145 (N.D.N.Y. 1998) is easily distinguishable. First, while in *Pawlicki*, the police officers had conflicting versions of what occurred, one of the conflicting versions was from the accused, who denied involvement.

7

More importantly, in *Pawlicki*, unlike in this case, the police officer, prior to making the arrest, conducted a thorough investigation of the divergent stories with an eye towards obtaining corroboration for one or the other. Here, despite that Godino conducted a background check on Spruell revealing a criminal record and knew where to locate Spruell, Godino did not even attempt to question him. *Plaintiff's Response ¶¶ 88, 89, 90*. Nor did Godino attempt to ascertain whether the CI was credible and reliable. *Plaintiff's Response ¶¶ 109-116*.

Nor does *Crews v. County of Nassau*, 996 F. Supp. 2d 186, 205 (E.D.N.Y. 2014) support defendants' position that defendants had probable cause to arrest plaintiff notwithstanding Terab's identification of Spruell as the perpetrator. In *Crews*, plaintiff was picked out of photo array by the victim of a robbery and was arrested based on the victim's identification. Sometime <u>after</u> plaintiff had been arrested, the police arrested another individual who insisted that the plaintiff had not been involved. Under those circumstances, where the information that a plaintiff had not participated in the crime came <u>after</u> he had already been arrested, the Court concluded that such information could not vitiate probable cause for the arrest. In this case, Terab's identification of Spruell occurred shortly after the incident and <u>before</u> Godino even learned of the CI's existence. Before the CI came into the picture, Godino had probable cause to arrest Spruell. *Plaintiff's Response ¶ 84*. Following the rationale in *Crews*, it was Spruell and not Kenneth Creighton who should have been arrested because the CI's subsequent identification of plaintiff as the perpetrator did not vitiate probable cause to arrest Spruell.

Both ADA Birns and ADA Talty, who together have more about sixty-seven years of prosecutorial experience, testified that in the face of the conflict between Terab's and the CI's identifications of two different people as the sole perpetrator, further investigation was required to resolve the conflict before arresting anyone. *Plaintiff's Response ¶¶ 182, 184, 245*. Concededly, no further investigation was conducted.

*Sankar v. City of New York*, 867 F.Supp.2d 297 (E.D.N.Y. 2012), is directly on point. In *Sankar*, defendants argued they were absolutely privileged to arrest upon a charge by any private individual who claimed to be a victim. Despite the fact that the victim and the accused had a contentious landlord-tenant relationship, the officer failed to conduct any investigation in an attempt to corroborate the witness's accusation. The district court denied defendants' motion for summary judgment concluding that given the fact that the police had knowledge that the accuser may have had a motivation to lie, they were required to conduct a further investigation before arresting plaintiff. Here, Godino knew that the so-called witness was a paid CI who obviously had a motivation to lie (to get paid and avoid jail) and thus had an incentive to identify the person the police wanted identified. Further, no investigation of the CIs relationship with Kenneth Creighton was conducted despite Godino knowing they knew each other a long time. *Plaintiff's Response ¶ 115*.

As in *Sankar*, the uncorroborated alleged identification by the CI did not provide probable cause for plaintiff's arrest, especially in the face of the reliable identification by Terab of Spruell as the perpetrator. There was no probable cause to arrest plaintiff.

B. **Defendant, Roberts, did not have probable cause to arrest plaintiff.**

Defendant Roberts, the arresting officer who signed the criminal complaint against plaintiff, is not shielded from liability by the doctrine of collective or imputed knowledge. *Plaintiff's response ¶¶ 23, 191, 192*. Defendants' argument that Roberts had probable cause to arrest plaintiff based on the information Godino possessed, where Godino himself did not have probable cause, stands logic on its head. If Godino did not have probable cause to arrest plaintiff,

as has been demonstrated above and in plaintiff's motion for summary judgment, Roberts also lacked probable cause to arrest him.

Under the "collective or imputed knowledge doctrine" an arrest is permissible where the arresting officer lacks the specific information to form the basis for probable cause but sufficient information to justify the arrest was known by other law enforcement officials initiating the investigation and the other officers communicated the information they possessed. *Brown v. City of New York*, 798 F.3d 94 (2d Cir. 2015); *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007). Here, Roberts was not provided with any information as to the basis for arresting plaintiff. *Plaintiff's Response ¶¶ 193-197*. He had no knowledge whatsoever about the case and in fact, erroneously believed that the bodega owner had identified Creighton as the perpetrator. *Plaintiff's Response ¶ 193*. As such, Roberts did not have probable cause to arrest plaintiff.

Moreover, defendant City is liable for defendants Godino's and Robert's tortious conduct. Under New York State Law, defendant City is derivatively liable for plaintiff's state law claim for the tortious conduct of its employees under the theory *respondeat superior*. *Holland v. City of Poughkeepsie*, 90 A.D.3d 841 (2011).

## C. Defendants Birns and Talty are not entitled to summary judgment on plaintiff's false arrest claims.

The Bronx District Attorney's Office has a policy wherein all potential arrests for homicide-related crimes in the County must be reviewed and approved by District Attorneys' Office.[2] *Plaintiff's Response ¶¶ 17, 142, 159*. It is undisputed that the two ADA defendants, Birns and Talty, intended to and did cause K. Creighton's confinement since they both advised the police about probable cause and approved plaintiff's arrest. Godino conferred with Birns

---

[2] Contrary to defendants' assertions, the ADAs' arrest authorization of plaintiff arrest was not a merely a formality. *Def. Memo. p. 30*. It was a process undertaken as part of an investigative process and, without the ADA's approval, plaintiff's arrest was not permitted. *Plaintiff's Response ¶¶ 142, 159, 163, 185, 187*.

prior to plaintiff's arrest and Birns in turn, conferred with Talty, who gave the final authorization and approval for plaintiff's arrest. *Plaintiff's Response ¶ 142.*

The actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). If the challenged conduct either is not a traditional function of a prosecutor or is not part of the adversarial function, *see, e.g., Burns v. Reed,* 500 U.S. 478, 495-96 (1991) [advising police on permissibility of investigatory method], the prosecutor is not entitled to absolute immunity. Since Birns' and Talty's involvement occurred before plaintiff's arrest and before the initiation of the prosecution, the ADA's actions were investigative, not prosecutorial, and the ADA defendant are not entitled to immunity on plaintiff's false arrest claim. *See Hill v. City of New York,* 45 F.3d 653 (2nd Cir. 1995).[3]

D. <u>**Defendants Godino and Roberts are not entitled to qualified immunity.**</u>

On the record before this Court, the issue of qualified immunity boils down to whether a reasonable officer could have reasonably believed – in light of applicable law and the information he possessed –  that it was permissible to arrest, jail, and prosecute plaintiff for criminal facilitation based on the uncorroborated identification provided by a drug-addicted paid CI with unproven reliability or credibility, where a witness to the crime, who was concededly credible, had previously identified a different person known to him, Spruell, as the perpetrator. Godino's choice to accept the identification by the CI while totally disregarding Terab's identification was motivated by his desire to find out where plaintiff's brother was hiding and not by probable cause. *Plaintiff's Response ¶ 190.* A jury can conclude that no reasonable police officer could reasonably believe that, under the facts known to Godino, he had probable cause to arrest plaintiff.

---

[3] Plaintiff agrees that as to the ADA defendants' involvement in the actual prosecution, as opposed to the arrest, they are immune from liability.

The qualified immunity defense insulates police officers from civil liability as long as their official conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, ... insofar as it was objectively reasonable for such officials to believe, even if mistakenly, that their conduct did not violate such rights." *Richards v. City of New York*, 433 FSupp2d 404, 419 (SDNY 2006); *Anderson v. Creighton*, 483 US 635, 641 (1987) [the availability of the defense depends on whether a "reasonable officer could have believed" his action "to be lawful, in light of clearly established law and the information he possessed."]. Only a police officer who has an objectively reasonable belief that his actions are lawful is entitled to qualified immunity. *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F3d 415, 433 (2d Cir. 2009). Qualified immunity is never applicable to a municipality to defeat a common-law claim.

The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier v. Katz*, 533 US 194, 201, (2001), overruled in part on other grounds, *Pearson v. Callahan*, 555 US 223 (2009). Defendants, however, invite this Court to engraft an *ad hoc* "arguable probable cause" element onto qualified immunity analysis. *Def. Memo at pp.14-15.* The Second Circuit, however, has held that the inquiry into whether it was objectively reasonable for an officer to believe that conduct did not violate a constitutional right is part of the inquiry into whether the constitutional right allegedly violated was clearly established. *Okin, supra,* [once a court has found that the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred, it is no defense for a police officer who violated this clearly established law to respond that he held an objectively reasonable belief that his conduct was lawful...we clarify here that the two are part of the same inquiry, not independent elements as some cases suggested]. *Id* at 433 n.11; *accord Seri v. Bochicchio*, 374

FedAppx 114, 115-17 (2d Cir. 2010). *Taravella v. Wolcott*, 599 F3d 129, 135 (2d Cir. 2010) (Straub, J., dissenting) ["Once we determine whether the right at issue was clearly established for the particular context that the officer faced, the qualified immunity inquiry is complete.... By splitting the "relevant, dispositive inquiry" in two, we erect an additional hurdle to civil rights claims against public officials that has no basis in Supreme Court precedent."]; see also *Walczyk v. Rio*, 496 F3d 139, 166-67 (2d Cir. 2007) (Sotomayor, J., concurring).

A right is clearly established when "[t]he contours of the right ... [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Qualified immunity is an "affirmative defense," *Gomez v. Toledo,* 446 U.S. 635, 636, 639-41 (1980), and "it is incumbent upon the defendant to plead[ ] and adequately develop" that defense. *Zellner v. Summerlin,* 494 F.3d 344, 368 (2d Cir.2007) (internal quotation marks omitted).

The fact that not a single official report prepared by the police documents the CI's existence, let alone his purported identification of plaintiff as the perpetrator, confirms (or least raises material issues of fact), that the officers, and Godino in particular, knew that the CI's identification of plaintiff was not reliable, credible or true, so they hid the CI's existence. *Plaintiff's Response ¶ 116.*

Moreover, a reasonable inference can be drawn from the evidence that Godino fed information to the CI and/or coached him about the scene of the crime, by among other things, showing him the surveillance video to induce him to identify K.Creighton instead of Spruell as the culprit. *See, Blake v. Race*, 487 F.Supp.2d 187 (E.D.N.Y. 2007). [4]

---

[4] The evidence in the record supporting Godino's involvement in fabrication of evidence includes: 1) K. Creighton was not in the bodega when the gun was passed. *Plaintiff's Response ¶ 235.*; 2) the CI not only confirmed that Spruell was in the bodega at the time of the passing of the gun, but has also identified the person shown on the surveillance video as Spruell not K. Creighton; *Plaintiff's Response ¶ 242;* 3) despite the fact that Godino maintains that the CI was at the front of the store, he does not appear in the surveillance video. *Plaintiff's Response ¶ 258)* the CI was nowhere near where Godino claims he was. *Plaintiff's Response ¶ 257;* 5) the CI was

Viewing the evidence in the light most favorable to plaintiff, including drawing all reasonable inferences, is it beyond dispute, as demonstrated above, that under the "totality of the circumstances" approach, there was no probable cause to arrest plaintiff as a matter of law. At a minimum, material issues of fact exist requiring denial of defendants' motion on qualified immunity grounds.

Even considering the "arguable probable cause" argument, factual disputes prevent entry of summary judgment on qualified immunity.  See, e.g., *Toliver v. City of New York*, 10 CV 5803, 2012 WL 6013098 at 8 (S.D.N.Y. December 3, 2012) (qualified immunity inappropriate because if plaintiff's allegations are true, the officer is not entitled to immunity); *Michele v. City of New York*, 09 CV 9334, 2013 WL 4354763 at 18 (S.D.N.Y. September 12, 2012) (credibility determinations are for the jury); *Russo v. DiMilia*, 894 FSupp2d 391, 414-15 (S.D.N.Y. 2012) (factual disputes overlap the substantive claim and the qualified immunity defense, preventing summary judgment).

*Benn v. Kissane*, 510 F.App'x 34, 38 (2d Cir. 2013), cited by defendants, is distinguishable from the instant case because, unlike the officers in *Benn*, who conducted an investigation in the face of conflicting evidence, the police in this case did not conduct any investigation before arresting plaintiff.  As ADAs Birns and Talty testified, without conducting a further investigation plaintiff should not have been arrested.  *Plaintiff's Response ¶¶ 173, 182, 245.*

---

in the back of the store scoring drugs when the gun was passed; 6) despite the video that shows the gun being passed in the front of the store, the CI maintains it was passed in the back of the store. *Plaintiff's Response Exhibit CC, ¶ 257.* On the basis of these facts, a jury can conclude, that the CI's identification of plaintiff was the product of coaching, feeding of evidence, or pressure by Godino upon the CI to arrest K. Creighton in order to pressure him into telling where his brother was.  Qualified immunity is unavailable where the police fabricate and forward to prosecutors, false information. *Blake, supra; Riciutti, supra; Descovic v. City of Peekskill, 894* F.Supp.2d 443 (S.D.N.Y. 2012).

A reasonable police officer could not reasonably believe that blindly accepting an unreliable CI's identification of a perpetrator, while ignoring a reliable witness's prior credible identification of another person and fabricating or helping another fabricate evidence, does not violate a clearly established right.

E. **Defendants, Godino and Roberts initiated the prosecution.**

Under New York law, police officers can "initiate" a prosecution by filing charges or other accusatory instruments. *Cameron v. City of New York,* 598 F.3d 50 (2d Cir. 2010). A defendant other than a public prosecutor may be liable for supplying false information to the prosecutor in substantial furtherance of a criminal action, *Torres v. Jones,* 26 N.Y.3d 742 (2016) or suppressing evidence, *Colon v. City of New York,* 60 NY2d 78 (1983); *Ramos v. City of New York,* 285 AD2d 284 (1st Dept., 2001).

In *Cameron, supra,* the Second Circuit rejected the very argument advanced by defendants here concluding, as a matter of law, that defendant's filing of the Criminal Court Complaint "initiated" the prosecution against the plaintiff. Here, Roberts filed the criminal complaint against plaintiff at the direction of Godino and, as such, they both initiated plaintiff's prosecution.

F. **The District Attorneys' decision to prosecute plaintiff is not a superseding cause.**

A prosecutor's exercise of independent judgment cannot be a superseding cause where, as in this case, the prosecutor was constrained by the police officers' failure to investigate certain claims or where they failed to disclose to the ADA information that ADA Birns admits would have affected his decision. *Plaintiff's Response ¶¶ 173, 182, 245.*

*Cameron, supra; Myers v. County of Orange,* 157 F.3d 66, 73-74 (2d Cir. 1998) [a prosecutor's exercise of independent judgment was not a superseding cause where the prosecutor

was constrained by the police department's failure to investigate certain claims]; *Bermudez v. City of New York*, 790 F.2d 368, 376-77 (2d Cir. 2015).

Here, Godino did not inform the District Attorney that he had a signed statement from an identified citizen, the owner of the bodega, identifying Spruell as the perpetrator and that he had picked Spruell out of a photo array. Nor did Godino advise Birns that the so-called "Grand Jury Witness" was a paid CI. *Plaintiff's Response ¶¶ 178, 248.* Unlike in *Bermudez,* where the Court found that the ADA could not have been misled because he participated in the investigation and personally interviewed all the witnesses, in this case ADAs Birns and Talty were misled as they did not know about Terab's statement. *Plaintiff's Response ¶¶ 183, 245.* That Birns interviewed the CI while crucial information about him was withheld by the police is of no moment inasmuch as he was not advised by Godino that there was a witness that squarely contradicted the CI's version of events. As such, Birns decision to proceed with the prosecution cannot be an intervening cause.

### G. There was no probable cause to prosecute plaintiff.

A party may establish that there was a lack of probable cause to commence a criminal proceeding by proving that there was no probable cause to arrest in the first place. *Cardoza v. City of New York*, 139 A.D.3d 151 (1st Dept., 2016). In the context of a malicious prosecution claim, "probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v Zahl*, 13 F3d 625, 629-630 (2d Cir 1994).

As explained above and in plaintiff's motion for summary judgment, under the totality of the circumstances known to Godino, there was simply no probable cause to arrest plaintiff let alone to prosecute him for criminal facilitation. The single uncorroborated statement by the CI would

not have justified a reasonable police officer in believing that he/she had probable cause to prosecute plaintiff for criminal facilitation.

    H.  **The undisputed evidence establishes that plaintiff can and has rebutted the presumption afforded a Grand Jury Indictment.**

        The presumption afforded a Grand Jury Indictment may be overcome by evidence of fraud, perjury or suppression of evidence by the police, *Colon v. City of New York*, 60 NY2d 78 (1983); evidence that police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, *Chetrick v. Cohen*, 52 AD3d 449 (2nd Dept., 2008); evidence that the police failed to make further inquiry when a reasonable person would have done so. *See, Haynes v City of New York*, 29 AD3d 521 (2nd Dept. 2006); *Carlton v. Nassau County Police Dept.*, 306 AD2d 365 (2nd Dept. 2003) or where it can be shown that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures and plaintiff's rights. *See, Lee v. City of Mount Vernon*, 49 N.Y.2d 1041 (1980).

        Neither Godino nor anyone else from the Police Department advised the Assistant District Attorney that, within five days of the shooting, the bodega owner, who knew Spruell, had provided Godino with a signed statement to the effect that he saw Spruell in the bodega at the time the crime was committed and witnessed him passing the gun to Dior.[5] Such suppression of evidence squarely rebuts the presumption of probable cause afforded a Grand Jury indictment. The prosecutors were precluded from making an informed decision about whether to proceed with the prosecution because Godino suppressed evidence and failed to make a complete statement of facts to the DA. *See, Chetrick, supra.*

---

[5] At his deposition in 2015 Terab steadfastly maintained that indeed, it was Spruell who passed the gun. *Plaintiff's Response ¶ 85-86.*

As such, the evidence in this case overcomes the presumption of probable cause that attaches to a Grand Jury Indictment.

## I.   Defendants initiated the prosecution against plaintiff with malice.

The actual malice element in a claim for malicious prosecution "does not require a plaintiff to prove that the defendant was motivated by spite or hatred. *Cardoza, supra; Nardelli v Stamberg*, 44 NY2d 500, 502-503 (1978). Since "[a]ctual malice is seldom established by direct evidence of an ulterior motive," *Martin v City of Albany*, 42 NY2d 13, 17 (1977), it "may be proven by circumstantial evidence." *Nardelli, supra...* and depends "upon inferences to be reasonably drawn from the surrounding facts and circumstances" *Martin, supra*. Actual malice may also be inferred from a total lack of probable cause or conduct that was reckless or grossly negligent, *Haynes, supra* or from defendants' intentionally providing false information to law enforcement authorities. *Robles v City of New York*, 104 AD3d 829 (2d Dept., 2013).

Here, defendants' avowed purpose to arrest Creighton was so he would tell where his brother was despite the fact that there was no probable cause to support such an arrest is proof positive of malice.  As such, the evidence establishes probable cause as a matter of law or at minimum, material disputes of fact preventing summary judgment on that issue.

## J.   Defendants did not assert collateral estoppel as an affirmative defense and are barred from raising it here.  In any event, the dismissed criminal prosecution against K. Creighton does not estop plaintiff's malicious prosecution claims.

Defendants' assertion that collateral estoppel bars K. Creighton's malicious prosecution claim, *Def. Memo at p.19*, was waived by defendants' failure to raise that affirmative defense in their Answer. DE 32 at ¶¶274-286.  *See Fed.R.Civ.P.8(c)(1) Affirmative Defenses. In General.* In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including … estoppel [and] res judicata …").

Even considering this waived defense, this aspect of the motion should be denied.  There

is no dispute that the charges against plaintiff were dismissed at the request of the District Attorney. Criminal Procedure Law §160.60 makes explicit that "[u]pon the termination of a criminal action … [in favor of the accused], the arrest and prosecution shall be deemed a nullity …."

In New York, the doctrine of collateral estoppel is not applied absent the opportunity for appellate review. *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996). Without the "opportunity to appeal an adverse finding, [a party] has not had a full and fair opportunity to litigate that issue." *Id.* (citing *People v. Medina*, 208 A.D.2d 771 (2nd Dept., 1994), appeal denied, 84 N.Y.2d 1035 (1995); *accord* Restatement (Second) of Judgments § 28(1) (1982) ["If review is unavailable because the party who lost on the issue obtained a judgment in his favor, the general rule of [collateral estoppel] is inapplicable by its own terms."].

Contrary to defendants' assertions, facts determined in motion practice or in pretrial hearings cannot be given preclusive effect against a criminal defendant/civil plaintiff against whom all charges have been dismissed. *Williams v. Moore*, 197 A.D.2d 511 (2nd Dept. 1993). Once the criminal charges against Mr. Creighton were dismissed, there was no reason to seek appellate review of earlier rulings. Moreover, there was neither the opportunity to develop nor present in the criminal prosecution, the facts regarding the utter unreliability of the confidential informant since neither plaintiff nor his criminal attorney knew of his existence. Nor is there an identity of issues in the criminal court reviewing the Grand Jury (prima facie presentation) and the issues presented here (*inter alia*, willful withholding of information by defendant Godino from the District Attorney, grand jurors, and the Court).

### K. Plaintiff's fair trial and Due Process claims are substantive claims for relief distinct from and not "duplicative" of his arrest and prosecution claims

Defendants make a single argument in opposition to Mr. Creighton's claims for failure to investigate, withholding and fabricating evidence: they should be dismissed as "duplicative" of

plaintiff's arrest and prosecution claims. *Def. Memo at pp. 21-23*. This branch of defendants' motion, like all the others, should be denied.

Plaintiff's due process claims and fair trial claims, Amended Complaint ¶¶111-116 are distinct from his Fourth Amendment claims based on the arrest and prosecution. Unlike unlawful arrest and malicious prosecution claims, these claims cannot be defeated by a defendant's demonstration of probable cause. *See Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 129-130 (2d Cir.1997); *Jocks v. Tavernier,* 316 F.3d 128, 138 (2d Cir.2003), *Bermudez, supra*. Even assuming, *arguendo*, probable cause for the arrest or prosecution, such is not fatal to plaintiff's fair trial and due process claims.

The Circuit recognizes the existence of a constitutional "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity." *Zahrey v. Coffey*, 221 F.3d 342, 344, 349 (2d Cir. 2000); *Ricciuti, supra*; *Bermudez, supra* ["Defendants appear to argue that [the] due process claims fail because there was probable cause to bring an indictment. But the absence of probable cause is not an element of a due process claim."]; *Poventud v. City of New York,* 750 F.3d 121, 134 (2d Cir.2014) (en banc) [Circuit explicitly distinguishing malicious prosecution and due process claims]. Plaintiffs such as K. Creighton may bring §1983 claims "based on alleged falsification and withholding of evidence in police reports and investigative activities, … ." *Soomru v. City of New York*, 13 CV 0187 (LTS), --- F.Supp.3d ----, 2016 WL 1266069 at 6 (March 30, 2016 SDNY) citing *Coggins v. Buonora*, 776 F.3d 108, 109 (2d Cir.2015) ["Coggins alleged that the officers knowingly falsified and omitted material facts from police reports, [and] lied to the district attorney … ."]. Plaintiff's Sixth Claim likewise makes such allegations.

There is an important distinction between Fourth Amendment analysis and a fair trial and procedural due process analysis. Under the Fourth Amendment, one can argue that the only

20

constitutional requirement is objectively reasonable probable cause, and, if exculpatory information does not destroy probable cause, there is no violation.   When an officer suppresses exculpatory information, a prosecutor is likely to make erroneous decisions, as Birns and Talty did here, with resulting deprivation of liberty.

Defendants cite to a number of inapt or distinguishable cases. In *Hickey v. City of New York*, 01 CV 6506 (GEL), 2004 WL 2724079 (November 29, 2004 SDNY) plaintiffs' substantive due process and procedural due process claims were not founded on failure to disclose or false evidence/fabrication and therefore dismissed.

Likewise, *Osuma v. City of New York*, 08 CV 4759 (JSR), 2009 WL 2356424 (July 30, 2009) was not based on the fabrication and/or withholding of evidence from District Attorneys, Judges, and grand jurors. Probable cause is not a defense to Mr. Creighton's withholding of evidence, fabrication and due process claims. Creighton's claims also are based on Godino's actively developing and importuning the CI's false evidence, therefore fabricating evidence supporting the prolonged detention claim.

In *Ambrose v. The City of New York*, 623 F.Supp.2d 454 (SDNY 2009), also cited by defendants, the plaintiff made a due process claim founded solely on a *Brady* violation and did not allege fabrication of evidence or that police personnel withheld exculpatory information from the District Attorney.  The *Ambrose* Court permitted the arrest and prosecution claims to proceed but, because plaintiff had been acquitted, dismissed the *Brady* violation claims. *Id.* at, 467-474.

**L.** **Defendants have not offered any evidence that, without the arrest and prosecution at issue here, plaintiff would have been jailed at all, much less that he would have been jailed until January 2012, fourteen months beyond the term of his probation.**

Defendants appear to argue, *Def. Memo at p.21*, that damages attributable to the unlawful arrest and prosecution or the fabrication and withholding of evidence are limited or extinguished by the probation revocation started after the January 10, 2007 arrest that is the subject of the instant

lawsuit. Since this is an affirmative defense, defendants have the burden of offering evidence, not speculation or unsupported improbabilities, by which a jury could reasonably conclude, in diminution of damages, that, but for the gun arrest and prosecution, plaintiff would have been violated and held for five years.

Plaintiff had been sentenced to a five-year term of probation as part of the disposition of a 2005 prosecution unrelated to the weapons charge underlying this civil suit. *Plaintiff's Response* ¶35. Mr. Creighton was subject to supervision by probation from November 21, 2005 to November 20, 2010. *Id.* While the records indicate that on December 28, 2006 plaintiff had been warned by his probation officer that his probation might be revoked, no steps were taken to begin revocation proceedings before plaintiff's arrest in connection with criminal facilitation charges in this case. Even had probation violation charges proceeded against Mr. Creighton without the January 2007 arrest and subsequent imprisonment to January 2012, the maximum plaintiff could have been jailed, under the terms of probation was, until late November 2010, about fourteen months before the January 2012 dismissal of the weapons charges. Put colloquially, plaintiff "maxed out" more than a year before he was released on the weapons charges.

That defendants claim that the "time served" sentence absolves them of damages for the unlawful imprisonment, prosecution, due process, fabrication of evidence and other claims highlights how speculative their "intervening causation" defense is. Moreover, nowhere in the transcript of the January 19, 2012 Court proceeding does the judge indicate that plaintiff was sentenced to any time for the probation violation. *Plaintiff's Response* ¶¶ 56-57. Whether plaintiff would have been incarcerated for violating his probation at all is highly speculative, as is how long he would have been incarcerated for said violation if it he had been incarcerated at all. Defendants do not offer any evidence, in admissible form or otherwise, to support their claim that plaintiff would have been incarcerated for five years even if he had not been arrested for criminal

facilitation. The jury can conclude that, without the criminal facilitation prosecution, whether probation proceedings would have been commenced against plaintiff is highly speculative or, had they been commenced, they would have resulted in a far more modest sentence than "the max" (until November 21, 2010). *See Jenkins v. New York City Police Department,* 13 Civ. 3405(KPF), 2015 WL 4660899 at *7 (August 6, 2015 SDNY)

    A violation of probation petition - a probation hold- was filed only after Creighton's arraignment. He was "remanded … pending resolution of the petition, which is the standard practice." *Plaintiff's Response* ¶ 38.

    The probation petition "essentially" tracked the prosecution. *Plaintiff's Response* ¶ 37; *Def. Exh. P: Probation Records, NYC221-237 (*143 entries from November 21, 2005 through January 19, 2012). There were two specifications. *Def. Exh N.* The first restated the weapons charge based on the December 26, 2006 incident that is the subject of this suit and the second was based on a June 28, 2006 arrest and resulting in a conviction for Harassment in the Second Degree on July 17, 2006. *Id.*

    After the weapons prosecution had gone on for "a couple of years," the criminal defense attorney had conversations with the judge handling the prosecution in an attempt to dispose of the probation matter during the pendency of the criminal prosecution. *Pl. Exh. Q: Raskin Dep.* p.75. Mr. Creighton's defense attorney proposed admitting the probation violation "insofar [as] he admits that he's been indicted for possession of a gun … [and] that he's also been convicted of disorderly conduct [sic: harassment in the second degree] at some point while he was on probation. *Id. at p.75 ll.18-24.* The presiding judge "would not do so," and would only consider disposing of the probation matter if Mr. Creighton admitted that "he was not simply indicted but had a gun," and then "we can talk about me accepting your admission of guilt and talk about what sentence …." *Id. at p 75 l.24-p.76 l.3.*

Needless to say, Mr. Creighton had not done what he was being prosecuted for and had no interest in resolving an otherwise minor probation violation by allocuting to serious weapons charges. *Id. at p 76 ll.4-6.*

When the District Attorney's office finally dismissed all the charges against Mr. Creighton in January 2012, plaintiff pled guilty to the violation of probation charge based on the harassment conviction, with the Judge stating that "*[i]n view of the fact that he has spent five years in jail on 626 of 07 which has just been dismissed, and is now sealed, probation is terminated unfavorably with no further negative implications." Plaintiff's Response* ¶ 56 (emphasis supplied).

The probation hold is a stark example of the consequences of fabricated and withheld evidence. The jury here can reasonably conclude that, but for the false evidence developed by defendants - that plaintiff passed a pistol to his brother inside of Terab's store - any judge involved in the probation matter would have had a far less harsh attitude about Mr. Creighton and the harassment violation.

## M. Defendants are not entitled to dismissal of plaintiff's abuse of process claim.

Determining a summary judgment motion is fact-intensive and as such, it is the proper procedural device to consider matters outside the pleadings, such as facts unearthed in discovery, depositions, affidavits, statements, and any other relevant form of evidence. *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006). Dismissal of plaintiff's abuse of process claims is not warranted on the grounds advanced by defendant that the complaint fails to plead sufficient facts with respect to that claim where, as here, facts revealed during discovery and submitted herein, support plaintiff's abuse of process claims.[6]

---

[6] Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." Fed.R.Civ.P. 15(a)(2). Because the evidence adduced during discovery support a claim for abuse of process, should the Court conclude that plaintiff's complaint fails to plead sufficient facts with respect to his conspiracy claim (or any other claim), plaintiff requests that he be permitted to amend his complaint to assert the facts contained both in

Under New York law, a claim for abuse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of process in a perverted manner to obtain a collateral objective. *Ettienne v. Hochman*, 83 A.D.3d 888 (2nd Dept., 2011).

Here, defendants have failed to eliminate all material issues of fact with respect to each of the above-mentioned elements. It is undisputed that defendants issued criminal process against plaintiff, which resulted in interference with his person. Moreover, as a DD5 prepared by the police on January 10, 2007 reveals, plaintiff was arrested in order to pressure him into informing the police of his brother's whereabouts. This ulterior purpose or objective, at the very least raises triable issues of fact with respect to plaintiff's abuse of process claim.

**N.** **Defendant, Godino is not entitled to dismissal of plaintiff's conspiracy claim.**

That the ADAs enjoy absolute immunity does not entitle defendant Godino to judgment as a matter of law on plaintiff's conspiracy claim.[7] Even though the prosecutor is typically immune from liability in this situation, a non-immune actor, such as Godino, who conspires with an immune actor is not shielded by the latter actor's immunity. *See, e.g., Dennis v. Sparks*, 449 U.S. 24 (1980).

The elements of a §1983 conspiracy claim for deprivation of civil rights are: 1) an agreement between two or more state actors, or a state actor and a private entity; (2) to act in concert to inflict constitutional injury; and (3) an overt act done in furtherance of the goal of causing damages. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999).

---

support of his motion for summary judgment and in opposition to defendants' instant motion. *Descovic v. City of Peekskill*, 894 F. Supp. 2d 443, 462-64 (S.D.N.Y. 2012) [Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend].

[7] To the extent defendants argue that plaintiff's complaint fails to plead sufficient facts with respect to his conspiracy claim, *see* Footnote 5.

Here, the evidence creates issues of fact as to whether Godino, Roberts, Birns and/or Talty conspired to accuse plaintiff of the crimes for which he was charged, knowing that plaintiff was not the culprit, in order to locate Dior, who they wanted to charge with the homicide, and pressure him into taking a plea to rescue plaintiff from a wholly baseless prosecution. *See, McCray v. City of New York*, No. 03 CIV 10080 (DAB), 2007 WL 4352748, at 23 (S.D.N.Y. Dec. 11, 2007).

ADA Birns met and conferred with Godino before and after plaintiff's arrest, yet, despite the suspect nature of the so-called CI's identification, the Grand Jury was never apprised that the only eyewitness that testified before it was a paid confidential informant whose testimony was wholly contradicted by the identification of the bodega owner that someone else, Spruell, and not K. Creighton was the perpetrator and who testified under a false name. *Plaintiff's Response ¶244*. Instead, the CI was presented as an ordinary citizen who happened to be in the bodega, just as he has been presented to this Court in defendants' motion for summary judgment.[8] By presenting the CI to the Grand Jury as an ordinary citizen and calling him to testify under a false name, Godino and Birns conspired to mispresent the facts in order to avoid having the jury learn of the unreliability of the sole witness on which its indictment was based. As such, Godino is not entitled to dismissal of the conspiracy claim.

## O. Defendants are not entitled to summary judgment on plaintiff's failure to intervene claim.

Plaintiff's failure to intervene claim is grounded in the widely recognized rule that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994); *Mathews v. City of New York*, 889 F.Supp.2d 418 (E.D.N.Y. 2012).

---

[8] As developed above, whether the CI was present in the store is an issue that is hotly contested.

Here, the evidence raises substantial issues of fact as to whether the police and/or the District Attorneys handling the case failed to intervene when it was clear that plaintiff's constitutional rights not to be arrested and/or prosecuted based on the highly questionable and suspicious statement of a paid CI in the face of an identification by citizen that exculpated plaintiff were violated. Moreover, as discussed above, there is substantial circumstantial evidence that Detective Godino and the defendant ADAs were aware of the violation of plaintiff's civil rights up to and including the time that plaintiff was arrested and the prosecution initiated. Thus, the failure to intervene to protect plaintiff's rights from infringement by law enforcement officers is wholly supported by the record evidence developed during discovery. [9]

**P. Defendants are not entitled to summary judgment on plaintiff's unreasonably prolonged detention claim.**

Plaintiff remained incarcerated for over five years, from January 10, 2007 until January 19, 2012. On January 19, 2012 all charges against him were dismissed.[10] *Plaintiff's Response* *¶239.*

To prevail on a claim of prolonged or excessive detention, a plaintiff must demonstrate: (1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct shocks the conscience. *Russo v. City of Bridgeport*, 479 F.3d 196, 205 (2nd Cir., 2007).

As discussed above, the evidence shows that Godino mishandled and suppressed evidence, which resulted in plaintiff wrongful continued detention. That said conduct violated

---

[9] To the extent defendants claim that plaintiff's complaint does not allege sufficient facts to support his failure to intervene claim, *see* Footnote 5.

[10] As discussed in Point K, defendants' argument that plaintiff would have been incarcerated for over five years for violation of parole as a result a minor harassment charge is speculative in the extreme and in any event, he certainly would not have been incarcerated beyond November, 2010.

plaintiff's right to be free from arrest and prosecution without probable cause. Moreover, as discussed above, defendant is not entitled to qualified immunity.

There are material issues of fact as to the issue of whether the conduct shocks the conscience. In this regard, the evidence indicates that Godino arrested plaintiff and initiated a prosecution against for criminal facilitation for the sole purpose of pressure Dior to confess to the shooting of two bystanders. *Plaintiff's Response ¶190, 191.* Not by coincidence, when Dior pled guilty to murder, all charges against plaintiff were immediately withdrawn by the District Attorney.

Defendants' argument that plaintiff's claim for unreasonably prolonged detention should be dismissed because plaintiff cannot demonstrate the existence of exculpatory evidence which conclusively established plaintiff's innocence is particularly disingenuous for two salient reasons. First, Terab's identification of Spruell conclusively established that plaintiff, who was not in the store, did not pass the gun. Second, had Godino conducted a minimal investigation into Terab's identification of Spruell as the perpetrator, it would be plain that plaintiff was indeed innocent. Third, it is beyond the pale for defendant to argue that plaintiff cannot establish conclusively that he was innocent, when, as plaintiff has developed in his motion for spoliation, they lost and/or destroyed the surveillance video that conclusively establishes plaintiff's innocence.[11]

## CONCLUSION

---

[11]When the CI was shown the video at his deposition, he unequivocally identified the person passing the gun as Spruell, not K. Creighton. *Plaintiff's ¶¶ 12, 243; Exhibit CC.* Had the original videotape not been destroyed or lost, it could have been enhanced, making it even more uncontroverted than it already is, that K. Creighton was not the person who passed the gun. *See Exhibit E.* Similarly, as also developed in plaintiff's motion for spoliation, the disappearance of "lots" of DD5s prepared in connection with the investigation could very well contain further evidence of plaintiff's innocence. Defendant's argument that plaintiff cannot establish that the evidence would have conclusively proven his innocence is akin to the man who killed his parents and pleads for mercy because he is an orphan.

For the foregoing reasons, plaintiff, Kenneth Creighton respectfully urges that the motion by defendants City, Roberts, Godino, Birns and Talty for summary judgment on plaintiff state-law false arrest claim (First Cause of Action) be denied, and that the motion by defendants City, Roberts and Godino for summary judgment on plaintiff's New York State-law malicious prosecution claim (Second Cause of Action) and Roberts' and Godino's motion with respect to plaintiff's federal malicious prosecution claim (Fourth Cause of Action) be similarly denied.

Similarly, defendants' motion for summary judgment on the following claims should be denied:  Due Process Claims – Sixth Cause of Action; Prolonged Detention Claim – Eighth Cause of Action; Abuse of Process Claim (Third Cause of Action); Conspiracy Claim (Fifth Cause of Action) and Failure to Intervene Claim (Eleventh Cause of Action). Moreover, plaintiff respectfully prays that the Court make a finding, as a matter of law that defendants, Godino and

Roberts are not entitled to qualified immunity. Finally, should the Court determine that certain causes of action were not sufficiently pled but that the evidence supports them, that plaintiff be permitted to amend his complaint.

Dated: July 19, 2016

Respectfully submitted,

**PAZER, EPSTEIN & JAFFE, P.C.**
20 Vesey Street, Suite 700
New York, New York 10007
(212) 227-1212

**RUBERT & GROSS, P.C.**
Attorneys for Plaintiffs
150 Broadway, Suite 1314
New York, New York 10038
(212) 608-3103

\_\_\_\_s/_____
RICHARD GROSS