UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

KENNETH CREIGHTON,

                                          Plaintiff,                        PLAINTIFF REPLY TO
                    -against-                                               TO DEFENDANTS'
                                                                           RESPONSE TO
                                                                           PLAINTIFF'S
                                                                           <u>RULE 56.1 STATEMENT</u>

THE CITY OF NEW YORK, DETECTIVE DEAN
ROBERTS (Shield No. 05861), DETECTIVE GLENN
GODINO (Shield No. 2756), POLICE OFFICERS JOHN
DOES 1-10 (names being fictitious and presently unknown          12 CV 7454 (PGG)
and intended to be employees of the NYPD who were
involved in Plaintiff's arrest, detention, imprisonment,
and/or prosecution), DISTRICT ATTORNEY ROBERT T.
JOHNSON, ASSISTANT DISTRICT ATTORNEY
BRUCE BIRNS A/K/A BURNS, ASSISTANT DISTRICT
ATTORNEY ED TALTY a/k/a ED TULTY and
ASSISTANT DISTRICT ATTORNEY MICHAEL
COOPER,

                                          Defendants.

------------------------------------------------------------------------ x

        Plaintiff by his attorneys, RUBERT & GROSS, P.C. and PAZER, EPSTEIN & JAFFE,

submit this response in reply to defendants' response to plaintiff's statement pursuant to local

rule 56.1.[1]

                1.        On August 22, 2012, he commenced an action in Supreme Court, Bronx

for *inter alia,* false arrest.  Exh. A.

**RESPONSE:**          Admit.

_____

[1] Plaintiff respectfully refers the Court to plaintiff's Statement pursuant to Local Rule 56.1
submitted in support of plaintiff's motion for summary judgment and plaintiff's Statement
pursuant to Local Rule 56.1 submitted in opposition to defendants' motion for summary
judgment.

2.      This action was removed to federal court by defendants and plaintiff filed an Amended Complaint on August 21, 2013.  Exh. B.

**RESPONSE:**      Admit except note that plaintiff Exhibit B does not establish that the action was removed to federal court, although defendants do not dispute that fact.

3.      On February 3, 2012, Creighton served a Notice of Claim naming the City of New York and the individuals involved in his arrest and prosecution as potential defendants in future litigation as required by General Municipal Law 50-e.  Exh C.

**RESPONSE:**      Admit that on February 3, 2012, plaintiff served a Notice of Claim naming the City of New York and certain individuals but deny that plaintiff's Notice of Claim named all the individuals involved in his arrest and prosecution.      Plaintiff's assertion as to the requirements of General Municipal Law ¶ 50-e is a legal conclusion, not a statement of fact and there should be stricken.

**PLAINTIFF'S REPLY**.  Plaintiff's Notice of claim names the City of New York, P.O. Dean Godino, P.O. John Roberts, ADA Bruce Birns and ADA Edward Talty.

4.      Plaintiff's Amended Complaint asserts New York State law claims for false arrest against all defendants (First Cause of Action).  Exh. B, ¶¶ 52-65.

**RESPONSE:**      Admit that plaintiff asserts such claims but do not admit that plaintiff's claims are properly pled and note that plaintiff has cited to the incorrect paragraphs of his Amended Complaint.

**PLAINTIFF'S REPLY:**      Plaintiff's New York State claims for false arrest appear in ¶¶ 42-55.

5.      Plaintiff's Amended Complaint asserts New York State law Malicious Prosecution claims against all defendants (Third Cause of Action). Exh. B, ¶¶ 66-88.

**RESPONSE:**          Admit that plaintiff asserts such claims but do not admit that plaintiff's

claims are properly pled and note that plaintiff has cited to the incorrect paragraphs of his

Amended Complaint.

**PLAINTIFF'S REPLY:**     Plaintiff's New York State claims for malicious prosecution

appear in ¶¶ 56 -76.

6.      Plaintiff's Amended Complaint asserts claims against all defendants

pursuant to 42 U.S.C. § 1983 for false arrest, malicious prosecution and malicious abuse of

process (Fourth Cause of Action).  Exh. B, ¶¶ 95-104.

**RESPONSE:**          Admit that plaintiff asserts such claims but do not admit that
plaintiff's

claims are properly pled and note that plaintiff has cited to the incorrect paragraphs of his

Amended Complaint.

**PLAINTIFF'S REPLY:**     Plaintiff's claims against all defendants pursuant to 42 U.S.C. §

1983 for false arrest, malicious prosecution and malicious abuse of process (Fourth Cause of

Action appear in ¶¶ 83 - 94.

7.      Plaintiff's Amended Complaint asserts claims for denial of procedural

and substantive due process pursuant to 42 U.S.C. § 1983 (Sixth Cause of Action). Exh. B, ¶¶

111- 116.

**RESPONSE:**          Admit that plaintiff asserts such claims but do not admit that

plaintiff's claims are properly pled and note that plaintiff has cited to the incorrect paragraphs

of his Amended Complaint.

**PLAINTIFF'S REPLY:** Plaintiff's claims for denial of procedural and substantive due

process pursuant to 42 U.S.C. § 1983 (Sixth Cause of Action) appear in ¶¶ 101-106.

8.      On December 26, 2006, police officers from the 42nd precinct Crime Scene Unit responded to a shooting that took place at 6:15 PM in front of 810 E. 168th St., which resulted in the death of one Louis Caldwell and injuries to Lisette Ayala. Exh. W: Crime Scene Unit Report Bates #P00066-68.

**RESPONSE:**      Admit that New York City Police Department personnel responded to a

shooting that took place on December 26, 2006 in the vicinity of 810 E. 168th Street and that

the shooting resulted in injuries to Lisette Ayala.  The shooting took place at approximately

5:48

p.m. (not 6:15 p.m.) and the shooting also resulted in the death of John (not Louis) Caldwell.

*See, e.g.,* Plaintiff Ex. V (Criminal Court Complaint).

9.      Ballistics evidence indicated that there were two shooters and that the victims were unintended targets. Exh. X: Unusual Occurrence Report Bates stamped P00157; Exh. K: Godino deposition, pp. 240, LL.15-25; p.73 L.9-13; Exh. W.

**RESPONSE:**      Deny.  The evidence cited by plaintiff does not support this assertion.

Rather, the cited evidence establishes only that New York City Police Department personnel

believed that the evidence suggested that there was more than one shooter and that the victims

were unintended targets.  In any event, this is not a material fact.

**PLAINTIFF'S REPLY:**  The evidence is material with respect to the investigation or lack

thereof conducted by the NYPD.

10.      Investigation and interview with the surviving victim disclosed that there were no witnesses who got a good look at the shooter. Exh.  I:  Complaint- Follow-Up Informational P00046 p. l; Exh. Y: Omniform System Complaints P00056-58, p. 1.

**RESPONSE:**        Deny.   The evidence cited by plaintiff does not support this assertion. Rather, the cited evidence establishes only that the surviving victim did not get a good look at the shooter's face. At least one eyewitness got a good look at the shooter and identified the shooter as Dior Creighton.  *See, e.g.,* Plaintiff Ex. J (Spiral Notebook) at NYC003527.

**PLAINTIFF'S REPLY:**  Objection to the statement that at least one eyewitness got a good look at the shooter and identified the shooter as Dior Creighton.  The spiral notebook does not state that the person described therein as the CI got a good look at the shooter. At his deposition, the person described as a CI in the spiral notebook denied having identified Dior Creighton as the shooter.  *Exh. U, 106 l23 – 107 l23.*

          11.     Detectives from the 42nd detective squad, including Detective Glenn Godino ("Godino"), the lead detective, responded to the scene within an hour of the shooting. Exh. K, p.357 LL. 3-5.

**RESPONSE:**        Deny.   The evidence cited by plaintiff does not support this assertion. Rather, the cited evidence establishes only that Detective Godino's present recollection is that he arrived at the scene within an hour of the shooting, although Detective Godino also testified that he does not recall what time he arrived at the scene. See, e.g., Plaintiff Ex. K (Godino Dep.) at 114:18-115:2.  In any event, this is not a material fact.

          12.     Fawaz Terab ("Terab"), [sic] was the owner of a bodega known [sic] "Prospect Mini Mart" located [sic] 820 East 168th Street, Bronx, near the area where the shooting took place. Exh. II: Fawaz Terab sworn statement dated February 21, 2013.

**RESPONSE:**        Admit but note that plaintiff appears to have mistakenly referred to his Exhibit II, instead of his Exhibit G.

          13.     Terab was in the bodega at the time the gun was passed to Dior. Exh. O:

Terab Deposition, p. 9 L. 3-10.

**RESPONSE:**          Admit.

          14.      Prior to December 26, 2006, Terab knew Dior.  Exh. O, p.7 L.23; p8 L.7.

**RESPONSE:**          Admit.

          15.      Prior to December 26, 2006, Terab knew plaintiff, Creighton. Exh. O,

p.8L.8-L16.

**RESPONSE:**          Admit.

          16.      Prior to December 26, 2006, Terab knew a man by the name of Kijafa

Spruell. Exh. O. p.8 L.8-L.16.

**RESPONSE:**          Admit.

          17.      Terab often saw Spruell and Dior together in the bodega. Exh. O, p.152

LL.17-25; p.153 LL.6-17.

**RESPONSE**:          Admit except note that the evidence cited by plaintiff does not support

this assertion.  There is no page 152 or 153 to plaintiff Exhibit O.

**REPLY STATEMENT:**      The evidence supporting plaintiff's statement appears on

Plaintiff's Exhibit O, 7:17-9:2.

          18.      There was a surveillance DVR camera in the bodega at the time a gun

was passed to.  Exh. O, p.13 L.20-24.

**RESPONSE:**          Admit that there was at least one security camera in the bodega  on

December 26, 2006.

          19.      After the shooting, Terab reviewed surveillance video taken at the time

of the passing of the gun in the bodega.  Exh. O, p.19 LL.16-18.

**RESPONSE:**          Admit.

20.    On December 31, 2006, merely five days following the shooting, Terab identified Kijafa Spruell ("Spruell"), as the person he observed passing the gun to Dior in the bodega on December 26, 2006. Exh. K, p.140 LL.10-22; Exhibit G, Terab Signed Statement bearing Bates stamp NYC 004657.

**RESPONSE:**          Admit but note that, immediately after the shooting, Mr. Terab told police that he did not see anything.  *See, e.g.,* Plaintiff Ex. O (Terab Dep.) at 32:23-33:4.

21.    On or about December 27, 2006, the surveillance video was extracted from the DVR located in the bodega and given [sic] one of the investigating detectives conducting the investigation. Exh. K, p. 52 LL.18-24; p.103 LL. 12-17; p.141 LL.4-9; Exh. O, p.31 LL. 15-16.

**RESPONSE:**          Admit.

22.    Godino reviewed the surveillance video before December 31, 2006. Exh. K, p.103 LL.12-23.

**RESPONSE:**          Admit.

23.    Godino did not find any inaccuracies when comparing Terab's stated observations to the surveillance video.  Exh. K, p.151 LL.6-12.

**RESPONSE**:          Deny.  It is unclear what is meant by this statement.  Defendants admit only that Detective Godino answered "No," subject to an objection, to the following question: "Given that you had looked at the video before you wrote this statement, did you observe anything, at the time that you took the statement, on the video that led you to believe that there was anything inaccurate about what Mr. Terab said that he observed?" at his deposition.

24.     Godino did not request to have the video or photographs enhanced to make a positive identification of who was passing the gun.  Exh. K, p.406 L.4-10.

**RESPONSE:**        Deny.   The evidence cited by plaintiff does not support this assertion. Rather, the cited evidence supports only that Det. Godino testified at his deposition that he did not "ask TARU to see if they could take still photographs off the video and enhance them so that a positive identification could be made about who was passing the gun." However, still photographs of the surveillance footage were created and were enhanced. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 403:25-404:9; Still Photographs, annexed to the Declaration of Kavin Thadani dated July 11, 2016 ("Thadani Decl.") as Ex. A.

25.     The original video surveillance disappeared after it was turned over to the District Attorney's Office. Exh. K, p.338 LL.6-15; p.337-338, p.343 L.3- L.6; p.344- p.345.

**RESPONSE:**        Deny.  Upon information and belief, the original videotape containing the surveillance footage is currently located at the Office of the Corporation Counsel and a copy of that videotape, produced by the District Attorney's Office during the pendency of the criminal case, is in the possession of plaintiff's attorneys. *See* Photographs of Videotapes, Thadani Decl., Ex. B; Plaintiff Ex. O (Terab Dep.) at 16:25-17:11; *see also* Dec. 13, 2007 Criminal Court Transcript, Thadani Decl., Ex. C, at 2:11-16.  In any event, this is not a material fact.

**PLAINTIFF'S REPLY**. Referring to the original tape, Godino testified that he gave it to the District Attorney's office and "apparently it's nowhere to be found".  *Plaintiff's Exhibit K, 337-345.* The surveillance video shown to Godino during his deposition, which is the one that has been produced during discovery in this case deposition, was edited and is not the same version of the tape that he first reviewed when it was retrieved from the store. *Plaintiff's Exhibit K, 38:10-21.* The tape Godino reviewed at his deposition has slow motion or the reverse, which were not

present when he originally watched it. *Exh. K, 334:12-24.*  Moreover, the response, made by defense counsel upon information and belief is not a fact, constitutes inadmissible hearsay and should be stricken.  The statement is material on the issue of spoliation of evidence.

26.     The original surveillance tape was never returned to the police by the district [sic] Attorney's Office.  Exh. K, p.345 LL. 13-20.

**RESPONSE:**     Deny.  The evidence cited by plaintiff only supports that Det. Godino testified that he does not remember getting the tape back. Upon information and belief, the original videotape containing the surveillance footage is currently located at the Office of the Corporation Counsel and a copy of that videotape, produced by the District Attorney's Office during the pendency of the criminal case, is in the possession of plaintiff's attorneys. *See* Photographs of Videotapes, Thadani Decl., Ex. B; Plaintiff Ex. O (Terab Dep.) at 16:25-17:11; *see also* Dec. 13, 2007 Criminal Court Transcript, Thadani Decl., Ex. C, at 2:11-16. In any event, this is not a material fact.

**PLAINTIFF'S REPLY**. The evidence cited by defendants does not support their response. Plaintiff's statement refers to the original videotape. Referring to the original tape, Godino testified that he gave it to the District Attorney's office and "apparently it's nowhere to be found". *Plaintiff's Exhibit K, 337-345.* The surveillance video shown to Godino during his deposition, which is the one that has been produced during discovery in this case deposition, was edited and is not the same version of the tape that he first reviewed when it was retrieved from the store. *Plaintiff's Exhibit K*, *38:10-21.* The tape Godino reviewed at his deposition has slow motion or the reverse, which were not present when he originally watched it. *Exh. K, 334:12-24.* Moreover, the response, made by defense counsel upon information and belief is not a fact, constitutes inadmissible hearsay and should be stricken.

27.     Godino reviewed the original surveillance video with defendant, ADA Bruce Birns ("Birns") but he does not remember when they did so. Exh. K, Godino p.373 LL.2- 15; p.3 73 LL.2-24.

**RESPONSE:**        Admit.

28.     Still photographs were made from the videotape. Exh. K, p.403 L.25 - p.404 L.8.

**RESPONSE:**        Admit.

29.     On December 31, 2006, Godino interviewed Terab at the 42nd precinct. Exh. O, p. 141 LL.10 -13.

**RESPONSE:**        Admit.

30.     On December 31, 2006, Terab provided a sworn statement to Godino identifying Spruell as the person who passed a gun to Dior at the bodega on December 26, 2006. Exh. G, Exh. K, p.140 LL.9-13.

**RESPONSE:**        Admit that Mr. Terab signed a written statement on December 31, 2006 which states that he saw "Kafia" hand a gun to "Dior" inside of the bodega, and note that plaintiff appears to have mistakenly referred to his Exhibit G, instead of his Exhibit II.

31.     Terab also identified Spruell from a photo array as the person who passed the gun to Dior in the bodega on December 26, 2006. Exh. Z, Photographic Array NYC004747. **RESPONSE**:  Admit that, on December 31, 2006, Mr. Terab identified Mr. Spruell from

a photo array.

32.     Terab identified Dior in a photo array as the one who received the gun in

the bodega on December 26, 2006.  Exh. AA, Photographic Array NYC004590.

**<u>RESPONSE:</u>**          Admit.

33.     Terab supplied information to Godino about the color of the gun.  Exh. K, 149:9-16.

**<u>RESPONSE:</u>**          Admit.

34.     On December 31, 2006, Godino concluded that Terab had no doubt about who passed the gun and had given specific information about what he had directly observed. Exh. K, p.392 L.24 - p.393 L.12.

**<u>RESPONSE:</u>**          Deny.   The evidence cited by plaintiff does not support this assertion. Rather, the cited evidence supports only that, during his deposition, in response to the question "Was there anything that led you to believe on December 31, 2006 when Terab specifically picked Spruell and Dior out of the lineups and gave you the written statement that we talked about on the prior occasion that he had any doubt in his mind as to who passed the gun, at that time?", Det. Godino responded, subject to objection, "No, he did not."

35.     As of December 31, 2006, Dior was a suspect in the shooting.  Exh. K, p.399 LL.8 - 22.

**<u>RESPONSE:</u>**          Deny.   The evidence cited by plaintiff does not support this assertion. Rather, the cited evidence supports only that Dior Creighton was a suspect in the shooting in general, without establishing any specific timeframe.

36.     As of December 31, 2006, no one had implicated Creighton in any criminal activity in connection with the shooting.  Exh. K, p.399 LL.8-22.

**<u>RESPONSE:</u>**          Deny.   The evidence cited by plaintiff does not support this assertion. In addition, an eyewitness testified that he called Det. Elliott of the New York City Police

Department minutes after the shooting and informed him that he saw plaintiff pass the gun in the store. *See, e.g.,* Plaintiff Ex. U at 21:25-22:9, 56:15-57:2. Det. Roberts had also identified plaintiff from the surveillance footage.  *See, e.g.,* Plaintiff Ex. OO (Roberts Dep.). at 59:15-60:7.

**PLAINTIFF'S REPLY**.   Other than the deposition testimony of the person described in Godino's spiral notebook as a CI, there is no record of Detective Elliot having received a call from an eyewitness minutes after the shooting and informing him that the witness saw plaintiff passing the gun in the store.   Moreover, Det. Roberts did not identify plaintiff from the surveillance footage as the person who passed the gun. Detective Roberts testified that when he viewed the surveillance video, "I believe it was Kenneth Creighton" who passed the gun. Conceding that the face of the person passing the gun was not visible, Roberts testified that his belief that the person passing the gun was Kenneth Creighton was "based more on my experience of Kenneth Creighton and the general makeup of him, the physical appearance". *Plaintiff's Exhibit OO (Roberts Dep. at 59:15; 60:7.*

37.     On December 31, 2006, based on Terab's signed statement and identification of Spruell as the person who passed the gun to Dior, there was probable cause to arrest Spruell.  Exh. K, p.153 LL. I 8-25.

**RESPONSE:**          Deny.  This is an improper opinion, argument and legal conclusion, not   a statement of fact, and should therefore be stricken.

**PLAINTIFF'S REPLY**.  Godino's belief as a police officer, that he had probable cause to arrest Spruell after Spruell had been identified as the person who passed the gun, is a fact, not an opinion. Moreover, ADA Talty testified that Terab's identification of Spruell as the person who passed the gun provided probable cause to arrest Spruell. *Exh. K, l18 -25.*

38.     On January 2, 2007, a computer search was run on Spruell. Exh. BB, Booking Arraignment Disposition Inquiry System Bates Stamped NYC004761 - NYC004763 (Spruell Records).

**RESPONSE:**     Admit.

39.     On January 2, 2007, when the computer search was run, Spruell was the only person who had been identified as having passed the gun to Dior. Exh. K, p.395 L.8 - p.396 L. 15.

**RESPONSE:**     Deny.  An eyewitness testified that he called Det. Elliott of the New York City Police Department minutes after the shooting and informed him that he saw plaintiff pass the gun in the store. *See, e.g.,* Plaintiff Ex. U at 21:25-22:9, 56:15-57:2. Det. Roberts had also identified plaintiff from the surveillance footage. *See, e.g.,* Plaintiff Ex. OO (Roberts Dep.). at 59:15-60:7.

**PLAINTIFF'S REPLY**: Other than the deposition testimony of the person described in Godino's spiral notebook, there is no record of Detective Elliot having received a call from an eyewitness minutes after the shooting and informing him that the witness saw plaintiff passing the gun in the store.  Moreover, Det. Roberts did not identify plaintiff from the surveillance footage as the person who passed the gun. Detective Roberts testified that when he viewed the surveillance video, "I believe it was Kenneth Creighton" who passed the gun.  Conceding that the face of the person passing the gun was not visible, Roberts testified that his belief that the person passing the gun was Kenneth Creighton was "based more on my experience of Kenneth Creighton and the general makeup of him, the physical appearance". *Plaintiff's Exhibit OO (Roberts Dep) 59:15; 60:7.*

40.     An investigation card known as an I-card issued by the police to pick up

a suspect for questioning was never issue [sic] for Spruell.  Exh. K, p.397 LL.8-20.

**RESPONSE:**          Admit that an I-card was not issued for Mr. Spruell in connection with the

shooting at issue. The evidence cited by plaintiff does not support the contention that I-cards

are "issued by police to pick up a suspect for questioning."

**PLAINTIFF'S REPLY:**    An I-card is an investigative card issued by the police when they

are looking to either speak to somebody who might be a suspect or you have probable cause to

arrest that person. Plaintiff's *Exh. K, 64:13-18*.

          41.     No attempt was ever made to locate or question Spruell despite Terab's

sworn statement that Spruell had passed the gun used in a homicide. Exh. K, p.398 LL.6-20.

**RESPONSE:**          Admit that no attempt was made to locate or question Mr. Spruell

in connection with the shooting because, prior to plaintiff's arrest, Mr. Terab recanted his

initial identification of Mr. Spruell and indicated that his view was obstructed, that he assumed

it was Mr. Spruell because Dior Creighton and Mr. Spruell were always together, and that he

had been mistaken. Mr. Terab then identified plaintiff as the person who passed the gun to Dior

Creighton based on a review of the surveillance footage. *See, e.g.,* Plaintiff Ex. K (Godino

Dep.) at 182:17- 183:12, 185:10-16, 207:25-208:16, 210:5-9, 292:9-21.

**PLAINTIFF'S REPLY:**  Plaintiff objects to this response beyond admitting that no attempt

was made to locate or question Spruell. The remainder of the statement is non-responsive to

plaintiff's statement and constitutes rank hearsay. Godino does not know when Terab allegedly

identified   Kenneth   Creighton   as   the   person   who   passed   the   gun.   Godino   testified   that

information provided by a witness in connection with a case should be memorialized in a DD5

or complaint follow-up informational.  *Plaintiff's Exh. K 165-166:18-6, 243-244:5-13; 359:23-

24.* Godino did not make any record of Terab having recanted his identification of Spruell and

instead having identified Kenneth Creighton as the person who passed the gun. *Plaintiff's Exhibit K, 292-293: 9-25.* Godino testified that on January 10, 2007, when the police were looking for plaintiff to arrest him for criminal facilitation, it was based on the "CI information". *Plaintiff's Exhibit K, 450:2-7.* Terab testified in his deposition that he never identified Kenneth Creighton as the person who passed the gun. Ex O 45: l24 -125: l4. As of May 27, 2016, Terab continued to maintain that he never identified Kenneth Creighton as the person who passed the gun. *Gross Declaration, Exh. A (email from ADA Burim Namani dated May 27, 2016.*

42.     Godino recognized Dior as the person who received the gun in the bodega from the surveillance video. Exh K, p.137 LL.3-10; p.251 LL.3- 13.

**RESPONSE:**     Admit.

43.     Godino could not recognize the person who passed the gun in the bodega from the surveillance video. Exh. K, p. 137 LL.3-19.

**RESPONSE:**     Admit.

44.     The person who passed the gun was wearing a white and dark colored horizontally striped shirt. Exh. K, Godino pp.251-252; Exh. CC, Surveillance DVD.

**RESPONSE:**     Admit.

45.     Terab gave Godino Spruell and Dior's names so he could pull their mugshots for a photo array. Exh. K, p.434-435.

**RESPONSE:**     Admit.

46.     Terab identified Spruell and Dior from photo arrays as the ones who passed and received the gun in the bodega respectively. Exh. K, Godino p.434-435.

**RESPONSE:**     Admit that Mr. Terab, after telling Det. Godino their names for the purpose of putting together the photo arrays, identified Mr. Spruell and Dior Creighton from

photo arrays. Defendants note that this assertion is duplicative of assertions made in other paragraphs herein.

47.    On December 31, 2006, based on the information Godino obtained from Terab, Godino had probable cause to charge Spruell with having passed the gun. Exh. K, p.153 LL.18-25.

**RESPONSE:**    Deny.  This is an improper opinion, argument and legal conclusion, not a statement of fact, and should therefore be stricken. Defendants note that this assertion  is duplicative of assertions made in other paragraphs herein.

**PLAINTIFF'S REPLY:**    Godino's belief as a Detective with the NYPD, that he had probable cause to arrest Spruell after Spruell had been identified as the person who passed the gun, is a fact, not an opinion.

48.    Godino first met with the confidential informant (CI) after he interviewed Terab.  Exh. K, p.146 LL.1-11.

**RESPONSE:**    Admit that Det. Godino met with an eyewitness after he interviewed Mr. Terab on December 31, 2006 but deny that this eyewitness was a "confidential informant." This eyewitness was not acting in the capacity of a confidential informant as it relates to what he witnessed on December 26, 2006, although he happened to be an active confidential informant at the time. *See, e.g.,* Plaintiff Ex. M (Birns Dep.) at 38:23-39:16, 39:20-40:10, 121:9-15, 224:8017; Plaintiff Ex. U at 203:23-204:7.

**PLAINTIFF'S REPLY:**  In the only record referable to a witness having identified Kenneth Creighton as the person who passed the gun, Godino's spiral notebook, the person is described as a CI. *Plaintiff's Exh. J.* Moreover, throughout this litigation, defendants consistently opposed identifying this purported "witness" precisely because he was a CI.  By claiming during this

litigation that the person who identified plaintiff as having passed the gun was a CI, defendants successfully obtained an order from this Court preventing plaintiff from disclosing the CI's identity thereby precluding him from asking a number of witnesses whether the CI was in fact, present in the bodega when the gun was passed. Any assertion that the person who identified plaintiff as having passed the gun was not a confidential information should be stricken.

49.     None of the official police records prepared in connection with the investigation of the shooting state that anyone other than Spruell was identified as having passed the gun to Dior in the bodega.  Exh. K, p.431 L.7-15.

**RESPONSE:**     Deny.   It is unclear what is meant by "official police records."   In any event, the evidence cited by plaintiff does not support this assertion. In addition, there ***were*** police records prepared in connection with the investigation of the shooting that state that plaintiff was identified as having passed the gun to Dior Creighton in the bodega. *See, e.g.,* Plaintiff Ex. J (Spiral Notebook) at NYC003525-NYC003528; Plaintiff Ex. K (Godino Dep.) at 178:20-179:7.

**PLAINTIFF'S REPLY:**   The only record prepared by any member of the New York City Police Department that states that anyone identified Kenneth Creighton as the person who passed the gun is a notation in Godino's spiral notebook.

50.     The only reference to a CI having been involved in the identification of Creighton as the person who passed the gun appears in an undated entry in a spiral notebook belonging to Godino.  Exhibit K, p.431 LL. 7-15; Exh J.

 **RESPONSE:**     Deny.    *See, e.g.,* Homicide Arrest Memo, Thadani Decl., Ex. D; TransferMemorandum, Thadani Decl., Ex. E.

**PLAINTIFF'S REPLY.**      The evidence cited by defendants does not support this assertion. The Homicide Arrest Memo cited by defendants only states "CI".  The document does not state that the CI identified Kenneth Creighton as the person who passed the gun in the bodega. *Thadani Decl. Exh. D.*

51.     Other than the CI, no witness was ever located who could testify to Dior doing the actual shooting.  Exh. K, p.398 LL16-20.

**RESPONSE:**      Admit that only one eyewitness came forward that was willing to testify that he/she saw Dior Creighton do the actual shooting, and object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY:** The above response is not responsive to plaintiff's statement.  There is no evidence in the record that any witness identifying Dior Creighton as having done the shooting were located but refused to testify. In his spiral notebook, the only place where Detective Godino mentioned the now so-called witness who allegedly identified Kenneth Creighton, he describes him as a CI. *Plaintiff's Exh. J (Spiral Notebook).*

52.     Until Godino interviewed the CI, he had no evidence that anyone other than Spruell passed the gun in the bodega.  Exh. K, p.398-399.

**RESPONSE:**      Deny and object to the description of the eyewitness as "the CI". Det. Roberts had identified plaintiff from the surveillance footage as the one who passed the gun in the bodega.  *See, e.g.,* Plaintiff Ex. OO (Roberts Dep.). at 59:4-60:7.

**PLAINTIFF'S REPLY.**      Roberts did not identify plaintiff from the surveillance footage as the person who passed the gun. Detective Roberts testified that when he viewed the surveillance video, "I believe it was Kenneth Creighton" who passed the gun.  Conceding that the face of the person passing the gun was not visible, Roberts testified that his belief that the person passing

the gun was Kenneth Creighton was "based more on my experience of Kenneth Creighton and the general makeup of him, the physical appearance". *Plaintiff's Exhibit OO (Roberts Dep.) 59:15; 60:7.* The only identification contained in the police records of the person who allegedly identified Kenneth Creighton as the person who passed the gun is that he was a CI. *Plaintiff's Exh. J, (Spiral Notebook).*

53.     Until Godino interviewed the CI, the only information Godino had linking Dior Creighton to the shooting in any respect was Terab's statement that the gun had been passed to him.  Exh. K, p.398 L.21 - p.399 L.7.

**RESPONSE:**     Deny and object to the description of the eyewitness as "the CI."  Det. Godino was able to identify Dior Creighton from the surveillance footage. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 145:24-146:6.

**PLAINTIFF'S REPLY.**     The only identification contained in the police records of the person who allegedly identified Kenneth Creighton as the person who passed the gun is that he was a CI. *Plaintiff's Exh. J, (Spiral Notebook).*

54.     Godino never learned the CI's real name.  Exh. K, p.202 LL.2-6.

**RESPONSE:**     Admit, but object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY.**     The person who allegedly identified Kenneth Creighton as the person who passed the is described in the police records as a CI, not a witness.

55.     In homicide cases, detectives assigned to the 42nd Precinct Detective Squad in the Bronx conferred regularly with Assistant District Attorneys with regard to when authorizations to arrest would be forthcoming.  Exh. K, p.348-349.

**RESPONSE:**     Deny.   It is unclear what is meant by  "regularly." In any event,  the evidence cited by plaintiff does not support this assertion. In addition, Det. Godino is not able

to testify as to what other detectives do as such testimony would be lacking in personal knowledge and necessarily speculative.

**PLAINTIFF'S REPLY:**   In the two homicide cases that Godino had handled prior to the one that is the subject of this lawsuit, he had consulted with assistant district attorneys with regard to his investigations of homicides. *Plaintiff's Exhibit K, 347:9-15*.

56.   Godino conferred only with Birns with regard to this case.  Exh. K, p.351 LL.11-19.

**RESPONSE:**   Deny.  The evidence cited by plaintiff does not support this assertion. Rather, the cited evidence supports only that, as respects his conferring with Assistant District Attorneys specifically, Det. Godino does not presently recall conferring with anyone else. In any event, this is not material.

57.   After Terab identified Spruell on December 31, 2007 [sic] as the person one [sic] who passed the gun, Godino claims that a confidential informant (CI) stated to him that Ken Creighton passed the gun.  Exh. K, p. 155; p.370 LL.4-9.

**RESPONSE:**   Admit that Det. Godino met with an eyewitness who informed him that he saw plaintiff pass a gun to Dior Creighton on December 26, 2006 and object to the description of the eyewitness as "a confidential informant" or "CI."

**PLAINTIFF'S REPLY:**   The person who allegedly identified Kenneth Creighton as the person who passed is described in the police records as a CI, not a witness. Godino identified the person who allegedly told him Kenneth Creighton had passed the gun as a CI.  *Plaintiff's Exh. J (Spiral Notebook).* To the extent defendants' response denies that he was not a confidential informant, it should be stricken.

58.   The CI is not visible in the surveillance video.   Exh. K, p.254-255;

Exh.CC.

**RESPONSE:**        Admit, but object to the description of the eyewitness as "the CI."

Defendants further note that, while the eyewitness does not appear to be visible in the

surveillance footage, he has identified, on the surveillance video, both during the criminal

investigation and during discovery in this case, where he was standing when he saw plaintiff

passed [sic] a gun to Dior Creighton.        *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 255:3-18,

264:18; 265:9; Plaintiff Ex. U at 193:25-194:7. Det. Godino was also able to determine that the

eyewitness was in a position to see plaintiff pass the gun to Dior Creighton. *See, e.g., id.* at

269:5-24. A.D.A. Birns also testified that he confirmed that the eyewitness was inside the

bodega when he saw plaintiff pass a gun to Dior Creighton. *See, e.g.,* Plaintiff Ex. M (Birns

Dep.) at 210:12-23.

**PLAINTIFF'S REPLY:**        Defendants' statement is not responsive to plaintiff's Rule 56.1

Statement to the extent that it goes beyond admitting that the statement is true.  While Godino's

spiral notebook states that when the CI allegedly saw the passing of the gun he was by the plastic

door that goes behind the counter getting his scratch off tickets, the CI testified at his deposition

that he was in the back of the store buying and doing drugs when the gun was passed and that the

passing of the gun occurred in the back of the store despite the fact that the surveillance video

shows it occurred in the front of the store. *Plaintiff's Ex U, 38: l19 -39: l23*; *Exh. J (Spiral

Notebook)*. Plaintiff objects to the statement that Det. Godino was also able to determine that the

CI was in a position to see plaintiff pass the gun to Dior Creighton as conclusory, speculative and

not a fact. The evidence cited by defendants does not support the statement that ADA Birns

confirmed that the eyewitness was inside the store when he saw plaintiff pass a gun to Dior

Creighton. While ADA Birns testified that in all likelihood the CI was present in the bodega, he

based this opinion on his belief that the CI had not seen the surveillance video when he provided ADA with a narrative that bore out what the video showed. *Plaintiff's Exh. M 209:24-210: 23*. Godino, however, testified that he had shown the surveillance video to the CI. *Plaintiff's Exh. K, 260:19- 22*. As such, the statement following admission that the CI is not visible in the surveillance video should be stricken.

> 59.     Terab testified during his deposition in this case that Spruell, not Creighton, passed the gun to Dior.  Exh. O, p.43 LL.11-1 6.

**RESPONSE:**          Admit.    However, defendants note that, through his criminal defense attorney, plaintiff has admitted to loaning Mr. Terab $15,000 sometime after his release in January 2012. *See, e.g.,* Mar. 8, 2016 Crim. Ct. Transcript, Thadani Decl., Ex. F, at 6:23-25. Plaintiff also invoked his 5th Amendment right against self-incrimination at his deposition when asked about whether he ever paid Mr. Terab to make any statements in connection with this case, whether he ever promised Mr. Terab any money for his testimony in this case, and whether he ever paid Mr. Terab any money to testify that he saw Mr. Spruell pass the gun, instead of him.  K. Creighton Dep. (May 27, 2016), Thadani Decl., Ex. G, at 17:21-18:7, 19:1-19:6, 38:4:18. Defendants further note that Mr. Terab has previously indicated that he is fearful of plaintiff and that plaintiff has physically assaulted him, robbed him, and threatened to kill him, and that he would never repeat that it was plaintiff who passed the gun in his store. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 183:13-24; Plaintiff Ex. R (Gottlieb Dep.) at 218:24-220:17; Mar. 7, 2016 Crim. Ct. Compl. Thadani Decl., Ex. H. Plaintiff invoked his 5th Amendment right against self- incrimination at his deposition when asked about whether he ever threatened physical injury, threatened to kill, pushed, punched, hit, or fought with Mr. Terab, and when asked about whether he ever threatened any violence towards Mr. Terab so

that he would testify he saw Mr. Spruell pass the gun, instead of him. *See, e.g.,* K. Creighton Dep. (May 27, 2016), Thadani Decl., Ex. G, at 10:8-11:18, 38:19-39:1.

**PLAINTIFF'S REPLY:**   Plaintiff objects to defendants' response to the extent that it goes beyond admitting that Terab testified during his deposition in this case that Spruell, not Creighton, passed the gun to Dior. The statement that follows that admission contains inadmissible hearsay.  Any statement by plaintiff's current criminal attorney constitutes inadmissible hearsay.  Moreover, plaintiff did not make any statement admitting that he loaned Mr. Terab $15,000 after his January 2010 release. The fact that plaintiff invoked his Fifth Amendment right against self-incrimination because there is a criminal prosecution currently pending against him is not admissible.  The implication that because plaintiff invoked his constitutional right against self-incrimination in a pending criminal prosecution he made admissions with respect to the questions asked should be stricken. Godino's testimony that Terab told him that that he is fearful of plaintiff and that plaintiff has physically assaulted him, robbed him, and threatened to kill him, and that he would never repeat that it was plaintiff who passed the gun in his store is rank hearsay that should stricken.  Moreover, there are no records prepared by Godino or anyone else where it states that Terab ever made those statements. Any statements made to ADA Gottlieb constitute inadmissible hearsay and should be stricken. Additionally, there are no documents in the District Attorney's or the NYPD's records that indicate Terab made any of the above statements attributed to him.

60.   Viewing the surveillance video during his deposition in this case, Terab identified Spruell as the one who passed the gun. Exh. O, p.43 LL.11-16.

**RESPONSE:**   Admit, and note that this assertion is duplicative of assertions made in other paragraphs herein.

61.     Godino believed that Terab's identification of Dior Creighton as the one who received the gun in the bodega put Terab at risk.  Exh. K, p.391 LL.9-17.

**RESPONSE:**          Deny.    It is unclear what is meant by "at risk." In any event, this testimony is speculative and is not a material fact, and should therefore be stricken. This is also not material.

62.     The surveillance video Godino reviewed during the investigation has been edited and altered and the original is irretrievably lost.  Exh. K: p.334-335; Exh. K, p.340 L.24 -p.341 L.4.

**RESPONSE:**          Deny.  Upon information and belief, the original videotape containing  the surveillance footage is currently located at the Office of the Corporation Counsel, and it has not been edited or altered, and a copy of that videotape, produced by the District Attorney's Office during the pendency of the criminal case, is in the possession of plaintiff's attorneys. *See* Photographs of Videotapes, Thadani Decl., Ex. B; Plaintiff Ex. O (Terab Dep.) at 16:25-17:11; *see also* Dec. 13, 2007 Criminal Court Transcript, Thadani Decl., Ex. C, at 2:11-16. In addition, plaintiff's own expert witness, John Afrides, has stated, by declaration under the penalty of perjury, that the perceived editing and alteration "originated at the original DVR recordings." Plaintiff Ex. E (Afrides Decl.) at ¶ 15.  In any event, this is not a material fact.

**PLAINTIFF'S REPLY:** The evidence cited by defendants does not support this assertion. Plaintiff's statement refers to the original surveillance video. Godino testified that the surveillance video he reviewed during his deposition in this case, which is the one produced during discovery, was edited and had slow motion or the reverse on it, which were not present when he watched the original video. *Exh. K, 334:12-24, 337-345.*  Plaintiff's expert, John Afrides, opined, with a reasonable degree of certainty in the area of videography that the produced DVD

was digitized from a second generation VHS tape. *Plaintiff's Exh. E*. Defense counsel cannot impeach his own client by asserting, upon information and belief that the produced surveillance video is the original when Godino has testified to the contrary. Additionally, the response, made by defense counsel upon information and belief, is not a fact and constitutes inadmissible hearsay and should be stricken.

       63.    The original surveillance video was never vouchered with the property clerk which was the customary practice for chain of custody purposes. Exh. K, p.336 LL.9-20; p.336-337.

**RESPONSE:**    Admit that the video was not vouchered but deny that it was the customary practice to do so for chain of custody purposes. The evidence cited by plaintiff does not support that assertion. In any event, Det. Godino is not able to testify as to the customary practices with respect to chain of custody.  In addition, this is not a material fact.

**PLAINTIFF'S REPLY:**  Plaintiff objects to defendants' response to the extent that it goes beyond admitting that the original surveillance video was not vouchered.  Godino testified that the tape was not vouchered.  When asked whether it was standard practices for detectives employed in the 42nd Precinct at the time to voucher all evidence that might later be used in the prosecution, he answered in the positive.  *Exhibit K, 336-337.* Plaintiff objects to the statement that Det. Godino is not able to testify as to the customary practices in the 42nd Precinct with respect of chain of custody.  Godino, a Detective assigned to the 42nd Precinct testified that he is familiar with the customary practices with respect to chain of custody.  Defense counsel once again, attempts to impeach his own client. Additionally, this is a material fact inasmuch as the original surveillance video has disappeared.

       64.    Detective Godino's spiral notebook entry concerning the existence of a

CI is undated.  Exh. K, 229-230.

**RESPONSE:**        Admit, object to the description of the eyewitness as "the CI" and note that this assertion is duplicative of assertions made in other paragraphs herein.

**PLAINTIFF'S REPLY:** The person who allegedly identified Kenneth Creighton as the person who passed the is described in the police records as a CI, not a witness and has been identified throughout this litigation as a CI.

65.        Godino does not know the date he made the entry concerning the CI in his spiral notebook.  Exh. K, p.229-230.

**RESPONSE:**        Admit, assuming that this assertion relates to information Det. Godino obtained from the eyewitness, object to the description of the eyewitness as "the CI" and note that this assertion is duplicative of assertions made in other paragraphs herein.

**PLAINTIFF'S REPLY:**     In his spiral notebook, Godino does not refer to the CI as a witness, he refers to him as a CI. *Plaintiff's Exhibit J. (Spiral Notebook)*

66.        Other than the CI, there was no known witness who could testify that Dior fired the gun that was passed in the store. Exh. M: Birns Deposition Transcript pp. 5-23; p.131 LL.2-21.

**RESPONSE:**        Admit that only one eyewitness came forward that was willing to testify that he/she saw Dior Creighton fire the gun that plaintiff passed to him in the bodega, object to the description of the eyewitness as "the CI," and note that this assertion is duplicative of assertions made in other paragraphs herein.

**PLAINTIFF'S REPLY:**     The above response is not responsive to plaintiff's statement. There is no evidence in the record that any witness identifying Dior Creighton as having done the shooting were located but refused to testify. In his spiral notebook, the only place where

Godino mentioned the person who allegedly identified Kenneth Creighton, he describes him as a CI.

  67. Godino never knew the CIs [sic] actual name during the criminal prosecution. Exh. K, p.414-415.

**RESPONSE:**  Admit and note that this assertion is duplicative of assertions made in other paragraphs herein.

  68. There is no documentation anywhere in the NYPD file that warranted arresting and charging Kenneth Creighton with criminal facilitation. Exh. K, p.448 LL.16-**22**

**RESPONSE:**  Deny.   The evidence cited by plaintiff does not support this assertion. In addition, Det. Godino's notes memorialize that an eyewitness informed him that, just prior to the shooting, he saw plaintiff Kenneth Creighton hand a firearm to plaintiff's brother, Dior Creighton, inside of a bodega, and that, shortly thereafter, he saw Dior Creighton use that firearm in a shooting outside of the bodega. *See* Plaintiff Ex. J (Spiral Notebook) at NYC003525-NYC003528. In any event, defendants note that this is not a material fact and this assertion is duplicative of assertions made in other paragraphs herein.

**PLAINTIFF'S REPLY:**  Godino testified that the only document prepared by him in regards to the CI was the undated entry in his spiral notebook. As far as Godino knew, that is the only document created by the NYPD referable to the CI. *Exh. K, 227:12-25, 228:4-25; 229:2-6.*

  69. The arrest of Dior Creighton was authorized by ADA Birns and ADA Cooper. Exh. N: Talty Deposition Transcript, p.132 LL.17-20.

 **RESPONSE:**  Admit but this is not a material fact.

**PLAINTIFF'S REPLY:** ADA Birns' authorization of plaintiff's arrest is a material fact with respect to plaintiff's New York State false arrest claim against him.

70.     On December 31, 2006, Dior Creighton's mug shot was retrieved by the 42nd precinct Detectives. Exh. K, p.434-435.

**RESPONSE:**          Admit that, on December 31, 2006, a mug shot of Dior Creighton was retrieved for the purposes of assembling a photo array. Defendants note that this is not a material fact and this assertion is duplicative of assertions made in other paragraphs herein.

**PLAINTIFF'S REPLY:**  Plaintiff submits that this is a material statement of fact.

71.     On January 2, 2007, and thereafter canvases were conducted to apprehend Dior Creighton. Exh. CC: DD5 Bates Stamped P00185, p. 1.

**RESPONSE:**          Admit.

72.     On January 4, 32007 [sic], defendant, [sic] Godino, and PO Brown canvassed the area of 818 Home St and East 168 St for Dior but were met with negative results. Exh. DD: DD5 Bates Stamped P00186, p.l.

**RESPONSE:**          Admit.

73.     Starting on January 5, 2007 and on subsequent days a search for Dior Creighton by detectives pursuant to an I-card met with negative results. Exh. EE: LaDuca Deposition Transcript, p.22 L.21- p.23 L.16; p.32 L.20- L.24.

**RESPONSE:**          Admit but note that the evidence cited by plaintiff does not support this assertion.

**REPLY STATEMENT**:  Support for this Statement is found in Plaintiff's Exh. EE, 32:5-37:11.

74.     Other than the CI, there were no other witnesses found to indicate that Dior was the shooter. Exh. K, p.154 LL.11-24.

**RESPONSE:**          Deny.  Mr. Terab informed the police that he saw Dior Creighton

receive a gun inside his bodega, that he saw Dior walk into an aisle "and pulled out the gun to make it ready to go," that he then saw Dior walk out of the store, and that five to ten seconds later he heard several gun shots. *See, e.g.,* Plaintiff Ex. II (Dec. 31, 2006 Stmt. of F. Terab). Defendants also object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY:**    Terab did not witness the shooting. *Plaintiff's Ex O, 30: l2.* In his spiral notebook, the only place where Godino mentioned the person who allegedly identified Kenneth Creighton, Godino describes him as a CI.  Additionally, until the filing of defendants' motion for summary judgment, the CI has always been identified and referred to in this litigation as CI.

75.    On January 8, 2007 a criminal history computer check was run on Kenneth Creighton and a handwritten note was added with the name and phone number of Kenneth's probation officer. Exh. FF: CRIMS APPEARANCE HISTORY- CREIGHTON, KENNETH Bates Stamped NYC005509.

**RESPONSE:**        Admit but note that the cited evidence does not establish the date that the handwritten note was added.

76.    On January 8, 2007, Birns and Talty authorized Godino's arrest of Kenneth Creighton. Exh. GG: DDS or Complaint-Follow-Up Informational Bates Stamped P00024.

**RESPONSE:**        Admit only that A.D.A.  Birns informed Det.  Godino that he had authorization to arrest plaintiff and that A.D.A. Birns informed Det. Godino that he received authorization from A.D.A. Talty, which is what the cited evidence supports. The evidence cited by plaintiff does not indicate the date on which plaintiff's arrest was authorized.

**PLAINTIFF'S REPLY:**    The evidence referenced by plaintiff in support of the Statement

recounts what occurred on January 8, 2016, including ADA Birns advising Godino that he had authorization to arrest plaintiff and that Talty had so authorized.  *Plaintiff's Exh. GG.*

77.    On January 8, 2007, Godino called Kenneth Creighton's probation officer and instructed him to arrest Creighton during his probation appointment on January 10. Exh. GG.

**RESPONSE:**        Admit only that, on January 8, 2007, Det. Godino called   plaintiff's probation officer and instructed him that, if plaintiff shows up to his January 10, 2007 appointment, he should handcuff plaintiff and call him.  Defendants note that this is not a material fact.

**PLAINTIFF'S REPLY:**    Plaintiff objects to the extent that defendants claim this is not a material fact.

78.    On January 10, 2007, a DD5 was drafted stating, "detectives will arrest Kenneth on I card # 12007000405 for criminal facilitation. In turn Kenneth may inform this department where defendant Dior Creighton is hiding out."  Exh. T: DD5 P00025.

**RESPONSE:**        Admit that the above quotation, in sum and substance, is contained within a document that has been produced by plaintiff bearing bates stamp P00025 (it is not a direct quotation) but note that the cited exhibit does not support this assertion.

**PLAINTIFF'S REPLY:**  The January 10, 2007 DD5 states as follows:

> U/S spoke w/ det Rivera- BX vfs Lb informed me that deft's brother Keneth Cieghton Nysid# 0264425N is suppose to be reporting to his probation officer on this date 1-10-07 at which time the 42 pct sqd. Detectives will arrest' Keneth on I-card# 12007000405 for criminal facilitation. In turn Keneth may inform this Department where Dior Creighton is hiding out.  [Abbreviations and misspelling in the original].

The document is attached as *Exhibit HH (Bates # P0025).*

79.     Ken Creighton was arrested on January 10, 2007.  Exh. FF.

**RESPONSE:**          Admit.

80.     Godino learned of the existence of the CI through a phone call from the CI's handler, Detective Elliott.  Exh. K, p.482 LL.16 - L.25.

**RESPONSE:**          It is unclear what is meant by the phrase "learned of the existence." However, defendants admit that Det. Godino was informed by Det. Elliott that an eyewitness had information pertaining to the shooting that took place on December 26, 2006. Defendants object to the description of the eyewitness as "the CI."  Defendants also note that, prior to December 26, 2006, Det. Godino had prior interactions with the eyewitness. *See, e.g.,* Plaintiff Ex. K. (Godino Dep.) at 116:5-7, 116:23-118:2.

**PLAINTIFF'S REPLY:**  Plaintiff objects to that portion of the response that notes that prior to December 26, 2006 Godino had prior interactions with the CI as this is not responsive to plaintiff's Statement. Moreover, until the filing of defendants' motion for summary judgment, the CI has always been identified and referred to in this litigation as CI as well as in Godino's spiral notebook. *Plaintiff's Exh. J.*

81.     Godino do [sic] not know how long after he received the phone call from the CI's handler he met with [sic] CI in the precinct. Exh. K: Godino p.482 LL.6 -25.

**RESPONSE:**          Admit but object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY:**     The person who allegedly identified Kenneth Creighton as the person who passed the gun is described in the police records as a CI, not a witness and has been identified during this litigation as a CI.

82.     Godino met with the CI the first time at some unknown date at the precinct.  Exh. K, p.262-263.

**RESPONSE:**      Admit but object to the description of the eyewitness as "the CI" and note that this assertion is duplicative of assertions made in other paragraphs herein.

**PLAINTIFF'S REPLY:**      The person who allegedly identified Kenneth Creighton as the person who passed the gun is described in the police records as a CI, not a witness and has been identified during this litigation as a CI.

83.      Godino met with the CI and Birns after Godino's first meeting with the CI at the precinct.  Exh. K, p.262-263.

**RESPONSE:**      Admit but object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY:**      The person who allegedly identified Kenneth Creighton as the person who passed the gun is described in the police records as a CI, not a witness and has been identified during this litigation as a CI.

84.      Godino met with the CI at the precinct in the presence of his handler. Exh. K, p. 479-482.

**RESPONSE:**      Deny.   The evidence cited by plaintiff does not support this assertion. In any event, this is not a material fact. Defendants also object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY:**      The handler was in the room when Godino met with the CI. *Exh. K, 178:5-19.* Moreover, the person who allegedly identified Kenneth Creighton as the person who passed the gun is described in the police records as a CI, not a witness and has been identified during this litigation as a CI.

85.      The meeting attended by Godino, Birns and the CI took place before the authorization to make the arrest.  Exh. K, p.262-263.

**RESPONSE:**      Admit but object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY:** The person who allegedly identified Kenneth Creighton as the person who passed the gun is described in the police records as a CI, not a witness and has been identified during this litigation as a CI.

86.     The meeting with Godino, Birns and the CI took place before Ken Creighton was arrested on January 10. Exh. K, p.264 LL.6-17.

**RESPONSE:**     Admit but object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY:**     The person who allegedly identified Kenneth Creighton as the person who passed the gun is described in the police records as a CI, not a witness and has been identified during this litigation as a CI.

87.     Godino never investigated the CIs [sic] criminal history of arrests or convictions. Exh. K, p.483-486.

**RESPONSE:**     Admit but object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY:** The person who allegedly identified Kenneth Creighton as the person who passed the gun is described in the police records as a CI, not a witness and has been identified during this litigation as a CI.

88.     Godino never investigated or inquired about the CIs [sic] previous reliability. Exh. K, p.483-486.

**RESPONSE:**     Deny and object to the description of the eyewitness as "the CI." The evidence cited by plaintiff does not support this assertion. In addition, Det. Godino testified that Det. Elliott informed him that the eyewitness has been his confidential informant for some time. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 488:22-489:4. Det. Godino had also previously received reliable and credible information from the eyewitness in connection with another

shooting case which resulted in an arrest and a guilty plea.  *Id.* at 116:23-118:2.

**PLAINTIFF'S REPLY:**   The evidence cited by defendants does not support their assertion.

Godino did not testify that the confidential informant was reliable.  Plaintiff objects to the

statement that the information previously provided by the CI being characterized as "reliable and

credible".  Godino testified that he had previously received information from the CI concerning

another shooting but the CI had witnessed the shooting, rather he identified a person "who he

thought the perp was." *Exh. K, l7- 19.* Godino never asked the CI's handler whether the CI had a

criminal his; whether the CI had a history of drug use; whether he had served time in jail or

whether the CI had been paid on multiple occasions for identification of witnesses. history

*Plaintiff's Exh. K, 489:2-25.*  Godino testified that knowledge that information would possibly

affected his assessment of whether the witness was reliable or not. *Plaintiff's Exh. K, 490:214.*

89.     Godino never investigated whether the CI was being paid on this case.

Exh. K, p.483-486.

**RESPONSE:**          Admit but object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY.**  The person who allegedly identified Kenneth Creighton as the person

who passed the gun is described in the police records as a CI, not a witness and has been

identified during this litigation as a CI.

90.     Godino never investigated what the connection was between the CI and

Ken Creighton.  Exh. K, p.483-486.

**RESPONSE:**          It is unclear what is meant by "connection" but deny and object to
the

description of the eyewitness as "the CI." The evidence cited by plaintiff does not support this

assertion.   Rather, the cited evidence establishes that the eyewitness informed Det. Godino

that "he ████████████████████ *See* Plaintiff. Ex. K (Godino Dep.) at 485:10-16; *see also id.* at 488:4-8.

**PLAINTIFF'S REPLY:**  Plaintiff cannot respond to this statement as it is redacted.

91.    Godino never attempted to learn his name.  Exh. K, p.483-486.

**RESPONSE:**    Assuming this assertion is referring to the eyewitness who informed Det. Godino that he saw plaintiff hand a firearm to Dior Creighton inside a bodega on December 26, 2006, admit that Det. Godino did not learn the eyewitness's real name.

**PLAINTIFF'S REPLY:**    Plaintiff objects to characterizing the CI as an eyewitness.

92.    Godino never attempted to determine if there was any animosity or ill feelings between [sic] CI [sic] either of [sic] Creighton brothers. Exh. K. p.488 L.4-L.21.

**RESPONSE:**    Deny and object to the description of the eyewitness as "CI." The evidence cited by plaintiff does not support this assertion. Rather, the cited evidence supports that Det. Godino testified that there was nothing to indicate that the eyewitness had any animosity or ill feelings towards plaintiff or Dior Creighton.

**PLAINTIFF'S REPLY:**    The evidence does not support defendants' assertion that Godino testified that there was nothing to indicate that the eyewitness had any animosity or ill feeling towards plaintiff or Dior Creighton.  Godino never inquired as to whether there was any animosity between the CI and the Creightons. In response to the following question: Seeing that the CI was the sole source of information that linked Ken to the crime, did you ever try to determine or investigate whether the CI had an axe to grind against either, or both of the Creighton's [sic]? Godino responded: No, there was nothing to indicate that. The person who allegedly identified Kenneth Creighton as the person who passed the gun is described in the police records as a CI, not a witness and has been identified during this litigation as a CI.

- 35 -

93.     The only information Godino had about the CI came from the handler who informed him that the CI was an informant in narcotics cases.  Exh. K, p.488-489.

**RESPONSE:**     Deny and object to the description of the eyewitness as "CI."     The evidence cited by plaintiff does not support this assertion. In addition, Det. Godino received information about the eyewitness from the eyewitness directly. Det. Godino also had prior interactions with the eyewitness, from whom he previously received reliable and credible information in connection with another shooting case which resulted in an arrest and a guilty plea.  *See* Plaintiff Ex. K (Godino Dep.) at 116:5-7, 116:23-118:2.

**PLAINTIFF'S REPLY:**     The person who allegedly identified Kenneth Creighton as the person who passed the gun is described in the police records as a CI, not a witness and has been identified during this litigation as a CI. The evidence cited by defendants does not support their statement that Godino received information about the CI from the CI. Plaintiff objects to the characterization of the information previously obtained by Godino from the CI as credible and reliable inasmuch as that information was only that the CI told Godino that he "thought who the perp was".  *Exh. K, 294:13-19.*

94.     Dean Roberts (Roberts) believed the store owner (Terab) had identified plaintiff as the one who passed the gun.  Exh. V, p.51 LL.4-12.

**RESPONSE:**     Admit and note that plaintiff appears to have mistakenly referred to his Exhibit V, instead of his Exhibit OO. Defendants further note that Mr. Terab did identify plaintiff as the one who passed the gun. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 182:17-183:12, 185:10-16, 207:25-208:16, 210:5-9, 292:9-21. Det. Roberts also testified that he knew a "confidential informant" was also an eyewitness, and that Det. Godino has informed him of that. *See, e.g.,* Plaintiff Ex. OO (Roberts Dep.) at 46:16-47-5.

**PLAINTIFF'S REPLY:**      Godino testified that information provided by a witness in connection with a case should be memorialized in a DD5 or complaint follow-up informational. *Plaintiff's Exh. K 165-166:18-6, 243-244:5-13; 359:23-24.* Godino did not make any record of Terab having identified K. Creighton as the person who passed the gun. *Plaintiff's Exhibit K, 292-293: 9-25.* Godino testified that on January 10, 2007, when the police were looking for plaintiff to arrest him for criminal facilitation, it was based on the "CI information". *Plaintiff's Exhibit K, 450:2-7.* Terab testified in his deposition that he never identified Kenneth Creighton as the person who passed the gun. *Ex O, 45:24-125:4.* On February 22, 2013, Terab signed a sworn statement in which again, he reiterated that Spruell was the person who passed the gun in the bodega. *Plaintiff's Exh. G.* To this day, Terab maintains that he never identified Kenneth Creighton as the person who passed the gun. *Gross Declaration, Exh. A (email from ADA Burim Namani)*

95.      Roberts learned for the first time at his deposition that Terab had identified someone other than plaintiff as the one who passed the gun. Exh. V. p.51 LL.13-18.

**RESPONSE:**      Admit and note that plaintiff appears to have mistakenly referred to his Exhibit V, instead of his Exhibit OO. In any event, this is not a material fact.

**PLAINTIFF'S REPLY:**      Plaintiff submits that this statement is material as it bears on Roberts' liability for false arrest.

96.      Roberts never knew that there was a person other than Ken Creighton who had been identified as the one who passed the gun to Dior Creighton. Exh. V. p.53 LL.5-17.

**RESPONSE:**      Admit only that Det. Roberts has no present recollection of having that knowledge, which is all the evidence cited by plaintiff supports, and note that plaintiff appears

to have mistakenly referred to his Exhibit V, instead of his Exhibit OO. In any event, this is not a material fact.

**PLAINTIFF'S REPLY:**     Plaintiff submits that this statement is material as it bears on Roberts' liability for false arrest.

97.     Godino does not know if he ever conferred with Roberts about the investigation.  Exh. K, p.408 L.6 - L.12.

**RESPONSE:**          Admit that Det. Godino does not presently recall one way or the other  but note that Det. Roberts recalls receiving information pertaining to the investigation from Det. Godino.  *See, e.g.,* Plaintiff Ex. OO (Roberts Dep.) at 47:3-5, 131:6-12.  In any event, this is not a material fact.

**PLAINTIFF'S REPLY:**     Plaintiff submits that this statement is material as it bears on Roberts' liability for false arrest.

98.     Godino does not know how often or what he discussed with Roberts about the case.  Exh. K, p.410 L.10- L. 7.

**RESPONSE:**          Admit that Det. Godino does not presently recall one way or the other but note that Det. Roberts recalls receiving information pertaining to the investigation from Det. Godino.  *See, e.g.,* Plaintiff Ex. OO (Roberts Dep.) at 47:3-5, 131:6-12.  Defendants also note that this assertion is duplicative of assertions made in other paragraphs herein and that this is not a material fact.

99.     The CI, a couple of weeks after the shooting, stated that he heard that Kijafa said he was the one who passed the gun in the store. Exh. U, p.205 L.24 - p.206 L.6.

**RESPONSE:**          Admit but object to the description of the eyewitness as "the     CI." However, this is not a material fact.

**PLAINTIFF'S REPLY:**      The person who allegedly identified Kenneth Creighton as the person who passed the gun is described in the police records as a CI, not a witness and has been identified during this litigation as a CI.

100.    If the [sic] Terab had been disclosed as an eyewitness who had identified someone other than Creighton as having passed the gun at the bail hearing it would've improved the chances to get lower bail or a release on recognizance (ROR). Exh. Q, p.35 L.19-p.36 L.10.

**RESPONSE:**      Deny.   This is an improper opinion, speculation and an argument, not a statement of fact, and should therefore be stricken. In addition, this is not material because plaintiff was held pursuant to a probation hold, for which plaintiff was remanded because no bail was set. *See, e.g.,* Plaintiff Ex. S (50-h Hearing) at 45:24 – 46:2, 46:16-17, 47:20-48:14; Plaintiff Ex. Q (Raskin Dep.) at 73:25-74:18.

**PLAINTIFF'S REPLY:**      Defendant, Talty, an experienced prosecutor in Bronx County, testified that is if there was information that a witness has identified somebody other than plaintiff as doing the same conduct for which plaintiff was being prosecuted, it probably happened at his original  bail hearing, a set of facts was given to a judge upon  which a bail amount was being set, all things being equal, the court should now be aware that set of facts may have changed somewhat, in that there is another  witness who claims that the defendant did not do it. *Exh. N, 161:17-25, 162:2-8.* lf Terab had been disclosed as an eyewitness who had identified someone other than Creighton as having passed the gun at the bail hearing it would've improved the chances to get lower bail or a release on recognizance (ROR). *Exh. Q, 35:19 - 36:10.*

101.    lf Terab had been disclosed as an eyewitness who had identified

- 39 -

someone other than Creighton as having passed the gun at the bail hearing it would've improved the chances to get lower bail or a release on recognizance (ROR). Exh. Q, p.35 L. 19-p.36 L. l0. - 27.

 **RESPONSE**:         Deny. This is an improper opinion, speculation and an argument, not a statement of material fact, and should therefore be stricken. In addition, this is not material because plaintiff was held pursuant to a probation hold, for which plaintiff was remanded because no bail was set. See, e.g., Plaintiff Ex. S (50-h Hearing) at 45:24 – 46:2, 46:16-17, 47:20-48:14; Plaintiff Ex. Q (Raskin Dep.) at 73:25-74:18. Defendants note that this assertion is duplicative of assertions made in other paragraphs herein.

        102.    Michael Raskin, plaintiff's criminal attorney, was never told who the eye witness was who testified before the grand jury.  Exh. Q, p.12 LL.12-18.

**RESPONSE:**         Admit.  However, this is not a material fact.

**PLAINTIFF'S REPLY:**    The withholding of evidence from plaintiff's criminal attorney is a material fact. This statement is material to plaintiff's procedural and substantive due process claims.

        103.    Raskin was aware that there was a surveillance video of the passing of the gun incident.  Exh. Q, p.12 LL.1-25.

**RESPONSE:**         Admit.

        104.    Raskin never knew during the pendency of the criminal case that the eye witness was a confidential informant.  Exh. Q, p.18 L.24 -p.19 L.2.

**RESPONSE:**         Admit that Mr. Raskin testified that he did not know that the eyewitness had also been a confidential informant. Defendants object to describing the eyewitness as a "confidential informant," particularly because he was not acting in the capacity

of a confidential informant as it relates to what he witnessed on December 26, 2006, although he happened to be an active confidential informant at the time. *See, e.g.,* Plaintiff Ex. M (Birns Dep.) at 38:23- 39:16, 39:20-40:10, 121:9-15, 224:8017; Plaintiff Ex. U at 203:23-204:7. In any event, this is not material.

**PLAINTIFF'S REPLY:**  The person who allegedly identified Kenneth Creighton as the person who passed the gun is described in the police records as a CI, not a witness and has been identified during this litigation as a CI. Plaintiff submits that this statement is material to his defense.

  105.   The grand jury minutes of the Cl's testimony had to be disclosed to the defense before any hearing or trial that the CI would be called to testify at.  Exh. Q, p. 122.

**RESPONSE:**  This is a legal conclusion, not a statement of fact, and should therefore be stricken. In any event, this is not material because, following the grand jury proceedings, there was no hearing or trial at which the eyewitness testified in connection with the criminal case. Defendants also object to the description of the eyewitness as "the CI."

**PLAINTIFF'S RESPONSE:**  Plaintiff's Statement it is not legal conclusion but a fact as to procedural requirement pursuant to the criminal procedure law that requires disclosure. *Plaintiff Exh. M, 29:4 – 15 (Birns Dep).*

  106.   Raskin was never made aware that the investigation disclosed there were two shooters involved.  Exh. Q, p.118 L. 11- p.119 L.2.

**RESPONSE:**  Deny.  Documents were produced to Mr. Raskin during the pendency  of the criminal case which indicated the belief that there may have been multiple shooters involved. *See, e.g.,* Plaintiff Ex. Q (Raskin Dep.) at 27:17-30:6, 31:10-20. In any event, this is not a material fact.

**PLAINTIFF'S REPLY**: Plaintiff objects to the cited evidence as not reflecting any documentary evidence of documents provided to Mr. Raskin that contained information that indicated the belief that there may have been multiple shooters involved. Plaintiff asserts this is a material fact since it bears on the question of whether information was withheld from the District Attorney that the gun that was passed may not have been the weapon that caused the injuries to the victims.

        107.    Godino did not testify at the grand jury presentation regarding Ken Creighton.  Exh. K, p.351 LL.11 - 19.

**RESPONSE:**        Admit.

        108.    Terab did not testify before the grand jury.  Exh. JJ.

**RESPONSE:**        Admit and note that Det. Godino testified that "I think the reason why we didn't use the bodega owner in the grand jury was because he had the two – first he thought it was Kijafa and then he said it was Kenny."  Plaintiff Ex. K (Godino Dep.), at 182:9-12.

**PLAINTIFF'S REPLY:**    Plaintiff objects to the cited testimony of Godino as speculative and not based on any admissible evidence. Plaintiff further notes that Godino testified that information provided by a witness in connection with a case should be memorialized in a DD5 or complaint follow-up informational. *Plaintiff's Exh. K 165-166:18-6, 243-244:5-13; 359:23-24.* Godino did not make any record of Terab having identified K. Creighton as the person who passed the gun. *Plaintiff's Exhibit K, 292-293: 9-25.* Godino testified that on January 10, 2007, when the police were looking for plaintiff to arrest him for criminal facilitation, it was based on the "CI information". *Plaintiff's Exhibit K, 450:2-7.* Terab testified in his deposition that he never identified Kenneth Creighton as the person who passed the gun. *Ex O, 45: l24 -125 - 46.* As of May 27, 2016 Terab continued to maintain that he never identified Kenneth Creighton as

the person who passed the gun. *Gross Declaration, Exh. A*.

109.    DD5 [sic] were customarily chronologically numbered.    Exh. K, p.38 LL.3-17.

**RESPONSE:**    Deny.  Det. Godino is not able to testify to what was customarily done. In addition, A.D.A. Talty testified that, in his experience, DD5s are rarely numbered. *See* Plaintiff Ex. N (Talty Dep.) at 75:16-24, 188:3-11.  In any event, this is not material.

 **PLAINTIFF'S REPLY:**  As a Detective assigned to the 42 precinct who routinely prepares DD5s Godino can and did testify that DD5s were customarily  chronologically  numbered. *Exh. K,  38*: *3-17*.

110.    The DD5s in this case were not numbered and should have been. Exh. K, p.99 L.19- p.100 L.4; p.38 LL.6-7.

**RESPONSE:**    Admit that the DD5s are not numbered but deny that they should have been as that is an improper opinion and argument, not a statement of fact, and should therefore be stricken.  In any event, this is not material.

**PLAINTIFF'S REPLY:**  Detective Godino testified that the DD5s in this case were not numbered and that they should have been numbered. *Exh. K, 99:15-100:4*. This statement is material on the issue of a number DD5s that are missing from the file.

111.    An index sheet that was customarily created that recorded the records created in the case file was not prepared in this case.  Exh. K, p.38 LL.3-5.

**RESPONSE:**  Admit that there is no index sheet but deny that such sheets are customarily created or that an index sheet would record all the records in the "case file." The evidence cited by plaintiff does not support those assertions.  In fact, Det. Godino testified that he doesn't remember if index sheets were used / done at the time of plaintiff's arrest. *See, e.g.,*

Plaintiff Ex. K (Godino Dep.) at 37:18-38:5. In addition, A.D.A. Gottlieb testified that, in her experience, index sheets are not created all the time. *See, e.g.,* Plaintiff Ex. R (Gottlieb Dep.) at 117:20-23.  In any event, this is not material.

**PLAINTIFF'S REPLY.**  This Statement is material on the issue of the documents missing from the file and spoliation of evidence.

112.    The original case file was delivered to defendant Birns by Godino and was never returned to the NYPD during the pendency of the prosecution. Exh. M, p. 110 LL.5-24; Exh. K, p.44 L.24-p.45 L.4.

**RESPONSE:**          Admit that this is Det. Godino's present recollection.  In any event, this is not a material fact.

**PLAINTIFF'S REPLY:**      Plaintiff's statement is material on the issue of the documents missing from the file and spoliation of evidence.

113.    Turning over the original case folder to the DA and not having it returned was unusual and a cause for concern.  Exh. N, p.28 LL. l4-29.

**RESPONSE:**    This is an improper opinion and argument, not a statement of fact, and should therefore be stricken.   In addition, A.D.A. Gottlieb testified that, in her experience, the original N.Y.P.D. files are sometimes turned over to the District Attorney's Office.  *See, e.g.,* Plaintiff Ex. R (Gottlieb Dep.) at 126:4-14, 127:14-128:5.  In any event, this is not material.

**PLAINTIFF'S REPLY:**  This is statement is material on the issue of the documents missing from the file.

114.    While at the District Attorney's Offices [sic] Godino noticed that a lot of the DD 5s [sic] were missing from the case folder.  Exh. K, p.96 LL.2-13.

**RESPONSE:**    It is unclear what time period plaintiff is referring to but admit that Det.

Godino believes that an unknown number of DD5s were missing during the pendency of the criminal case.  In any event, this is not material.

**PLAINTIFF'S REPLY:**    This statement is material on the issue of the documents missing from the file and spoliation of evidence.

115.    An unknown amount, up to 30 documents, was missing from the case file when Godino reviewed it at the District Attorney's Office. Exh. K, p.96 LL. 18-25.

**RESPONSE**:        It is unclear what time period plaintiff is referring to but admit that Det. Godino believes that an unknown number of DD5s were missing during the pendency of the criminal case.  In any event, this is not material. Exh. K, p.96 LL.2-13.

**PLAINTIFF'S REPLY:**    This Statement is material on the issue of the documents missing from the file and spoliation of evidence.

116.    Edward Talty is the Chief of Homicide in the Bronx District Attorney's Office and supervised the ADA's [sic] handling all homicide cases. Exh. N, p.18 LL.3-9.

**RESPONSE:**      Deny.  The evidence cited by plaintiff does not support this assertion. Rather, the cited evidence supports only that A.D.A. Talty testified that he indirectly supervised ADAs handling homicide cases in that he was to be consulted when necessary.

117.    In homicide cases in the Bronx, before a sworn complaint commencing the prosecution can be written up by the police it requires district attorney approval. Exh. N, p.127 LL.14 - 22.

**RESPONSE:**    Admit only that A.D.A. Talty testified that in 2006-2007, there was a policy in place at the Bronx District Attorney's Office in which approval was required before a criminal court complaint is written up, but deny that the police "writes up" sworn complaints commencing a prosecution, as the cited evidence does not support that assertion.

118.    In the Bronx [sic] all homicide arrests were to be authorized by the Chief of Homicide if he was available.  Exh. M, p.25 L.14- p.26 L.11.

**RESPONSE:**        Admit.

119.    On January 10, 2007, Ken Creighton's arrest was authorized by Edward Talty, Chief of Homicide.  Exh. N, p.132 L.17 - p.133 L.20.

**RESPONSE:**    Admit only that plaintiff's arrest was authorized by A.D.A. Talty but  deny that such arrest was authorized on January 10, 2007, as the cited evidence does not support that assertion.

120.    Talty's practice was to determine if there was probable cause at the time he authorized an arrest.  Exh. N, p.134 L.23 -135 L.7.

**RESPONSE:**    Admit only that A.D.A. Talty testified that he "would ask to see if there was probable cause, if there was a witness who saw this handoff, if there was any other evidence in this – of a hand off, as there appears to be in this case," which is what the cited evidence supports.

121.    Before authorizing a homicide arrest involving a CI, Talty would require talking directly to the CI rather than relying on what the detective tells him.  Exh. N, p.136 LL.4 -19.

**RESPONSE:**        Deny.  The evidence cited by plaintiff does not support this assertion. Rather, the cited evidence supports only that, at his deposition, after being presented with an inaccurate and incomplete hypothetical set of facts, A.D.A. Talty testified, subject to objection , that "if a detective told me the only evidence that exists is a confidential informant, I would probably want to have them bring the confidential informant in to have an ADA speak to that

- 46 -

confidential informant about the fact that confidentiality was no -- would be an issue." Therefore, the cited evidence does not support that A.D.A. Talty would require that he speak directly with the confidential informant, merely that some A.D.A. speak with him / her, and then only to assess whether the witness's confidential status would pose an issue going forward. In addition, defendants note that A.D.A. Birns did speak with the eyewitness before A.D.A. Talty authorized plaintiff's arrest, testified that the eyewitness's information was corroborated by the surveillance footage, and that he found the eyewitness to be reliable. *See, e.g.,* Plaintiff Ex. M (Birns Dep.). at 111:16-23, 119:16-121:8, 163:7-164:10, 210:12-23, 224:24-225:3, 227:7-228:13. Thus, this is not material. In any event, what A.D.A. Talty would do under a hypothetical set of circumstances is speculation and not a statement of fact, and should therefore be stricken.

**PLAINTIFF'S REPLY:**  The evidence cited by defendants does not support the statement that the CI's information was corroborated by the surveillance footage and that ADA Birns found the eyewitness to be reliable. ADA Birns based this opinion about the credibility and reliability of the CI on the assumption that the CI had not seen the surveillance video before he provided ADA Birns with a narrative that bore out what the video showed. *Plaintiff's Exh. M 209:24-210: 23*. This assumption was incorrect because Godino, had shown the surveillance video to the CI. *Plaintiff's Exh. K, 260:19- 22*. The statement is material with regard to defendants' claim that the CI was reliable or whether the CI's identification was tainted by his being shown the video so he could confirm his testimony to the physical evidence. *Plaintiff's Exh. N, 137:7-16; 54:8-23*. The Statement is also relevant because as Talty indicated where there were conflicting identifications more investigation was required before arresting either Spruell or Kenneth Creighton.  *Plaintiff's Exh. N, 165:3 -16.*

122.    Talty never spoke to the CI.  Exh. N, p.42 L.2- L17.

**RESPONSE:**   Deny and object to the description of the eyewitness as "the CI."   The evidence cited by plaintiff does not support this assertion.   However, defendants admit that A.D.A. Talty does not have any present recollection of speaking with the eyewitness.

**PLAINTIFF'S REPLY:**   The so-called witness is described by Godino in his spiral notebook as a CI and during this litigation, defendants have asserted that he was a CI who should not be disclosed to plaintiff or his attorneys. *Plaintiff's Exh. J.*

123.   New York City Police Department had contradictory evidence about whether it was Ken Creighton or Spruell who passed the gun. Exh. N, p. l40 L.13- p.141 L.5.

**RESPONSE:**        Deny because it is unclear as to what time period plaintiff is referring. Prior to plaintiff's arrest, Mr. Terab recanted his initial identification of Mr. Spruell and indicated that his view was obstructed, that he assumed it was Mr. Spruell because Dior Creighton and Mr. Spruell were always together, and that he had been mistaken. Mr. Terab then identified plaintiff as the person who passed the gun to Dior Creighton based on a review of the surveillance footage. *See, e.g., Plaintiff* Ex.  K (Godino Dep.)  at 182:17-183:12, 185:10-16, 207:25-208:16, 210:5-9, 292:9-21. Therefore, there was no longer any contradictory evidence with respect to who passed the gun to Dior Creighton. All eyewitnesses who came forward informed the police that plaintiff passed the gun to Dior Creighton.

**PLAINTIFF'S REPLY:**  Godino does not know when the CI's identification of Kenneth Creighton as having passed the gun allegedly occurred. Godino testified that information provided by a witness in connection with a case should be memorialized in a DD5 or complaint follow-up informational.  *Plaintiff's Exh. K 165-166:18-6, 243-244:5-13; 359:23-24.* Godino did not make any record of Terab having recanted his identification of Spruell as the person who passed the gun. *Plaintiff's Exhibit K, 292-293: 9-25.* Godino testified that on January 10, 2007,

when the police were looking for plaintiff to arrest him for criminal facilitation, it was based on the "CI information". *Plaintiff's Exhibit K, 450:2-7.* Terab testified in his deposition that he never identified Kenneth Creighton as the person who passed the gun. *Ex O,45:24, 125:4.* As of May 27, 2016 Terab continued to maintain that he never identified Kenneth Creighton as the person who passed the gun. *Gross Declaration, Exh. A*. In any event, a recantation by a witness does not mean that there was no longer contradictory evidence in the police's possession.

124.    Without resolving the conflict about who passed the gun, there was no probable cause to prosecute Kenneth Creighton. Exh. N, p. 141 LL.6-21.

**RESPONSE:**        This is a legal conclusion, not a statement of fact, and should therefore be stricken.   In any event, the evidence cited by plaintiff does not support this assertion.   Rather, A.D.A. Talty, whose testimony plaintiff cites, testified that, even assuming there was conflicting evidence about who passed the gun, there was authority and probable cause, in his view, to arrest both plaintiff **and** Mr. Spruell.   *See, e.g.,* Plaintiff Ex. N (Talty Dep.) at 167:24-168:15.   In addition, A.D.A. Talty testified that there was probable cause to arrest plaintiff based upon the information in Det. Godino's spiral notebook, which was obtained from an eyewitness. *See, e.g., id.* at 139:14-140:12.

**PLAINTIFF'S REPLY:**   The Statement is a statement of fact that had ADA Talty been told that there were two people actually present who disagreed as to the identity of the defendant, he would definitely have had to do more investigation before he authorized the arrest of either. *Exhibit 10, 165:3-16.* Based on the information provided by Terab, Talty would likely have authorized the arrest of Spruell.  *Plaintiff's Exh.* N, 141:22- 42:3.

125.    125. Based on the information provided by Terab, Talty would likely have authorized the arrest of Spruell. Exh. N, p.141 L.22- p.142 L.3.

**RESPONSE:**     The evidence cited by plaintiff is speculative, inadmissible, and not a statement of fact, and should therefore be stricken. In any event, this is not material. Defendants also note that Mr. Talty's testimony in this regard was based upon an inaccurate and incomplete hypothetical set of facts, which he was asked to assume as true.

**PLAINTIFF'S REPLY:** The evidence cited by plaintiff constitutes an admission of the defendant pursuant to ____ of the Federal Rules of Civil Procedure.

126.   Talty considered it important information to have been informed about Terab's identification of Spruell when he was asked to authorize the arrest.  Exh. N, p.142 LL.11- 19.

**RESPONSE:** Deny.  The evidence cited by plaintiff does not support this assertion. Defendants also note that Mr. Talty's testimony in this regard was based upon an inaccurate and incomplete hypothetical set of facts, which he was asked to assume as true. In fact, A.D.A. Talty's response was "Assuming I was asked on January 10 and assuming this set of facts existed, as you said it did, sure, it would have been important."   Defendants further note that A.D.A. Talty had no present recollection of even authorizing plaintiff's arrest. *See* Plaintiff Ex. N (Talty Dep.) at 133:5-20. Therefore, this is speculation and not a statement of fact, and should therefore be stricken.  In any event, this is not material.

127.   Failure to inform the district attorney that someone other than the person to be arrested has been identified for the same crime constitutes a "real problem". Exh. N, p.142 L.20 - p.143 L.7.

**RESPONSE:**     This is an improper opinion and argument, not a statement of fact,  and should therefore be stricken.

**PLAINTIFF'S REPLY.**     The evidence cited by plaintiff constitutes an admission by the

defendant pursuant the Federal Rules of Civil Procedure.

128.    Failing to inform the grand jury that Spruell had been identified as someone who passed the gun is a Brady violation.  Exh. N, p.143 L.8- p.144 L.5.

**RESPONSE:**   This is an improper opinion, argument, and legal conclusion, not   a statement of fact, and should therefore be stricken. As there is no *Brady* claim, this is also not material.

129.    The Terab exculpatory evidence should have been turned over to the DA before he was asked to authorize the arrest.  Exh. N, p.147 LL.7- 25.

**RESPONSE:**        This is an improper opinion and argument,  not a  statement  of  fact, and should therefore be stricken. In any event, with respect to Mr. Terab's initial identification of Mr. Spruell, Det. Godino testified that he thinks he did inform A.D.A. Birns about Mr. Terab's identification and that he doesn't think there is any possibility that he didn't. *See, e.g., id.* at 181:15-182:3. Defendants also note that A.D.A. Talty's testimony in this regard was based upon an inaccurate and incomplete hypothetical set of facts, which he was asked to assume as true.

**PLAINTIFF'S REPLY:**  Plaintiff's statement is a fact, not an opinion. Godino's testimony that he "thinks" he informed Birns about Mr. Terab's identification does not establish that he did.

130.    Exculpatory evidence that [sic] should be turned over to the District Attorney as soon as it becomes clear that it is disclosable.  Exh. N, p.l47 LL.7- 25.

**RESPONSE:**        This is an improper opinion, argument, and legal conclusion, not   a statement of fact, and should therefore be stricken. Defendants also note that A.D.A. Talty's testimony in this regard was based upon an inaccurate and incomplete hypothetical set of facts,

which he was asked to assume as true.

**PLAINTIFF'S REPLY:**   The Statement is a statement of fact with regard to appropriate police procedures to be followed by the police and therefore is not either opinion, argument or legal conclusion.

131.   The exculpatory information provided by Terab should have been disclosed to the defense for the purpose of making a bail application. Exh. N, p.150 LL. 3 - 14.

**RESPONSE:**        This is an improper opinion, argument, and legal conclusion, not a statement of fact, and should therefore be stricken. It is also unclear what is meant by the "exculpatory information provided by Terab," particularly because there was no such exculpatory evidence at the time of plaintiff's arrest. To the extent that plaintiff is referring to Mr. Terab's signed statement and photo array from December 31, 2006, defendants note that such documents were disclosed to plaintiff during the course of the criminal case and no bail application, or any other motion, was made by plaintiff's criminal defense attorney. *See, e.g.,* Plaintiff Ex. S (50-h Hearing) at 61:13-23; Plaintiff Ex. Q (Raskin Dep.) at 42:23-43:5, 54:16-22. Defendants also note that A.D.A. Talty's testimony in this regard was based upon an inaccurate and incomplete hypothetical set of facts, which he was asked to assume as true.

**PLAINTIFF'S REPLY:** That exculpatory information provided by Terab should have been disclosed to the defense for the purpose of making a bail application constitutes a statement of fact with regard to appropriate procedures to be followed by the police and District Attorneys and therefore is not opinion, argument or legal conclusion. Moreover, defendants statement that such "documents were disclosed plaintiff during the course of the criminal case" at some unknown time and long after plaintiff had been remanded and any and all bail hearings had been concluded make the cited statement highly relevant. Moreover, whether plaintiffs defense attorney did or did not make further bail applications is unknown and irrelevant.

132.    Birns would have [sic] should have turned over exculpatory information prior to the bail hearing.  Exh. M, p.124 L.10-p.125 L.5.

**RESPONSE:**          This is an argument and legal conclusion, not a statement of fact, and should therefore be stricken. In any event, the evidence cited by plaintiff does not support this assertion.

**PLAINTIFF'S REPLY:** That Burns should have turned over exculpatory information prior to the bail hearing constitutes a statement of fact with regard to appropriate procedures to be followed by the district attorney and therefore is not either opinion, argument or legal conclusion. Birns specifically acknowledged that as a matter of proper procedure the exculpatory information, had it been in his possession should have been turned over to the defense so they could make a bail application if they chose to. *Plaintiff's Exh. M,.124:10-125:5.*

133.    There is no indication that the court was advised that there was a different suspect identified at Ken Creighton's bail hearing. Exh. N, 4-25-16 p.202 LL.16 -19.

**RESPONSE:**          Admit but note that the evidence cited by plaintiff does not support this broad assertion.

134.    Evidence that someone other than plaintiff had passed the gun was material that was be [sic] required to be turned over to defense counsel. Exh. M, p.33 LL.2-6.

**RESPONSE**:          This an argument and legal conclusion, not a statement of fact, and should therefore be stricken. In addition, the evidence cited by plaintiff does not support this assertion. To the extent that plaintiff is referring to Mr. Terab's signed statement and photo array from December 31, 2006, such documents were disclosed to plaintiff during the course of the criminal case. *See, e.g.,* Plaintiff Ex. S (50-h Hearing) at 61:13-23; Plaintiff Ex. Q (Raskin Dep.) at 42:23-43:5.  Therefore, this is not material.

**PLAINTIFF'S REPLY:**  Evidence that someone other than plaintiff had passed the gun was material required to be turned over to defense counsel and constitutes a statement of fact with regard to appropriate police procedures to be followed by the police and therefore is not opinion, argument or legal conclusion. Moreover, if or when Mr. Terab's signed statement and photo array were disclosed to plaintiff during the course of the criminal case has no relevance to what is proper police procedure.

135.    Information that would impeach the credibility of material a [sic] witness was required to be turned over to the defense.  Exh. M, p.33 LL.13-21.

**RESPONSE:**         This an argument and legal conclusion, not a statement of fact, and  should therefore, be stricken. In addition, the evidence cited by plaintiff does not support this assertion.  It is also unclear as to what time frame plaintiff is referring.

**PLAINTIFF'S REPLY:**  That information that would impeach the credibility of material witness was required to be turned over to the defense constitutes a statement of fact with regard to appropriate police procedures to be followed by the police and therefore is not either opinion, argument or legal conclusion.

136.    Birns may not have been aware that the CI was a registered informant. Exh. M, p.39 LL.9-16.

**RESPONSE:**         Admit only that A.D.A. Birns does not have a present recollection as to whether the eyewitness was a registered informant, which is what the evidence cited by plaintiff supports.  Defendants note, however, that A.D.A. Birns was aware that the eyewitness had a  prior or current relationship with the N.Y.P.D. as an informant. *See, e.g.,* Plaintiff Ex. M (Birns Dep.) at 38:23-40:10, 135:13-137:7. Defendants further note that A.D.A. Birns did not consider the eyewitness to be a "confidential informant" for the purposes of this case. *See, e.g.,*

*id.* at 121:9-15, 224:8-17.  Defendants object to the description of the eyewitness as "the CI."

137.    Birns does not know if Spruell was ever a suspect in the passing of the gun to Dior Creighton.  Exh. M, p.74 LL.6-9.

**RESPONSE:**    Admit only that A.D.A. Birns does not have a present recollection of  that, which is what the evidence cited by plaintiff supports.  In any event, this is not material.

**PLAINTIFF'S REPLY:**  This fact is material as bears on what, if any, information Birns was provided with regard to an identification of someone other than the plaintiff who passed the gun to Dior Creighton and is therefore material.

138.    Birns reviewed the video surveillance before going over the CI's testimony in preparation for the grand jury presentation.  Exh. M, p.120 LL.11-15.

**RESPONSE:**    It is unclear what is meant by this assertion.  In any event, admit only that the cited evidence supports that A.D.A. Birns testified at his deposition that the surveillance footage, which he reviewed, corroborated the information being provided by the eyewitness. *See also, e.g.,* Plaintiff Ex. M (Birns Dep.) at 111:16-23, 119:16-121:8, 163:7-164:10, 210:12-23, 227:7-228:13. Defendants object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY:**    ADA Birns based his opinion that the surveillance footage corroborated the CI's information on his belief that the CI had not seen the surveillance video when he provided ADA with a narrative that bore out what the video showed. *Plaintiff's Exh. M 209:24-210: 23*. Godino, however, testified that he had shown the surveillance video to the CI. *Plaintiff's Exh. K, 260:19- 22*.

139.    Talty's authorization for Creighton's arrest was based on the information Godino provided which came from the CI.  Exh. M, p.51 LL.16-25.

**RESPONSE:**        Admit that authorization for plaintiff's arrest was based, in part,   on

information Det. Godino obtained from the eyewitness. Det. Godino also obtained information

from Mr. Terab in which he identified plaintiff as the one who passed a firearm to Dior

Creighton in his bodega. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 182:9-12, 182:17-183:12,

207:25-208:16, 210:5-9, 292:9-21. Authorization was also based upon information A.D.A. Birns

obtained from the eyewitness directly. *See, e.g.,* Plaintiff Ex. M (Birns Dep.) at 224:24-225:3.

Defendants object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY:** Plaintiff objects to response to the extent that it goes beyond admitting

that Talty's authorization for Creighton's arrest was based on the information Godino provided

which came from the CI.  The evidence cited by defendants does not support the assertion that

Talty was ever told that Terab had allegedly identified Kenneth Creighton as the person who

passed the gun, thereby contradicting or recanting his prior identification of Spruell as the

perpetrator. Moreover, ADA Birns based his opinion that the surveillance footage corroborated

the CI's information on his belief that the CI had not seen the surveillance video when he provided

ADA with a narrative that bore out what the video showed. *Plaintiff's Exh. M 209:24-210: 23*.

Godino, however, testified that he had shown the surveillance video to the CI. *Plaintiff's Exh. K,*

*260:19- 22*.

        140.    Based on the conflicting identifications, more investigation was required

to determine who should be arrested for the facilitation (passing the gun). Exh. M, p.63 LL.l2-

16.

**RESPONSE:**        This is an improper opinion, argument and legal conclusion, not   a

statement of fact, and should therefore be stricken. In any event, further investigation was

conducted as, after receiving information from an eyewitness that plaintiff passed the gun to

Dior Creighton, Det. Godino had a telephone conversation with Mr. Terab and had him come back into the precinct to view the surveillance footage. Prior to plaintiff's arrest, Mr. Terab recanted his initial identification of Mr. Spruell and indicated that his view was obstructed, that he assumed it was Mr. Spruell because Dior Creighton and Mr. Spruell were always together, and that he had been mistaken. Mr. Terab then identified plaintiff as the person who passed the gun to Dior Creighton based on a review of the surveillance footage. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 182:17-183:12, 185:10-16, 207:25-208:16, 210:5-9, 259:7-17, 292:9-21. Therefore, the identifications were consistent, not conflicting. Defendants also note that Mr. Birns's testimony in this regard was based upon an inaccurate and incomplete hypothetical set of facts, which he was asked to assume as true.

**PLAINTIFF'S REPLY:**  Plaintiff objects to defendants' response as it contains inadmissible hearsay and is not supported by the evidence or the record. Other than testimony from Godino that at some unspecified time Terab recanted his identification of Spruell, which alleged recantation is not documented in a single NYPD or District Attorney record, there is no evidence to support the allegation that Terab recanted his original identification. *Plaintiff's Exh. K, 185:10-186:10*. In any event, a recantation by a witness years after the arrest and commencement of the prosecution does not mean that there was probable cause to arrest and prosecute in 2007.

141.   Had Birns been aware of the exculpatory information provided by Terab, he would have declined to authorize Ken Creighton's arrest until the information could be further investigated.  Exh. M, p.60 L.18-p.6 I L.8.

**RESPONSE:**        This is an improper opinion and argument, not a statement of fact, and should therefore be stricken. It is also speculative as Mr. Birns's testimony in this regard was

based upon an inaccurate and incomplete hypothetical set of facts, which he was asked to

assume as true.  It is also unclear what is meant by "exculpatory information provided by

Terab" as,  prior to plaintiff's arrest, Mr. Terab recanted his initial identification of Mr. Spruell

and indicated that his view was obstructed, that he assumed it was Mr. Spruell because Dior

Creighton and Mr. Spruell were always together, and that he had been mistaken. Mr. Terab

then identified plaintiff as the person who passed the gun to Dior Creighton based on a review

of the surveillance footage. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 182:17-183:12, 185:10-

16, 207:25-208:16, 210:5-9, 292:9-21. Defendants also note that A.D.A. Birns testified that he

recalls  being informed of someone who worked at the bodega but whose view was obstructed

and, therefore, did not get a good look at what took place. *See, e.g.,* Plaintiff Ex. M (Birns

Dep.) at 69:21-71:3, 72:2-18. Defendants further note that A.D.A. Birns testified only that he

did not have a present recollection of being informed about Mr. Terab's initial identification of

Mr. Spruell, not that he wasn't informed. *See, e.g., id.* at 60:18-24, 63:17-25, 67:21-68:6,

125:9-21. Det. Godino, however, testified that he thinks he did inform A.D.A. Birns about Mr.

Terab's identification and that he doesn't think there is any possibility that he didn't. *See, e.g.,*

Plaintiff Ex. K (Godino Dep.) at 181:15-182:3.

**PLAINTIFF'S REPLY:**  Plaintiff objects to defendants' response as it contains inadmissible

hearsay and is not supported by the evidence or the record. Other than testimony from Godino

that at some unspecified time Terab recanted his identification of Spruell, which alleged

recantation is not documented in a single NYPD or District Attorney record, there is no

evidence to support the allegation that Terab recanted his original identification. *Plaintiff's Exh.

K, 185:10-186:10.* That more investigation was required based on the conflicting identifications

constitutes a statement of fact with regard to appropriate police procedures to be followed by

the police and therefore is not either opinion, argument or legal conclusion.

142. Had Birns been made aware of the photo array identifications and the

Terab statement he would have required more investigation to be conducted.  Exh. M, p.54

L.8- p.55 L. 18.

**RESPONSE:**        This is an improper opinion and argument, not a statement of fact,  and

should therefore be stricken.  It is also speculative as Mr. Birns's testimony in this regard was

based upon an inaccurate and incomplete hypothetical set of facts, which he was asked to assume

as true. Defendants also note that A.D.A. Birns testified that he recalls being informed of

someone who worked at the bodega but whose view was obstructed and, therefore, did not get

a good look at what took place. *See, e.g.,* Plaintiff Ex. M (Birns Dep.) at 69:21-71:3, 72:2-18.

Defendants further note that A.D.A. Birns testified only that he did not have a present

recollection of being informed about Mr. Terab's initial identification of Mr. Spruell, not that

he wasn't informed. *See, e.g., id.* at 60:18-24, 63:17-25, 67:21-68:6, 125:9-21. Det. Godino,

however, testified that he thinks he did inform A.D.A. Birns about Mr. Terab's identification

and that he doesn't think there is any possibility that he didn't. *See, e.g.,* Plaintiff Ex. K (Godino

Dep.) at 181:15-182:3.

**PLAINTIFF'S REPLY:**  The fact that ADA Birns testified that had been aware of the

exculpatory information provided by Terab, he would have declined to authorize Ken

Creighton's arrest until the information could be further investigated, demonstrates that Birns

was not made aware by Godino that Terab had not only identified Spruell but had actually

provided a written statement to that effect.  Plaintiff's statement is a fact, not an opinion. That

Birns testified that he recalls being informed of someone who worked at the bodega but whose

view was obstructed and, therefore, did not get a good look at what took place supports

plaintiff's statement that he was not informed about Terab identification of Spruell.  Godino's

testimony that he "thinks" he informed Birns about Mr. Terab's identification does not establish

that he did.

>143.   Birns would be informed about [sic] investigation by the detectives

before he would be asked to authorize the arrests.  Exh. M, p.48 LL.5-21.

**RESPONSE:**        The evidence cited by plaintiff does not support this assertion.   To the

extent this assertion relates to other cases, it is not material. To the extent that this assertion

relates to this case, admit that A.D.A. Birns was informed by Det. Godino about the evidence

obtained during the investigation which implicated plaintiff prior to plaintiff's arrest.

**PLAINTIFF'S REPLY:**  Plaintiff objects to the response as vague and not supported by

citation to the record.  Nothing in the evidence supports the position that Birns was ever advised

that the bodega owner identified Spruell as the perpetrator or that he subsequently allegedly

recanted that identification

>144.   Birns would not have authorized the arrest without approval from Talty.

Exh. M, p.49 LL.9- 15.

**RESPONSE:**        Assuming "the arrest" being referred to is the arrest of plaintiff, this

is speculative because A.D.A. Talty approved the arrest. This is also not a material statement of

fact.

>145.   Had Birns known about Terab's identification, he would have required

further investigation and would have wanted to talk to Terab.  Exh. M, p.54 LL.8-16.

**RESPONSE:**        This is an improper opinion, not a statement of fact, and should

therefore be stricken. It is also speculative as Mr. Birns's testimony in this regard was based upon an inaccurate and incomplete hypothetical set of facts, which he was asked to assume as true. Defendants also note that A.D.A. Birns testified that he recalls being informed of someone who worked at the bodega but whose view was obstructed and, therefore, did not get a good look at what took place. *See, e.g.,* Plaintiff Ex. M (Birns Dep.) at 69:21-71:3, 72:2-18. Defendants further note that A.D.A. Birns testified only that he did not have a present recollection of being informed about Mr. Terab's initial identification of Mr. Spruell, not that he wasn't informed. *See, e.g., id.* at 60:18-24, 63:17-25, 67:21-68:6, 125:9-21. Det. Godino, however, testified that he thinks he did inform A.D.A. Birns about Mr. Terab's identification and that he doesn't think there is any possibility that he didn't. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 181:15-182:3.

**PLAINTIFF'S REPLY:** Birns's testimony that had he known about Terab's identification, he would have required further investigation and would have wanted to talk to Terab constitutes a statement of fact not an opinion, argument or legal conclusion. Moreover, Birns acknowledged that he did not know about Terab's identification of Spruell as the one who passed the gun to Dior Creighton and that he would have required further investigation and would have wanted to talk to Terab. *Plaintiff's Exh. M. 53:3-55:2; 60:8-61:8.*

146.    No arrest of Ken Creighton should have been made without investigating the circumstances of Terab's signed statement implicating Spruell. Exh. M, p.54 L.17- p.55 L.3.

**RESPONSE:**        This is an improper opinion, argument and legal conclusion, not a statement of fact, and should therefore be stricken. It is also speculative as Mr. Birns's testimony in this regard was based upon an inaccurate and incomplete hypothetical set of facts,

which he was asked to assume as true. Defendants also note that further investigation regarding Mr. Terab and Mr. Spruell was conducted prior to plaintiff's arrest, which resulted in Mr. Terab recanting his initial identification of Mr. Spruell and indicating that his view was obstructed, stating that he assumed it was Mr. Spruell because Dior Creighton and Mr. Spruell were always together, and stating that he had been mistaken. Mr. Terab then identified plaintiff as the person who passed the gun to Dior Creighton based on a review of the surveillance footage. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 182:17-183:12, 185:10-16, 207:25-208:16, 210:5-9, 292:9-21.

**PLAINTIFF'S REPLY:**  The evidence cited by defendants does not support the assertion that at some unspecified time, Terab recanted his identification of Spruell as the person who passed the gun and identified Kenneth Creighton instead. This alleged recantation is not documented in a single NYPD or District Attorney record, there is no evidence to support the allegation that Terab recanted his original identification. *Plaintiff's Exh. K, 185:10-186:10.*

147.    Godino has no recollection of when the interview of [sic] CI referred to in the notes in his spiral notebook was conducted.  Exh. K, p.229 L.23 - p. 230 L. 7.

**RESPONSE:**        Admit, object to the description of the eyewitness as "CI" and note that this assertion is duplicative of assertions made in other paragraphs herein.

**PLAINTIFF'S REPLY:**    The person who allegedly identified Kenneth Creighton as having passed the gun is described in Godino's spiral notebook as a CI and has so been identified throughout this litigation wherein defendants tried to withhold information about the CI precisely because he is a CI.

148.    Godino did not create a DD 5 [sic] memorializing the interview with the CI without identifying him by name.  Exh. K, p.231 L.2 - L.17; p.244 L.4- L.13.

**RESPONSE:**        Admit but object to the description of the eyewitness as "CI."

However, this is a not a material statement of fact.

**PLAINTIFF'S REPLY:**     The person who allegedly identified Kenneth Creighton as having passed the gun is described in Godino's spiral notebook as a CI and has so been identified throughout this litigation wherein defendants tried to withhold information about the CI precisely because he is a CI.  This Statement is material as to the veracity and reliability of the CI's purported identification of plaintiff as the person who passed the gun.

149.     Godino never knew the CIs [sic] name during the pendency of the criminal case.  Exh. K, p.231 L.2 - L.17.

**RESPONSE:**          Admit, object to the description of the eyewitness as "CI" and note that this assertion is duplicative of assertions made in other paragraphs herein.

**PLAINTIFF'S REPLY:**     The person who allegedly identified Kenneth Creighton as having passed the gun is described in Godino's spiral notebook as a CI and has so been identified throughout this litigation wherein defendants tried to withhold information about the CI precisely because he is a CI.

150.     Godino saw a photo that has been lost where the CI made an identification of somebody.  Exh. K, p.232 L.23 - p.233 L.18; p.232 L.6 - L.22.

**RESPONSE:**          Deny.  The evidence cited by plaintiff does not support this assertion. Rather, the cited evidence supports only that Det. Godino "think[s he] may have shown [the eyewitness] a photo and it may be part of what's missing out of the folder." Defendants object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY:**     The person who allegedly identified Kenneth Creighton as having passed the gun is described in Godino's spiral notebook as a CI and has so been identified throughout this litigation wherein defendants have consistently argued that they should not be

directed to reveal his identify because he was CI.

151.    The records in the case folder were inconsistent with the CIs information about who passed the gun.  Exh. K, p.235 L.24 - p.236 L.6.

**RESPONSE:**    This is an argument, not a statement of fact, and should therefore be stricken. In any event, the evidence cited by plaintiff does not support this assertion. Rather, the cited evidence supports only that Det. Godino testified that Mr. Terab's initial identification was inconsistent with the information obtained from the eyewitness that plaintiff passed the gun to Dior Creighton.  Defendants object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY:**  Neither the police records nor the District Attorney's records support defendants' position that there was more than one identification by Terab, wherein he identified Spruell as the perpetrator.

152.    The CI identified someone named Quan as a witness.  Exh. K, p.239 L.9 -L.16; Exh. J.

**RESPONSE:** Admit   only  that  the  eyewitness  referenced  someone  by  the  name   of "Quan" when recounting what happened on December 26, 2006, and object to the description of the eyewitness as "the CI."  In any event, this is not a material fact.

PLAINTIFF'S REPLY:      The person who allegedly identified Kenneth Creighton as having passed the gun is described in Godino's spiral notebook as a CI and has so been identified throughout this litigation wherein defendants tried to withhold information about the CI precisely because he is a CI.  The evidence is material as to whether Godino failed to make further inquiry where a reasonable person would have done so.

153.    Godino does not remember if anything was done to find Quan beyond finding out his real name.  Exh. K, p.239 L.9 - L.16.

**RESPONSE:**          Admit.

154.    It would have been good practice to find an interview Quan but it was not done.  Exh. K, p.240 L.2 - L.14.

**RESPONSE:**          This is an improper opinion and argument,  not  a  statement  of  fact, and should therefore be stricken.

**PLAINTIFF'S REPLY:**  Godino's statement that it would have been good practice to find and interview Quan is not opinion, argument or legal conclusion but rather an expression of an experience Detective's knowledge of what should be done in investigating a criminal case and in particulars where there are a number of people who witnessed the incident.

155.    Prior to taking the Cl's statement [sic] Godino had reviewed the surveillance video.  Exh. K, p.248 L.20-L.25.

**RESPONSE:**          Admit, object to the description of the eyewitness as "CI" and note that this assertion is duplicative of assertions made in other paragraphs herein.

**PLAINTIFF'S REPLY:**    The person who allegedly identified Kenneth Creighton as having passed the gun is described in Godino's spiral notebook as a CI and has so been identified throughout this litigation wherein defendants tried to withhold information about the CI precisely because he is a CI.

156.    It is good police practice to determine whether an accused had an alibi. Exh. K, p.l2 - p.289 L.3; p.289 L.l0 - L.22.

**RESPONSE:**          This is an improper opinion and argument,  not  a  statement  of  fact, and should therefore be stricken.  In any event, this is not material.

**PLAINTIFF'S REPLY:**  Godino's statement that it would have been good police practice to determine whether an accused had an alibi is not opinion, argument or legal conclusion but

rather an expression of an experience Detective's knowledge is required in conducting a criminal investigation. the incident.

157.    Godino did not know whether an attempt was made to find out if Kenneth Creighton had an alibi. Exh. K, p.289 L.10-L.22.

**RESPONSE:**         This is an improper opinion and argument, not a statement of fact, and should therefore be stricken.  In any event, this is not material.

**PLAINTIFF'S REPLY:**  What Godino did or did not do is a matter of fact not opinion or argument.  He testified that he did not make any such attempt.  This testimony is relevant to determine whether under the circumstances presented to him, a reasonable person would have made further inquiry.

158.    Where, as here, there was a conflict with regard to identification as who passed the gun, it was good police practice to determine whether an accused had an alibi. Exh. K, p.290 L.23 - p.291 L.14.

**RESPONSE:**         This is an improper opinion and argument, not a statement of fact, and should therefore be stricken. Defendants also note that there were no conflicting identifications as, prior to plaintiff's arrest, Mr. Terab recanted his initial identification of Mr. Spruell and indicated that his view was obstructed, that he assumed it was Mr. Spruell because Dior Creighton and Mr. Spruell were always together, and that he had been mistaken. Mr. Terab then identified plaintiff as the person who passed the gun to Dior Creighton based on a review of the surveillance footage. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 182:17-183:12, 185:10-16, 207:25-208:16, 210:5-9, 292:9-21. Therefore, the        identifications were consistent, not conflicting.

**PLAINTIFF'S REPLY:**      Plaintiff objects to defendants' response as it contains inadmissible hearsay and is not supported by the evidence or the record. Other than testimony from Godino that at some unspecified time Terab allegedly recanted his identification of Spruell, which alleged recantation is not documented in a single NYPD or District Attorney record, there is no evidence to support the allegation that Terab recanted his original identification. *Plaintiff's Exh. K, 185:10-186:10*. That more investigation was required based on the conflicting identifications constitutes a statement of fact with regard to appropriate police procedures to be followed by the police and therefore is not either opinion, argument or legal conclusion.

159.    Godino never inquired about whether Kenneth Creighton had an alibi.

Exh. K, p.290 L.23 - p.291 L.14.

**RESPONSE:**          Admit but this is not a material statement of fact.

160.    Godino knew that where a witness was a paid confidential informant it had to be disclosed to the defense.  Exh. K, p.293 L.18 - L.23.

**RESPONSE:**  This is an improper opinion, argument and legal conclusion, not     a statement of fact, and should therefore be stricken.  In any event, this is not material.

**PLAINTIFF'S REPLY:**  Godino's knowledge that where a witness is a paid confidential informant it had to be disclosed is a statement of fact not an opinion, argument or legal conclusion. Moreover, Godino's knowledge that the fact that a witness is a paid confidential informant must be disclosed is material to his awareness of his obligations under the law and relevant any claim of entitlement to qualified immunity.

161.    The CI informed his handler that he would not come into court to

testify. Exh. U, p.149 LL.8-12; p.150 LL.15; p. 204 L.8-12.

**RESPONSE:**        Deny.   The evidence cited by plaintiff does not support this

assertion. Rather, the cited evidence supports only that the eyewitness presently "believes" that

he informed his handler that he would not testify against Dior Creighton at trial. The

eyewitness testified that he "can't remember saying" that he would not testify against plaintiff

at trial. *See, e.g.,* Plaintiff Ex. U at 149:9-14. Defendants object to the description of the

eyewitness as "the CI."

162.    The CI claims he went to the precinct the day after the shooting. Exh. U,

p.198 1.16- p.199 L.5.

**RESPONSE:**        Admit only that the eyewitness's present recollection is that he went to

a  police precinct the day after the shooting to inform the police about that he saw, *inter alia*,

plaintiff pass a gun to Dior Creighton. Defendants object to the description of the eyewitness as

"the CI."

163.    Godino generally dates entries into his spiral notebook but did not date

the entry concerning the CI.  Exh. K, p. 51 L.24-p.51 L.23; 241 LL.12-15.

**RESPONSE:**        Admit that Det. Godino did not date the entry in his spiral notebook

memorializing the information he obtained from the eyewitness. Defendants object to the

description of the eyewitness as "the CI" and note that this assertion is duplicative of assertions

made in other paragraphs herein.

**PLAINTIFF'S REPLY:**    The CI is described in Godino's spiral notebook as a CI and has

been identified throughout this litigation as a CI.  *Exhibit J.*

164.    There were no identified witnesses that saw Dior fire the weapon other

than the CI.  Exh. K, p.275 LL.5 - 12.

**RESPONSE:**       Admit that only one eyewitness came forward that was willing to testify that he/she saw Dior Creighton fire the weapon, object to the description of the eyewitness as "the CI," and note that this assertion is duplicative of assertions made in other paragraphs herein.

**PLAINTIFF'S REPLY:**   The above response is not responsive to plaintiff's statement. There is no evidence in the record that any witness identifying Dior Creighton as having done the shooting were located but refused to testify. In his spiral notebook, the only place where Detective Godino mentioned the now so-called witness who allegedly identified Kenneth Creighton, he describes him as a CI. *Plaintiff's Exh. J (Spiral Notebook).*

165.   Based [sic] Godino's spiral notebook notes, there were other potential witnesses identified but they were not interviewed. Exh. K, p.275 L.5 - L.19; p.276 L.18 - p.277 L.7.

**RESPONSE:**       Admit only that not every single person named or identified in Det. Godino's spiral notebook was located / interviewed during the investigation.

166.   Based on the surveillance video there were other people shown who could have given information about the passing of the gun. Exh. K, p.284 L.18 - p.285 L.3.

**RESPONSE:**       This is an improper opinion, speculation and argument, not a statement of fact, and should therefore be stricken.

**PLAINTIFF'S REPLY:**  The Statement is not improper opinion, speculation or argument it is a fact that can be verified by looking at the surveillance video.

167.   No attempts were made to identify people shown in the video who could have identified who was passing the gun.  Exh. K, p.285 L.16 - L.25.

- 69 -

**RESPONSE:**        Deny.  The evidence cited by plaintiff does not support this assertion. Rather, the cited evidence supports only that Det. Godino testified that they did not try to find one particular person shown in the video.

168.    Good police practice required resolving the clear conflict in identification so the right person would be charged in passing the gun. Exh. K, p.286 L.21 - p.287 LL.10.

**RESPONSE:**        This is an improper opinion and argument, not a statement of fact, and  should therefore be stricken. Defendants also note that there was no "clear conflict in identification" as, prior to plaintiff's arrest, Mr. Terab recanted his initial identification of Mr. Spruell and indicated that his view was obstructed, that he assumed it was Mr. Spruell because Dior Creighton and Mr. Spruell were always together, and that he had been mistaken. Mr. Terab then identified plaintiff as the person who passed the gun to Dior Creighton based on a review of the surveillance footage. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 182:17-183:12, 185:10-16, 207:25-208:16, 210:5-9, 292:9-21.  Therefore, the identifications were consistent, not conflicting.

**PLAINTIFF'S REPLY:**  Plaintiff objects to defendants' response as it contains inadmissible hearsay and is not supported by the evidence or the record. Other than testimony from Godino that at some unspecified time Terab allegedly recanted his identification of Spruell, which alleged recantation is not documented in a single NYPD or District Attorney record, there is no evidence to support the allegation that Terab recanted his original identification. *Plaintiff's Exh. K, 185:10-186:10.* In any event, a recantation by a witness years after the arrest and commencement of the prosecution does not mean that there was probable cause to arrest and prosecute in 2007.

169.   The CI's grand jury testimony was contradictory to the documentary evidence from Terab about who passed the gun to Dior Creighton.  Exh. JJ; Exh. G.

**RESPONSE:**          Admit but object to the description of the eyewitness as "the CI."

170.   Birns was not aware that the witness [sic] testified before the grand jury was a registered CI.  Exh. M, p.38 L.15-L.19.

**RESPONSE:**          Admit only that A.D.A. Birns does not have a present recollection as to whether the eyewitness was a registered informant. *See, e.g.,* Plaintiff Ex. M. (Birns Dep.) at 38:23-40:10. Defendants note, however, that A.D.A. Birns was aware that the eyewitness had a prior or current relationship with the N.Y.P.D. as an informant. *See, e.g., id.* at 38:23-40:10, 135:13-137:7. Defendants further note that A.D.A. Birns did not consider the eyewitness to be a "confidential informant" for the purposes of this case. *See, e.g., id.* at 121:9-15, 224:8-17. Defendants object to the description of the eyewitness as "the CI" and note that this assertion is duplicative of assertions made in other paragraphs herein.

**PLAINTIFF'S REPLY:**      The person who allegedly identified Kenneth Creighton as the person who passed the is described in the police records as a CI, not a witness.

171.   Birns was not aware of the Terab exculpatory evidence when he presented the case to the grand jury.  Exh. M, p.60 L.8-L.17.

**RESPONSE:**          Deny.  The evidence cited by plaintiff does not support this assertion. A.D.A. Birns testified only that he did not have a present recollection of being aware of Mr. Terab's initial identification of Mr. Spruell, not that he wasn't aware.   *See, e.g.,* Plaintiff Ex. M(Birns Dep.) at 60:18-24, 63:17-25, 67:21-68:6, 125:9-21. Det. Godino, however, testified that  he thinks he did inform A.D.A. Birns about Mr. Terab's identification and that he doesn't think there is any possibility that he didn't. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 181:15-

182:3. Det. Godino also testified that he provided A.D.A. Birns with the documents (i.e., written statement and signed photo array) supporting Mr. Terab's initial identification of Mr. Spruell. *See, e.g., id.* at 202:7-12. Defendants note that, at the time of the grand jury proceedings, there was no "Terab exculpatory evidence" as, prior to plaintiff's arrest, Mr. Terab recanted his initial identification of Mr. Spruell and indicated that his view was obstructed, that he assumed it was Mr. Spruell because Dior Creighton and Mr. Spruell were always together, and that he had been mistaken. Mr. Terab then identified plaintiff as the person who passed the gun to Dior Creighton based on a review of the surveillance footage. *See, e.g., id.* at 182:17-183:12, 185:10-16, 207:25-208:16, 210:5-9, 292:9-21. Defendants also note that A.D.A. Birns testified that he recalls being informed of someone who worked at the bodega but whose view was obstructed and, therefore, did not get a good look at what took place. *See, e.g.,* Plaintiff Ex. M (Birns Dep.) at 69:21-71:3, 72:2-18.

**PLAINTIFF'S REPLY:** Plaintiff objects to defendants' response as it contains inadmissible hearsay and is not supported by the evidence or the record. If ADA Birns had been aware of the exculpatory information provided by Terab that Spruell passed the gun, he would have declined to authorize Ken Creighton's arrest until the information could be further investigated, demonstrates that Birns was not made aware by Godino that Terab had not only identified Spruell but had actually provided a written statement to that effect, otherwise, he would not have authorized the arrest. *Exh. M, 53:3-55:3.* Plaintiff objects to any mention of a recantation by Terab as the only evidence of any such recantation is the unsubstantiated testimony from Godino that at some unspecified time Terab allegedly recanted his identification of Spruell, which alleged recantation is not documented in a single NYPD or District Attorney record, there is no evidence to support the allegation that Terab recanted his original identification.

*Plaintiff's Exh. K, 185:10-186:10.* That more investigation was required based on the conflicting identifications constitutes a statement of fact with regard to appropriate police procedures to be followed by the police and therefore is not either opinion, argument or legal conclusion.

172.    If the district attorney knew and [sic] a witness was actually present and was an actual witness to an event and identified somebody other than the defendant, it would be their obligation to present that evidence to the grand jury. Exh. N, p.143 L.14 - p.144 L.5.

**RESPONSE:**    This is an improper opinion, speculation, argument, and legal conclusion, not a statement of fact, and should therefore be stricken. Defendants also note that A.D.A.  Talty's testimony in this regard was based upon an inaccurate and incomplete hypothetical set of facts, which he was asked to assume as true.

**PLAINTIFF'S REPLY**:    The testimony of Talty an experienced prosecutor that if he had the District Attorney became aware that someone else had been identified as the perpetrator, there was an obligation to present the evidence to the Grand Jury is not an opinion, it is a statement of fact as to what the District Attorney's obligations are.

173.    Birns was not aware that the CI was going to be paid by the police for his testimony before the grand jury.  Exh. M, p.134 L.14- p.135 L.6.

**RESPONSE:**    Admit only that A.D.A. Birns has no knowledge one way or another as to whether the eyewitness was paid by the police in connection with this case, and object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY:**    The eyewitness testified ███████████████████████
████████████████. *See, e.g.,* Plaintiff Ex. U at 51:2- 4, 103:14-23.

174.    The same set of grand jurors indicted Kenneth Creighton and Dior

Creighton on different dates.  Exh. N, p.152 L.16 - p.153 L.8.

**RESPONSE:**          Admit but note that the cited evidence does not support this assertion.

In any event, this is not a material fact.

> 175.    On January 23, 2007, Kenneth Creighton was indicted by a grand jury.

Exh. KK: Kenneth Creighton Indictment Bates Stamped P00098.

**RESPONSE:**          Admit.

> 176.    Dior Creighton was arrested for murder and other felonies on January

26, 2007.  Exh. LL: DD5 Bates Stamped P00161.

**RESPONSE:**          Admit.

> 177.    Dior Creighton was indicted on February 1, 2007. Exh. NN: Dior

Creighton Indictment.

**RESPONSE:**          Admit.

> 178.    On February 1, 2007 Godino testified before the grand jury when the

presentment was made regarding Dior Creighton. Exh. OO: Dior Creighton Grand Jury

Presentation.

**RESPONSE**:          Admit but this is not a material fact.

> 179.    In June 2012 Godino learned that a lot of the DD fives were missing

when he met with District Attorney Dan McCarthy to go over the file. Exh. K, p.96 LL.6-9.

**RESPONSE**:          Admit that Det. Godino believes that an unknown number of DD5s were

missing during the pendency of the criminal case.  In any event, this is not material.

**PLAINTIFF'S REPLY:**    The statement is material to the issue of spoliation of evidence.

> 180.    Theresa Gottlieb an ADA in the Bronx County District Attorney's

Office was aware in 2011 that there were files missing, including the memo book, original

identification forms and other materials.  Exh. R, p.41 L.4-15.

**RESPONSE:**          Admit that A.D.A. Gottlieb believes there were files missing during

the pendency of the criminal case.  In any event, this is not material.

**PLAINTIFF'S REPLY:**     The statement is material to the issue of spoliation of evidence.

181.    Gottlieb does not know what are [sic] missing from the original missing

[sic] from the NYPD file.  Exh. R, p.132 L.22-p.33 L.6.

**RESPONSE:**          Because this assertion is incomprehensible as written, defendants

are unable to respond.

182.    On August 9, 2011, Terab reviewed the altered surveillance video at

Gottlieb's office in the presence of Detective Godino. Exh. K, p.373 L.25 - p.374 L.9.

**RESPONSE:**          Admit that, on August 9, 2011, Mr. Terab reviewed surveillance footage

at A.D.A. Gottlieb's office, where he again identified plaintiff as the one who passed a gun to

Dior Creighton, *see, e.g.,* Plaintiff Ex. K (Godino Dep.) at 211:8-11, 212:8-9, 378:22-379:4;

Plaintiff. Ex. R (Gottlieb Dep.) at 143:12-19 218:24-220:17, but deny that the footage was

"altered." Indeed, plaintiff's own expert witness, John Afrides, has stated, by declaration under

the penalty of perjury, that the perceived editing and alteration "originated at the original DVR

recordings." Plaintiff Ex. E (Afrides Decl.) at ¶ 15.

**PLAINTIFF'S REPLY:**     Plaintiff objects to the response as non-responsive to the extent that

it goes beyond admitting that Terab reviewed video footage on August 9, 2011.  Plaintiff further

objects because the response contains inadmissible hearsay.  What Terab said or did not say on

August 9, 2011, years after plaintiff's arrest and the commencement of the prosecution, is

irrelevant and immaterial to the issues in the case. Additionally, Terab testified at his deposition

that he never identified Kenneth Creighton as the person who passed the gun.  *Ex O,45:24,*

*125:4.*  As of May 27, 2016, Terab continued to maintain that he never identified Kenneth Creighton as the person who passed the gun. *Gross Declaration, Exh. A.* There are no records indicating that Terab identified Kenneth Creighton as the perpetrator on August 9, 2011. Additionally, Godino testified that the surveillance video he was during his deposition, which is the one that has been produced during discovery in this case deposition, was edited and is not the same version of the tape that he first reviewed when it was retrieved from the store. *Plaintiff's Exhibit K*, *38:10-21.* The video Godino reviewed at his deposition has slow motion or the reverse, which were not present when he originally watched it. *Exh. K, 334:12-24.*  Plaintiff's expert, John Afrides, opined, with a reasonable degree of certainty in the area of videography that the produced DVD was digitized from a second generation VHS tape. *Plaintiff's Exh. E.*

183.    No record was made of what went on in Gottlieb's office on August 9, 2011.  Exh. K, Godino p.380 L.2- L.25.

**RESPONSE:**         Deny.   The evidence cited by plaintiff does not support this assertion. In addition, A.D.A. Gottlieb sent a letter, dated August 19, 2011, to plaintiff's criminal defense attorney memorializing the fact that, on August 9, 2011, a witness identified plaintiff in her office based on the surveillance footage.  *See* Aug. 19, 2011 Ltr., Thadani Decl., Ex. I.

**PLAINTIFF'S REPLY:**    Neither Godino nor Gottlieb made any record of the interview with Terab on August 9, 2011 wherein they claim that Terab identified plaintiff as the person who passed the gun and that the so-called recantation should have been documented. *Plaintiff's Exh. K, 197:16-25; 198:3-14; Plaintiff's Exh. R, 173:2 -174:13.*  The August 19, 2011 letter from Gottlieb does not indicate that the person who identified plaintiff from the surveillance footage was Terab. *Thadani Decl. Exh. I*

184.    On June 3, 2015, Terab testified that it was not Ken Creighton passing

the gun to Dior Creighton and verified it while viewing the surveillance tape. Exh. O, p.45 L.2-4.

 **RESPONSE**:        Admit.        However, defendants note that, through his criminal defense attorney, plaintiff has admitted to loaning Mr. Terab $15,000 sometime after his release in January 2012. *See, e.g.,* Mar. 8, 2016 Crim. Ct. Transcript, Thadani Decl., Ex. F, at 6:23-25. Plaintiff also invoked his 5th Amendment right against self-incrimination at his deposition when asked about whether he ever paid Mr. Terab to make any statements in connection with this case, whether he ever promised Mr. Terab any money for his testimony in this case, and whether he ever paid Mr. Terab any money to testify that he saw Mr. Spruell pass the gun, instead of him.  K. Creighton Dep. (May 27, 2016), Thadani Decl., Ex. G, at 17:21-18:7, 19:1-19:6, 38:4:18. Defendants further note that Mr. Terab has previously indicated that he is fearful of plaintiff and that plaintiff has physically assaulted him, robbed him, and threatened to kill him, and that he would never repeat that it was plaintiff who passed the gun in his store. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 183:13-24; Plaintiff Ex. R (Gottlieb Dep.) at 218:24-220:17; Mar. 7, 2016  Crim. Ct. Compl. Thadani Decl., Ex. H. Plaintiff invoked his 5th Amendment right against self- incrimination at his deposition when asked about whether he ever threatened physical injury, threatened to kill, pushed, punched, hit, or fought with Mr. Terab, and when asked about whether he ever threatened any violence towards Mr. Terab so that he would testify he saw Mr. Spruell pass the gun, instead of him. *See, e.g.,* K. Creighton Dep. (May 27, 2016), Thadani Decl., Ex. G, at 10:8-11:18, 38:19-39:1.

**PLAINTIFF'S REPLY:**    Plaintiff objects to defendants' response to the extent that it goes beyond admitting that Terab testified during his deposition in this case that Spruell, not Creighton, passed the gun to Dior. The statement that follows admission of this fact contains

inadmissible hearsay.  Any statement by plaintiff's current criminal attorney constitutes

inadmissible hearsay.  Plaintiff did not make any statement admitting that he loaned Mr. Terab

$15,000 after his January 2010 release.  Moreover, the statement is immaterial. The fact that

plaintiff invoked his Fifth Amendment right against self-incrimination because there is a

criminal prosecution currently pending against him is not admissible.  Defendants implication

that because plaintiff invoked his constitutional right against self-incrimination in a pending

criminal prosecution constitutes admissions with respect to the questions asked should be

stricken. Godino's testimony that Terab told him that that he is fearful of plaintiff and that

plaintiff has physically assaulted him, robbed him, and threatened to kill him, and that he

would never repeat that it was plaintiff who passed the gun in his store is rank hearsay that

should stricken.  Moreover, there are no records prepared by Godino or anyone else that

document Terab ever making those statements. Any statements made to ADA Gottlieb

constitute inadmissible hearsay and should be stricken. Additionally, there are no records in the

District Attorney's records that indicate Terab made any of the above statements attributed to

him.

185.    185. On June 3, 2015, Terab testified that Ken Creighton was not in the

store at the time the gun was passed to Dior Creighton.  Exh. O, p.45 L.2-4.

**RESPONSE:**        Admit and refer the Court to defendants' response to paragraph 184.

**PLAINTIFF'S REPLY:**    Plaintiff respectfully refers the Court to plaintiff's reply to

paragraph 184.

186.    Gottlieb was aware that when a witness is a paid confidential informant

it must be disclosed to defense counsel as part of discovery as soon as reasonably practicable.

Exh. R, p.170 LL.8 - p.172 L.9.

**RESPONSE:**        This is an improper opinion, argument and legal conclusion, not a statement of fact, and should therefore be stricken. In any event, the evidence cited by plaintiff does not support this assertion and this is not material.

**PLAINTIFF'S REPLY:**  Gottlieb, an experience assistant district attorney's knowledge of what must disclosed to the defense in a criminal prosecution is a fact not an opinion, argument or legal conclusion.

187.    Dior Creighton pled guilty to attempted murder in 2012. Exh. R, p.102 LL.5-14.

**RESPONSE:**        Admit.

188.    On January 18, 2012, Gottlieb wrote a letter to the court where she made a Recommendation for Dismissal that indicated that "Kenneth Creighton was arrested and charged upon the statements of a single eyewitness" who has become unavailable. Exh. L: Defendants' Responses to First Set of Interrogatories, p. 57.

**RESPONSE:**        Admit that A.D.A. Gottlieb made a substantially similar representation to the criminal court although the evidence cited by plaintiff does not support this assertion, and deny that it was contained within a "letter."

**PLAINTIFF'S REPLY:**    In her Recommendation for Dismissal, Gottlieb stated that the prosecution could not go forward because "Kenneth Creighton was arrested and charged upon the statements of a single eyewitness" who has become unavailable". *Gross Declaration attached hereto, Exh. A.*

189.    In January 19, 2012 all charges were dismissed and plaintiff was released.  Certificate of Disposition. Exh. F: Certificate of Disposition.

**RESPONSE:**        Admit.

190.    On April 19, 2016 Kavin Thadani, defense counsel, stated "I have since made inquiries to obtain the tape and as far as I'm aware, the only tape that we have, the only VHS that I'm aware of, is the same tape that I showed them last summer or fall when they came into my office."  Exh. K, p.340 L.24- p.341 L.4.

**RESPONSE:**        Admit that Mr. Thadani made a substantially similar statement however defendants note that, upon information and belief, the original videotape containing the surveillance footage is currently located at the Office of the Corporation Counsel and a copy of that videotape, produced by the District Attorney's Office during the pendency of the criminal case, is in the possession of plaintiff's attorneys. *See* Photographs of Videotapes, Thadani Decl., Ex. B; Plaintiff Ex. O (Terab Dep.) at 16:25-17:11; *see also* Dec. 13, 2007 Criminal Court Transcript, Thadani Decl., Ex. C, at 2:11-16.  In any event, this is not a material fact.

191.    On April 19, 2016, Thadani, [sic] acknowledged that the original tape has never been produced and it is not in the possession of any of the parties or Corporation Counsel and its whereabouts is [sic] unknown.  Exh. K, p.341 L.5 - p.342 L.10.

**RESPONSE:**        Admit that Mr. Thadani made a substantially similar statement however defendants note that, upon information and belief, the original videotape containing the surveillance footage is currently located at the Office of the Corporation Counsel and a copy of that videotape, produced by the District Attorney's Office during the pendency of the criminal case, is in the possession of plaintiff's attorneys.  *See* Photographs of Videotapes, Thadani Decl., Ex. B; Plaintiff Ex. O (Terab Dep.) at 16:25-17:11; *see also* Dec. 13, 2007 Criminal Court Transcript, Thadani Decl., Ex. C, at 2:11-16.  In any event, this is not a material fact.

**PLAINTIFF'S REPLY:**    The surveillance video shown to Godino during his deposition,

which is the one that has been produced during discovery in this case deposition, was edited and is not the same version of the tape that he first reviewed when it was retrieved from the store. *Plaintiff's Exhibit K*, *38:10-21.* The tape Godino reviewed at his deposition has slow motion or the reverse, which were not present when he originally watched it. *Exh. K, 334:12-24.* Moreover, the response, made by defense counsel upon information and belief is not a fact, constitutes inadmissible hearsay and should be stricken. The statement is material on the issue of spoliation of evidence.

192.   Talty became aware for the first time that there was a confidential informant involved in the Creighton prosecution in 2016.  Exh. N, p.42 LL.2- 20.

**RESPONSE:**   Deny.  The evidence cited by plaintiff does not support this assertion. Rather, the cited evidence supports that A.D.A. Talty *was* aware that a confidential informant was involved based on at least a homicide memo and information received from A.D.A. Gottlieb. In any event, this is not material.

**PLAINTIFF'S REPLY:** The evidence cited by defendants does not support their response. Talty specifically testified that the first time he became aware that there was a confidential informant involved in this case was when he looked at a memo on the Friday before the deposition was held in 2016, therefore the statement is accurate. Moreover, it is material since as it bears directly on what Talty knew at the time he authorized plaintiff's arrest.

193.   Pursuant to NY General Municipal Law 50-h, plaintiff was orally examined on February 22, 2012.  Exh. S.

**RESPONSE:**   Admit only that plaintiff's § 50-h hearing was held on May 22, 2012 (not February 22, 2012).

194.   Defendants' Response to Plaintiff's First Set of Interrogatories,

Interrogatory #9 [sic], which sought the identity of all persons in the bodega at the time the gun was passed, stated that "plaintiff Kenneth Creighton, Dior Creighton, and Fawaz Terab were present in the bodega at or about the time that K. Creighton is alleged to have passed a firearm to D. Creighton."  Exh. L.

**RESPONSE:**      Admit but state that additional persons, including the eyewitness who informed police that he observed plaintiff pass a firearm to Dior Creighton, were also in the bodega. *See, e.g.,* Plaintiff Ex. U at 172:2-12, 173:16-20. In addition, the surveillance footage demonstrates that there were additional persons in the bodega at the time plaintiff passed the firearm to Dior Creighton.  *See, e.g.,* Plaintiff Ex. CC.

195.   Had Talty been advised of Terab's identification of Spruell as the perpetrator, which directly contradicted the CI's alleged identification of Creighton, he would not have approved Creighton's arrest.

**RESPONSE:**      No evidence is cited by plaintiff in support of this assertion.  In any event, this is speculative, inadmissible, and not a material statement of fact, and should therefore be stricken.  Defendants object to the description of the eyewitness as "the CI."

**PLAINTIFF'S REPLY:**   Talty testified that had he been advised of the conflicting identifications, he would not have authorized Creighton's arrest without further investigation. *Exh. N,164:25-165:16*.

196.   When the CI was shown the surveillance video from the bodega during his deposition on May 25, 2016, he identified Kijafa Spruell as the person who passed the gun without prompting and without hesitation.  Exh. U, p. 141, L. 17-24.

**RESPONSE:**      Deny and object to the description of the eyewitness as "the CI."      At his deposition, the eyewitness identified plaintiff on the video as the person who passed the gun

to Dior Creighton and explained that he mistakenly identified Mr. Spruell at first. *See, e.g.,* Plaintiff Ex. U at 194:25-195:14, 218:19-24, 222:9-18, 228:4-15. In any event, this is not material because the eyewitness's identification to police was not based upon any surveillance footage and was made nearly ten years ago, and the eyewitness testified that he had no doubt back in 2006 and 2007, and no doubt now, that plaintiff was the person who passed the gun to Dior Creighton. *See id.* at 181:19-182:5.

**PLAINTIFF'S REPLY:**   Plaintiff objects to this response as not supported by admissible evidence. At his deposition, when asked who the person passing the gun was he said Kijafa. *Exh. U, 141: 17-24.* It was only when defendants' attorney posed leading questions to the witness that he identified Kenneth Creighton.   After the CI had identified the person who passed the gun as Kijafa, defense counsel later asked him:

> Q: So just based on what you can see on the screen right now, can you tell who this individual is who is wearing the striped shirt?

> A. Is that possible that that's Kenneth Creighton?  A. It's a possibility.

*Plaintiff's Exh. U, 17-21*

197.   Even though Godino spoke to the CI after he had obtained the written statement from Terab implicating Spruell and not Creighton and after Terab had identified Spruell from a photo array, Godino's spiral notebook, the only record that contains any information whatsoever about the CI, does not mention Spruell.  Exh. J.

**RESPONSE:**   Admit, object to the description of the eyewitness as "the CI," and deny that Det. Godino's spiral notebook is the "only record" that contains any information whatsoever about the eyewitness. Defendants also note that Det. Godino testified that he made the eyewitness aware that another person had identified someone than plaintiff as the one who

passed the gun. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 174:2-6. In any event, this is not material.

**PLAINTIFF'S REPLY:**     Defendants have not pointed out to any record other than Godino's spiral notebook that documents the CI or anyone else identifying Kenneth Creighton as the person who passed the gun.

    198.    At the Grand Jury, the CI testified under a false name.  Exh. JJ.

**RESPONSE:**            Admit that the eyewitness testified under an incorrect last name, object to the description of the eyewitness as "the CI," but note that this is not a material fact.

    199.    Dean Roberts signed the Criminal Complaint against Creighton.  Exh. OO.

**RESPONSE:**            Admit but this is not a material fact.

    200.    Had Talty been advised of the conflicting identifications, he would not have authorized Creighton's arrest without further investigation. Exh. N, p.164 L.25 – 165 L.16.

**RESPONSE:**            This is speculative, inadmissible, and not a material statement of fact, and should therefore be stricken. Defendants note that there weren't any "conflicting identifications" at the time of plaintiff's arrest as, prior to plaintiff's arrest, Mr. Terab recanted his initial identification of Mr. Spruell and indicated that his view was obstructed, that he assumed it was Mr. Spruell because Dior Creighton and Mr. Spruell were always together, and that he had been mistaken. Mr. Terab then identified plaintiff as the person who passed the gun to Dior Creighton based on a review of the surveillance footage. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 182:17- 183:12, 185:10-16, 207:25-208:16, 210:5-9, 292:9-21. Therefore, the identifications were consistent, not conflicting.  Defendants also note that A.D.A. Talty's testimony in this regard was based upon an inaccurate and incomplete hypothetical set of facts, which he was asked to assume as true.

**PLAINTIFF'S REPLY:**      The Statement is not speculative as Talty testified that had he

been advised of the conflicting identifications, he would not have authorized Creighton's arrest

without further investigation. *Exh. N, 164:25- 165:16*. Plaintiff further objects to defendants'

response as it contains inadmissible hearsay and is not supported by the evidence or the record.

Other than testimony from Godino that at some unspecified time Terab recanted his

identification of Spruell, which alleged recantation is not documented in a single NYPD or

District Attorney record, there is no evidence to support the allegation that Terab recanted his

original identification. *Plaintiff's Exh. K, 185:10-186:10*. In any event, a recantation by a

witness years after the arrest and commencement of the prosecution does not mean that there

was probable cause to arrest and prosecute in 2007.

> 201.    The CI in this case had an extensive criminal history [sic] Statement

Exh. T p.135, L.16 - L.36.

**RESPONSE:**      Admit that the eyewitness has a criminal history but deny that such

history is "extensive."  Defendants object to the description of the eyewitness as "the CI."

> 202.    The CI was a heavily-addicted drug addict. Exh. U p.154 L.23- 155

L.13, 156 L.6 - L.17.

**RESPONSE:**      Deny and object to the description of the eyewitness as "the CI."      It is

unclear as to what time frame plaintiff is referring. In any event, the evidence cited by plaintiff

does not support this assertion. In addition, the eyewitness testified that he was not using drugs

on a regular basis around the time he saw plaintiff pass a gun to Dior Creighton. *See, e.g.,*

Plaintiff Ex. U at 31:19-21.

**PLAINTIFF'S REPLY:**      The CI testified that at the time the gun was passed, he was in the

back of the store where he ███████████████████████████ them. *Plaintiff's Exh.*

*U, 40:15-*

203.    The CI and [sic] was paid for his grand jury testimony. Rule 56.1

Statement Exh. U p.50 L.18-51, L. 12.

**RESPONSE:**    Deny that the eyewitness was "paid for his grand jury testimony," object

to the description of the eyewitness as "the CI," but admit that the eyewitness testified that he

received $100 after he finished testifying before the grand jury. *See, e.g.,* Plaintiff Ex. U at 51:2-

4, 103:14-23. Defendants note that the eyewitness testified that no one promised him any money

for testifying, that he was not expecting to receive any money for testifying, and that he was not

trying to get any money for testifying.  *See, e.g., id.* at 196:7-197:9, 200:23-201:10.

204.    The CI was actually doing drugs at the time he claims he saw the gun

being passed.  Exh. U. p.38 L.14 - p.39 L.23.

**RESPONSE:**    Deny and object to the description of the eyewitness as "the CI." The

evidence cited by plaintiff does not support this assertion.    In addition, the eyewitness

testified that he did not recall taking any drugs on December 26, 2006. *See, e.g.,* Plaintiff

Ex. U at 207: 10-12. Although the eyewitness testified at his deposition that he remembered

going to the bodega in order to buy drugs, he testified before the grand jury that he was

walking into the bodega to buy "scratch off ' tickets when he saw plaintiff pass the gun to

Dior Creighton. *See, e.g.,* Plaintiff Ex. JJ (Grand Jury Minutes) at DJ9.

Dated:      July 26, 2016
            New York, New York


                                    _____s/_____
                                    Richard Gross