UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

KENNETH CREIGHTON,

                Plaintiff,

  -against-

THE CITY OF NEW YORK, DETECTIVE DEAN
ROBERTS (Shield No. 05861), DETECTIVE GLENN
GODINO (Shield No. 2756), P.O. JOHN DOE #2,
P.O. JOHN DOE #3, DETECTIVE JOHN DOE #1,
DETECTIVE JOHN DOE #2, DETECTIVE #3 (all
John Does defendants being fictitious names to denote
Unidentified officers and detectives involved herein),
DISTRICT ATTORNEY ROBERT T. JOHNSON,
ASSISTANT DISTRICT ATTORNEY BRUCE BIRNS
and ASSISTANT DISTRICT ATTORNEY MICHAEL
COOPER,

                Defendants.

------------------------------------------------------------------------X

12-CV-7454 (PGG) (DF)

# PLAINTIFF'S *IN LIMINE* MOTIONS

PAZER, EPSTEIN & JAFFE, P.C.
20 Vesey Street, Suite 700
New York, New York 10007
(212) 227-1212
*mjaffe@pazerandepstein.com*

RUBERT & GROSS, P.C.
150 Broadway, Suite 712
New York, New York 10007
(212) 608-3103
*richardgross.court@gmail.com*

July 31, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

KENNETH CREIGHTON,

                       Plaintiff,

  -against-

THE CITY OF NEW YORK, DETECTIVE DEAN           12-CV-7454 (PGG) (DF)
ROBERTS (Shield No. 05861), DETECTIVE GLENN
GODINO (Shield No. 2756), P.O. JOHN DOE #2,
P.O. JOHN DOE #3, DETECTIVE JOHN DOE #1,
DETECTIVE JOHN DOE #2, DETECTIVE #3 (all
John Does defendants being fictitious names to denote
Unidentified officers and detectives involved herein),
DISTRICT ATTORNEY ROBERT T. JOHNSON,
ASSISTANT DISTRICT ATTORNEY BRUCE BIRNS
and ASSISTANT DISTRICT ATTORNEY MICHAEL
COOPER,

                       Defendants.

------------------------------------------------------------------X

<u>Preliminary Statement</u>

      Kenneth Creighton asserts that he was wrongfully arrested and was the victim of a malicious prosecution by Defendants on allegations that he passed a gun to his brother, Dior Creighton, which was then used in a murder moments later. During the prosecution, Plaintiff was jailed on Rikers Island for five years pending trial only to have all charges dropped against him. Creighton asserts it was Kijafa Spruell who passed the gun in question (which Spruell, in fact, admits) and further asserts that the bodega owner, Fawaz Tareb, identified Kijafa Spruell and not Kenneth Creighton to detective Glen Godino, as the individual who passed the gun in

-2-

question.   Tareb has identified Spruell on video surveillance as the individual who passed the gun and maintains he never recanted his identification of Spruell.

For purposes of these *In Limine* motions the Court is reminded that Plaintiff is presently under indictment, Bronx County Index Numbers 2016BX006685 (Criminal Court) and 00974-2016 (Supreme Court), a number of charges having been brought against him with Tareb as the complaining witness.   Plaintiff anticipates those charges will remain open as of the time the instant matter is tried.

Plaintiff's *In Limine* motions, *inter alia*, seek to limit Defendants' use of Plaintiff's prior convictions, exclude any testimony as to Tareb's alleged recantation as hearsay, and include a missing evidence charge with an adverse inference.   Plaintiff further seeks to limit questions posed by defense counsel at trial which would cause Plaintiff to have to assert his Fifth Amendment rights or which would cause Terab to testify as to the open charges currently pending against Plaintiff in which Terab is the complaining witness.

1.   **Evidence Of Other Convictions And Arrests**

Under F.R.E. Rule 609(a)(1)(A), evidence of criminal convictions for a crime punishable by imprisonment for more than one year may be used to attack a witness's character for truthfulness.   Admission, however, is not automatic, and is "subject to Rule 403, in a civil case..."   As to convictions older than ten years (i.e. before 2006), Rule 609(b)(1) and (2) prohibit evidence of stale convictions unless the probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect, and defense gives Plaintiff

reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Defense has not provided written notice of any intention to use stale convictions, so they should not be permitted to use evidence of convictions older than ten years. Nor have they made any showing that the "probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Rule 609(b)(2). Older convictions are admissible only when Defendant demonstrates "exceptional circumstances" justifying the "rare" departure from F.R.E. 609's bright-line rule against offering for impeachment convictions greater than ten years of age. Zinman v. Black & Decker, Inc., 983 F.2d 431, 434 (2d Cir. 1993) (convictions more than ten years old be should be admitted "very rarely and only in exceptional circumstances").

As to admission of evidence of qualifying convictions since 2006, Plaintiff awaits Defendant's proffer regarding convictions it seeks to offer so that specific arguments under F.R.E. 403 can be framed.

2. **Defendants Should Be Precluded From Offering Evidence Of The Alleged Recantation Of Tareb's Identification Of Spruell And Not Creighton.**

As noted above, Fawaz Tareb, the owner of the bodega owner in which the gun was passed gave a statement to Detective Godino stating Kijafa Spruell ("Kafia" in the statement) passed the gun to Dior Creighton. (Plaintiff's exhibit II) Tareb testified similarly at his deposition during discovery in the instant matter. (Plaintiff's Exhibit O) Plaintiff's counsel additionally received a recent email authored by ADA Burim Namani in which the ADA

—4—

advised that Tareb to this day maintains his position that it was Kijafa Spruell and not Kenneth Creighton who passed the gun in question and that he never recanted his statement identifying Spruell and not Creighton as the individual who passed the gun.   (Exhibit B to Gross Declaration dated July 26, 2016)   There is literally no proof of recantation by Terab whatsoever.

There is no record of a recantation in the police file.

There is no record of a recantation by Tareb in the DA's file.

To the contrary, there is a signed statement by Terab, countersigned by Detective Godino, stating "Kafia" passed the gun to Dior, and not Kenneth Creighton.  Additionally, Terab provided sworn deposition testimony in which he maintained it was Kijafa Spruell and not Kenneth Creighton who passed the gun, and he further testified under oath that he never recanted.   Furthermore, in the present prosecution against Plaintiff in criminal court Terab has maintained to the DA that he has never recanted and the DA has so advised Plaintiff's criminal counsel.

In the absence of any written documentation in any official record, signed by Terab, or some sworn testimony by Terab indicating he recanted his statement identifying Spruell and not Creighton as the individual who passed the gun, any testimony by Detective Godino or ADA Theresa Gottlieb that Terab recanted would be hearsay and inadmissible under any exceptions to the hearsay rule.

F.R.E. 803 details the circumstances under which hearsay would be admissible regardless of whether the declarant is available as a witness.   None of the exceptions to the hearsay rule, F.R.E. 803, apply herein.   Additionally, the anticipated testimony by Detective

—5—

Godino does not fall within the definitions of "statements that are not hearsay" under F.R.E. 801(d).

Plaintiff anticipates Defendants will seek to introduce proof of the alleged recantation through Detective Godino, arguing the statement is offered as proof of Detective Godino's mindset in not pursuing Spruell. However, such is not the case. The allegation that Terab recanted would actually have to be offered by Defendants as direct proof of Plaintiff having passed the gun in question thereby giving rise to probable cause, the issue at the heart of this case. As such, as indicated herein, the testimony as to the alleged recantation does not fall within any exception to the hearsay rule as it would be offered for the proof of the matter asserted.

It is further Plaintiff's position that in the absence of any supporting documentation such as a DD5 or a revised statement by Terab indicating he recanted, any such "proof" of recantation represents a feigned issue. It is simply not credible that a high-ranking detective such as Godino would not document a recantation of a witness who was central to the investigation of a murder and ancillary criminal conduct and in the absence of any supporting proof and in the face of direct testimony by Terab himself that he never recanted it is respectfully submitted that any proof of recantation should not be allowed.

To the extent the Court is inclined to permit Detective Godino to testify as to the recantation by Terab, which Plaintiff maintains should not be permitted, it is respectfully requested that the Court issue the following limiting instruction:

> Ladies and gentlemen of the jury, you have just heard Detective Godino testify that Fawaz Tareb recanted his original statement and told him that his statement that Kafia passed the gun was not true. This statement by Mr. Terab, if you believe it was made, is

> admissible only to explain Detective Godino's subsequent actions. It does not constitute evidence that Kafia did not pass the gun - it is incompetent to prove such a thing, and you may not use it for that purpose. It is up to you to decide whether such a statement was made by Mr. Terab. In so doing, you may take into account Detective Godino's interest in the outcome of this case, the presence or absence of any contemporaneous record of such statement, any contrary statements made by Mr. Terab, and any other matters bearing on Detective Godino's credibility.

In the event the Court permits Detective Godino to testify as to the recantation by Terab, under no circumstances should Detective Godino (or ADA Gottlieb for that matter) be permitted to testify that Terab indicated he would never admit to recanting out of fear of retaliation by Plaintiff. Allowing such testimony would poison the jury as under such circumstances the jury would be conditioned not to believe Terab's testimony that he never recanted and further the jury would be conditioned to believe Terab was under undue influence by Plaintiff, the undue influence being fear of retaliation by Plaintiff were Terab to recant publicly. As such, the severe prejudice to Plaintiff's case would outweigh any probative value the alleged reason behind the recantation might offer.

Furthermore, in the event the Court permits Detective Godino to testify as to the recantation by Terab, Plaintiff maintains that under no circumstances should ADA Theresa Gottlieb be permitted to testify as to Terab's alleged recantation. By the time she encountered Terab several years had gone by in the prosecution of the underlying criminal case and issues of probable cause or lack thereof had already been established. As such, any testimony by ADA Gottlieb as to any recantation would be irrelevant, would lack probative value and would be highly prejudicial. Additionally, such testimony would be offered to buttress or put the

-7-

imprimatur of "probable cause" on Godino's actions, which should not be permitted. <u>Cameron v. City of New York</u>, 598 F.3d 50 (2d Cir. 2010)

### 3. Defense Should Be Precluded From Asking Any Questions Dealing With The Pending Criminal Charges Against Plaintiff Which Would Lead To Plaintiff Having To Assert His Fifth Amendment Right Against Self-Incrimination.

Since his release from Rikers Island in 2012, Plaintiff has been the ongoing target of the police in the Forty-Second precinct, having been arrested and put through the criminal system more than ten times. All but two of those arrests resulted in a dismissal or refusal to even prosecute, if charges were actually brought at all. In just the last two instances was Mr. Creighton actually prosecuted, with the open charges noted above, to which he has plead not guilty and which charges he vehemently denies have any merit.

This Court made a determination several months ago that the current action should not be stayed pending the outcome of the criminal cases. (Docket No. 132, Order of MJ Freeman). As such, Plaintiff proceeded with his deposition and asserted his fifth amendment rights as to many of the questions asked of him at that time out of concern such questions and answers could bear on his pending criminal case. As the prosecution in the current criminal cases have not turned over any evidence pertaining to the current pending charges, leaving Plaintiff essentially in the dark as to what proof the prosecution might have against Plaintiff, he was left with no choice but to assert his fifth amendment rights out of an abundance of caution. (Certainly, in light of what transpired in the criminal prosecution giving rise to the instant civil case before this Court, Plaintiff's concerns as to proof or lack thereof in the current open criminal cases against him are not unfounded.)

–8–

Plaintiff asserts Defendants should be precluded form inquiring as to any issues which would bear upon the pending charges as such would lead to Plaintiff having to assert his Fifth Amendment rights. It is noted that the issues in the instant civil matter pending before this Court are not identical and in no way overlap the issues in the pending criminal cases against Plaintiff. Based on the charges brought and the questions which have been posed to Plaintiff at his deposition it would appear that issues surrounding Plaintiff's finances and his interactions with Terab are involved in the second pending criminal case while the sole focus of the instant civil action is whether Defendants had probable cause to arrest Plaintiff and to hold him pre-trial for five years.

It is axiomatic that a party cannot be cross-examined on the issue of arrests, only convictions, and only under certain circumstances, as discussed above. Furthermore, as the charges for which Plaintiff was arrested and for which he is being prosecuted presently remain open, causing Plaintiff to have to assert Fifth Amendment rights in front of the jury would be prejudicial to Plaintiff's civil case and would put him in the position of having to do so in front of the jury judging his credibility, among other things. As the Court is aware, FRE 403 states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: **unfair prejudice, confusing the issues**, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

It is respectfully submitted that any questions which would cause Plaintiff to have to assert his Fifth Amendment rights in light of current charges pending against him would result in "unfair prejudice" would "confuse the issues" and could "mislead the jury." The unfair prejudice is obvious, as the consequences of having to testify as to issues pertinent to open

—9—

criminal charges could have adverse consequences to Plaintiff's pending criminal case. Further, causing Plaintiff to have to assert his Fifth Amendment rights in the instant civil action in which he is a Plaintiff would put the Plaintiff "on trial" and he would run the risk of being judged as if in a criminal proceeding rather than as a Plaintiff in a civil action seeking recovery for wrongfully being held in jail for five years.  As the Defendants would not be permitted to cross-examine as to an open arrest absent conviction, they should not be permitted to ask questions which would cause the jury to understand there are pending charges against Plaintiff.

Furthermore, as the Court is well aware, Plaintiff is innocent until proven guilty.  Upon information and belief, based on conversations with Plaintiff's criminal defense counsel, the pending criminal case is thin and prosecution witnesses appear to be less than reliable.  The prosecuting ADA has not yet turned over surveillance video which would supposedly prove the prosecution's case and, upon information and belief, the current ADA is not certain it is actually so clear as to the issue it was meant to establish.  It appears defense counsel in the instant civil matter is in contact with the DA's office and has the benefit of the prosecution's information in the pending case against Plaintiff, which information neither Plaintiff nor his current criminal defense counsel or civil counsel herein possesses.  Defendants are therefore in a position of advantage and Plaintiff and Plaintiff's civil counsel are litigating somewhat in the dark, at least as to those issues.  The only way to avoid the issue would be for the civil case to be stayed pending the outcome of the criminal action, which this Court has understandably determined not to do in light of the time it has taken to bring this matter towards its conclusion due to issues raised by Defendants as to the Confidential Informant (who they now refer to as "eyewitness" or "grand jury witness").  As such, as Plaintiff must present his civil action

herein before his criminal case concludes, it would be a true miscarriage of justice were Plaintiff to be questioned so as to require him to assert Fifth Amendment rights to his detriment in the instant civil matter for fear of his testimony being used against him in his pending criminal case, only to have the pending criminal case be dismissed for want of proof of charges against which Plaintiff maintains his innocence. It would be a further miscarriage of justice if Defendants herein were able to try the instant matter from a base of knowledge as to the criminal action which went beyond that which Plaintiff's counsel possesses.

Because the probative value of any questions raised in this objection would far outweigh the prejudice, it is respectfully requested that this Court preclude any such questions by Defendants which would cause Plaintiff to have to assert his Fifth Amendment rights before the jury.

It is further noted that the instant case presents a novel situation, not often, if ever, presented to the Court. In general, when this issue arises, the Court is presented with the situation in which a criminal and civil action arising out of the same events or transactions are running on parallel tracks. As such, the issues overlap and the Courts must navigate the issue of a party asserting Fifth Amendment rights and the impact such assertion will have on the litigations and litigants before both Courts. Here, no such parallel litigations exist. Rather, as noted, the instant matter focuses on whether Plaintiff's rights were violated in his arrest in 2007 and five year pre-trial detention absent probable cause. The pending criminal cases have no such issues involved in either. Thus, it is respectfully submitted that Defendants should not be permitted to question Plaintiff as to issues which would cause him to have to assert his Fifth Amendment rights in light of the pending charges against him.

–11–

Even where a criminal and civil action are running on parallel tracks, there is no bright line test for the Court to apply to this issue but rather the Court is given the discretion to weigh the issues of probative value of the evidence versus prejudice. Brink's, Inc. v. City of New York, 717 F.2d 700 (2d Cir. 1983) ("We still must determine whether the trial court was correct in concluding that the probative value of the evidence was not "substantially outweighed by the danger of unfair prejudice" under Fed.R.Evid. 403. This balancing test, left largely to the discretion of the trial judge, United States v. Robinson, 560 F.2d 507, 514-15 (2d Cir.1977), cert. denied, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978)"). Here, the prejudice to Plaintiff would far outweigh the probative value of the proof to be elicited. As the burden is on Plaintiff to prove his case at trial herein, Plaintiff must testify before the jury in the instant matter (unlike a criminal action in which a Defendant can refuse to take the witness stand). As such questions requiring Plaintiff to assert his Fifth Amendment rights would in essence put Plaintiff on trial, to be viewed by the jury as a Defendant refusing to offer proof, rather than as a Plaintiff seeking recovery for an unjust arrest and detention, respectfully, as stated, the Plaintiff would be unfairly prejudiced. In light of the above, in the absence of good cause shown by Defendants herein, it is respectfully requested that Defendants be directed not to ask questions of Plaintiff which would bear on the charges pending against him presently. Any such questions would include those having to do with Plaintiff's relationship with bodega owner, Terab, as well as questions regarding Plaintiff's finances since his release from Rikers Island in 2012.

Additionally, it is anticipated the bodega owner, Fawaz Tareb, will be called by one or more parties to this action. While he is a witness in the case pending before this Honorable

Court, he is also the complaining witness in one of the two criminal cases currently pending in criminal court. As those charges are open and have not yet been adjudicated, it is respectfully submitted Defendants should not be permitted to question Mr. Terab regarding any issues which would bear upon the current criminal case. Any such testimony could prove to be unfairly prejudicial and not probative of any factual issues pertinent to the instant action. Further, allowing such testimony and cross examination would be tantamount to trying the criminal case pending in Bronx Supreme Court during the trial of the civil action before this Court on issues not related to the present civil action.

To the extent the Court is inclined to allow such questions to be presented to Plaintiff and/or Terab, it is respectfully requested that Defendants be directed to provide Plaintiff's counsel with a list of those questions it intends to ask of these witnesses so that appropriate objections can be made outside the presence of the jury and so that a voir dire could be conducted before the Court outside the presence of the jury on these issues as well.

Additionally, to the extent this Honorable Court determines questions will be permitted which will result in Plaintiff having to assert his fifth amendment rights before the Jury, Plaintiff seeks a limiting instruction to the jury that they must not use the refusal to answer questions as evidence of what the answer would have been, that a witness has a constitutional right to decline to answer a question on Constitutional grounds, and that the jury need not infer by such refusal that the answers would have been adverse to the witness' interest. <u>Brink's</u>, *supra*.

### 4. Detective Dean Roberts Should Be Precluded From Testifying As To His Identification of Plaintiff

Detective Dean Roberts was the arresting officer who arrested Plaintiff. Per his deposition testimony he had no first-hand knowledge as to the facts giving rise to this arrest. In fact, he testified that he was of the impression that the information giving rise to the arrest had come from the bodega owner, Terab, and not from any other witness.

It appears from Defendants' Rule 56.1 Statement of Facts that Defendants are taking the position that Roberts identified Kenneth Creighton on the video surveillance when in point of fact he specifically stated he could not make out Kenneth Creighton's face on the video. In fact, when Roberts testified at his deposition he stated "I believed the other person to be Kenneth Creighton" who passed the gun, see Pl. Exh. OO: Transcript of Dean Roberts' Deposition at p.59 ll.17-18, conceding that he could not see the face of the person passing the gun. Even viewing his testimony in the light most favorable for Defendants' position, at best Roberts testified that his belief that the person passing the gun was Kenneth Creighton was "based more on my experience of Kenneth Creighton and the general makeup of him, the physical appearance". Id. at p.60 ll. 5-7. Such testimony does not rise to the level of actually identifying Plaintiff from the video itself. In fact, if one watches the surveillance it is absolutely clear that unless one knew the person who passed the gun based on a longstanding relationship it would be impossible to identify the person passing the gun. As such, as Detective Roberts never testified he could clearly identify Kenneth Creighton on the video surveillance any statement to that effect would be categorically untrue. It is therefore respectfully requested that Detective Roberts be precluded from testifying he identified Kenneth Creighton on video surveillance as such is contrary to his testimony herein.

-14-

    5.    **The Individual Defendants Are Adverse, As Are All Defense Witnesses, And Should Be Subject To Cross-Examination During Direct Examination by Plaintiff's Counsel.**

Rule 611(c), regarding mode of interrogation and leading questions states that "[o]rdinarily, the court should allow leading questions ... when a party calls ... an adverse party, or a witness identified with an adverse party." As noted in the Advisory Committee notes to the December 2011 amendments to F.R.E. 611, the "final sentence deals with categories of witnesses automatically regarded and treated as hostile."

The individual Defendants are adverse, as are all of Defendants' witnesses. Plaintiff asks that those witnesses associated with the defense and called on Plaintiff's direct case be subject to cross-examination during their direct examination by Plaintiff's counsel.

    6.  **Missing Document Instruction With An Adverse Inference**

During this litigation, Plaintiff sought the complete police investigative file and DA's file from Defendants but learned that multiple documents had been lost and, further, the original video surveillance was not secured and was permitted to disappear as such.

Detective Godino testified he delivered the police investigative file to the DA's office but never made a copy of same to keep at the precinct. He further testified that the next time he saw the file multiple documents – as many as thirty DD5s - were missing from it. He cannot say with any certainty how many documents are missing or what those documents were.

It is axiomatic that discovery must be preserved during the course of litigation and all parties must agree the criminal prosecution of this action was ongoing from the moment Plaintiff was indicted to the moment of his release on or about January 19, 2012. Thereafter,

on February 3, 2012 a notice of claim was served on all Defendants in the instant litigation, thereby putting Defendants on notice of the litigation which is presently before this Court.  As such, at all times, from the moment the prosecution commenced against Plaintiff in the underlying criminal action up to the present time, all parties have been in litigation with one another (with the exception of the brief period from January 19, 2012 to February 3, 2012, during which time Defendants could reasonably have anticipated receiving a notice of claim for keeping Plaintiff in prison for five years and then dropping all charges).

      The missing documents include multiple DD5s which would have documented the steps taken by the detectives in their investigation, arguably would have revealed the alleged interactions with Terab which are in no way documented in the Detectives' file, arguably would have revealed the pursuit of other witnesses and/or suspects such as Spruell, and arguably would have called into question even more clearly issues surrounding probable cause as to the arrest of Kenneth Creighton.  However, by their destruction Plaintiff has been deprived of the opportunity to review same and incorporate them into the prosecution of the instant matter.  Defendants have offered absolutely no explanation or justification for their destruction whatsoever.  As such, respectfully, Defendants are subject to the missing document instruction with an adverse inference, (if not subject to even greater sanctions for destruction of evidence).  <u>Kronisch v. United States of America, et. al.</u>, 150 F.3d 112 (2d Cir. 1998); <u>Byrnie v. Town of Cromwell Bd of Education</u>, 243 F.3d 93 (2d Cir. 2001); <u>Chin v. Port Authority of New York & New Jersey</u>, 685 F.3d 135 (2d Cir. 2012).

It is further undisputed that the surveillance video in question was recorded on DVR at Tareb's bodega.  It is undisputed that rather than seize the DVR the detectives instead copied it onto VHS tape, thereby diminishing the quality of the original evidence (the DVR).

It is noted Plaintiff herein has moved for relief based on spoliation of evidence, including spoliation of the DVR which would have presented the clearest surveillance video and, it is respectfully submitted, would have revealed the person passing the gun to have been Kijafa Spruell as has been admitted by Spruell himself.  Per the spoliation motion, the VHS copy of the surveillance represents an approximately fifty percent degradation in quality of the video, which was further degraded in the copy of the copy provided to Plaintiff herein. Additionally, as noted in Plaintiff's expert's affidavit, that of police procedures expert, Walter Signorelli, once the detectives and police officers were in a position to record the DVR to video, they should have seized the DVR or the hard drive from within the DVR and safeguarded it as best evidence.  As the DVR is now no longer available per the testimony of Terab, the detectives in failing to secure same allowed for its spoliation, in violation of proper police procedure.  (It is noted Defendants have not offered any expert, or suggested they plan to offer any expert, to counter this point.)

As the deposition testimony of Terab established that the video existed on DVR but the DVR is no longer available, and as the Defendants have testified that they copied the DVR at the bodega as part of their investigation, Plaintiff has established "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it

–17–

would support that claim or defense." <u>Residential Funding Corp. v. DeGeorse Fin. Corp.</u>, 306 F.3d 99, 107 (2d Cir. 2002).

### 7. Defendants Should Be Precluded From Eliciting Testimony Of Witness, Franco Johnson

Throughout this litigation no mention was ever made by Defendants as to any witness named Franco Johnson. He is not listed as a witness in Defendants' initial disclosures or in any later disclosures made by Defendants. Additionally, his name never came up in any deposition testimony or in any of the numerous motions or letter applications made to this Honorable Court. As such, Plaintiff has never been put on notice of such witness having any information bearing on this action so that Plaintiff could depose this witness or do any other appropriate discovery as to this witness. Rather, this witness, injected into this action by way of the Joint Pre-Trial Order for the first time represents a surprise and what appears to be trial by ambush, which, respectfully, should not be permitted. In the absence of good cause shown by Defendants as to why this witness should be permitted to testify and as to what issues, it is respectfully requested that his testimony be precluded. Additionally, in the event this Honorable Court permits this witness to testify, it is respectfully requested that Plaintiff be permitted to immediately take this witness's deposition and that Defendants be directed to make the witness available for deposition at Plaintiff's request.

### 8. Defendants Should Be Precluded From Eliciting Testimony Of Witness, Gustavo Benitez

Plaintiff objects to testimony being offered at the time of trial by Defendants' proposed witness, Gustavo Benitez. Upon information and belief, this witness was Plaintiff's probation officer who was directed to detain him just prior to his arrest giving rise to the instant action.

To the extent his testimony is being offered to establish Plaintiff's criminal record and the fact that Plaintiff was on probation at the time of the arrest, such testimony is irrelevant to the issues herein and appears meant to inflame the jury while offering no probative value. In the event his testimony is being offered for some other purpose it is respectfully requested that this Honorable Court direct Defendants to provide an offer of proof as to the anticipated testimony of this witness so that Plaintiff may appropriately respond and / or object to same.

9. **Defendants Should Be Precluded From Eliciting Testimony Or Otherwise Presenting Documentary Evidence Of Awards/ Commendations Received By The Defendant Officers Or Any Other Non-Party Officer Witnesses During The Course Of Their Employment As Law Enforcement Officers.**

In police misconduct trials, counsel for Defendant law enforcement officers and ADAs frequently attempt to elicit testimony regarding awards and/or commendations that they have received throughout their career relating to acts of bravery, valor, etc. Because such testimony is irrelevant to any issue at trial, represents impermissible propensity evidence in violation of Rules 404(b) of the Federal Rules of Evidence, is inadmissible hearsay and otherwise unduly prejudicial, Plaintiff seeks an Order precluding the Defendants and their witnesses from presenting such evidence.

Whether any of the individual Defendants or non-party law enforcement officers received commendations in the past has no relevance on whether the Defendants violated Plaintiff's Constitutional rights. In fact, the sole purpose of presenting such testimony in police misconduct litigation is to convince the jury that the Defendant officers are heroes who put their lives on the line to protect the citizenry and, as a result, are more trustworthy. This

–19–

purpose, however, constitutes impermissible propensity evidence.  See Fed. R. Evid. 404(b). If Plaintiff cannot introduce past evidence of a police officer's misconduct to establish that the officer violated the Plaintiff's constitutional rights, see generally, Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991), then the Defendants cannot introduce prior evidence of favorable conduct to establish that they did not violate his constitutional rights.  See United States v. Nazzaro, 889 F.2d 1158, 1168 (1st Cir. 1989) (in criminal prosecution for conspiracy to commit mail fraud and perjury, among other things, appropriate to exclude evidence of commendations as impermissible opinion evidence and inadmissible hearsay).  See also United States v. Washington, 106 F.3d 983, 999 (D.C. Cir. 1997), (commendations not admissible under Fed. R. Evid. 404(a)(1), 405(a) or 405(b)).

Dated: August 1, 2016
       New York, NY

                                          PAZER, EPSTEIN & JAFFE, PC

                                          _____s/Michael Jaffe_____
                                          BY:   MICHAEL JAFFE, ESQ.
                                          Counsel for Plaintiff
                                          20 Vesey Street, Suite 700
                                          New York, New York 10007

                                          RUBERT & GROSS, PC

                                          _____s/Richard Gross_____
                                          BY:   RICHARD GROSS
                                          Counsel for Plaintiff
                                          150 Broadway, Suite 712
                                          New York, New York