1:12-cv-07454-PGG-DCF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH CREIGHTON,

                          Plaintiff,

      -against-

THE CITY OF NEW YORK, DETECTIVE DEAN ROBERTS (Shield No. 05861), DETECTIVE GLENN GODINO (Shield No. 2756), POLICE OFFICERS JOHN DOES 1-10 (names being fictitious and presently unknown and intended to be employees of the NYPD who were involved in Plaintiff's arrest, detention, imprisonment, and/or prosecution), DISTRICT ATTORNEY ROBERT T. JOHNSON, ASSISTANT DISTRICT ATTORNEY BRUCE BIRNS A/K/A BURNS, ASSISTANT DISTRICT ATTORNEY ED TALTY a/k/a ED TULTY and ASSISTANT DISTRICT ATTORNEY MICHAEL COOPER,

                          Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Kavin Thadani*
*Tel:  (212) 356-2351*
*Matter No. 2012-006428*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

KENNETH CREIGHTON,

                                                Plaintiff,

-against-

THE CITY OF NEW YORK, DETECTIVE DEAN ROBERTS (Shield No. 05861), DETECTIVE GLENN GODINO (Shield No. 2756), POLICE OFFICERS JOHN DOES 1-10 (names being fictitious and presently unknown and intended to be employees of the NYPD who were involved in Plaintiff's arrest, detention, imprisonment, and/or prosecution), DISTRICT ATTORNEY ROBERT T. JOHNSON, ASSISTANT DISTRICT ATTORNEY BRUCE BIRNS A/K/A BURNS, ASSISTANT DISTRICT ATTORNEY ED TALTY a/k/a ED TULTY and ASSISTANT DISTRICT ATTORNEY MICHAEL COOPER,

                                                Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

1:12-cv-07454-PGG-DCF

Defendants City of New York ("City"), Detective Dean Roberts ("Roberts"), Detective Glenn Godino ("Godino"), District Attorney Robert T. Johnson ("Johnson"), Assistant District Attorney Bruce Birns ("Birns"), and Assistant District Attorney Ed Talty ("Talty"), by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submit this Memorandum of Law in Opposition to Plaintiff's Motion for Sanctions.

**ARGUMENT**

**Plaintiff Is Not Entitled To Sanctions Because There Was No Spoliation**

Plaintiff argues that he is entitled to sanctions as a result of the alleged spoliation of evidence – specifically, surveillance footage and certain police reports ("DD5s"). As an initial matter, as explained in defendants' June 30, 2016 letter to the Court, plaintiff's motion should be properly considered as a motion *in limine* and defendants have accordingly treated it as such. *See* Docket No. 153. As explained below, plaintiff's motion for sanctions should be denied in its entirety.

**I.      Plaintiff Is Not Entitled To Sanctions With Respect To The Surveillance Footage**

   **A.     Defendants Properly Preserved The Surveillance Footage**

Fawaz Terab, the owner of the bodega, testified at his deposition that the surveillance footage was recorded onto what he believed to be a digital video recorder ("DVR"). *See* Plaintiff Ex. F, Terab Dep. at 14:14-18, 18:2-4. Mr. Terab further explained that the standard procedure for removing that footage from his DVR system is to transfer it to a videotape. *See id.* at 14:20-24, 18:5-12. That standard procedure was followed in this case. Indeed, as Mr. Terab explained at his deposition, "[w]hen the officers come, we switch from the[] DVR to the tape." *Id.* at 14:23-24. Mr. Terab also explained that he called his technician to complete that process as was the standard procedure. *See id.* at 33:9-12, 18:5-12.

Therefore, defendants properly preserved the surveillance footage in this case. Plaintiff's argument that defendants were obligated to also preserve Mr. Terab's DVR system is wholly without merit and, in any event, defendants' failure to do so certainly does not rise to the level of spoliation of evidence. Plaintiff apparently contends that defendants should have taken the unreasonable step of taking possession of Mr. Terab's surveillance system for what would now be nearly ten years, thereby forcing him to purchase a brand new system against his will when an

2

identical copy of the footage could easily be obtained by a transfer to videotape, as was the standard procedure. Under these set of circumstances, there simply is no spoliation.

Indeed, in *Crawford v. City of New London*, No. 3:11cv1371 (JBA), 2014 U.S. Dist. LEXIS 70977, at *15 (D. Conn. May 24, 2014), the court denied plaintiff's request for sanctions for spoliation of evidence under very similar circumstances. In *Crawford*, the original hard drive on which certain security footage from a high school was recorded had been recorded over. *See id.* at *5. However, prior to that occurring, defendants preserved a DVD copy of the footage. *See id.* Just like here, the high school's "standard procedure for preserving security footage is to make a copy of that footage on a DVD and to record over the original hard drive" after a short retention period. *Id.* Plaintiff claimed that the conversion of the video from one format to another (the hard drive to the DVD) made enhancement of the footage impossible. *See id.* at *6.

The court, however, held that plaintiff failed to establish that the defendants had "a duty to anticipate the format that would be most convenient for the plaintiff and to preserve evidence in that format, especially where the standard practice for preservation is to record a copy of the footage and re-use the original hard drive." *Id.* at *7. Defendants were not obligated to preserve multiple copies of the same evidence by retaining the original hard drive. *See id.* at *6.

In addition, plaintiff's claim that the surveillance footage as it existed on the DVR was somehow superior in quality and that the videotape copy is somehow significantly worse is completely speculative. The only real basis for plaintiff's claim is a declaration by John Afrides, a purported videography expert. For some unknown reason, Mr. Afrides never evaluated either the original videotape in the possession of defense counsel or even the duplicate videotape in the possession of plaintiff's counsel. Instead, Mr. Afrides reviewed a subsequently created DVD copy of the surveillance footage in rendering his opinions, which are therefore necessary flawed

3

and irrelevant.  *See* Afrides Decl. at ¶ 4.  Indeed, Mr. Afrides discusses the apparent importance of the quality of the VHS tapes being used to record but, because he did not even review the videotapes in this case, his opinions are not sufficiently tied to the facts.  *See, e.g., id.* at ¶ 19.  In any event, and most importantly, Mr. Afrides never reviewed the surveillance footage on the original DVR system on which it was recorded nor does he have any information concerning the specifications of that DVR system.  Therefore, his opinion that even the DVD copy is of a significantly lesser quality is purely speculative.

Even assuming, *arguendo*, that the footage on the DVR system was significantly clearer, there is still no basis upon which to grant plaintiff's motion for sanctions because, not only were defendants not under an obligation to preserve the same footage in multiple different formats (and therefore their failure to do so does not rise to the sufficient level of culpability required to warrant a spoliation sanction), but plaintiff has offered no evidence, except for his own wishful thinking and speculation, that a clearer version of the footage would conclusively show that he was not the person who handed the firearm to Dior Creighton on December 26, 2006.  Indeed, witnesses have identified plaintiff in the surveillance footage on both the original videotape and DVD copies.  *See, e.g.,* Roberts Dep. at 59:15-60:7, annexed to the Declaration of Kavin Thadani in Support of Defendants' Opposition to Plaintiff's Motion for Sanctions dated August 8, 2016 ("Thadani Decl.") as Ex. A; Plaintiff Ex. D, Godino Dep. at 182:17-183:12, 211:8-11; 212:8-9.  Therefore, it is unclear why an allegedly clearer version of the surveillance footage wouldn't conclusively establish that it was plaintiff who handed the firearm to Dior Creighton.

In addition, even if the DVR footage was clearer and could be enhanced[1] now, in 2016, and even if it did show that plaintiff was not the one who handed the firearm to Dior Creighton on December 26, 2006, that fact would have no bearing on whether there was probable cause to arrest and/or prosecute plaintiff at the time of his arrest / prosecution, which is the relevant inquiry here. *See, e.g., Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007); *Richard v. City of New York*, No. 97 Civ. 7990 (MBM), 2003 U.S. Dist. LEXIS 8037, at *46-47 (S.D.N.Y. May 7, 2003) ("In evaluating probable cause to arrest for the purposes of a false arrest claim, the court evaluates information available at the time of the arrest. . . . In evaluating probable cause to prosecute for the purpose of a malicious prosecution claim, the court evaluates the information available at the time the prosecution was initiated.").

Finally, any alleged failure to preserve the DVR system occurred around the time of the shooting in December 2006 and January 2007. At that point in time, it cannot seriously be argued that this civil litigation was pending or reasonably foreseeable.

Accordingly, plaintiff's motion for sanctions should be denied with respect to the defendants' alleged failure to preserve the DVR system.

---

[1] Notably, plaintiff's criminal defense attorney never made any attempt to enhance the surveillance footage that was produced to him during discovery nor is there any evidence to suggest that he requested that Mr. Terab's DVR system be preserved. *See* Raskin Dep. at 53:1-2, Thadani Decl. Ex. B.

Det. Godino also explained at his deposition that still photographs of the surveillance footage were created and were enhanced, *see, e.g.,* Plaintiff Ex. D, Godino Dep. at 403:25-404:9; Still Photographs, Thadani Decl. Ex. C, and it appears that plaintiff's expert, Mr. Afrides, did not review these still photographs nor was he even made aware of them.

### B. The Original Videotape Is Not Lost Or Destroyed

Detective Godino testified at his deposition that he gave the original videotape that was created from the DVR system to the Bronx District Attorney's Office. *See* Plaintiff Ex. D, Godino Dep. at 335:10-15. A.D.A. Birns subsequently had that surveillance videotape copied to another videotape, per the criminal court judge's request, and produced that copy to plaintiff's criminal defense attorney. *See* Dec. 13, 2007 Criminal Court Transcript at 2:11-16, Thadani Decl. Ex. D. Indeed, both the original videotape and the duplicate videotape were marked as exhibits at Mr. Terab's deposition. *See* Plaintiff Ex. F, Terab Dep. at 16:25-17:16; Photographs of Videotapes, Thadani Decl. Ex. E. The original videotape is currently in the possession of defense counsel and the duplicate videotape is currently in the possession of plaintiff's counsel.[2]

Therefore, plaintiff has no basis for contending that the original videotape is lost or destroyed. Plaintiff relies upon Det. Godino's deposition in making this claim but Det. Godino explained that his belief that the DVD copy of the surveillance footage he was shown at his deposition was different than the original footage was based upon the fact that his present recollection, ***nearly ten years later***, is that the surveillance footage played only in real time, as opposed to as in slow motion, fast motion, in reverse, etc. *See, e.g.,* Plaintiff Ex. D, Godino Dep. at 334:17-335:20. However, as is evidenced merely by reviewing the surveillance footage and, as even plaintiff's own expert witness, Mr. Afrides, explained "those playback functions originated at the original DVR recordings. This was revealed by the data embedded in the video

---

[2] In his motion, plaintiff disingenuously fails to mention either of these videotapes and instead refers only to the DVD copy of the surveillance footage.

(date, time and playback function) seen at the upper right portion of each scene." Afrides Decl. at ¶ 15.[3] Therefore, Det. Godino's recollection in this respect is simply inaccurate.

In addition, Det. Godino's belief that the original videotape was lost or missing was based solely upon defense counsel's representation to him, which at the time was grounded in a mistaken belief. *See* Plaintiff Ex. D, Godino Dep. at 339:19-22, 342:12-343:2.[4]

However, even assuming, *arguendo*, that the original videotape was lost, plaintiff's motion for sanctions still fails. First, plaintiff cannot prove that the quality of the allegedly lost or destroyed videotape is any better than even the DVD copies of the surveillance footage. Indeed, Det. Godino testified that the DVD copy of the footage, which was screened for him on a large high-definition flat screen television, was of a **better** quality than the footage he reviewed shortly after the shooting. *See* Plaintiff Ex. E, Godino Dep. at 270:6-10, 346:10-18.

In addition, plaintiff contends that the original videotape was lost or destroyed during the pendency of the criminal case and, at that point in time, this civil litigation was not pending or reasonably foreseeable.

Accordingly, plaintiff's motion for sanctions should be denied with respect to the defendants' alleged loss or destruction of the original videotape.[5]

---

[3] Notably, plaintiff's criminal defense attorney does not refute this contention and concedes that it is possible that the surveillance footage played in such a manner. *See* Raskin Dep. at 52:13-25, Thadani Decl. Ex. B.

[4] At the time of Det. Godino's deposition, defense counsel, who took over the case on behalf of defendants in June 2015, mistakenly believed that the original videotape was lost or missing because it did not play in real time. However, after further review of the footage and the case files, defense counsel clarified both to plaintiff's counsel and, subsequently, before the Court, that he was mistaken in his belief that the original videotape was lost or missing because it was readily apparent that the original footage did not in fact play in real time. *See, e.g.,* May 19, 2016 Transcript at 32:7-33:3, 35:17-36:6, Thadani Decl. Ex. F.

[5] Defendants also move to preclude plaintiff from improperly suggesting to the jury at trial that the original videotape was lost or destroyed.

## II.     Plaintiff Is Not Entitled To Sanctions With Respect To Allegedly Missing Police Reports or DD5s

As an initial matter, plaintiff is unable to prove the actual loss of any police reports or DD5s despite Det. Godino's testimony, which is based upon his present recollection, *nearly ten years* after the police investigation.  For example, neither plaintiff's nor Dior Creighton's criminal defense attorneys' files appear to contain any additional police reports or DD5s that were not also produced by defendants in this civil case.

In any event, there is no evidence with respect to exactly how many DD5s are allegedly missing and, more importantly, because we do not know the content of the allegedly missing documents, there is no reason to believe, and plaintiff is unable to prove, as he must, that the documents were beneficial to plaintiff's case.  Plaintiff even concedes in his motion that we "cannot possible know that was contained in" the allegedly missing DD5s.  Any argument that the allegedly missing documents would be beneficial to plaintiff's case here is based entirely on speculation.[6]  Indeed, it is just as likely that the missing documents would have been beneficial to defendants' case (for example, one of the allegedly missing DD5s may have documented the fact that Mr. Terab recanted his initial identification of Kijafa Spruell and instead identified plaintiff as the person who handed the firearm to Dior Creighton inside his bodega).

Nor has plaintiff proven that the loss of documents was done with a culpable state of mind.  Indeed, witnesses have testified that, during the criminal case, a thorough search was

---

[6]  Plaintiff has absolutely no basis in making the argument that the missing DD5s may have contained additional information with respect to the eyewitness whom they refer to as a "confidential informant" as Det. Godino testified that he did not create any DD5s in connection with the information he obtained from this eyewitness.  *See, e.g.,* Plaintiff Ex. D, Godino Dep. at. 229:14-16; Plaintiff's Statement Pursuant to Local Rule 56.1 at ¶ 148; Plaintiff's Response to Defendants' Rule 56.1 Statement at ¶¶ 123, 255.

conducted to locate the files documents believed to have been missing. *See, e.g.,* Plaintiff Ex. D, Godino Dep. at 97:11-21.

Finally, plaintiff contends that the police reports went missing during the pendency of the criminal case and, therefore, spoliation is not appropriate because the loss of documents did not occur at a time when this civil litigation was pending or reasonably foreseeable.[7]

Accordingly, plaintiff's motion for sanctions should be denied with respect to the defendants' alleged loss of certain police reports or DD5s.

## CONCLUSION

For the reasons set forth above, defendants respectfully submit that plaintiff's motion for sanctions should be denied in its entirety.

Dated:  New York, New York
        August 8, 2016

> ZACHARY W. CARTER
> Corporation Counsel of the City of New York
> *Attorney for Defendants*
> 100 Church Street
> New York, New York  10007
> (212) 356-2351
>
> By:  /s/ Kavin Thadani
>      Kavin Thadani

TO:  **VIA ECF**
     Richard Gross, Esq.
     Michael Jaffe, Esq.
     *Attorneys for Plaintiff*

---

[7] Plaintiff does not allege, nor does he have a good faith basis for alleging, that any documents were lost or destroyed following plaintiff's filing of his notice of claim and/or civil action. Therefore, a finding of spoliation is not appropriate here.