1:12-cv-07454-PGG-DCF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH CREIGHTON,

                                        Plaintiff,

        -against-

THE CITY OF NEW YORK, DETECTIVE DEAN
ROBERTS (Shield No. 05861), DETECTIVE GLENN
GODINO (Shield No. 2756), POLICE OFFICERS JOHN
DOES 1-10 (names being fictitious and presently
unknown and intended to be employees of the NYPD who
were involved in Plaintiff's arrest, detention,
imprisonment, and/or prosecution), DISTRICT
ATTORNEY ROBERT T. JOHNSON, ASSISTANT
DISTRICT ATTORNEY BRUCE BIRNS A/K/A
BURNS, ASSISTANT DISTRICT ATTORNEY ED
TALTY a/k/a ED TULTY and ASSISTANT DISTRICT
ATTORNEY MICHAEL COOPER,

                                        Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTIONS *IN
LIMINE***

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Kavin Thadani*
*Tel:  (212) 356-2351*
*Matter No. 2012-006428*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... iv

ARGUMENT

POINT I

PLAINTIFF'S PRIOR FELONY CONVICTION IS
ADMISSIBLE............................................................................................ 2

POINT II

FAWAZ TERAB'S RECANTATION OF HIS
INITIAL IDENTIFICATION OF KIJAFA
SPRUELL AND SUBSEQUENT
IDENTIFICATION OF PLAINTIFF BOTH PRIOR
TO PLAINTIFF'S ARREST AND WHILE THE
CRIMINAL CASE WAS PENDING IS NOT
HEARSAY AND IS ADMISSIBLE ........................................................... 3

POINT III

DEFENDANTS SHOULD NOT BE PRECLUDED
FROM QUESTIONING PLAINTIFF WITH
RESPECT TO HIS PENDING CRIMINAL CASE
IN WHICH FAWAZ TERAB IS A
COMPLAINING VICTIM ......................................................................... 9

POINT IV

DETECTIVE ROBERTS SHOULD NOT BE
PRECLUDED FROM TESTIFYING THAT HE
IDENTIFIED PLAINTIFF FROM THE
SURVEILLANCE FOOTAGE................................................................. 13

POINT V

NOT EVERY WITNESS LISTED AS A
POTENTIAL DEFENSE WITNESS IS
NECESSARILY ADVERSE TO PLAINTIFF......................................... 14

POINT VI

PLAINTIFF IS NOT ENTITLED TO A MISSING
DOCUMENT OR ADVERSE INFERENCE
INSTRUCTION....................................................................................... 15

**Statutes**                                                                                          **Page**

POINT VII

      FRANCO   JOHNSON   SHOULD   NOT   BE
      PRECLUDED FROM TESTIFYING AT TRIAL ................................... 15

POINT VIII

      GUSTAVO   BENITEZ   SHOULD   NOT   BE
      PRECLUDED FROM TESTIFYING AT TRIAL ................................... 16

POINT IX

      DEFENDANTS  DO  NOT  INTEND  TO  ELICIT
      TESTIMONY   OR   OTHERWISE   PRESENT
      DOCUMENTARY  EVIDENCE  OF  AWARDS /
      COMMENDATIONS ............................................................................ 17

CONCLUSION...................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Pages**

*Batson-Kirk v. City of New York*,
   No. 07-CV-1950 (KAM) (JMA),
   2009 U.S. Dist. LEXIS 44841 (E.D.N.Y. May 28, 2009) ........................................................4

*Breeden v. City of New York*,
   No. 09-CV-4995 (ARR)(JMA),
   2014 U.S. Dist. LEXIS 4165 (E.D.N.Y. Jan. 13, 2014) ........................................................4

*Brink's, Inc. v. New York*,
   717 F.2d 700 (2d Cir. 1983)..........................................................................................11, 12

*Gentile v. Cnty. of Suffolk*,
   129 F.R.D. 435 (E.D.N.Y. 1990) ......................................................................................8, 11

*George v. Celotex Corp.*,
   914 F.2d 26, 31 (2d Cir. 1990)..........................................................................................7, 11

*Marin v. City of New York*,
   No. 04-CV-3194,
   2006 U.S. Dist. LEXIS 53048 (E.D.N.Y. Aug. 1, 2006) ..........................................................5

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
   No. 09 Civ. 3255,
   2012 U.S. Dist. LEXIS 92435 (S.D.N.Y. July 2, 2012) ........................................................7, 11

*SEC v. Reserve Mgmt. Co. (In re Reserve Fund Secs. & Derivative Litig.)*,
   Nos. 09 MD. 2011 (PGG), 09 Civ. 4346 (PGG),
   2012 U.S. Dist. LEXIS 191098 (S.D.N.Y. Sep. 10, 2012)......................................................14

*Torraco v. Port Auth.*,
   539 F. Supp. 2d 632 (E.D.N.Y. 2008) ...............................................................................4, 5

*United States v. Hayes*,
553 F.2d 824 (2d Cir. 1977)...............................................................................................2

*United States v. Puzzo*,
928 F.2d 1356 (2d Cir. 1991)..............................................................................................4

**Statutes**                                                       **Page**

Fed. R. Evid. 403 ...................................................................................2, 3, 7, 8, 17

Fed. R. Evid. 404 ................................................................................................17

Fed. R. Evid. 609 ..................................................................................................2

Fed R. Evid. 611 ................................................................................................14

Fed. R. Evid. 801 ..................................................................................................4

Fed. R. Evid. 803 ..................................................................................................5

**Other Authorities**

5-801 Weinstein's Federal Evidence § 801.11 (2015)....................................4

Fed. R. Evid. 801 Advisory Comm. Notes ......................................................4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

KENNETH CREIGHTON,

                         Plaintiff,

              -against-

THE CITY OF NEW YORK, DETECTIVE DEAN
ROBERTS (Shield No. 05861), DETECTIVE GLENN
GODINO (Shield No. 2756), POLICE OFFICERS JOHN
DOES 1-10 (names being fictitious and presently unknown
and intended to be employees of the NYPD who were
involved in Plaintiff's arrest, detention, imprisonment,
and/or prosecution), DISTRICT ATTORNEY ROBERT T.
JOHNSON, ASSISTANT DISTRICT ATTORNEY
BRUCE BIRNS A/K/A BURNS, ASSISTANT DISTRICT
ATTORNEY ED TALTY a/k/a ED TULTY and
ASSISTANT DISTRICT ATTORNEY MICHAEL
COOPER,

                         Defendants.

------------------------------------------------------------------------- x

**DEFENDANTS'
MEMORANDUM OF LAW
IN OPPOSITION TO
PLAINTIFF'S MOTIONS *IN
LIMINE***

1:12-cv-07454-PGG-DCF

        Defendants City of New York ("City"), Detective Dean Roberts ("Roberts"), Detective

Glenn Godino ("Godino"), District Attorney Robert T. Johnson ("Johnson"), Assistant District

Attorney Bruce Birns ("Birns"), and Assistant District Attorney Ed Talty ("Talty"), by their

attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submit

this Memorandum of Law in Opposition to Plaintiff's Motions *in Limine*.

**ARGUMENT**

**POINT I**

**PLAINTIFF'S PRIOR FELONY CONVICTION IS ADMISSIBLE**

As explained in Point XII of Defendants' Memorandum of Law in Support of their Motions *in Limine*, plaintiff was previously convicted of Attempted Robbery in the Second Degree on October 6, 2005.   Plaintiff was thereafter sentenced, on November 21, 2005, to a period of five years probation.   However, plaintiff was not released from confinement in connection with this conviction until January 19, 2012 when he pled guilty to violating his probation and was sentenced to time served.

Pursuant to Fed. R. Evid. 609(b), notice of intent to use a conviction is required only where "more than 10 years have passed since the witness's conviction ***or*** release from confinement for it, ***whichever is later***."   (emphasis added.)   Because plaintiff's release from confinement was less than ten years ago, no notice is required and his robbery conviction is admissible under Fed. R. Evid. 609 to impeach plaintiff's credibility subject only to Fed. R. Evid. 403.[1]

In applying the Fed. R. Evid. 403 balancing test, courts examine:  (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness.  *See, e.g., United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977).  Here, the balance weighs in favor of admission of this conviction.  The conviction is for a second degree felony and is a serious offense wherein plaintiff, "while working in concert with another," "attempted to forcibly

---

[1]   Nevertheless, defendants still gave written notice to plaintiff of their intent to introduce evidence regarding this felony conviction within their motions *in limine*.

remove [U.S. currency] from the victim" while another apprehended individual "struggled with the victim and shoots the victim [in] the leg causing a severed artery."  *See* Arrest Report No. B05651384-N, annexed to the Declaration of Kavin Thadani in Support of Defendants' Opposition to Plaintiff's Motions *in Limine* dated August 8, 2016 ("Thadani Decl.") as Ex. A. Thus, the impeachment value is high.  There is no similarity between the past crime and the conduct at issue, so the notion that the evidence will be used inappropriately for propensity as opposed to plaintiff's character for truth is minimal.  Finally, the plaintiff's credibility is clearly important here.  Thus, Rule 403 allows the admission of this conviction.

## POINT II

**FAWAZ TERAB'S RECANTATION OF HIS INITIAL IDENTIFICATION OF KIJAFA SPRUELL AND SUBSEQUENT IDENTIFICATION OF PLAINTIFF BOTH PRIOR TO PLAINTIFF'S ARREST AND WHILE THE CRIMINAL CASE WAS PENDING IS NOT HEARSAY AND IS ADMISSIBLE**

In his motion, plaintiff falsely contends that there "is literally no proof of recantation by Terab whatsoever."  On the contrary, multiple witnesses have testified that, both prior to plaintiff's arrest and while the criminal case was pending, Mr. Terab not only recanted his initial identification of Kijafa Spruell, indicating that his view was obstructed, that he assumed it was Mr. Spruell because Dior Creighton and Mr. Spruell were always together, and that he had been mistaken, but that he identified plaintiff as the person who handed a firearm to Dior Creighton based on his review of surveillance footage.  *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 182:17-183:12, 185:10-16, 207:25-208:16, 210:5-9, 211:8-11, 212:8-9, 292:9-21, 378:22-379:4; Plaintiff Ex. R (Gottlieb Dep.) at 143:12-19, 218:24-220:17.  There is also documentary evidence that Mr.

Terab identified plaintiff while the criminal case was pending.  *See* Aug. 19, 2011 Ltr., Thadani Decl. Ex. B.

Plaintiff's motion to preclude this evidence indicates a fundamental misunderstanding of hearsay.  Pursuant to Fed. R. Evid. 801(c), hearsay is an out-of-court statement offered for the purpose of "prov[ing] the truth of the matter asserted in the statement."  "'If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted.'  Thus, if a declarant's statement is not offered for its truth, the declarant's credibility is not material, and the statement is not hearsay."   5-801 Weinstein's Federal Evidence § 801.11 (2015) (quoting Fed. R. Evid. 801 Advisory Comm. Notes).

It is also well-settled that, where a witness's statements are not being offered for the truth of the matter asserted but rather to determine whether the information a police officer had when a criminal defendant was arrested established probable cause, such statements are not hearsay. *See, e.g., Batson-Kirk v. City of New York*, No. 07-CV-1950 (KAM) (JMA), 2009 U.S. Dist. LEXIS 44841, at *15 (E.D.N.Y. May 28, 2009) ("[T]he eyewitness's statements regarding plaintiff are not being offered for the truth of the matter asserted, i.e., that plaintiff in fact assaulted the victim, but rather to determine whether the information Detective Brown had when he arrested plaintiff establishes probable cause."); *see also, e.g., United States v. Puzzo*, 928 F.2d 1356, 1365 (2d Cir. 1991) (noting that evidence offered to show the effects of statements on a listener, or as proof of the defendant's statement of mind, are not hearsay); *Breeden v. City of New York*, No. 09-CV-4995 (ARR)(JMA), 2014 U.S. Dist. LEXIS 4165, at *15 (E.D.N.Y. Jan. 13, 2014) ("A statement is admissible non-hearsay when it is offered as evidence of the effect of a statement on the listener, the knowledge motivating his actions, or his state of mind at the relevant point in time."); *Torraco v. Port Auth.*, 539 F. Supp. 2d 632, 637 n.2 (E.D.N.Y. 2008)

("The statements, to which Sgt. Goldberg testified, are admissible at least on the issue of probable cause as they form part of the information that he had in determining to make an arrest. They are therefore not being offered for the truth of the matters asserted, and do not constitute hearsay."); *Marin v. City of New York*, No. 04-CV-3194, 2006 U.S. Dist. LEXIS 53048, at *18 (E.D.N.Y. Aug. 1, 2006) (finding that "because the statements are offered to show the information Detective Lynch had when he arrested Marin, they are not inadmissible hearsay").

An out-of-court statement is not hearsay merely because it is not documented "in any official record" and "signed" as plaintiff appears to suggest.

Here, testimony from Det. Godino, the lead detective in the case, and A.D.A. Theresa Gottlieb, one of the lead prosecutors in the case, that Mr. Terab told them that he mistakenly identified Mr. Spruell and that it was plaintiff who handed the firearm to Dior Creighton is not hearsay because such testimony would be offered to prove only that Mr. Terab made those statements and the effect they had on Det. Godino and A.D.A. Gottlieb, respectively. Such testimony would not be offered to prove the truth of the matter asserted within Mr. Terab's statements (i.e., that his view was in fact obstructed, that he was in fact mistaken, that plaintiff did in fact hand the firearm to Dior Creighton, etc.) but rather, again, to show the effect Mr. Terab's statements had on Det. Godino in determining whether there was probable cause to arrest plaintiff (or Mr. Spruell for that matter) and, subsequently, on A.D.A. Gottlieb and Det. Godino on whether there was probable cause to continue with the prosecution of plaintiff. Indeed, it does not matter whether Mr. Terab's statements were in fact true or not. Because such testimony is, by definition, not hearsay, Fed. R. Evid. 803, which sets forth exceptions to hearsay, does not apply.

Whether Mr. Terab himself denies ever recanting his initial identification and identifying plaintiff has no bearing on whether testimony or evidence suggesting that he did is admissible. Plaintiff's arguments in this regard go to weight, not admissibility.   Similarly, plaintiff's arguments regarding the credibility of any testimony or evidence that Mr. Terab recanted and identified plaintiff likewise go to weight, not admissibility.

Plaintiff incorrectly claims that "[t]he allegation that Terab recanted would actually have to be offered by Defendants as direct proof of Plaintiff having passed the gun in question."  In fact, it is not relevant whether plaintiff in fact handed the firearm to Dior Creighton or not.  Rather, the pertinent question for trial is whether there was probable cause to believe he did.

Plaintiff's suggested limiting instruction is overbroad and palpably improper.  Plaintiff would have the Court serve as a mouthpiece for plaintiff's counsel and essentially argue to the jury that Det. Godino's testimony specifically regarding Mr. Terab is untruthful.   Plaintiff's proposed limiting instruction also conveniently fails to address all of the evidence that suggests that Mr. Terab did recant his initial identification and identify plaintiff, and that Mr. Terab has been untruthful when testifying that he never did so.

For example, plaintiff has admitted to loaning Mr. Terab $15,000 sometime after his release in January 2012. *See, e.g.,* Mar. 8, 2016 Crim. Ct. Transcript, Thadani Decl. Ex. C, at 6:23-25.  Plaintiff also invoked his 5th Amendment right against self-incrimination at his deposition when asked about whether he ever paid Mr. Terab to make any statements in connection with this case, whether he ever promised Mr. Terab any money for his testimony in this case, and whether he ever paid Mr. Terab any money to testify that he saw Mr. Spruell pass the firearm, instead of him.  *See* K. Creighton Dep. (May 27, 2016), Thadani Decl. Ex. D, at 17:21-18:7, 19:1-19:6, 38:4:18.

6

Mr. Terab also previously indicated that he is fearful of plaintiff and that plaintiff has physically assaulted him, robbed him, and threatened to kill him, and that he would never repeat that it was plaintiff who passed the firearm in his store. *See, e.g.,* Plaintiff Ex. K (Godino Dep.) at 183:13-24; Plaintiff Ex. R (Gottlieb Dep.) at 218:24-220:17; Mar. 7, 2016 Crim. Ct. Compl. Thadani Decl. Ex. E. Notably, plaintiff invoked his 5th Amendment right against self-incrimination at his deposition when asked about whether he ever threatened physical injury, threatened to kill, pushed, punched, hit, or fought with Mr. Terab, and when asked about whether he ever threatened any violence towards Mr. Terab so that he would testify he saw Mr. Spruell pass the gun, instead of him. *See, e.g.,* K. Creighton Dep. (May 27, 2016), Thadani Decl, Ex. D, at 10:8-11:18, 38:19-39:1.

Plaintiff's argument that neither Det. Godino nor A.D.A. Gottlieb should be permitted to testify that Mr. Terab told them that he would never again admit that he identified plaintiff due to a fear for his safety is also without merit. This evidence is highly probative as to why Mr. Terab may be testifying that he never identified plaintiff, despite the fact that there is significant evidence to the contrary. Plaintiff seems to be under the erroneous impression that just because certain evidence is harmful to your case means that it should be automatically excluded as unfairly prejudicial. Rather, "[e]vidence cannot be excluded under Fed. R. Evid. 403 on the basis that, due to its relevance, such evidence has a negative impact on a party's litigation position." *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, No. 09 Civ. 3255, 2012 U.S. Dist. LEXIS 92435, at *31 (S.D.N.Y. July 2, 2012); s*ee also, e.g., George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir. 1990) ("Because Rule 403 permits the exclusion of probative evidence, it is an extraordinary remedy that must be used sparingly. . . . Any prejudice to [defendant] was derived from the [evidence's] probative force and thus it did not *unfairly* prejudice [defendant].")

(emphasis in original); *Gentile v. Cnty. of Suffolk*, 129 F.R.D. 435, 461 (E.D.N.Y. 1990) ("Rule 403 was not . . . intended to be used to exclude evidence merely because it damages or discredits a party's claim." ).  Relevant evidence is unfairly prejudicial under Fed. R. Evid. 403 only if it "involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'"  *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (citation omitted).  Here, plaintiff is certainly not able to make any such showing.

Plaintiff also curiously takes the position that A.D.A. Gottlieb should not be permitted to testify that Mr. Terab identified plaintiff as the person who handed the firearm to Dior Creighton because that identification was made to her after plaintiff was arrested and while the criminal case was pending, arguing that such testimony would be irrelevant.  As an initial matter, the fact that Mr. Terab identified plaintiff on a separate occasion and to a different person years later is relevant because it makes it more likely, or more probable, than not that Mr. Terab did in fact recant and identify plaintiff to Det. Godino prior to plaintiff's arrest.  In addition, Mr. Terab's identification of plaintiff following plaintiff's arrest is relevant to both plaintiff's intentional ***continued*** prosecution claim and his malicious prosecution claim.  Indeed, plaintiff has conceded as much.

For example, with respect to his intentional continued prosecution claim, plaintiff proposed that the jury be instructed that "a detainee is entitled to release if it is objectively unreasonable to ***continue*** to detain him or her."  Joint Proposed Jury Charges, Docket No. 200, at 69.  Similarly, with respect to his malicious prosecution claim, plaintiff proposed that the jury be instructed that "it is plaintiff's burden to demonstrate that there was a lack of probable cause to commence or ***continue*** the prosecution."  *Id.* at 60.  Certainly whether a second witness identified plaintiff (or continued to identify plaintiff) while the criminal case was pending is

relevant to the issue of whether it was objectively unreasonable to continue to detain plaintiff and/or whether there was probable cause to continue the prosecution against plaintiff.

Accordingly, plaintiff's motion *in limine* to preclude evidence of Mr. Terab's recantation of his initial identification of Mr. Spruell and his identification of plaintiff should be denied.

### POINT III

**DEFENDANTS SHOULD NOT BE PRECLUDED FROM QUESTIONING PLAINTIFF WITH RESPECT TO HIS PENDING CRIMINAL CASE IN WHICH FAWAZ TERAB IS A COMPLAINING VICTIM**

On March 7, 2016, plaintiff was arrested for, *inter alia*, robbery, burglary, petit larceny, criminal trespass and aggravated harassment.  One of the complaining victims, and the individual who signed the criminal court complaint, is none other than plaintiff's purported "star witness," Fawaz Terab.  *See* Mar. 7, 2016 Criminal Court Complaint, Thadani Decl. Ex. E; Mar. 8, 2016 Crim. Ct. Transcript, Thadani Decl. Ex. C, at 6:13-14, 6:21-22.  Specifically, Mr. Terab has accused plaintiff of not only stealing money from his bodega, but threatening to kill both him and his employees.  *See* Mar. 7, 2016 Criminal Court Complaint, Thadani Decl. Ex. E.  Plaintiff was subsequently indicted by a grand jury and his criminal case is currently pending.

The key factual dispute in this case is whether Mr. Terab recanted his initial identification of Mr. Spruell and instead identified plaintiff prior to plaintiff's arrest, although defendants maintain that, even if he did not, there was still probable cause to arrest and prosecute plaintiff.  Thus, Mr. Terab's allegations and questions with respect to plaintiff's relationship and interactions with Mr. Terab are extremely relevant in this case.  Such questions do not confuse the issues at all.  In fact, these are the issues.

Certainly questions as to whether plaintiff ever threatened physical injury against Mr. Terab, threatened to kill Mr. Terab, or pushed, punched, hit or fought with Mr. Terab is highly probative and directly relevant to Mr. Terab's motives to deny identifying plaintiff as the person who handed the firearm to Dior Creighton in his bodega.  Indeed, Mr. Terab's allegations directly support the testimony of Det. Godino and A.D.A. Gottlieb that Mr. Terab told them he would never repeat that he identified plaintiff due to a fear for his safety.

Similarly, because plaintiff has already admitted that he loaned Mr. Terab $15,000, "coincidentally" around the time Mr. Terab first signed a statement denying that he ever identified plaintiff, *see* Mar. 8, 2016 Crim. Ct. Transcript, Thadani Decl. Ex. C, at 6:23-25, 6:21-22, questions as to whether plaintiff ever paid Mr. Terab to make any statements in connection with this case, whether he ever promised Mr. Terab any money for his testimony in this case, and whether he ever paid Mr. Terab any money to testify that he saw Mr. Spruell pass the gun, instead of him are also extremely relevant.

Indeed, Magistrate Judge Freeman even informed the parties that questioning with respect to plaintiff's relationship and interactions with Mr. Terab was highly relevant in this case:

> I think this relationship between [plaintiff] and the store owner would be relevant. It seems if the store owner might be saying that look, I had some private conversations with the police and I said I want to be on record saying that I saw someone else pass[] the gun because I'm scared of this guy and I don't want him to think I'm responsible for ratting him out.  That would be ***highly relevant***.  If he really had such fear or if he had such past dealings that led to such fear, I think it would be relevant to whether the statements that plaintiff[] [is] relying on in this case that [the] police did not to [a] diligent investigation because they didn't pursue the lead of the very store owner who was there who said somebody else passed the gun.  ***I think it is very much bound up with this whole claim that plaintiff has asserted.  I can't see how it would not be relevant***.  *See* K. Creighton Dep. (Apr. 28, 2016), Thadani Decl. Ex. F, at 97:24-98:18 (emphasis added).
>
> . . .

10

Do I think there is relevance for this case to the present relationship between witnesses?  I still that there could be because if somebody's testimony is colored by fear or bias, then it seems that witness may be less credible and what this witness says about what happened back then may be less credible if he had reason to lie because he is scared or if he is biased or some such based on current relationship.  ***It is hard for me to see asking whether this witness has a relationship with the plaintiff of some sort or another and what the nature of it is, it is hard for me to say that should be off bounds in a civil case.***  *Id.* at 99:14-100:3 (emphasis added).

To be clear, the relevance of this evidence and this questioning is not the arrest itself or even the pending criminal charges but the very serious allegations Mr. Terab has made against the plaintiff.  Because Mr. Terab is the complaining victim against plaintiff, this is not a situation involving a completely unrelated incident involving unrelated people.  Rather, if this were an unrelated incident that didn't involve any of the witnesses in this case, this would be a non-issue.

Under these circumstances, it cannot be seriously argued that the probative value of such questions is ***substantially*** outweighed by the danger of unfair prejudice.  Again, just because something is harmful to your case does not mean that it is unfairly prejudicial.  *See, e.g., George*, 914 F.2d at 31; *MBIA Ins. Corp.*, No. 09 Civ. 3255, 2012 U.S. Dist. LEXIS 92435, at *31; *Gentile*, 129 F.R.D. at 461.

Moreover, there is no requirement that plaintiff testify in this case.  If plaintiff wants to avoid being put in a situation at trial where he may need to invoke his Fifth Amendment right against self-incrimination in response to a relevant question bearing on the very issues in dispute in this case, he simply could choose not to take the stand.[2]  Or plaintiff could answer the questions he is asked at trial.  As explained in *Brink's, Inc. v. New York*, 717 F.2d 700, 707 (2d Cir. 1983), a case cited by plaintiff, the Fifth Amendment privilege "is merely an *option of*

---

[2]   Of course, during his deposition, plaintiff has already invoked his Fifth Amendment right against self-incrimination and, as explained in Point IX of Defendants' Motions *in Limine*, defendants are entitled to an adverse inference instruction as a result.

*refusal*, not a prohibition of inquiry and it is universally conceded that the question may be put to the *witness on the stand*."  (internal quotation marks and citation omitted) (emphasis in original.)

Plaintiff's request for a list of questions defendants intend to ask at trial is, respectfully, absurd.  Not surprisingly, plaintiff has not even attempted to support his request with any legal authority.  In addition, plaintiff's request for a limiting instruction is wholly improper and contrary to the well-established law with respect to a party asserting his Fifth Amendment privilege in a civil case.[3]

Plaintiff's request that defendants be precluded from questioning Mr. Terab about his allegations in the criminal case is also without merit.  As explained, such questioning bears directly on Mr. Terab's credibility in this case.

Accordingly, plaintiff's motion *in limine* to preclude defendants from exercising their right to defend themselves against plaintiff's baseless claims by asking questions that bear directly on the central issue at trial should be denied.[4]

---

[3]   Plaintiff disingenuously suggests that *Brink's* supports the proposition that a "jury need not infer by [a refusal to answer questions] that the answers would have been adverse to the witness' interest."  Indeed, in *Brink's*, the cited jury instruction was that "**you may**, but need not, infer by such refusal that the answers would have been adverse to the witness' interest," which is consistent with the well-established law.  *Id.* (emphasis added).

[4]   Although it has no bearing on his motion, defendants would be remiss not to point out that plaintiff states that the "prosecution witnesses appear to be less than reliable."  Plaintiff's *In Limine* Motions at 10.  This is a remarkable admission considering the fact that the prosecution's witness, the complaining victim, is Mr. Terab, plaintiff's purported "star witness" in this case.

## POINT IV

## DETECTIVE ROBERTS SHOULD NOT BE PRECLUDED FROM TESTIFYING THAT HE IDENTIFIED PLAINTIFF FROM THE SURVEILLANCE FOOTAGE

Detective Roberts should not be precluded from testifying that he identified plaintiff as the person who handed a firearm to Dior Creighton from the surveillance footage recovered from the bodega, and plaintiff has offered no proper justification whatsoever for precluding such testimony.

In support of his argument for preclusion, although essentially conceding that Det. Roberts identified plaintiff, plaintiff falsely contends that Det. Roberts testified that he could not make out plaintiff's face when reviewing the surveillance footage and, therefore, his identifications is not credible.  In fact, Det. Roberts testified only that plaintiff's face was not "that visible."  *See* Plaintiff Ex. OO (Roberts Dep.) at 59:19-60:7. [5]

In any event, all of plaintiff's arguments go to the *weight* of the testimony and not its *admissibility*.  Certainly, plaintiff is more than free to cross-examine Det. Roberts on the viability of his identification but there are no grounds upon which to preclude such testimony.

Notably, plaintiff cites to no authority whatsoever in seeking to preclude Det. Roberts' testimony in this regard.  Accordingly, plaintiff's motion to preclude Det. Roberts from testifying that he identified plaintiff as the person who handed a firearm to Dior Creighton from the surveillance footage should be denied.

---

[5]    Although it has no bearing on his argument, plaintiff also falsely contends that Det. Roberts had no first-hand knowledge as to the facts giving rise to plaintiff's arrest.  On the contrary, Det. Roberts testified that he was informed by Det. Godino, *inter alia*, that a "confidential informant" was an eyewitness and that Mr. Terab identified plaintiff as the person who handed the gun to Dior Creighton in his bodega.  *See, e.g.,* Plaintiff Ex. OO (Roberts Dep.) at 46:16-47:5, 51:4-12, 131:6-12.

## POINT V

## NOT EVERY WITNESS LISTED AS A POTENTIAL DEFENSE WITNESS IS ADVERSE TO PLAINTIFF

Plaintiff makes the curious argument that "all of Defendants' witnesses" who are called by plaintiff during his case-in-chief are necessarily adverse and, therefore, should be subject to cross-examination by plaintiff. To the extent plaintiff is referring to the witnesses defendants have listed on the Joint Pre-Trial Order ("JPTO"), plaintiff's contention defies reason. For example, defendants have listed as potential witnesses plaintiff's criminal defense attorney, Michael Raskin, and Fawaz Terab, who plaintiff has unabashedly described as his "star witness." It cannot be seriously contended that these witnesses are adverse to the plaintiff.

In addition, the "Eyewitness" is not adverse to plaintiff just because he was listed as a potential witness by the defendants either. Fed R. Evid. 611(c) provides, *inter alia*, that a witness must be "identified with an adverse party" before leading questions may be used on direct examination. "The term 'witness identified with an adverse party' is intended to apply broadly to an identification based upon employment by the party or by virtue of a demonstrated connection to an opposing party." *SEC v. Reserve Mgmt. Co. (In re Reserve Fund Secs. & Derivative Litig.)*, Nos. 09 MD. 2011 (PGG), 09 Civ. 4346 (PGG), 2012 U.S. Dist. LEXIS 191098, at *37 (S.D.N.Y. Sep. 10, 2012) (Gardephe, J.) (citation omitted). No such connection between the "Eyewitness" (or Mr. Raskin or Mr. Terab, for that matter) and defendants has been established and therefore plaintiff's request in this regard is without merit and, at the very least, premature. Certainly to the extent that a particular witness is hostile at trial, the parties are more than able to raise this issue with the Court as needed.

Therefore, plaintiff's motion *in limine* to preclude **all** witnesses listed by defendants on the JPTO should be denied.

## POINT VI

### PLAINTIFF IS NOT ENTITLED TO A MISSING DOCUMENT OR ADVERSE INFERENCE INSTRUCTION

For the sake of brevity and to avoid needless repetition, defendants refer the Court to their motion in opposition to plaintiff's motion for sanctions for a detailed discussion as to why plaintiff is not entitled to a missing document or adverse inference instruction.[6]

## POINT VII

### FRANCO JOHNSON SHOULD NOT BE PRECLUDED FROM TESTIFYING AT TRIAL

Upon information and belief, Franco Johnson is one of the detectives involved in the investigation which resulted in plaintiff's March 7, 2016 arrest discussed above.  Defendants have listed Det. Johnson as a potential witness out of an abundance of caution as a possible impeachment witness.  Upon information and belief, Det. Johnson spoke with Mr. Terab with respect to his complaints against plaintiff which led to plaintiff's subsequent arrest and prosecution.  Should Mr. Terab, who is expected to testify on behalf of plaintiff, testify untruthfully with respect to his claims against plaintiff as it relates to the pending criminal case, defendants should be permitted to call Det. Johnson as essentially a rebuttal witness in order to impeach Mr. Terab.

As explained above, the facts underlying plaintiff's pending criminal case, particularly Mr. Terab's documented allegations that plaintiff not only repeatedly stole money and items

---

[6]   Defendants do note, however, that, while Walter Signorelli appears to suggest in his report that the police should have seized the physical DVR or the DVR's hard drive, a point which plaintiff fails to make in his motion for sanctions, Mr. Signorelli did not cite to any written police procedures which supports such a requirement or obligation, not that such evidence would be outcome determinative in any event.

from his store but threatened to kill him, are extremely relevant in this case where plaintiff almost entirely relies upon Mr. Terab's initial identification of Kijafa Spruell (while ignoring that Mr. Terab repeatedly recanted that identification and instead identified plaintiff) in arguing that there was no probable cause to arrest and prosecute him.

Accordingly, plaintiff's motion *in limine* to preclude Det. Johnson from testifying at trial should be denied.[7]

## POINT VIII

### GUSTAVO BENITEZ SHOULD NOT BE PRECLUDED FROM TESTIFYING AT TRIAL

Gustavo Benitez was plaintiff's probation officer at the time of plaintiff's arrest and the person who filed the violation of probation against plaintiff shortly after his arrest on January 10, 2007, and who advised plaintiff on December 28, 2006, two days after the shooting and nearly two weeks before his arrest, that he would be doing so.  As discussed in Defendants' Motion for Summary Judgment and Point VII of Defendants' Motions *in Limine*, the fact that plaintiff was on probation at the time of his arrest, and more specifically that he was charged with (and convicted of) violating the terms of his probation and was held in custody pursuant to a probation hold (thus preventing him from making bail and being released), is highly probative not only to damages but to plaintiff's claims of malicious prosecution (i.e., deprivation of liberty) and intentional prolonged detention.  In addition, because plaintiff was in violation of his probation even prior to his arrest on January 10, 2007, as a result of a conviction (and three arrests) during his probation, there was probable cause to arrest and prosecute plaintiff on that basis alone.

---

[7]   Plaintiff's motion is curious considering that he has listed Burim Namani, the Assistant District Attorney assigned to his pending criminal case, as a witness on the JPTO.

16

Defendants have listed Mr. Benitez as a potential witness to not only testify as to plaintiff's probation violation but also because he is the author and/or a custodian with respect to certain exhibits defendants have listed on the JPTO to which plaintiff has objected on hearsay grounds.  *See* Joint Pre-Trial Order, Docket No. 198, at 19-20 (Exhibits B and K).

Accordingly, plaintiff's motion *in limine* to preclude Mr. Benitez from testifying at trial should be denied.

## POINT IX

**DEFENDANTS DO NOT INTEND TO ELICIT TESTIMONY OR OTHERWISE PRESENT DOCUMENTARY EVIDNECE OF AWARDS / COMMENDATIONS**

For the same reason why defendants' motion *in limine* seeking to preclude plaintiff from inquiring about any disciplinary histories and/or civil rights actions which have been filed against the defendant or witness officers should be granted (i.e., that such evidence is inadmissible pursuant to Fed. R. Evid. 403 and 404(b)), defendants do not intend to elicit any testimony or otherwise present documentary evidence of awards and/or commendations received by the defendant or witness officers.

## <u>CONCLUSION</u>

For the reasons set forth above, defendants respectfully submit that plaintiff's motions *in limine* should be denied in their entirety.

Dated:        New York, New York
              August 8, 2016

                              ZACHARY W. CARTER
                              Corporation Counsel of the City of New York
                              *Attorney for Defendants*
                              100 Church Street
                              New York, New York  10007
                              (212) 356-2351


                              By:     /s/ Kavin Thadani                        
                                      Kavin Thadani


TO:    **<u>VIA ECF</u>**
       Richard Gross, Esq.
       Michael Jaffe, Esq.
       *Attorneys for Plaintiff*

18