UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

KENNETH CREIGHTON,

                    Plaintiff,

           -against-                            12 CV 7454 (PGG)(DCF)

THE CITY OF NEW YORK, DETECTIVE DEAN
ROBERTS (Shield No. 05861), DETECTIVE GLENN
GODINO (Shield No. 2756), POLICE OFFICERS
JOHN DOES 1-10 (names being fictitious and presently
unknown and intended to be employees of the NYPD
who were involved in Plaintiff's arrest, detention,
imprisonment, and/or prosecution), DISTRICT
ATTORNEY ROBERT T. JOHNSON, ASSISTANT
DISTRICT ATTORNEY BRUCE BIRNS, ASSISTANT
DISTRICT ATTORNEY ED TALTY a/k/a ED TULTY
and ASSISTANT DISTRICT ATTORNEY MICHAEL
COOPER,

                    Defendants.

-------------------------------------------------------------------- X

## PLAINTIFF'S RESPONSE TO
## DEFENDANTS' *IN LIMINE* MOTIONS

PAZER, EPSTEIN & JAFFE, P.C.          RUBERT & GROSS, P.C.
20 Vesey Street, Suite 700               150 Broadway, Suite 712
New York, New York 10007           New York, New York 10007
Phone (212) 227-1212                  Phone (212) 608-3103

                                         August 8, 2016

TABLE OF CONTENTS

Preliminary Statement                                                                    1

POINT I
THE CITY REMAINS A PARTY TO THE ACTION AND SHOULD
NOT BE REMOVED FROM THE CAPTION OR THE CASE.                      1

POINT II
PLAINTIFF'S COUNSEL SHOULD NOT BE PRECLUDED FROM
REFERRING TO THE CITY'S ATTORNEYS AS "CITY ATTORNEYS."        4

POINT III
PLAINTIFF SHOULD BE PERMITTED TO SUGGEST A
DOLLAR AMOUNT TO THE JURY DURING SUMMATION.                      5

POINT IV
THE NYPD PATROL GUIDE RULES PERTAINING TO
CONFIDENTIAL INFORMANTS ARE RELEVANT AND
ADMISSIBLE ON THE ISSUE OF THE RELIABILITY OF
THE INFORMATION PROVIDED BY THE CI.                                       6

POINT V
NEITHER PLAINTIFF'S PRIOR CONVICTIONS NOR
PRIOR ARRESTS SHOULD BE ADMITTED INTO EVIDENCE.              9

POINT VI
THE ISSUE OF PLAINTIFF'S DAMAGES IS FOR THE JURY TO
DECIDE AND CANNOT BE DETERMINED ON A MOTION
IN LIMINE BASED ON SPECULATION.                                            15

POINT VII
 KIJAFA SPRUELL IS A KEY WITNESS IN THE SEARCH FOR THE
TRUTH IN THIS CASE AND SHOULD NOT BE PRECLUDED FROM
TESTIFYING AT TRIAL.                                                              18

POINT VIII
PLAINTIFF SHOULD NOT BE PENALIZED WITH AN ADVERSE
INFERENCE FOR INVOKING HIS FIFTH AMENDMENT RIGHTS.          21


POINT IX
PLAINTIFF SHOULD NOT BE PRECLUDED FROM CALLING
KEISHA ENGLAND OR KIRSTIN MALDONADO AS TRIAL WITNESSES.     23


POINT X
EVIDENCE OF PLAINTIFF'S PRIOR CONVICTION SHOULD NOT
BE ADMITTED INTO EVIDENCE.                                 24


POINT XI
PLAINTIFF'S RESERVATION OF RIGHTS                          26


Conclusion                                                 26

TABLE OF AUTHORITIES

*Arias v. City of New York*, 22 A.D.3d 436 (2nd Dept., 2005)                                          8

*Blake v. City of New York*, No. 05 Cv. 6652 (BSJ)
(S.D.N.Y. 2007)                                                                                      4

*Bullard v. City of New York*, No. 01 Civ. 11613
2003 WL 168444 (S.D.N.Y. Jan. 20, 2003)                                                         19, 24

*Eckardt v. City of White Plains*, 87 A.D.3d 1049 (2nd Dept., 2011)                                  3

*Ferguson v. City of New York*, 73 A.D.3d 649 (1st Dept., 2010)                                      8

*Fiacco v. City of Rensselaer*, 783 F.2d 319 (2d Cir.1986)                                           11

*Hernandez v. Kelly*, No. 09-CV-1576 (TLM) (LB) (E.D.N.Y. May 27, 2011)                              4

*Holland v. City of Poughkeepsie*, 90 A.D.3d 841 (2nd Dept., 2011)                                   3

*Jean-Laurent v. Hennessy*, No. 05-CV-1155(KAM) (E.D.N.Y. October 24, 2011)                          4

*Jenkins v. New York City Police Department*, 13 Civ. 3405(KPF)
2015 WL 4660899 (August 6, 2015 SDNY)                                                               17

*Lepore v. Town of Greenburgh,* 120 A.D.3d 1202 (2nd Dept., 2014)                                    3

*Lightfoot v. Union Carbide Corp.*, 110 F.3d 898 (2d Cir., 1997)                                     5

*Lubecki v City of New* York, 304 A.D.2d 224 (1st Dept., 2003)
*lv. denied* 2 N.Y.3d 701 (2004)                                                                     8

*Luce v. United States*, 469 U.S. 38 (1984)                                                          1

*Michelson v. United States*, 335 U.S. 469 (1948)                                                   10

*Mileski v. Long Island R. Co.*, 499 F.2d 1169 (2nd Cir. 1974)                                       6

*Nat'l Union Fire Ins. Co. v. L.E. Meyer Co. Group*, 937 F.Supp. 276
(S.D.N.Y. 1996)                                                                                      1

*Newsome v. County of Suffolk*, 109 A.D.3d 802 (2nd Dept., 2013)                                     8

*People v. Harrell*, 209 A.D.2d 160 (1st Dept., 1994)                                               23

*Ramos v. Cnty. Of Suffolk*, 707 F. Supp. 2d 421 (E.D.N.Y. 2010)                                    13

*Rodriguez v. City of New York*, 189 A.D.2d 166 (1st Dept., 1993)      8

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995)      19, 24

*Tatum v. City of New York*, 2009 WL 1748044 (S.D.N.Y. 2009)      6

*Udemba v. Nicoli*, 237 F.3d 8 (1st Cir. 2001)      12

*United States v. Paredes*, 176 F.Supp.2d 179 (S.D.N.Y.2001)      1

*Velez v. City of New York*, 157 A.D.2d 370 (1st Dept.,1990)      8

## PRELIMINARY STATEMENT

Plaintiff submits this Memorandum of Law in opposition to Defendants' motion *in limine*.

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F.Supp.2d 179, 181 (S.D.N.Y.2001). Indeed, courts considering a motion in limine may reserve decision until trial, so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. v. L.E. Meyer Co. Group*, 937 F.Supp. 276 at 287 (S.D.N.Y. 1996).   Further, the court's ruling regarding a motion in limine is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce*, 469 U.S. at 41.

## POINT I

### THE CITY REMAINS A PARTY TO THE ACTION AND SHOULD NOT BE REMOVED FROM THE CAPTION OR THE CASE.

Plaintiff consents to the amendment of the caption to remove the John Doe Defendants, DA Robert T. Johnson and ADA Michael Cooper. Plaintiff opposes removing the City of New York as a named Defendant for the reasons stated in Plaintiff's opposition to Defendant's motion for summary judgment and those discussed *infra*.

At the outset, Defendants' assertion that "plaintiff has agreed to withdraw his municipal liability claims against the City" is incorrect.   For Defendant to maintain such position is disingenuous at best and purposely misleading at worst. At no time did Plaintiff withdraw his state-law claims against the City for false arrest, malicious prosecution or abuse of process. In support of Defendants' patently incorrect position, they cite to Docket No. 82, which is a letter written and

signed by <u>defense counsel</u> (not Plaintiff's counsel) in which he states that "Plaintiff has agreed to withdraw his *Monell* claim, his claim for negligence, his claim for unreasonable continued prosecution, and his claim for intentional infliction of emotional distress as against the City of New York, only." *See Docket No. 82*. The document speaks for itself and makes clear Plaintiff did not withdraw his state-law claim for false arrest, malicious prosecution and abuse of process against the City.   Plaintiff's counsel has made this issue clear to defense yet they continue to pursue this argument despite it being incorrect and lacking any basis.

Plaintiff's Amended complaint is unequivocal. The First Request for Relief asserts state-law claims against <u>all Defendants</u> for state law false arrest.; the Second Request for Relief asserts state-law claims for malicious prosecution against <u>all Defendants</u>; the third Request for Relief asserts claims for malicious abuse of process <u>all Defendants</u>.   Each and every allegation contained in Plaintiff's First, Second and Third Requests for Relief is asserted as to <u>all Defendants</u>, which includes the City of New York, who was and remains a Defendant with respect to the three state-law claims. *See Plaintiff's Amended Complaint, Jaffe Declaration, Exhibit A, ¶¶ 42-82.* Moreover, in his Amended Complaint, Plaintiff not only asserts that Godino, Roberts and other unnamed police officers were employed by the City of New York but also that they were acting within the scope of their employment. *Plaintiff's Amended Complaint ¶¶ 2-15*

Significantly, Defendants do not cite to any authority to support their bold assertion that Plaintiff was required to use the words "respondeat superior" to assert state law claims for false arrest, malicious prosecution and abuse of process against the City of New York.   Under New York law, Plaintiff may seek to hold the City directly liable for false arrest, malicious prosecution and malicious abuse of process for the willful conduct of any City employee, whether named or

not, sued or not, under the doctrine of *respondeat superior* or vicarious liability. *Eckardt v. City of White Plains*, 87 A.D.3d 1049 (2nd Dept., 2011) [unlike a claim pursuant to 42 USC § 1983, a municipality may be vicariously liable on a state law assault and battery claim for torts committed by a police officer under a theory of respondeat superior]; *Holland v. City of Poughkeepsie*, 90 A.D.3d 841 (2nd Dept., 2011).

In point of fact, to hold the City liable under New York State law for false arrest, malicious prosecution and abuse of process, Plaintiff need not name or sue any individual police officer. While Defendants correctly state in their Memorandum of Law that Plaintiff never identified the John Does police officers named in the caption, this is of no moment with respect to his state-law claims against the City. As noted, under New York State law, the officers do not have to be named in order to hold the City responsible for their wrongful conduct. *See, e.g., Lepore v. Town of Greenburgh,* 120 A.D.3d 1202 (2nd Dept., 2014).

Nor have Defendants provided any authority to support their assertion that because the individually named police officers, Glenn Godino and Dean Roberts, were acting within the scope of their employment, the City is not a proper party. While it is true that the City would be vicariously liable for the actions of Roberts and Godino, its liability is not limited to the conduct of those two police officers.   There were many police officers involved in the events that are the subject of this lawsuit.   Thus, the City may be held liable under state law for any wrongful conduct of any police officer involved in Plaintiff's arrest and prosecution, whether he/she has been identified by name or is a party to the action. *See., e.g., Eckardt, supra; Holland, supra, Lepore, supra*.

Arguing that the City should be removed from the caption, Defendants rely on a sole District Court case, *Blake v. City of New York*, No. 05 Cv. 6652 (BSJ) (S.D.N.Y. 2007). *See Defendants' Memorandum of Law, page 3, footnote 2.* Of note, the Court in *Blake* Court did not cite any authority to support its conclusion that referring to the City as a named Defendant is "unnecessary and could confuse the jury". More importantly, in this case, Defendants are not merely seeking to not have the City not mentioned, they are asking to have it deleted as a party as Plaintiff had not sued it or it was improperly sued, which is not the case. Finally, because the City is liable for the actions of all police officers, not just the named ones, it is an appropriate Defendant in this case and the jury should be so advised./1

Here, the City must remain a party to this action for the reasons set forth above and Defendants' motion to have the Court declare otherwise should be denied in its entirety.

## POINT II
### PLAINTIFF'S COUNSEL SHOULD NOT BE PRECLUDED FROM REFERRING TO THE CITY'S ATTORNEYS AS "CITY ATTORNEYS."

Equally without merit is Defendants' motion to preclude Plaintiff's counsel from referring to the City's attorney as "City attorneys." First, in support of this proposition, Defendants cite to two District Court cases, *Hernandez v. Kelly*, No. 09-CV-1576 (TLM) (LB) (E.D.N.Y. May 27, 2011) and *Jean-Laurent v. Hennessy*, No. 05-CV-1155(KAM) (E.D.N.Y. October 24, 2011) for which the Court granted a similar motion to preclude Plaintiff from referring to the City precisely because the City was not a Defendant. *See Defendants' Memorandum of Law, p. 4.* That is not

---

1. If plaintiff had only sued the City for his state-law claims, as he is permitted to do, Defendants could not possibly argue that the City should not be mentioned.

the case here, where the City, as discussed above and in opposition to Defendants' motion for summary judgment, is a direct Defendant in Plaintiff's state-law claims.

The Corporation Counsel's office represents the City in this case and Plaintiff's counsels should not be precluded from referring to the City's attorneys as such if they so choose.  It is properly descriptive of the attorneys who represent the City and it is no way no way inflammatory or prejudicial.

With respect to Defendants' motion that the Plaintiff be precluded from introducing or otherwise referring to the possibility that the City will indemnify the individual Defendants, Plaintiff does not intend to introduce such evidence before the jury, provided that Defendants do not attempt to adduce evidence of their personal financial resources at trial or even remotely suggest that the individual Defendants will be exposed to having to pay judgment out of their own pockets.  To the extent Defendants make any such reference, it is respectfully requested that Plaintiff then be permitted to advise the jury that the individual Defendants are being indemnified by the City of New York.

## POINT III

### PLAINTIFF SHOULD BE PERMITTED TO SUGGEST A
### DOLLAR AMOUNT TO THE JURY DURING SUMMATION.

As Defendants correctly state, the Second Circuit has not adopted a prohibition of suggesting a specific dollar amount as damages during opening statements or summations by counsel.  The Second Circuit favors a flexible approach and leaves this issue to the discretion of the Trial Court Judge.  *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898 (2d Cir., 1997).  While the trial court may prohibit the attorneys from suggesting a dollar amount as compensation, alternatively, it can impose reasonable limitations as it may prescribe.  Where the court permits

the attorneys to suggest a dollar amount, the court should caution the jury that the dollar figures advanced by counsel do not constitute evidence but merely represent argument, which the jury is free to disregard in its deliberations.   *Mileski v. Long Island R. Co.*, 499 F.2d 1169 (2nd Cir. 1974).

Another sensible approach is the one followed by this Court in *Tatum v. City of New York*, 2009 WL 1748044 (S.D.N.Y. 2009) wherein it did not permit Plaintiff's counsel to suggest a specific damage award in his opening statement but reserved decision on whether such a suggestion would be permitted during summation.

In the instant matter, which presents claims for loss of civil liberties, absent specific economic damages, undoubtedly defense counsel will suggest to the jury, in opening and summation, that it should award Plaintiff nothing or nominal damages (in fact, Defendants have so indicated in their pre-trial submissions). As such, it is respectfully submitted Plaintiff should be given a similar opportunity to suggest to the jury what Plaintiff's counsel believes would be an appropriate verdict to compensate Plaintiff for having lost five years of his life, with an instruction that such a suggestion is not evidence and the jury is free to disregard it.

## POINT IV
### THE NYPD PATROL GUIDE RULES PERTAINING TO CONFIDENTIAL INFORMANTS ARE RELEVANT AND ADMISSIBLE ON THE ISSUE OF THE RELIABILITY OF THE INFORMATION PROVIDED BY THE CI.

Incredibly, after fighting tooth and nail to keep secret the identity of the sole person who allegedly identified Kenneth Creighton as the person who passed the gun because he was a confidential informant, Defendants now claim that he was merely a "witness" who happened to be an active confidential informant.   *See Defendants' Memorandum of Law, p. 10, footnote 6.*   If, as Defendants now assert, this person was merely a witness and not acting as a confidential informant,

records of his existence as a witness, such as DD5s and witness statements would have and should have been prepared.   None were prepared.   If the "witness" formerly known as a CI, feared that it would become public knowledge that he was an active confidential informant, all that was necessary to protect that information was to redact the word "CI" from Detective Godino's spiral notebook and identify him by name as a "witness" just as all other witnesses were identified. Defendants cannot have their cake and eat it too. The person cannot be designated a "confidential informant" at one point during the litigation in order to keep his identity secret and as a mere "witness" at another point in order to suit Defendants' purpose and argue that the Patrol Guide's rules concerning confidential informants are irrelevant.

Defendants miss the point when they argue that violation of the Patrol Guide does not give rise to a 1983 claim. Plaintiff's position is not that the Patrol Guide forms the basis for § 1983 liability but rather that the violation of the Patrol Guide Section 212-68 with respect to the handling of confidential informants and the procedures that must be followed are relevant to the issue of whether the confidential informant in this case was proven to be credible and reliable as Defendants claim.

The Patrol Guide requirements with respect to the use of confidential informants and the information that must be kept about them is not merely a guideline as Defendants suggest.   Thus, for example, Section 212-68 (30) is unequivocal: it mandates that written reports on CIs be submitted; that information supplied by the CI be evaluated for quality and accuracy and reported. If a CI is found to be untruthful, he must be deactivated.   Clearly, following the protocols of the Patrol Guide ensure that the information provided by a particular CI is accurate and reliable.   As such, the Guidelines are relevant to the issue of the CI's reliability in this case.

Significantly, Defendants do not cite any authority from the Second Circuit to support their position that the Patrol Guide may not be admitted into evidence because it is irrelevant to the determination of whether Plaintiff's constitutional rights were violated.

More importantly whether a police officer followed Department protocols is relevant on the issue whether Defendants are immune from liability.    A municipality is immune from liability for conduct involving the exercise of discretion and reasoned judgment provided that the officers' actions are not inconsistent with acceptable police practice. *Lubecki v City of New* York, 304 A.D.2d 224 (1st  Dept., 2003), *lv. denied* 2 N.Y.3d 701 (2004); *Arias v. City of New York*, 22 A.D.3d 436 (2nd Dept., 2005); *Rodriguez v. City of New York*, 189 A.D.2d 166 (1st Dept., 1993); *Velez v. City of New York*, 157 A.D.2d 370 (1st Dept.,1990); *Ferguson v. City of New York*, 73 A.D.3d 649, (1st Dept., 2010) [Defendant's conduct was in complete disregard of police procedure and decedent's rights].

In *Lubecki, supra,* the City argued, as it does here, that the Police Department Patrol Guide may not be used as a basis for imposing liability against the municipality because it is neither a rule nor a statute. The *Lubecki* Court, rejecting this argument, held that the Patrol Guide is admissible for the purpose of evaluating whether the officers adhered to or materially deviated from prescribed protocol. The Court further noted that "the immunity afforded a municipality for its employee's discretionary conduct does not extend to situations where, as here, the police officer violates acceptable police practice". *Id*; *see, also, Newsome v. County of Suffolk*, 109 A.D.3d 802 (2 Dept., 2013). As such, the Patrol Guide rules governing the use of confidential informants is relevant and admissible and Defendants' motion to preclude its use should be denied.

–8–

POINT V

## NEITHER PLAINTIFF'S PRIOR CONVICTIONS NOR
## PRIOR ARRESTS SHOULD BE ADMITTED INTO EVIDENCE.

Plaintiff in the instant action spent five years in Rikers Island awaiting trial for a crime he did not commit.  As soon as his brother pled guilty to attempted murder, all charges against Plaintiff were dismissed. In their motion *in limine*, Defendants seek to introduce evidence that Plaintiff had been arrested prior to his arrest on January 10, 2007 and that he has been subsequently arrested.

While the title of Point VI refers to Defendants' argument that Plaintiff's previous incarceration should be admitted into evidence, in the very first page of that point, Defendants change the discourse and instead argue that Plaintiff's prior and subsequent arrests, not incarceration, should be admitted into evidence.

First addressing the issue of Plaintiff's prior incarceration, Defendants fail to apprise the Court that prior to his being incarcerated for five years in connection with the arrest that is the subject of this litigation, Plaintiff, who at the time of his arrest in 2007 was eighteen years old, had been incarcerated a total of approximately three weeks.  *See Plaintiff's Supplemental Response to Defendants' Second Set of Interrogatories, Jaffe Declaration, Exhibit B.*  By contrast, in this case, Plaintiff spent five years in Riker's Island where he was subjected to a gang attack in his prison cell which was orchestrated by a correction officer.  *See Excerpts of Plaintiff's Second Deposition, Jaffe Declaration, Exhibit C.*  Plaintiff was on suicide watch for several years, having tried to take his own life after being attacked, spent countless months in solitary confinement, missed the birth of his son and lost his grandmother who passed away during his incarceration and who was the closest person to him in his life.  Suggesting that spending three weeks in Rikers Island on a prior

occasion would serve to mitigate the impact of enduring five years of living on Rikers Island stretches the bounds of logic and reason and suggests that the only purpose for Defendants' seeking to introduce Plaintiff's prior three-week incarceration is to inflame the jury and tarnish Plaintiff as a bad actor.

When one balances the impact that three weeks in custody may have had on Plaintiff versus the impact of five years of pre-trial detention in one of the most dangerous prisons in the country, the absurdity of Defendants' argument that they should be able to introduce evidence that Plaintiff was previously incarcerated to prove lack of causation as to damages is self-evident.

The inadmissibility of evidence of prior and subsequent arrests, which Defendants wish to introduce at trial, is even more farfetched than the admissibility of a total of three weeks of prior incarceration. Under F.R.E. 609, prior arrests, absent conviction, are inadmissible. Defendants are not permitted to question Plaintiff about prior arrests any more than Plaintiff would be permitted to question Defendants as to prior arrests. *Michelson v. United States*, 335 U.S. 469 (1948) ["Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness."].

Well aware that F.R.E. 609 and F.R.E. 608 would not permit them to introduce evidence of prior arrests, seeking to use the issue of Plaintiff's character, Defendants seek to make an end run on the prohibition against the introduction of such evidence by claiming that under F.R.E. 404 they should be permitted to introduce evidence of Plaintiff's prior arrests arguing same somehow minimize or obviate the full impact of having five years of his young life taken from him by being wrongfully incarcerated at Rikers Island.

–10–

Not only do Defendants seek to offer evidence of prior arrests but also evidence of subsequent arrests for the purported purpose of establishing that the impact of the five-year incarceration in the instant case is blunted by Plaintiff's other arrest-related experiences. Plaintiff submits, however, that it is difficult, if not impossible, to envision how Plaintiff's subsequent arrests, which have not resulted in any extended jail time, could possibly be the cause of his emotional and psychological injuries as opposed to the five years he was wrongfully imprisoned at Rikers Island for a crime he did not commit. *See Plaintiff's Response to Defendant's Second Set of Interrogatories, Jaffe Declaration, Exhibit D.*

In addition to the relevancy of the evidence that a party seeks to offer, several Rules of Evidence bear on the court's determination of admissibility. In determining whether to permit or preclude the evidence, the Court must first do a probative-prejudice balancing analysis as provided in Federal Rule of Evidence 403. Rule 403 permits the exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403. The district court has broad discretion in making decisions under Rule 403's probative-prejudice balancing analysis. *Fiacco v. City of Rensselaer*, 783 F.2d 319, 327–28 (2d Cir.1986).

Plaintiff respectfully submits that in doing a probative-prejudice analysis, the probative value of prior arrests is irrelevant in this case, where Plaintiff was detained on Rikers Island in custody for over five years. Moreover, assuming, *arguendo*, that the prior arrests were relevant, the prejudice of such evidence disproportionately outweighs any value it may arguably have.

Defendants have not cited any authority from the Second Circuit in support of their proposition that Plaintiff's arrests should be admitted on the issue of damages. Defendants cite to

–11–

*Udemba v. Nicoli*, 237 F.3d 8 (1ˢᵗ Cir. 2001), is not only distinguishable on the facts from the case before the Court but also emphasizes that "balancing is a quintessentially fact-sensitive enterprise, and the trial judge is in the best position to make such fact bound assessments". *Id*.

The Plaintiff in *Udemba* was arrested for disturbing the peace and was subsequently acquitted. He commenced a civil suit seeking damages, in part, for emotional injuries sustained as a result of the arrest having been reported in the local newspapers. Defendants sought to introduce evidence of a subsequent arrest of the Plaintiff, which was also reported in the local newspapers. Defendants' avowed purpose for introducing evidence of the subsequent arrest was to be able to argue that the publication in the newspaper of the second arrest could well have caused or contributed to Plaintiff's emotional damages. Under those very different facts, the *Udemba* Court concluded that "given the appellant's testimony on direct examination linking his mental anguish to the newspaper reportage of his arrest, the publicity about the "second arrest" incident had obvious probative worth as to the nature and extent of the ensuing damages".

The instant matter is entirely distinguishable from *Udemba*. Plaintiff herein claims emotional damages as well as deprivation of liberty, among others, for being incarcerated in Rikers Island for a full five years for a crime he did not commit. There is no causation overlap whatsoever, unlike the situation presented in *Udemba*. For Defendants to claim that other arrests, for which, unlike in this case, Plaintiff was not incarcerated, somehow serve to interfere with causation of damages is disingenuous and is nothing more than a roundabout way of getting evidence before the jury for the sole purpose of prejudicing the jury against Plaintiff. As the *Udemba* Court made clear, the trial court's discretion governs, and it is respectfully submitted that

–12–

in the instant case, discretion should be exercised in favor of keeping out proof of other arrests as the prejudice outweighs its questionable probative value.

As to the remainder of the cases cited by Defendants, it appears that they have scoured other trial court rulings on motions, which provide no details of the facts on which the rulings were made. The citation to those cases only illustrates that those particular judges, under the facts of those particular cases have ruled a certain way.   While rulings from other District Judges may be persuasive under the particular facts in which they were issued, they are not binding on this Court. This is especially so where, as here, the balancing of the probative versus the prejudicial value of the evidence, which must be determined on a case-by-case basis, militates against admission of prior arrests that have not resulted in incarceration.

Moreover, a review of the limited Docket filings in the cases cited by Defendants reveals that many, if not all, involve claims of emotional damages stemming from a wrongful arrest, not stemming from wrongful pre-trial incarceration for a full five years at one of the most dangerous prisons in the State.   The only reported case, *Ramos v. Cnty. Of Suffolk*, 707 F. Supp. 2d 421 (E.D.N.Y. 2010) is a District Court decision in which the Court ordered a new trial after a defense verdict where an inmate at Suffolk County Correctional Facility claimed Defendants had assaulted her. The Court in *Ramos* specifically stated that it had permitted proof of prior arrests as they applied to the facts of the specific case but the decision is devoid of any facts that would make the *Ramos* case analogous to this case. Other than being a case in which evidence of prior arrest was permitted, the *Ramos* decision sheds no light as to why the evidence was admitted and provides no authority applicable or comparable to the instant matter.

–13–

Respectfully, as discussed above, prior arrests are not permitted as proof to be offered in cross-examination.  The argument put forth by Defendants is nothing more than an attempt to smear Plaintiff before the jury. Proof of arrests (brief run-ins with the law) pale in comparison to wrongfully spending five years in Rikers Island and, respectfully, should not be considered as experiences which would diminish the impact of such confinement at the age of eighteen.

In support of his position, Defense counsel states in his motion in limine "[b]ecause Plaintiff was certainly no stranger to the criminal justice system, his detention at issue in this case must be placed in context for the jury."  He further states "…Plaintiff's claim for damages stemming from time spent (in) custody is rife with causation issues to the extent that a jury must be informed of his prior interactions with law enforcement and the alleged impact it had on him to properly evaluate the claim."  *Defendants' Memorandum of Law, p. 13.* Such callous attempt to compare minor arrests that did not result in incarceration with having to spend a full five years in Rikers Island is appalling. To suggest that the damages sustained by Plaintiff, who spent five years in Rikers Island are "rife with causation issues" only shows that Defendants will argue in any way possible to undercut Plaintiff's claims, regardless of the validity of the argument.

Respectfully, prior arrests would in no way mitigate the impact of spending five full years in Rikers Island. Any probative value prior arrest may have, which Plaintiff contends is none, is far outweighed by the prejudice of offering such evidence.  Consequently, Plaintiff respectfully requests that Defendants' motion to permit the introduction of evidence concerning Plaintiff's prior arrests be denied in its entirety.

With respect to subsequent arrests, since Plaintiff's release from Rikers Island in 2012, he has been arrested or detained by members of the forty-second precinct approximately twelve times.

–14–

Most of those arrest have resulted in his being put through the system and released; the DA declining to prosecute upon learning of the charges, or Plaintiff simply being detained and released. *See Plaintiff's Response to Defendants' Second Set of Interrogatories, Jaffe Declaration, Exhibit D.*   To allow members of the forty-second precinct to repeatedly arrest Plaintiff in apparent retaliation for this lawsuit and then permit them to use these subsequent arrests to diminish his damages adds insult to injury and would incentivize bad acts by the very Defendants against whom claims are being made.   Defendants should not be permitted to benefit from repeatedly arresting Plaintiff by being permitted to argue that such baseless arrests are admissible. As such, it is respectfully requested that this Honorable Court deny Defendant's request to offer proof of prior and subsequent arrests for the reasons stated herein.

Additionally, Plaintiff has moved to preclude evidence of prior convictions on the grounds that the prejudice of such evidence outweighs its probative value.   Clearly, if this Court grants such motion, Defendants should not then be permitted to question Plaintiff as to his three-week detention in Rikers island. Allowing Defendants to do so would circumvent the Court's ruling as to proof of prior convictions.

## POINT VI
### THE ISSUE OF PLAINTIFF'S DAMAGES IS FOR THE JURY TO DECIDE AND CANNOT BE DETERMINED ON A MOTION *IN LIMINE* BASED ON SPECULATION.

Defendants argue that, because Plaintiff's probation officer may have noted in Plaintiff's parole records that he advised Plaintiff on December 28, 2006 that a Violation of Probation ("VOP") may be filed against him, it is incontrovertible that a VOP would have been filed against him absent the arrest of January 10, 2007.  This is pure speculation. The fact is that between

–15–

December 28, 2006 when the entry was made in Plaintiff's parole records concerning a possible VOP and January 10, 2007, the date Plaintiff was arrested for allegedly having passed a gun to his brother, no VOP was filed.

There is simply no evidence to support Defendants' argument that the damages attributable to the unlawful arrest and prosecution or the fabrication and withholding of evidence are limited or extinguished by the probation revocation that undeniably started after the January 10, 2007 arrest.

First, as explained in Plaintiff's opposition to Defendants' motion for summary judgment, since this is an affirmative defense, Defendants have the burden of offering evidence, not speculation or unsupported improbabilities, by which a jury could reasonably conclude, in diminution of damages, that Plaintiff would have been violated in the absence of the arrest of January 10, 2007 and held for five years./2

Plaintiff had been sentenced to a five-year term of probation as part of the disposition of a 2005 prosecution unrelated to the weapons charge underlying this civil suit. *Plaintiff's Response to Defendants' Rule 56.1 Statement*, Docket 189 at ¶35. Mr. Creighton was subject to supervision by probation from November 21, 2005 to November 20, 2010. *Id.* While the records indicate that on December 28, 2006 Plaintiff had been warned by his probation officer that his probation might be revoked, no steps were taken to begin revocation proceedings before Plaintiff's arrest in

---

2.   Defendants have included in their witness list Gustavo Benitez, who was apparently Plaintiff's probation officer.   Plaintiff objects to Mr. Benitez testifying at trial as he was never exchanged as a witness during discovery and requests that Defendants be precluded from calling him as a witness at trial.   Because Defendants never identified Mr. Benitez as a prospective witness, he was not deposed and, therefore, any testimony elicited from such a witness would come as a total surprise to Plaintiff and constitute trial by ambush.

connection with criminal facilitation charges in this case. Even if probation violation charges had proceeded against Mr. Creighton without the January 2007 arrest and subsequent imprisonment to January 2012, a highly speculative scenario, the maximum Plaintiff could have been jailed, under the terms of probation was, until late November 2010, about fourteen months before the January 2012 dismissal of the weapons charges.   Put colloquially, Plaintiff "maxed out" more than a year before he was released on the weapons charges, assuming he would have been incarcerated at all for an alleged probation violation.

That Defendants claim that the "time served" sentence absolves them of damages for the unlawful imprisonment, prosecution, due process, fabrication of evidence and other claims highlights how speculative their "intervening causation" defense is.   Moreover, nowhere in the transcript of the January 19, 2012 Court proceeding does the judge indicate that Plaintiff was sentenced to any time for the probation violation. *Id.* at ¶¶ 56-57.   Whether Plaintiff would have been incarcerated for violating his probation at all is highly speculative, as is how long he would have been incarcerated for said violation if it would have been incarcerated at all. Defendants do not offer any evidence, in admissible form or otherwise, to support their claim that Plaintiff would have been incarcerated for five years even if he had not been arrested for criminal facilitation. The jury can conclude that, without the criminal facilitation prosecution, whether probation proceedings would have been commenced against Plaintiff is highly speculative or, had they been commenced, they would have resulted in a far more modest sentence than "the max" (until November 21, 2010). *See Jenkins v. New York City Police Department*, 13 Civ. 3405(KPF), 2015 WL 4660899 at 7 (August 6, 2015 SDNY)

–17–

The probation hold is a stark example of the consequences of fabricated and withheld evidence.   *See Plaintiff's Memorandum of Law in Opposition to Defendants' Summary Judgment Motion*, Docket 184 at pp.21-24; *Plaintiff's Response to Defendants' Rule 56.1 Statement*, Docket 189 at ¶36-39.   The jury here can reasonably conclude that, but for the false evidence developed by Defendants (that Plaintiff, and not Kijafa Spruell, passed a pistol to his brother inside of Terab's store), any judge involved in the probation matter would have had a far less harsh attitude about Mr. Creighton and the harassment violation, and that it is possible no jail time would have resulted at all.

## POINT VII

KIJAFA SPRUELL IS A KEY WITNESS IN THE SEARCH FOR THE TRUTH IN
THIS CASE AND SHOULD NOT BE PRECLUDED FROM TESTIFYING AT TRIAL.

Kijafa Spruell ("Spruell") is, admittedly, the individual who passed the gun to Dior Creighton and the person who the bodega owner identified as being in the store that day and passing the subject gun./3   *See Deposition excerpts of Kijafa Spruell, Jaffe Declaration, Exhibit E.*   He is the individual who is seen on the video surveillance passing the gun. Significantly, as noted in Plaintiff's summary judgment motion and opposition to Defendants' motion for summary judgment, during the testimony of the confidential-informant-now-turned-witness, without prompting and without hesitation, the CI immediately identified Kijafa Spruell on the surveillance video as the individual passing the gun, before being coached by defense counsel to say otherwise.

The jury should be permitted to see Kijafa Spruell and view the surveillance video to make a comparison between the two as part of their determination as to the reasonableness of the

---

3.   At his deposition, Mr. Spruell readily admitted that he was the person who passed the gun to Dior Creighton on December 28, 2006 in Mr. Terab's bodega.

Defendant's actions in arresting Plaintiff and not even questioning Spruell about the passing of the gun or the shooting.

Additionally, Spruell testified at his deposition that he was arrested within a couple of weeks after December 26, 2006 on an unrelated matter and while held at the 42nd precinct, he was asked whether he had ever been questioned as to the passing of the gun at the bodega. When Spruell advised the police officers who questioned him that he had not been questioned they simply said never mind. *Exhibit E.*   Such testimony goes to the heart of Plaintiff's conspiracy claims as well as claims that Detective Godino and other police officers chose to ignore evidence that raised doubts about the veracity of the CI's identification of Plaintiff. *See, e.g., Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *Bullard v. City of New York*, No. 01 Civ. 11613, 2003 WL 168444 (S.D.N.Y. Jan. 20, 2003) [refusing to dismiss the complaint where "there were sufficient indications that the complainants were not reliable sources of probable cause and the Defendants did nothing to investigate the allegations, corroborate them, or pursue Plaintiff's claims that he was innocent"). Instead, the police targeted Plaintiff for arrest in order to get him to tell the police where his brother was hiding out.

The sole basis for Defendants' motion to preclude Spruell's testimony at trial is the police and the DA office's unsubstantiated claim that Terab allegedly recanted his correct identification of Spruell despite the fact that Terab categorically and continually denies any such recantation. There is not one shred of proof of a recant by Terab.   There is no DD5 documenting a recant by Terab; there is no recording of a recant by Terab; there is not even a nondescript, undated notation in Detective Godino's spiral notebook documenting any recantation by Terab of his identification of Spruell as the person who passed the gun. To the contrary, to this very day, despite the fact that

–19–

Terab is a complaining witness against Kenneth Creighton in an unrelated presently pending criminal prosecution, Terab still maintains that Kenneth Creighton did not pass the gun and that he never identified him as having done so. (In fact, for these reasons, Plaintiff has moved to preclude any evidence of a recantation by Terab of his identification of Spruell as the person who passed the gun.) *See Terab Deposition Excerpts, Jaffe Declaration, Exhibit F; email from ADA Burin Namani to Pamela Roth, Jaffe Declaration, Exhibit G.*

Mr. Spruell's involvement in the events of the evening of December 26, 2006, his observations and his actions are highly relevant to the issues to be decided by the jury in this case. Indeed, as the Detectives and police viewed the video surveillance before making any arrests, the jury should be able to look at the surveillance video and compare the images on the video with the physical appearances of both Spruell and Plaintiff in order to determine the reasonableness of the Defendants' choosing to act on the identification of a paid confidential informant and to ignore Terab's identification of Spruell.

Defendants flatly declare in their Memorandum of Law in support of their motion to preclude Spruell's testimony that he has "a clear motive to lie" but they do not even suggest what possible motive Spruell may have to admit to having passed a gun that was used in a homicide. Nor does the fact that that because Spruell did not admit to passing the gun until seven years after the fact the passage of such time should result in preclusion of his testimony. First, the unfounded allegation that Spruell has a clear motive to lie is not supported by any proof and is a declaration by counsel without factual basis. Second, as indicated above, Spruell did not wait seven years to come forward and admit to passing the gun. In fact, per the CI's deposition testimony, Spruell freely admitted to having passed the gun from almost the moment the event occurred. *See CI*

–20–

*Deposition Transcript excerpts, Jaffe Declaration, Exhibit H.*   It was the police who chose not to question Spruell and went so far as to avoid the issue after bringing it up when Spruell was under arrest on an unrelated charge in forty-second precinct.   To suggest that a witness to a significant civil rights case should be precluded because he did not chose to freely confess to the police is a patently frivolous argument that boggles the mind. Respectfully the Court should not be swayed by Defendants' spurious arguments and Spruell should not be precluded from testifying.

POINT VIII

PLAINTIFF SHOULD NOT BE PENALIZED WITH AN<br>ADVERSE INFERENCE FOR INVOKING HIS FIFTH AMENDMENT RIGHTS.

During this litigation, Plaintiff's counsel first learned of the existence of an alleged CI based on an entry in Godino's spiral notebook turned over during discovery.   By order of Magistrate Freeman dated January 8, 2014, Defendants were directed to provide Plaintiff with the unredacted information concerning the CI, for counsel's eyes only. *Docket No. 38.* By Order dated April 15, 2014, Magistrate Freeman expanded discovery of the CI's identity to Kenneth Creighton. *Docket No. 39.*   The April 15, 2014 Order was stayed so that defense counsel could appeal to this Court. *Docket No. 43.*   Defendants submitted their appeal on April 30, 2014.   *Docket No. 47.* On December 9, 2015 the Court affirmed the April 15, 2014 Order. *Docket 77.*   Now that discovery is complete Defendants make a U-turn claiming that contrary to the position taken by them during this entire litigation including all motion practice before this Court, the person who identified Plaintiff as the perpetrator was not a CI but rather a mere "eyewitness".   If the person who allegedly saw Plaintiff pass the gun was nothing more than an eyewitness, the fact that he was a CI should never have been injected by Defendants into this case and the extensive delay occasioned by the argument over his disclosure never should have occurred. If the person was just an

–21–

eyewitness, the fact that he acted at other times as a CI did not need to be raised and there would have been no need to protect him as no one would ever have known that he was a CI. Furthermore, no Court time would have been wasted and this case would undoubtedly have been resolved by now.

During this extensive period of delay caused by Defendants, Plaintiff has been subject to approximately twelve unfounded arrests or detentions followed by release, the last two of which have resulted in prosecutions which appear to be thin at best. Now, having arrested and indicted Plaintiff, Defendants seek to use the delay they created in this case to their advantage by forcing Plaintiff to invoke his Fifth Amendment rights against self-incrimination lest he jeopardize the criminal case currently pending against him.

Recognizing the legal bind in which Plaintiff found himself because of Defendants' actions, Plaintiff's counsel moved to stay the instant civil matter pending the outcome of the criminal case pending against Plaintiff. *Docket No. 125.* On May 2, 2016 Plaintiff's motion for a stay was denied. *Docket No. 127.*

Because the complainant in the pending criminal case against Plaintiff is Fawaz Terab, the owner of the bodega where the gun was passed, Plaintiff had no choice but to assert his Fifth Amendment rights as to any questions dealing with his relationship with Mr. Terab.

Defense counsel now seeks to engage in a game of "gotcha," in which Plaintiff is put in the position of having to choose between putting his civil liberties at risk by answering irrelevant questions not grounded in a good-faith basis or jeopardize his civil case should the jury be charged that his exercising his Constitutional right against self-incrimination can be held against him. Defendants, in effect, are asking the Court to put Plaintiff in the proverbial lose-lose situation.

–22–

Additionally, while Defendants seek an adverse inference based on Plaintiff's assertion of his Fifth Amendment rights, such assertions were made in the context of a deposition, not at trial in response to questions subject to objection.   Respectfully, Defendants have not submitted or illustrated a good faith basis for asking the questions asked at Plaintiff's deposition to which Plaintiff raised a Fifth Amendment objection.   Thus, for example, defense counsel questioned Plaintiff at his deposition as to whether he ever paid Terab money for his testimony and or whether he ever threatened any physical violence towards Terab to force him to testify in the manner in which he testified at his deposition. *Exhibit C*.   Defendants, however have not set forth any good faith basis for asking these questions.   Lacking any good faith basis, the question would be objectionable at trial even if Plaintiff did not assert his Fifth Amendment rights.   *See, e.g., People v. Harrell*, 209 A.D.2d 160 (1st Dept., 1994).

In light of the foregoing, respectfully, in the interests of justice and fairness, per all the arguments made in Plaintiff's motion *in limine* and in the within opposition, Defendants should not be permitted to question Plaintiff as to any issues which would require him to assert his Fifth Amendment rights and Defendants' motion for a negative inference in that regard should be denied.

POINT IX

PLAINTIFF SHOULD NOT BE PRECLUDED FROM CALLING
KEISHA ENGLAND OR KIRSTIN MALDONADO AS TRIAL WITNESSES.

Defendants have never sought to depose Keisha England. Nor have they ever inquired of Plaintiff's counsel as to how they might get in touch with Ms. England for purposes of taking her deposition.   Defendants have been aware of Ms. England's existence since the exchange of Plaintiff's initial disclosures.   She also was the subject of testimony given by Plaintiff at his

–23–

deposition.   Despite Ms. England's identity being known for years, Defendants have raised no objection regarding the exchange of her information and they have asked for no further information.   As Defendants concede in their motion *in limine*, they are fully aware of the fact that Ms. England was an alibi witness for Plaintiff who was never even questioned despite the unreliability of the testimony of a confidential informant who contradicted a different identification by the owner of the bodega.

As to Defendants' claim that the alibi witness's testimony is irrelevant, Plaintiff begs to differ. Because the circumstances of the CI's identification of Plaintiff's identification raised serious doubts as to the CI's veracity, the existence of an alibi and the information she would have imparted to the police is relevant and should be admitted.   *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *see also Bullard v. City of New York*, No. 01 Civ. 11613, 2003 WL 168444 (S.D.N.Y. Jan. 20, 2003).   The jury should be permitted to determine whether there was, in fact, reliable information given to the detectives and whether they failed to investigate where a reasonable person who have done so.

In light of the above, it is respectfully requested that this Honorable Court deny Defendants' motion to preclude Keisha England from testifying at trial.

As to Kristin Maldonado, she is a good friend of Plaintiff who was identified in Plaintiff's initial disclosures as someone who may testify as to damages.   Ms. Maldonado has first-hand knowledge of how the five years that Plaintiff spent in jail for a crime he did not commit have affected him and she should be permitted to testify.

### POINT X

EVIDENCE OF PLAINTIFF'S PRIOR
CONVICTION SHOULD NOT BE ADMITTED INTO EVIDENCE.

–24–

Plaintiff objects to Defendant's potential introduction of evidence regarding Plaintiff's prior felony conviction for which more than ten years have passed.

Defendant acknowledges in its application on this issue that the conviction at issue occurred on October 6, 2005 and was sentenced thereafter on November 21, 2005 to a period of five years' probation.   Defendant then seeks to argue that because he then took a plea to a violation of probation this somehow translates to a release from confinement for the underlying conviction from 2005.   Despite Defendants' novel argument (for which no case law in support is cited), Plaintiff's conviction undeniably occurred more than ten years ago.   In addressing convictions older than ten years (i.e. before 2006), Rule 609(b)(1) and (2) prohibit evidence of stale convictions unless the probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect, and defense gives Plaintiff reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.   While Defendants have now provided written notice of their intention to use such stale conviction, Defendants have not made any showing that the "probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Rule 609(b)(2).   In fact, Defendants offer no specific facts and circumstances in support for their proposal to use Plaintiff's prior conviction, which is likely why Defendants seek to have this Court deem the probation violation of 2012 an extension of the conviction from 2005.

Additionally, Defendants have not provided any indication that the conviction it seeks to admit bears on Plaintiff's credibility in any way. Defendants are simply seeking to introduce evidence of an eleven-year-old conviction to negatively predispose the jury to Plaintiff.

POINT XI

PLAINTIFF'S RESERVATION OF RIGHTS

To the extent Defendants reserve their right to object to any *in limine* motions by Plaintiff

and to file supplemental motions *in limine*, Plaintiff asserts the same right.

CONCLUSION

In consideration of the foregoing, Plaintiff respectfully requests that Defendants' motion

*in limine* be denied in its entirety.


Dated: August 8, 2016
       New York, NY

PAZER, EPSTEIN & JAFFE, PC


              s/Michael Jaffe
BY:   MICHAEL JAFFE, ESQ.
Counsel for Plaintiff
20 Vesey Street, Suite 700
New York, New York 10007

RUBERT & GROSS, PC


              s/Richard Gross
BY:  RICHARD GROSS
Counsel for Plaintiff
150 Broadway, Suite 712
New York, New York


–26–