1.  Pursuant to plaintiff's request and in accordance with Federal Rules of Civil Procedure, Rule 26 (a) (2), I have prepared this report, which constitutes my initial evaluation and conclusions within a reasonable degree of professional certainty of the actions and procedures employed by members of the New York City Police Department (NYPD) in connection with this matter.  My fee for preparation is $300 per hour and $2400 per day or part thereof for deposition or trial testimony.  This evaluation is based on:

> A. A review of the documents provided;
> B. My experience, training and education, and professional background, which are described below.

2.  I am a retired member of the New York City Police Department (NYPD), having served for more than (31) thirty-one years.  During my tenure, I held the ranks of Police Officer, Sergeant, Lieutenant, Captain, Deputy Inspector, and Inspector, and served in numerous capacities, including patrol officer, patrol sergeant, anti-crime sergeant, lieutenant tour commander, Executive Captain of the 46th Precinct, Bronx; Commanding Officer, Manhattan North Public Morals Division; Commanding Officer of the 79th Precinct in Bedford-Stuyvesant, Brooklyn; Commanding Officer, Staff Services Section of the Personnel Bureau; Commanding Officer, 24th Precinct., Upper Manhattan; Executive Officer, Bronx Narcotics Division; Commanding Officer, License Division; Executive Officer, Narcotics Division; Executive Officer, Manhattan North Narcotics Initiative; and Executive Officer, Brooklyn South Detective Division.

3.  During my tenure, I conducted or supervised thousands of investigations and arrests.  A various points in my career, I was assigned to executive positions in the Organized Crime Control Bureau, Patrol Precincts, the Bronx Borough Narcotics Division, the Citywide Narcotics Division, the Police Commissioner's Manhattan North Narcotics Initiative, and the Brooklyn South Detective Division.  All of the foregoing positions entailed responding to and investigating serious crimes, including homicides, also training and supervision responsibilities regarding arrests, investigations, identifications, and interviewing witnesses and suspects.

4.  Since my retirement from NYPD, I have taught police science and criminal law courses at John Jay College of Criminal Justice and St. John's University, including courses in police administration, criminal investigations, and criminal procedure law.  I have been retained as a consultant by both plaintiffs and defense in a number of police liability cases, and have testified as a police procedures expert in both State and Federal courts.

## MATERIALS REVIEWED

5.  The following is a list of materials pertaining to the incident and individuals involved that have been provided for my review thus far:

> a. Deposition of Detective Glenn Godino, 4/11/16;
> b. Deposition of ADA Edward Tulty, 4/25/16;
> c. Deposition of Detective Dean Roberts, 4/21/16;
> d. Deposition of ADA Bruce Birns, 5/23/16;

e. Deposition of Kijafa Spruell, 6/3/15;
f. Deposition of Fawaz Terab, 6/3/15;
g. Deposition of ADA Terry Gottlieb, 4/27/16;
h. Grand jury testimony of CI, 5/5/16;
i.  Deposition testimony of CI, 5/5/16;
j. Case file provided by plaintiffs, including Court filings, court records, District Attorney records, NYPD records, and security video.

## SUMMARY OF FACTS

6.  On January 10, 2007, the plaintiff, Kenneth Creighton, was arrested by NYPD Detectives Glenn Godino and Dean Roberts with the approval of Bronx District Attorneys' Office. The arrest was related to a shooting that occurred on December 26, 2006 at about 5:30 p.m. in front of 810 East 168th Street, Bronx, NY, which resulted in a homicide and an assault. John Caldwell was shot in the head and died from the wound, and Lissette Ayala was shot in the leg.

7.  Detectives from the 42nd Precinct Squad and the Bronx Homicide Squad conducted an investigation. Detective Godino was assigned as the lead detective.

8.  On December 31, 2006, a witness, Fawaz Terab, the owner of a Prospect Mini-Mart at 820 East 168th Street, gave a signed statement to the detectives that just before the shooting, inside his store, he saw Kijafa Spruell pass a silver and black gun to Dior Creighton (Dior), the brother of the plaintiff. Mr Terab also stated that Spruell and Dior then left the store and within seconds he heard gunshots outside the store where Caldwell and Ayala were shot. They were apparently innocent victims caught in the crossfire of a shootout. Terab then saw Dior and Spruell running from the scene toward Home Street.

9.  The investigating detectives recovered two sets of shell casings on the street; the first set was of six spent shell casings; the second was of three live rounds and four spent shell casings. Two deformed bullets were also recovered. The gun or guns used in the case were never recovered.

10.  The detectives recovered a video from a security camera inside the mini-mart that showed Dior receiving the gun from a second man. Detective Godino testified that from the video he was not able to determine the identity of the second man. On December 31, 2006, Terab identified the second man as Spruell, whom he knew previously. Detective Godino then obtained a mugshot of Spruell and placed it in a photo-array of six suspects. Terab picked out Spruell as the man who passed the gun to Dior. (123:17; 124:2-12). From a separate photo-array Terab picked out Dior as the person who received the gun. Dior Creighton was arrested on January 26, 2007 and charged with murder.

11.  On January 10, 2007, despite the statement of Terab and his identification of Spruell as the man who passed the gun to Dior, the police arrested Kenneth Creighton and charged him with Criminal Possession of a Weapon 2d and Criminal Facilitation 2d for passing the gun to Dior. The purported basis for the arrest was a statement from a confidential informant (CI) who

2

claimed that he saw Kenneth pass the gun to Dior inside the mini-mart. The purported statement of the confidential informant was not recorded on a DD5. It was only noted in Detective Godino's spiral notebook, and that note was undated.

12. According to NYPD records, Detective Godino obtained approval from Assistant District Attorneys Birns and Talty to arrest Kenneth Creighton. The detective testified that he brought the confidential informer to the Bronx District Attorney's Office to be interviewed. The detective testified that he was "not sure" whether he told ADA Birns about Tareb's contradictory statement and identification that implicated Spruell, not Kenneth Creighton. (171:3-8; 180:2-7).

13. Detective Godino testified that he did not inquire of or learn from the CI's handler, Detective Elliott, about the CI's background. He did not know of the CI's criminal, narcotics, and jail history, or that he had been paid on multiple occasions by the police for identifications of witnesses. (488:9-25; 489:2-24).

14. Detective Godino testified that he showed the video to the CI, though he did not recall whether he showed it at the precinct or the District Attorney's Office. He did not know whether he showed the video at the time he wrote the note about the CI's statement in his spiral notebook. (260:19-25; 261:2-19)

15. ADA Birns testified that he did not know that the person who testified in the grand jury was a paid confidential informant and did not know that he testified under an assumed name. (134:14-19). ADA Birns testified that he was not told of Terab's statement and identification of Spruell, and Birns testified that had he known of them, he would not have given the approval for the arrest of Kenneth Creighton. (61:2-8; 125:22-25; 126:2-11).

16. Detective Roberts testified that he arrested Kenneth Creighton as the processing detective because Godino was unavailable. Detective Roberts testified that he thought Terab had said Kenneth Creighton had passed the gun to Dior. (51:5-11; 131:12-13). He was unaware that Terab had identified Spruell, not Kenneth. (51:14-19). Thus he could not have told the assistant district attorneys about Terab's identification of Spruell.

17. The confidential informant testified in the grand jury against Kenneth Creighton. Terab did not testify to the grand jury, and the grand jury was not made aware of the exculpatory evidence in favor of Kenneth. Consequently, Kenneth Creighton was indicted, and incarcerated for five years while he awaited trial until the case was dismissed in January 2012.

18. Assistant District Attorney Edward Talty, Chief of Homicide, testified that when he approved the arrest of Kenneth Creighton on January 10, 2007, he did not know of Terab's statement and identification of Spruell, and he testified that had he known of them, he believes he would have approved the arrest of Spruell for the crime. He testified that the contradictory identifications would have affected his decision, indicating that he would not have arrested Kenneth Creighton until further investigation was done. (141:4-24; 142:2-3).

19.  ADA Talty also testified that if the ADA presenting the case to the grand jury knew about the Terab identification of Spruell but failed to present that evidence to the grand jury, that failure would be a Brady violation. (145:6-8).

20.  Mr. Terab was not put in the grand jury to testify. After Kenneth Creighton was arrested, Terab told Detective Godino that the wrong person was arrested. (83:7-13). Terab testified that while at the District Attorney's Office on 8/9/11, he told ADA Gottlieb that Kenneth Creighton was not in the store when the gun was passed. He confirmed it was Spruell who passed the gun to Dior. (48:2-6; 51:4-14).

21.  On 1/19/12, ADA Gottlieb asked the court to dismiss the charges against Kenneth Creighton because the one witness against him was unavailable.

<u>EVALUATION AND BASIS FOR OPINION</u>

22.  My evaluation of the above material regarding this matter and my background, education, and training leads me to form the opinion within a reasonable degree of professional certainty that the defendants violated the proper, accepted, and standard police practices and procedures for conducting a criminal investigation, and the defendants' failure resulted in the wrongful arrest and incarceration of Kenneth Creighton. The detectives failed to conduct a full and complete investigation; failed to conduct proper witness interviews; failed to follow up on all relevant leads and information provided to them; failed to document pertinent information; failed to safeguard the original security video pertinent to the investigation; failed to notify the district attorney of possible exculpatory evidence; and failed to reasonably assess the facts to determine whether probable cause to arrest existed or not. Furthermore, the NYPD's failure to seize the DVR or the hard drive from the DVR to preserve the video in its original form represents a failure to follow good and accepted police procedures and allowed the destruction of crucial evidence which could have exonerated the plaintiff in this case.

23.  The failure of Detective Roberts to thoroughly review the facts of the case before proceeding to arrest Kenneth Creighton was a violation of proper police practices and procedures as he was responsible to transmitting accurate information to the district attorney.

24.  The failure of Detectives Godino and Roberts to inform the assistant district attorney prior to the arrest of Kenneth Creighton of Terab's statement and identification of Spruell violated proper police practices and procedures, as that failure caused the assistant district attorney to proceed with the charges against Kenneth Creighton when he would not have done so had he known of Terab's statements. This initial failure also caused the assistant district attorney not to disclose the statement to defense counsel, a Brady violation that could adversely affect the trial and the due process rights of the accused.

25.  In my opinion, Detective Godino's reliance on the confidential informant's statements as grounds to arrest and prosecute Kenneth Creighton, while discounting and not using Mr. Tareb's contradictory statements, violated proper police practices and procedures. Police officers are trained that to make a lawful arrest they must have probable cause, and they

4

are trained that probable cause consists of facts and circumstances that would lead a reasonable police officer to conclude that the person to be arrested committed a crime.

26.  In this case, relying on the confidential informant to establish probable cause under the circumstances presented here violated proper police practices and procedures. The confidential informant had an extensive criminal history, was a heavily-addicted drug addict, testified under an assumed name, and was paid for his "information," factors which were important for the assessment of his reliability and for probable cause.  Throughout the history of police practice, confidential informants have been notoriously unreliable and it is standard and proper police practice to corroborate their information. Here, where the CI's information was contradicted by statements from an independent, credible witness, Mr. Tareb, a business owner, the confidential informant's statement should not have been used as the sole basis to establish probable cause without corroboration. Furthermore, ADA Birns testified that he had no recollection that the witness he used in the grand jury was a paid confidential informant. (134:14-19). His assessment of probable cause would have been affected by that information.

27.  In his deposition on 6/3/2015, Terab testified that he provided a statement that "At no point in time has Mr. Kenneth Creighton ever committed any criminal acts in my presence or in my establishment…" Terab viewed the store security video, and identified the person in the video wearing the black and white horizontally striped sweater as Kijafa Spruell, the person who passed the gun to Dior, which was consistent with the images on the video. (21:12-23).

28.  Moreover, Kijafa Spruell, at his deposition on 6/3/15, testified that he brought the gun into the store and passed it to Dior (9:4-9; 12:21-22). He did not see Kenneth Creighton in the store. (14:9-12). After Dior fired the gun, Spruell took it back and ran (17:2-5).  In his deposition, he was shown the video from the store, and he identified himself as the person on the video wearing the black and white horizontally striped shirt and the person passing the gun to Dior, which was consistent with the images on the video. (21:19-25; 23:10-14),

29.  In my opinion, based on the documents provided and according to the testimony regarding those documents, the investigation pertaining to Kenneth Creighton and Mr. Spruell departed from the accepted standards for conducting a proper police investigation. Documenting investigative steps and note-taking of information provided by witnesses is a critical aspect of proper investigation practices and procedures. The benefits of thorough documentation and note-taking include refreshing an officer's recollection when necessary, providing admissible evidence in lieu of testimony, establishing a timeline of when information comes into a case, and preserving information that initially did not seem important but later becomes relevant in light of newly discovered evidence.

30.  In this case, Detective Godino testified that he turned over the case file with original documents to the ADA in contravention of the established practice of providing copies to the ADA and maintaining the original file secure in the NYPD. He testified that DD5s were not numbered, and documents were missing from the case file. (96:6-25). Also, he failed to prepare DD5s for important actions taken during the investigation. The statement from the CI was only noted in his spiral notebook; it was not documented on a DD5; it was not dated; and it was not

maintained in the case file. This omission prevented the several ADAs assigned to the case from learning facts that were important for assessing the case.

31.  Detective Godino was responsible to maintain the integrity of the evidence. The failure to seize the video DVR or hard drive, and the fact that the original video from the store was not vouchered at the NYPD Property Clerk, was apparently altered, and then lost, was a violation of proper police practices and procedures.

32.  Showing the video to the CI in conjunction with taking a statement from him was a violation of proper police procedures and practices. Detective Godino did not recall the details or timing of showing the video and taking the statement. If he showed the video to the CI before taking a detailed statement, he would have allowed the CI to conform his statement to what he saw on the video. Knowing that CIs, by definition, want to provide usable information to the police, it would have been a violation of proper police practices and procedures to do so.

33.  The failure to apprehend Spruell and attempt to question him was a violation of proper police practices and procedures. An apparently credible witness identified him as a participant in a murder, yet the Detectives expended little effort to find and question him. The case file indicates that only a records check was done and that no wanted card was issued for him. Spruell testified that he was never contacted or questioned by law enforcement regarding this case. (18:6-12). When Spruell was deposed in this civil lawsuit, he admitted that he was the one who passed the gun to Dior, and he identified himself on the video as the person wearing the black and white striped shirt. Had the detectives questioned him and confronted him with the video, he might have admitted passing the gun or he might have provided other evidence exculpatory to Kenneth Creighton. It was incumbent on the detectives to make an effort to apprehend and question him, yet they failed to do so.

CONCLUSION

34.  In my opinion, within a reasonable degree of professional certainty, for all of the above reasons stated, the defendants grossly deviated from the proper, accepted, and standard practices and procedures for conducting a criminal investigation in that they failed to present sufficient and credible evidence to establish probable cause to arrest and they violated the plaintiff's due process rights. They relied on uncorroborated, contradicted testimony; withheld exculpatory evidence; failed to properly document and maintain pertinent information; failed to properly investigate and assess the reliability of the confidential informant; failed to advise the district attorney of a witness' status as a confidential informant; failed to properly safeguard physical evidence, i.e., the video; failed to safeguard numerous original police records which were subsequently lost; and failed to follow a major investigative lead, i.e. Spruell. These failures resulted in the unwarranted arrest, prosecution, and incarceration of Kenneth Creighton.

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

/s/

WALTER SIGNORELLI