UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

KENNETH CREIGHTON,

                               Plaintiff,                    12 CIV 7454 (PGG)

      -against-

THE CITY OF NEW YORK, DETECTIVE DEAN
ROBERTS (Shield No. 05861), DETECTIVE GLENN
GODINO (Shield No. 2756), POLICE OFFICERS
JOHN DOES 1-10 (names being fictitious and
presently unknown and intended to be employees of
the NYPD who were involved in Plaintiff's arrest,
detention, imprisonment, and/or prosecution),
DISTRICT ATTORNEY ROBERT T. JOHNSON,
ASSISTANT DISTRICT ATTORNEY BRUCE
BIRNS A/K/A BURNS, ASSISTANT DISTRICT
ATTORNEY ED TALTY a/k/a ED TULTY and
ASSISTANT DISTRICT ATTORNEY MICHAEL
COOPER,

                               Defendants.

------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW
## REPLYING TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION FOR SANCTIONS FOR LOSS OR DESTRUCTION OF EVIDENCE

                                                              PAZER, EPSTEIN & JAFFE, P.C.
                                                              20 Vesey Street, Suite 700
                                                              New York, New York 10007
                                                                     (212) 227-1 212

                                                                 RUBERT & GROSS, P.C.
                                                                150 Broadway, Suite 712
                                                              New York, New York 10003
                                                                      (212) 608-3103

                                                                      September 8, 2016

# Table of Contents

Preliminary Statement ......................................................................................................... 1

Reply Argument .................................................................................................................. 2

Sanctions Against Defendants Are
Warranted For Spoliation Of Evidence. ............................................................................. 2

    1. Video Evidence Has Been Lost, Destroyed, Or Altered. ........................................... 4

    2. DD5's Are Missing. .................................................................................................... 8

Conclusion ......................................................................................................................... 10

TABLE OF CONTENTS

*Crawford v. City of New London*, No. 11cv1371 (JBA)
2014 U.S. Dist. LEXIS 70977 (D. Conn. May 24, 2014) ............................................................. 7

*Kronisch v. U.S.*, 150 F.3d 112 (2d Cir. 1998) ........................................................................... 10

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010) ..................................................... 3

*Miller v. Time-Warner Communications, Inc.*
1999 WL 440781 (SDNY 1999 ...................................................................................................... 9

*Phoenix Four. Inc. v. Strategic Resources Corp.*, No. 05 CV 4837
2006 WL 1409413 (SDNY May 23, 2006) ................................................................................... 3

*Residential Funding Corp. v. DeGeorge Fin. Corp.*
306 F.3d 99 (2nd Cir. 2002) ........................................................................................................... 3

*West v. Goodyear Tire and Rubber Co*
167 F.3d 776 (2nd Cir. 1999) .......................................................................................................... 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

KENNETH CREIGHTON,

                              Plaintiff,                    12 CIV 7454 (PGG)

       -against-

THE CITY OF NEW YORK, ET AL.,

                              Defendants.

------------------------------------------------------------------X

## PRELIMINARY STATEMENT

    Defense counsel's entire argument in opposition appears to be based on contradicting and changing the testimony of his client, Glenn Godino, and making arguments not supported by evidence. There can be no reasonable dispute that defendants did not preserve the DVR digital recording, that the first generation VHS tape copy has been lost or destroyed, that the video produced in this litigation is significantly altered from the original, *Exh. D: Godino Dep. at 34 l.12-335 l.20.*, and that repeated, degrading reproduction of the surveillance video has irreparably altered the original image quality. *Exh. C; Afrides Declaration.* Nor can defense dispute that Complaint Information Reports (DD5's) prepared by the Police Department in connection with the investigation at issue have been lost or destroyed, *Exh. D: Godino Dep. at 96 ll.8-9, 38-39*, as that has been admitted by defendants in sworn testimony.

    Plaintiff has been prejudiced by the failure to preserve the original digital media, the loss and alteration of the first generation VHS duplicate video, and the loss of the DD5's that were prepared contemporaneously with the investigation. Given the

importance of the altered, missing and/or destroyed materials and the prejudice caused by their loss, the only issue before the Court should be the nature of the remedy. In view of the seriousness of the spoliation at issue, plaintiff requests that this court issue an order granting plaintiff judgment against defendants herein as it is simply without explanation and unconscionable that video surveillance in its original form which would have exonerated plaintiff was allowed to be destroyed or lost. Short of entry of judgment against defendants, plaintiff asks for a conclusive finding that the person shown in the video passing an object is not plaintiff, Kenneth Creighton. At the very least, plaintiff requests that, at trial, the Court give a binding adverse inference instruction to the jury that the original recording and missing DD5's would be both relevant and favorable to plaintiff's case, however, respectfully the remedy should go much further than that.

## REPLY ARGUMENT

### (I)

### SANCTIONS AGAINST DEFENDANTS ARE WARRANTED FOR SPOLIATION OF EVIDENCE.

Defendants have lost, destroyed, or significantly altered evidence and failed to preserve evidence for use in then pending or reasonably foreseeable litigation. *See generally West v. Goodyear Tire and Rubber Co.*, 167 F.3d 776 (2nd Cir. 1999). To warrant sanctions for spoliation, the anticipated litigation need not be the same litigation in which the spoliation sanctions are sought. The Police Department and its officers, as well as the District Attorney, have an obligation to secure and preserve evidence during the course of their criminal investigations in anticipation of a criminal trial. Their failure to do so justifies imposition of

spoliation sanctions in a subsequent civil lawsuit which alleges police misconduct. *See Manganiello v. City of New York*, 612 F.3d 149, 166-167 (2d Cir. 2010).

As to the first prong of spoliation analysis, there is no dispute that defendants had control over the evidence and had an obligation to preserve it at the time it was destroyed. Both the City's Police Department and the District Attorney's Office had an obligation to secure and preserve the digital recording in its original DVR format, preserve the first generation VHS tape obtained from the Bodega's DVR system, and to preserve all the DD5's prepared in connection with the investigation. The admittedly missing and altered evidence was relevant and crucial to both the prosecution and the defense and a reasonable fact finder would conclude that it would have been favorable to the plaintiff.

As to the second consideration, plaintiff has established sufficient *mens rea*. Here, the DD5's and the surveillance videotape were in defendants' possession when they were destroyed, lost or altered. The failure to preserve the documents and the videotape at the time plaintiff was being prosecuted for criminal possession of a weapon and criminal facilitation constitutes gross negligence warranting the severest of sanctions. *See Phoenix Four. Inc. v. Strategic Resources Corp.*, No. 05 CV 4837, 2006 WL 1409413, at 5-6 (SDNY May 23, 2006).

As to the third prong of spoliation analysis, because the evidence went missing due to negligent, willful, or intentional conduct, the Court must consider whether "the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107-09 (2nd Cir. 2002). Here, however, there can be no

-3-

dispute that the missing evidence was relevant to the claims or defenses such that the jury can find that the evidence would support that claim or defense.

The proof developed by defendants themselves through deposition testimony is that there were two different identifications of the person passing the gun, one identification being of Kijafa Spruell and the other allegedly being Kenneth Creighton. As such, almost nothing could be more important than the actual, first recorded video surveillance, the DVR, which would most clearly show who passed the gun. This case was not the first time the NYPD had worked with video surveillance – in fact, they have a full division devoted to video technology issues, including video recordings. *Godino Dep. at p.121 l.15-123 l.2*. Yet, knowing there was an alleged dispute as to who passed the gun in question, and knowing that the person passing the gun was recorded on the DVR surveillance system, the defendants nonetheless did not secure the best evidence available and in fact allowed it to be lost after it was altered. A jury reasonable can conclude that the failure to secure what would have been conclusive evidence was purposeful.

There is no doubt that the lost DD5's and surveillance footage were relevant in the criminal prosecution and are relevant in the instant case. As such, this Court should issue an order in favor of plaintiff as to liability. Alternatively, at the very least under the circumstances herein the Court should issue the strongest inference against defendants for such conduct.

### 1. Video Evidence Has Been Lost, Destroyed, Or Altered

Defendants cannot reasonably dispute that the first generation VHS tape is gone or that the copy produced to plaintiff is different from the first generation copy as same has

been admitted by defendant Godino. *See generally Exh. D: Godino Dep. at pp. 334-343.* There is no dispute that the images were originally recorded on a digital video recorder and that the police did not secure the actual DVR or its hard drive but made or received a VHS videotape transferred from the DVR./[1] After police had viewed the VHS tape a number of times, the tape was copied onto another VHS tape and eventually was digitized to produce a DVD that was supplied to plaintiff during discovery.

The loss, destruction, and alteration of the video evidence goes directly to plaintiff's claims of lack of probable cause to arrest or initiate the prosecution, the inadequacy of the investigation, and the fabrication and withholding of evidence. That missing evidence goes to what defendants knew and when they knew it. Although plaintiff is prevented from adequately enhancing the second, third or fourth generation copies, the real issue is the fact that the DVR hard drive was not secured, the first generation duplicate has been lost or destroyed, and that the duplicates produced are materially altered from the original.

---

1. The first generation VHS tape was retrieved by defendant Godino's co-worker, Detective O'Shea. *Exh. D: Godino Dep. at p.52 l.21-52 l.14.* Remarkably, and contrary to proper police procedure, the tape was not vouchered and there was no record of chain of custody. *Id. at 336 l.21-337 l.3.* Although defense suggests that it was Mr. Terab and not Detective O'Shea who prepared the first generation VHS tape, examination of Terab's testimony, Exh. D at p. 18 ll.2-12, makes it not so clear.

> Q: Let me clear this up. In other words, your system recorded to a DVR?
> A: Yes.
> Q: And if you wanted to produce t to take it someplace else, you would have to copy it from the DVR to the tape; is that right?
> A: We call a guy, he come. The guy call him, he switch it to here. I got this before like twenty years ago. We don't use that no more, cameras.

In light of the somewhat disjointed and unclear explanation by Mr. Terab, Detective O'Shea and defendants have not provided any evidence clarifying the particulars of securing the VHS copy from Mr. Terab.

Defense counsel repeatedly and improperly seeks in the Memorandum of Law to contradict his own client's unequivocal testimony, *Exh. D: Godino Dep. at p.334 l.12 – 335 l.20, 338 ll.6-23 (*original tape is gone*), p.341 l.5 – 342 l.10,* that the videotape taken from the Bodega has been lost or destroyed and that the DVD copy of the duplicate VHS tapes produced during this litigation is an edited version of the original. Defense counsel cannot testify, period. Defense counsel cannot seek to tell this Court or anyone else his client is wrong or is lying. Defense counsel's client has testified the video is an edited version of the original – that is the proof and it is uncontroverted.

Defense counsel baldly asserts, without factual support, that it was unreasonable to take the DVR hard drive as part of the homicide investigation. Notably, this assertion is made by defense counsel without support of a police procedure expert. Contrary to defense counsel's unfounded opinion, plaintiff's police procedure expert, Walter Signorelli, concluded that it is proper procedure in a homicide investigation involving digitally recorded surveillance is to secure the hard drive. *See Exh. D: Declaration of Walter Signorelli, attached to the Declaration of Richard Gross, DE 214, at* ¶22 (The failure to seize and preserve the hard drive or the DVR in its original form did not follow good and accepted police procure and allowed the loss of crucial evidence.) While it may seem "standard" to a lay person such as the Bodega owner or an Assistant Corporation Counsel that the digital information be copied onto a VHS tape, it was and remains improper police procedure for such critical evidence not to be secured and held as evidence.

Notably, defendants offer no expert whatsoever to contradict Mr. Signorelli's opinion. Rather, defendants offer only counsel arguments in opposition. It goes without

saying that defense counsel is not and cannot be considered an expert who is permitted to offer expert opinion in this matter.

Nor may defense counsel now be heard to explain away his on-the-record representation that the video produced during discovery was not a duplicate original and that efforts to obtain the first generation VHS tape were unsuccessful. *See Id. at p. 341 l.11-342 l.10.* Defense counsel makes the remarkable claim that it was his own mistaken misrepresentation that caused Godino's belief that the original videotape was lost or missing, not Godino's firm recollection. This Court should not even consider such late coming and thin assertions.

Moreover, plaintiff's expert videographer, John Afrides, establishes defense counsel's lay opinion to be inaccurate and unsupported by facts when defense claims that transfer of digital media to a VHS tape results in an "identical copy of the footage," and defendants' citation to *Crawford v. City of New London*, No. 11cv1371 (JBA), 2014 U.S. Dist. LEXIS 70977 (D. Conn. May 24, 2014), actually supports plaintiff's motion. Unlike *Crawford*, the digital evidence here was transferred to a VHS tape, resulting in significant degradation even at the first generation copy, additional degradation by the repeated viewing of the first generation copy, and then further degradation when copies were made from the original VHS tape. The evidence at issue in *Crawford* was digital video reproduced onto a DVD resulting in identical digital copies – digital to digital and without data loss or image degradation – but in a format less useful to the plaintiff. Nor did *Crawford* involve, as here, the loss or destruction of the first generation duplicate or the material alteration of the subsequent duplicates.

Defense also argues, without evidence through an expert or otherwise,/[2] that the opinion of plaintiff's expert videographer, John Afrides, is "completely speculative." Mr. Afrides was not permitted to evaluate defense counsel's copy of the duplicate videotape because defense never provided it for review despite requests for same. As a result, Mr. Afrides has reviewed the duplicate videotape provided to plaintiff's counsel as well as the DVD made from the video. Additionally, as noted above, Mr. Afrides never had the opportunity to review the original digital data on Mr. Terab's DVR system because defendants did not secure and preserve it.

Finally, defendants' claims are not helped by pointing to defendant Godino's false claim that Terab recanted his identification of Spruell and identified plaintiff when he viewed the video, *Exh. D: Godino Dep. at p.182 ll.7-183 l.12; p. 211 ll.8-11; p. 212 ll.8-9; see also Id. at p.137 ll.15-19 (Godino confirming that he was unable to identify who passed the weapon); 145 l.24-146 l.6 (same), 197 ll.16-20 (same); Exh. F: Terab Dep. at p.50 l.16-56 l.14*. Moreover, defendants' characterization of defendant Roberts' testimony, *Def. Exh. A at p.59 l.15-60 l.7*, as an "identification" of plaintiff is laughable; it was at most a weak guess made before Roberts was aware that Terab and Spruell both had testified that it was Spruell who passed the weapon and is contradicted by the Criminal Complaint sworn to by Roberts which was based on no first hand knowledge, indeed no knowledge whatsoever.

## 2. DD5's Are Missing

There indisputably are "a lot of DD5's missing," *Exh. D: Godino Dep at 96 ll.8-9*, with as many as thirty (30) documents missing from the case file when Godino reviewed it at the District Attorney's Office. *Id. at p.96 ll. 18-25*. Defendant Godino has stated that three copies of

---

2. Despite that defense has in house experts available through the NYPD's Technical Assistance Response Unit, *Exh. D: Godino Dep. at p.121 l.15-123 l.2* ("you tell them what you want and they do it." *at p.122 ll.16-17*) it has offered no expert or other evidence supporting the assertions

-8-

each DD5 were prepared, with one in the case folder, one sent over to Bronx Robbery Squad, and one sent to a unit in downtown Manhattan. Remarkably, despite being created in triplicate, none of them could be found. *Id. at p.97 ll.16-21*.

The complete original NYPD file was initially copied and the copies given to the District Attorney. Defendant Bruce Birns then requisitioned the original file, and it was transferred to the District Attorney's Office. *Id. at pp. 43-44*. When Godino reviewed the file in the DA's office to prepare for trial, he noted at that time that "a lot of DD5's" were missing from the file. *Id. at p. 96*. Although DD5's are supposed to be consecutively numbered in the order in which they are created so that it can be determined if there are any missing, in this case, they were not numbered. *Id. at pp. 35-40, 99-100*.

The loss is at a minimum attributable to negligence or gross negligence, but that all three duplicate sets of the DD5's have gone missing suggests a willful, intentional act designed to keep evidence useful to plaintiff out of his hands during the criminal trial and/or during the instant action.

The Court must fashion an appropriate remedy to restore plaintiff to the position he would have been in in had the evidence not been altered or destroyed. *Miller v. Time-Warner Communications, Inc.*, 1999 WL 440781 (SDNY 1999). As the Court in *Miller* noted, in cases where the courts have determined that a sanction other than striking the pleadings was appropriate, the item destroyed was known. As in *Miller,* however, in this case, while we know that DD5's prepared in connection with the investigation have disappeared, we do not know what those missing DD5's contained.

Just as with the missing and altered video evidence, defense counsel attacks his own client's unequivocal testimony regarding the missing DD5's, claiming, that there is no evidence

-9-

about how many DD5's are missing, that there is no reason to believe that the documents were beneficial to plaintiff's case. Missing evidence by its nature requires Courts and parties to "venture guesses with varying degrees of confidence as to what that missing evidence may have revealed." *Kronisch v. U.S.*, 150 F.3d 112, 127 (2d Cir. 1998). But holding the "prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence would subvert the prophylactic and punitive purposes of the adverse inference, and would allow parties who have intentionally destroyed the evidence to profit from that destruction." Id. at 128.

Plaintiff is being forced to proceed to trial without crucial evidence in this case - the DD5's and the original digital media or first generation VHS tape - that arguably would have conclusively shown that he was not the person who committed the crime of which he was accused and that defendants knew full well that he was not.

## CONCLUSION

In the face of the indisputable loss and alteration of evidence that was crucial during plaintiff's prosecution and is crucial in proving his claims here, sanctions against the defendants are warranted.

Plaintiff respectfully requests that the Court issue an Order entering judgment based on spoliation of evidence declaring all of the defendants liable or alternatively, declaring that the destroyed and/or lost video evidence establishes that plaintiff was not the person who passed the gun, or precluding defendants from offering evidence at trial that plaintiff is the person depicted in the video as passing the gun, or issuing a jury instruction at trial acknowledging that the video evidence was destroyed and that the jury must or may infer that the original videotape and missing DD5's would be both relevant and favorable to plaintiff's case.

Dated: New York, New York
      September 8, 2016

                Respectfully submitted,

**PAZER, EPSTEIN & JAFFE, P.C.**
Attorneys for Plaintiffs
20 Vesey Street, Suite 700
New York, New York 10007
(212) 227-1212

**RUBERT & GROSS, P.C.**
Attorneys for Plaintiffs
150 Broadway, Suite 1314
New York, New York 10038
(212) 608-3103

\_\_\_\_\_s/_____
RICHARD GROSS