**Pazer, Epstein, Jaffe & Fein, P.C.**

ATTORNEYS AT LAW
20 VESEY STREET
NEW YORK, NEW YORK 10007
(212) 227-1212

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/23/2017

MARK J. EPSTEIN
MICHAEL JAFFE
MATTHEW J. FEIN
EUGENE GOZENPUT

PERRY PAZER
OF COUNSEL

January 17, 2017

FACSIMILE (212) 374-1778
SUFFOLK OFFICE
1776 E. JERICHO TURNPIKE
HUNTINGTON, N.Y. 11743
(631) 864-2429

By Hand
The Honorable Paul G. Gardephe
United States District Court
Southern District of New York
New York, New York 10007

Re:   Creighton v. City of New York, et al.
      12 CV 7454 (PGG)

Honorable Judge Gardephe:

*[Handwritten MEMO ENDORSED: The motion to compel is granted to the extent that the documents sought relate in any fashion to the instant case. Responsive documents must be produced by 5:00 p.m. on January 27, 2017, to defense counsel and to the Court. Given the statements made by Plaintiff's criminal defense lawyer in open Court (Jan. 12, 2017 Transcript Ltr. (Dkt. No. 237), EX. C (March 8, 2016 criminal Court proceedings in People v. Creighton) defense counsel has ample grounds to request the documents sought by the motion to compel. Any evidence that Plaintiff has received an advance on a recovery in the instant case potentially bears on his credibility. Moreover, any evidence that Plaintiff has loaned money to Fawaz Tareb, a critical witness, bears on the credibility of both men.]*

This firm, along with Rubert & Gross, P.C., represents the Plaintiff in this civil rights action and we write in response to Defendant's January 12, 2017 letter, DE 237, submitting various Criminal Court documents and seeking an Order compelling disclosure of documents regarding money received by Plaintiff from litigation funding companies. The Defense seeks all checks and contracts regarding "loans plaintiff has taken from any loan company, cash advance litigation funding company, or other financial institution since filing the instant lawsuit on August 22, 2012," checks "endorsed directly to Fawaz Tareb (Terab)," documents provided to funding companies in order to obtain "a loan," and any "analysis, information or documents received by plaintiff and/or his attorneys" from funding companies as to "the merits of the instant lawsuit."

<u>Funding Company Payments To Plaintiff</u>

Plaintiff sought and received money from litigation funding companies. It was his idea to proceed with such financing, but the Plaintiff's counsel cautioned him, as was its duty, as to the high costs of such financing. *See* Association of the Bar of the City of New York, Committee on Professional Ethics, Opinion 2011-2 (June 2011). As the Court is no doubt aware, funding in contingency cases – the non-recourse purchases of an asset – is not uncommon, and there are many companies whose business it is to fund such cases, although much more so in the personal injury arena than in civil rights cases. (There is even a Washington, D.C.-based nationwide funding association called American Legal Finance Association whose leadership is comprised of funding company executives which oversees the industry. *See* https://americanlegalfin.com.)

A funding company purchases an interest in the outcome of a plaintiff's case, not a loan as it is non-recourse, meaning that if the Plaintiff loses the case, the funding company receives nothing and has no rights to pursue the Plaintiff thereafter. In most instances, the

*[Handwritten: SO ORDERED: Paul Gardephe, Paul G. Gardephe, U.S.D.J. Jan. 23, 2017]*

The Honorable Paul G. Gardephe
January 17, 2017
Page 2

funding is a lifeline for those not working or able to support themselves following a traumatic event. The funds are typically used for daily living expenses and support.

The funding contracts in this matter indicate they are non-recourse and further require Plaintiff's counsel's signature to acknowledge the asset purchase and act as fiduciary in the event funds are received if the case is resolved in Plaintiff's favor. To our knowledge, although Plaintiff received non-recourse fundings, there are no checks (funding company or otherwise) which were endorsed to Mr. Tareb. Neither Plaintiff nor his counsel have any documents from funding companies analyzing Plaintiff's claims nor has Plaintiff or his counsel generated any such documents. We want to make it crystal clear to the Court and to all parties that the Firm had no knowledge as to what Plaintiff would do with any checks issued to him by any funding company and simply assumed that the funds would be used to pay for normal living expenses. Pamela Roth, Esq., Plaintiff's criminal defense attorney, has confirmed to Plaintiff's counsel that he has advised her he did not make Plaintiff's counsel aware of any such dealings between he and Mr. Tareb.

Furthermore, we are advised by Ms. Roth that if the financing company checks and contracts were to be provided to Corporation Counsel, this would potentially impact Plaintiff's criminal defense because these documents would likely be turned over to the District Attorney.

Plaintiff's counsel is thus stuck between the proverbial rock and a hard place, as indicated during the conference with Your Honor. We are prepared to provide the contracts and checks to the Court *in camera.* We ask that, upon review, the Court deny defense counsel's request. There are no records evidencing payment by Plaintiff to Mr. Tareb and the contracts and checks are evidence only of non-recourse purchases of an asset. They are not relevant to any issue in dispute, *see Cabrera v. 1279 Morris LLC*, 306032/10, NYLJ 1202591426566, at *1 (Sup. Ct. Bx. Co. January 31, 2013), and, even if relevant, should be excluded under F.R.E. 403.

As the Court will see, none of the checks are endorsed to Mr. Tareb and, in fact, nowhere does Mr. Tareb's name appear on any of the checks, front or back. Further, while Kavin Thadani, Esq., alleges that fifteen thousand dollars in funding must have been taken prior to Mr. Tareb signing a February 21, 2013 affidavit, in reality such is not the case. Contrary to Mr. Thadani's assertion in Court before Your Honor, the total funding taken by Plaintiff at any time prior to Mr. Tareb's signing the February 21, 2013 affidavit was approximately six thousand dollars over a period of five months. Further, to the extent there may be any financial dealings between Plaintiff and Mr. Tareb, Plaintiff's counsel were unaware of same – a fact which, as noted above, Ms. Roth has confirmed.

<u>Adjournment of the Civil Trial Pending Outcome of the Criminal Matters</u>

At our January 9, 2017 conference, the Court and Plaintiff's counsel were advised by Mr. Thadani for the first time that Fawaz Tareb, a critical witness in this action, is charged with various crimes and has a future appearance in Court in February. Plaintiff has open charges as well, as the Court is aware. While arrests and open charges are typically not permitted to be the subject of cross-examination, the ability of the parties to testify freely, and the ability of counsel to cross-examine fully, is crucial to the fair outcome of a case for all parties. Although additional delay is not favored by the Court, in this instance, it appears to be the best option available.

The Honorable Paul G. Gardephe
January 17, 2017
Page 3

Allowing the criminal matters to resolve is reasonable and appropriate in view of the many evidentiary issues presented in this matter, as noted by the Court. *Exh 1: Excerpt of January 9, 2017 Court Proceeding* at 38:22-24 ("If we proceed to trial, there is going to be a nest of very difficult legal issues to resolve, including some that we've talked about today, many that we haven't."). The outcome of the criminal case against Plaintiff will impact the presentation of the civil claims and defenses, and adjourning trial of the civil matter allows for some of the more difficult privilege and relevancy issues to resolve, for good or for ill. Adjourning the civil trial to allow the criminal prosecution to conclude avoids complicating evidentiary issues – Fifth Amendment privilege, prejudice to the criminal defense, and prejudice to the civil Plaintiff – and causes no prejudice to the defense or the Court, and, in addition to avoiding unnecessary and complicating evidentiary issues, respects comity.

In view of the open criminal charges against two vital witnesses to this action, coupled with numerous other issues pending before the Court including the substitution of Ed Talty, the motions for summary judgment, the spoliation motion, and *in limine* motions, Plaintiff respectfully submits that the interests of justice lean in favor of adjourning this matter pending the outcome of the criminal cases.

As to defense counsel's request for a further deposition of Plaintiff once his criminal case is resolved, Plaintiff would have no objection to same, as Plaintiff's testimony in this matter would not impact a resolved criminal case.

Respectfully submitted,

PAZER EPSTEIN JAFFE & FEIN, P.C.

BY: Michael Jaffe

RUBERT & GROSS, P.C.

BY: Richard Gross